| | |
|---|---|
| Joe E. Marshall<br>Texas Bar No. 13031100<br>Kathleen M. Patrick<br>Texas Bar No. 24037243<br>Lee J. Pannier<br>Texas Bar No. 24066705<br>**MUNSCH HARDT KOPF & HARR, P.C.**<br>3800 Lincoln Plaza<br>500 North Akard Street<br>Dallas, Texas 75201-6659<br>Telephone:   (214) 855-7500<br>Facsimile:    (214) 978-4365<br>jmarshall@munsch.com<br>kpatrick@munsch.com<br>lpannier@munsch.com | Kevin D. McCullough<br>Texas Bar No. 00788005<br>Kerry Ann Miller<br>Texas Bar No. 24050875<br>**ROCHELLE McCULLOUGH LLP**<br>325 N. St. Paul, Suite 4500<br>Dallas, Texas 75201<br>Telephone:   (214) 953-0182<br>Facsimile:    (214) 953-0185<br>kdm@romclawyers.com<br>kmiller@romclawyers.com |
| **(PROPOSED) COUNSEL FOR HERITAGE CONSOLIDATED, LLC,**<br>**DEBTOR AND DEBTOR IN POSSESSION** | **(PROPOSED) COUNSEL FOR HERITAGE STANDARD CORPORATION,**<br>**DEBTOR AND DEBTOR IN POSSESSION** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HERITAGE CONSOLIDATED, LLC; | § | Case No. 10-36484-hdh |
| HERITAGE STANDARD | § | |
| CORPORATION, | § | Case No. 10-36485-hdh |
| | § | |
| Debtors. | § | Chapter 11 – Joint Administration Requested |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PROVIDE UTILITIES WITH ADEQUATE ASSURANCE OF FUTURE PAYMENT; AND (II) ESTABLISHING PROCEDURES FOR <u>RESOLVING ADDITIONAL ASSURANCE REQUESTS</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Heritage Consolidated, LLC ("<u>Consolidated</u>") and Heritage Standard Corporation ("<u>HSC</u>" and together with Consolidated, the "<u>Debtors</u>"), the debtors and debtors-in-possession in the above-captioned bankruptcy cases, file their *Motion for Interim and Final Orders (I) Authorizing Debtors to Provide Utilities with Adequate Assurance of Future Payment; And (II) Establishing Procedures for Resolving Additional Assurance Requests* (the "<u>Motion</u>"). In

support of this Motion, the Debtors respectfully state as follows:

## I. JURISDICTION AND PROCEDURAL BACKGROUND

1. On September 14, 2010 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under Chapter 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), thereby initiating the above-captioned cases with this Court (the "Bankruptcy Cases").

2. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating and managing their business and properties as debtors-in-possession. No trustee or examiner has been appointed in the Bankruptcy Cases and no committees have yet been appointed or designated.

3. This Court has jurisdiction over the Bankruptcy Cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion involves a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 105 and 366 of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. STATEMENT OF FACTS

**A. The Debtors And Their Operations**

5. The Debtors are privately-held companies that operate in the oil and gas industry. The Debtors' core operations consist of exploration for, and acquisition, production, and sale of, crude oil and natural gas. Consolidated is a Texas limited liability company that owns the majority of the oil and gas wells, leasehold interests, and mineral interests that allow the Debtors to conduct their oil and gas operations. Specifically, Consolidated, among other things: (i)

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PROVIDE UTILITIES WITH ADEQUATE ASSURANCE OF FUTURE PAYMENT; AND (II) ESTABLISHING PROCEDURES FOR RESOLVING ADDITIONAL ASSURANCE REQUESTS – Page 2**

acquires and owns the pertinent oil and gas leases; (ii) participates in drilling and completing oil and gas wells on the properties covered by those leases; (iii) markets and sells oil, gas, and other hydrocarbons from those wells; and (iv) acquires and owns other oil and gas properties such as mineral interests and development and production rights. HSC, a Texas corporation, is an exploration and production company that develops oil and gas prospects and operates wells owned by Consolidated and other working interest owners; it is also a lessee of certain oil and gas leases.

6. The Debtors focus their development efforts primarily on the Permian Basin in west Texas and southeastern New Mexico (the "Target Area"). The Debtors and their predecessors have been exploring and developing the Target Area since 1984.

7. As part of conducting their business, the Debtors are lessees under, or assignees of, oil and gas leases and are parties to certain operating agreements, farmout agreements, joint venture agreements, gas marketing agreements, gas transportation agreements, and other agreements.

B.  Events Leading To The Chapter 11 Filing

8. In August, 2009, HSC began operations on that certain oil and gas well in Winkler County, Texas, known as the Pat Howell well (the "Pat Howell Well"). The Pat Howell Well is located in the Permian Basin which has proven reserves of approximately 16.9 billion cubic feet ("bcf") of natural gas in the Atoka formation. Over the course of ten (10) months, HSC conducted operations to re-enter the existing wellbore for the Pat Howell Well and then complete operations to the Atoka formation. Due to a series of operational mistakes and difficulties with the wellbore, the Pat Howell Well has not been completed and placed online and approximately $11.6 million in contractor and service debt has been accumulated as a result thereof. Most, if not all, of the problems encountered in these operations were the result of

contractor negligence, which is now the subject of lawsuits initiated by HSC and pending in various Texas state courts.  The significant debt incurred in connection with the operations on the Pat Howell Well, coupled with the lack of anticipated production therefrom, has negatively impacted the ability of the Debtors to meet their ongoing obligations to their trade creditors and lenders.  As a result, the Debtors determined that it was in the best interest of creditors to initiate these Bankruptcy Cases in order to protect and preserve their assets while they implement a plan of reorganization that will facilitate the completion of the Pat Howell Well operations for the benefit of creditors.   The Debtors also intend to utilize the recoveries from the pending suits involving the Pat Howell Well in its reorganization to satisfy all legitimate claims against the Debtors.

C.     **The Debtors' Current Utility Services**

9.     Most of the Debtors' utility services relate to their oil and gas field operations. Specifically, most of the Debtors' utility services are related to operating certain oil and gas wells in the Target Area and are provided by one electricity company, TXU Energy.  The remainder of the utility services used by the Debtors, with the exception of certain communication-related services, are billed by the relevant utility providers directly to TRT Park Place, LLC, the landlord for Consolidated's corporate headquarters located at 2911 Turtle Creek Blvd., Suite 850, Dallas, Texas (the "Office Complex").  Under the terms of the lease for the Office Complex, the Debtors pay their share of utilities used at Office Complex to TRT Park Place, LLC as part of the rent.  As a result, section 366 of the Bankruptcy Code is not applicable to those utility providers.

10.    A list of the Debtors' current utility providers (collectively, the "Utilities" or individually, a "Utility") and various associated information is attached hereto as Exhibit A and incorporated herein for all purposes (the "Utility Schedule").

### III. RELIEF REQUESTED

11. By and through this Motion, the Debtors seek entry of an interim order (the "Interim Order"): (i) authorizing and approving the amount and method by which the Debtors may furnish the Utilities with adequate assurance of future payment; (ii) directing the Utilities to continue providing such services until the Interim Order becomes a final order (the "Final Order"); (iii) approving the Debtors' proposed procedures for resolving any Utility's request for additional assurance; and (iv) scheduling a final hearing on this Motion within twenty-five (25) days of the Petition Date (the "Final Hearing").

### IV. BASIS FOR RELIEF REQUESTED

12. Section 366 of the Bankruptcy Code provides that a utility may alter, refuse, or discontinue a chapter 11 debtor's utility service if the utility does not receive "adequate assurance of payment for utility service that is satisfactory to the utility" within thirty (30) days from the petition date. *See* 11 U.S.C. § 366(c)(2). Section 366(c)(1)(A) defines the phrase "adequate assurance of payment" to mean, among other things, a cash deposit. *See* 11 U.S.C. § 366(c)(1)(A).

13. Accordingly, the Debtors propose to satisfy the requirement of section 366 of the Bankruptcy Code by providing each of the Utilities with an Adequate Assurance Deposit, as defined and detailed below, and by establishing certain procedures, as set forth below, to resolve any adequate assurance disputes.

**A. Adequate Assurance Deposit**

14. The Debtors propose to provide a deposit to each Utility, within twenty (20) days of the Petition Date, in an amount equal to one (1) month worth of utility service as calculated by the Debtors according to the last historical 52-week period (the "Adequate Assurance Deposits"). The proposed amount of the Adequate Assurance Deposit for each Utility is set forth in the

"Proposed Deposit" column of the Utility Schedule, which is attached hereto and incorporated herein as <u>Exhibit A</u>.

15. The Debtors further propose that the following acts and/or omissions by a Utility shall be deemed an acknowledgment and admission by such Utility that the Adequate Assurance Deposit constitutes adequate assurance of payment that is satisfactory within the meaning of section 366 of the Bankruptcy Code: (i) acceptance of the Adequate Assurance Deposit; (ii) failure to make a timely additional Assurance Request; or (iii) failure to file a timely Procedures Objection to opt out of the Adequate Assurance Procedures (as described below).

16. The Debtors submit that the Adequate Assurance Deposits constitute sufficient adequate assurance of future payment to satisfy the requirements imposed by section 366 of the Bankruptcy Code.

**B.  Adequate Assurance Procedures**

17. To address the right of any Utility under section 366(c)(2) of the Bankruptcy Code to seek adequate assurance in an amount above the Adequate Assurance Deposits, the Debtors propose that the following procedures (the "<u>Adequate Assurance Procedures</u>") be adopted:

(i) Any Utility requesting assurance of future payment for utility service in excess of the Adequate Assurance Deposits must serve a request (an "<u>Additional Assurance Request</u>") so that it is **actually received** within ten (10) days after entry of the Interim Order by the Debtors' proposed bankruptcy counsel:

> Munsch Hardt Kopf & Harr, P.C., c/o Lee J. Pannier, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201; facsimile: (214) 978-5338; and

> Rochelle McCullough, LLP, c/o Kerry Ann Miller, 325 N. St. Paul St., Ste. 4500, Dallas, TX 75201; facsimile (214) 953-0185.

(ii) The Additional Assurance Request must: (i) be in writing; (ii) set forth the relevant account number(s); (iii) describe any deposits, prepayments, or other security currently held by the requesting Utility; and (iv) explain why the

             requesting Utility believes the Adequate Assurance Deposits is insufficient adequate assurance of future payment.

(iii)     Upon receipt by the Debtors of an Additional Assurance Request at the address noted above, the Debtors shall have the greater of either: (i) fourteen (14) days from the receipt of such Additional Assurance Request; or (ii) thirty (30) days from the Petition Date (collectively, the "Resolution Period") to negotiate with the requesting Utility to resolve its Additional Assurance Request. The Resolution Period may be extended by agreement between the Debtors and the requesting Utility.

(iv)     The Debtors may resolve any Additional Assurance Request by mutual agreement with the requesting Utility and without further order of this Court and may, in connection with any such resolution, provide the requesting Utility with additional adequate assurance of future payment in a form satisfactory to the Utility, including, without limitation, cash deposits, prepayments, and/or other forms of security, if the Debtors believe such additional assurance is reasonable.

(v)     If the Debtors determine that an Additional Assurance Request is not reasonable and is unable to resolve such request during the Resolution Period, the Debtors will request, either during or immediately after the Resolution Period, a hearing before this Court to determine the adequacy of the proposed adequate assurance made to the requesting Utility (a "Determination Hearing") pursuant to Section 366(c)(3)(A) of the Bankruptcy Code.

(vi)     Pending the resolution of the Additional Assurance Request at a Determination Hearing, the requesting Utility shall be restrained from discontinuing, altering, or refusing service to the Debtors on account of unpaid charges for pre-petition services or on account of any objections to the Adequate Assurance Deposits.

(vii)     Other than through the Opt-Out Procedures (as defined below), any Utility that does not comply with the Adequate Assurance Procedures, is deemed to find the Adequate Assurance Deposits satisfactory to it and shall be forbidden from: (i) discontinuing, altering, or refusing service on account of any unpaid pre-petition charges; or (ii) requiring additional assurance of payment (other than the Adequate Assurance Deposits). The Interim Order shall be deemed the Final Order vis-à-vis all Utilities that do not timely file and serve a Procedures Objection (as defined below).

### C.    Opt-Out Procedures

18.    As noted above, section 366(c) of the Bankruptcy Code requires the Debtors to, within thirty (30) days of the Petition Date, provide the Utilities with "adequate assurance of payment for utility service that is satisfactory to the utility." *See* 11 U.S.C. § 366(c)(2).

Thereafter, any such adequate assurance provided by the Debtors may be modified by the Court after notice and a hearing under section 366(c)(3)(A) of the Bankruptcy Code. *See* 11 U.S.C. § 366(c)(3)(A). Under the Adequate Assurance Procedures, however, the Debtors may seek a determination of appropriate adequate assurance at a Determination Hearing held after the first thirty (30) days of the Bankruptcy Cases without providing interim assurances deemed "satisfactory" to the Utilities. Although the Debtors believe that the Adequate Assurance Procedures are reasonable, certain Utilities might assert that, if an adequate assurance dispute is not resolved within thirty (30) days after the Petition Date, the Adequate Assurance Procedures do not strictly comply with section 366 of the Bankruptcy Code. Thus, if any Utility wants to opt out of the Adequate Assurance Procedures, the Debtors submit that this Court should schedule a hearing and issue a ruling on the amount of adequate assurance to be provided to such Utility within thirty (30) days after the Petition Date. In particular, to avoid an argument that the Debtors have not fully complied with section 366 of the Bankruptcy Code, the Debtors propose the following procedures (the "Opt-Out Procedures"):

(i) Any Utility that wants to opt-out of the Adequate Assurance Procedures must file an objection (a "Procedures Objection") with the Court and serve such Procedures Objection so that it is **actually received** within ten (10) days after entry of the Interim Order by the Debtors' proposed bankruptcy counsel:

> Munsch Hardt Kopf & Harr, P.C., c/o Lee J. Pannier, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201; facsimile: (214) 978-5338; and
>
> Rochelle McCullough, LLP, c/o Kerry Ann Miller, 325 N. St. Paul St., Ste. 4500, Dallas, TX 75201; facsimile (214) 953-0185.

(ii) Any Procedures Objection must: (i) be made in writing; (ii) set forth the relevant account number(s); (iii) describe any deposits, prepayments or other security currently held by the objecting Utility; (iv) explain why the objecting Utility believes the Adequate Assurance Deposits is insufficient adequate assurance of future payment; and (v) identify, and explain the basis of, the objecting Utility's proposed adequate assurance requirement under section 366(c)(2) of the Bankruptcy Code.

(iii) The Debtors may resolve any Procedures Objection by mutual agreement with the objecting Utility and without further order of the Court, and may, in connection with any such resolution provide the objecting Utility with additional adequate assurance of future payment, including, without limitation, cash deposits, prepayments, or other forms of security, if the Debtors believe such additional assurance is reasonable.

(iv) If the Debtors determine that a Procedures Objection is not reasonable and is unable to reach a prompt alternative resolution with the objecting Utility, the Procedures Objection will be heard at the Final Hearing.

(v) Any Utility that does not timely file a Procedures Objection is deemed to consent to, and shall be bound by, the Adequate Assurance Procedures.

D. **Subsequent Modification(s) to the Utility Service List**

19. Despite good-faith efforts by the Debtors to list all their utility providers, certain utility providers may have been inadvertently omitted from the Utility Schedule. If the Debtors hereafter discover any such omission, then the Debtors will amend the Utility Schedule and shall serve copies of the Interim Order and Final Order (when and if entered) on any newly-identified utility provider. The Debtors request that the Interim and Final Orders be binding on all utility providers, subject to their rights as detailed herein to the Adequate Assurance Deposits and to request additional adequate assurance, regardless of when any such utility provider is added to the Utility Schedule.

E. **Request for Immediate Relief**

20. Bankruptcy Rule 6003 generally precludes this Court from authorizing certain relief until twenty-one (21) days after a debtor's bankruptcy petition is filed, except to the extent necessary to prevent "immediate and irreparable harm". Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following:
>
> (a) an application under Rule 2014;

      (b)    a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001; and

      (c)    a motion to assume, assign, or reject an executory contract or unexpired lease in accordance with Section 365.

Fed. R. Bankr. P. 6003.

21. The Debtors believe that the relief sought herein is critical to achieving a smooth transition to operation as Chapter 11 debtors and will help preserve their going-concern value. Accordingly, the Debtors seek first-day approval of the Motion.

22. The relief sought herein is essential to the Debtors' reorganization efforts, and without such relief, the Debtors will suffer immediate and irreparable harm. The Debtors' oil and gas business relies on receiving constant and uninterrupted utility services for its oil and gas field operations. Therefore, the Debtors submit that immediate relief is appropriate and warranted, represents an exercise of the Debtors' sound business judgment, is in the best interests of, and is necessary to prevent immediate and irreparable harm to, the Debtors and their bankruptcy estates.

**F. Waiver of Bankruptcy Rule 6004(h)**

23. To implement the proposed procedures in sufficient time to address the time limitations imposed by section 366 of the Bankruptcy Code, the Debtors further seek a waiver of the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**V. PRAYER**

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order: (i) granting the relief requested in the Motion; (ii) providing that the Interim Order shall become

a Final Order as to any Utility that does not timely file a Procedures Objection; (iii) setting a Final Hearing within twenty-five (25) days from the Petition Date; and (iv) granting the Debtors such other and further relief to which they are justly entitled.

Dated: September 14, 2010  Respectfully Submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Joe E. Marshall
Joe E. Marshall
Texas Bar No. 13031100
Kathleen M. Patrick
Texas Bar No. 24037243
Lee J. Pannier
Texas Bar No. 24066705
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 978-4365
jmarshall@munsch.com
kpatrick@munsch.com
lpannier@munsch.com

(PROPOSED) COUNSEL FOR HERITAGE CONSOLIDATED, LLC,
DEBTOR AND DEBTOR IN POSSESSION

-and-

                        **ROCHELLE McCULLOUGH LLP**

                By:   /s/ Kevin McCullough
                     Kevin McCullough
                     Texas Bar No. 00788005
                     Kerry A. Miller
                     Texas Bar No. 24050875
                     325 N. St. Paul, Suite 4500
                     Dallas, Texas 75201
                     Telephone: (214) 953-0182
                     Facsimile: (214) 953-0185
                     kdm@romclawyers.com
                     kmiller@romclawyers.com

                     (PROPOSED) COUNSEL FOR HERITAGE
                     STANDARD CORPORATION,
                     DEBTOR AND DEBTOR IN POSSESSION