# PLAN SUPPORT AGREEMENT

THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.

PLAN SUPPORT AGREEMENT (the "**Agreement**") dated as of September 14, 2010 among:

(a) Heritage Consolidated, LLC, a Texas limited liability company ("**Consolidated**")

(b) Heritage Standard Corporation, a Texas corporation ("**Standard**," and together with Consolidated, the "**Debtors**");

(c) CIT Capital USA Inc. ("**CIT**"), a Delaware corporation, as administrative agent under that certain Credit Agreement dated October 30, 2008 among Heritage Consolidated, CIT Capital USA Inc., as administrative agent, and the lenders party thereto, as amended, and that certain Promissory Note dated July 30, 2010 by Heritage Standard and Heritage Consolidated, as maker, and CIT Capital USA Inc., as holder (as each may be amended, waived, supplemented and otherwise modified from time to time, the "**Lender Credit Agreements**"), and as the lender under a DIP Credit Agreement among Consolidated, Standard, CIT Securities LLC, as agent, and CIT, as lender;

(d) Cross Canyon Energy Corp., a Delaware corporation ("**Cross Canyon**");

(e) Permian Atlantis LLC, a Delaware limited liability company ("**Permian Atlantis**");

(e) Permian Phoenix LLC, a Delaware limited liability company (together with Permian Atlantis, the "**Permian Entities**"); and

(f) Michael B. Wisenbaker ("**Wisenbaker**," together with the Debtors, CIT and The Permian Entities, the "**Parties**").

## RECITALS

WHEREAS, on September 14, 2010, each Debtor filed a voluntary petition for relief with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**") under Chapter 11 of the Bankruptcy Code, and the Debtors have requested that these cases be jointly administered under Case No. 10-36484 (collectively, the "**Bankruptcy Cases**");

WHEREAS, subject to receipt of higher and better offer(s), the Parties propose to, among other things, effectuate the sale and transfer of assets (the "**Sale**") pursuant to the Sale Procedures Order under that certain Purchase and Sale Agreement dated as of September 7, 2010 by and among the Permian Entities and the Debtors (the "**Purchase and Sale Agreement**") or a Back-Up Purchase and Sale Agreement (Non-Section 6 Assets) (the "**Back-Up Purchase and Sale Agreement**") as contemplated in the Sale Procedures Order; and

WHEREAS, the Parties desire that the Debtors consummate the Sale as contemplated under the Purchase and Sale Agreement pursuant to a *Joint Plan of Reorganization for the Debtors* (as the same may be amended or otherwise modified or supplemented from time to time in accordance with its terms and with the consent of the Parties, the "**Plan**"), the form of which is attached hereto as Exhibit A; and

WHEREAS, CIT has agreed to provide debtor-in-possession financing as provided in the DIP Term Sheet executed concurrently herewith in order to fund the proposed sale under the Purchase and Sale Agreement and the Debtors' administrative and operational costs and expenses in order to seek confirmation of the Plan or approval of the a sale pursuant to the Sale Procedures Order; and

WHEREAS, the Parties have engaged in good faith negotiations regarding the Plan.

NOW, THEREFORE, in consideration of the foregoing and the premises, mutual covenants and agreements set forth herein and for other good and valuable consideration, the Parties agree as follows:

## ARTICLE 1
## DEFINITIONS

Section 1.1    Definitions.  Capitalized terms that are used herein but not defined herein and defined in the Plan shall have the meanings given to them in the Plan.  The following additional terms, as used herein, have the following meanings:

"**Affiliate**" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with such other Person.  For such purposes, the term "control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"**Applicable Law**" means, with respect to any Person, any federal, state or local law (statutory, common or otherwise), constitution, ordinance, code, rule, regulation, order, injunction or judgment adopted or promulgated by a Governmental Authority that is binding upon or applicable to such Person, as amended unless expressly specified otherwise.

"**Claim**" means any claim against any Debtor.

"**Disclosure Statement**" means the Disclosure Statement for Joint Plan of Reorganization for the Debtors, as the same may be amended or otherwise modified or supplemented from time to time in accordance with the consent of the Parties.

"**Governmental Authority**" means any transnational, domestic or foreign federal, state or local, governmental authority, department, court, agency or official, including any political subdivision thereof, or tribal authority.

"**Organizational Documents**" means, with respect to any Person, the certificate or articles of incorporation, bylaws, certificate of formation or organization, partnership agreement,

2

operating agreement, limited liability company agreement or any other similar organizational documents of such Person.

"**Representatives**" means, with respect to any Person, the officers, directors, employees, members, managers, partners, investment bankers, attorneys, accountants, consultants or other advisors, agents or representatives of such Person, when acting in such capacity on behalf of such Person.

"**Subsidiary**" means, with respect to any Person, any entity of which securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other persons performing similar functions are at any time directly or indirectly owned by such Person.

"**Transactions**" means the transactions contemplated by this Agreement and the other Transaction Documents.

"**Transaction Documents**" means this Agreement, the Plan, the Purchase and Sale Agreement, the Back-Up Purchase and Sale Agreement, the Disclosure Statement, the debtor-in-possession credit agreement and any other agreement contemplated under the Purchase and Sale Agreement or the Alternative Transaction Agreement (if the Permian Entities are not the Successful Bidder), and all other agreements, documents and instruments entered into as of or after the date hereof and at or prior to Closing (as defined in the Purchase and Sale Agreement) in connection with the transactions contemplated by the Purchase and Sale Agreement or the Alternative Transaction Agreement (if the Permian Entities are not the Successful Bidder).

## ARTICLE 2
## OBLIGATIONS OF THE DEBTORS

Section 2.1  Obligations of the Debtors.  The Debtors believe that prompt consummation of the Plan and the Transactions is in the best interests of the Debtors, their creditors, equity owners and other parties in interest.  Accordingly, unless and until a Termination Event (as defined herein) has occurred, each Debtor agrees to:

(a)  as expeditiously as practicable, but no later than three Business Days after the date when this Agreement has been executed by all Parties, file with the Bankruptcy Court (i) the Plan, (ii) a motion seeking approval of this Agreement in form and substance reasonably acceptable to the Parties, (iii) the Disclosure Statement, (iv) a motion seeking entry of an order (the "**Disclosure Statement Order**"), in form and substance reasonably acceptable to the Parties, approving the Disclosure Statement, (v) a motion seeking entry of procedures for consummating the Sale (the "**Sale Procedures Motion**") in form and substance reasonably acceptable to the Parties, and (vi) a motion seeking entry of an order setting time for the solicitation of acceptances of the Plan in form and substance reasonably acceptable to the Parties;

(b)  use commercially reasonable efforts to obtain entry of the Disclosure Statement Order;

(c) as expeditiously as practicable following entry of the Disclosure Statement Order, solicit the requisite acceptances of the Plan in accordance with the Bankruptcy Code and the Bankruptcy Rules but subject to the Sale Procedures Order;

(d) subject to the Sale Procedures Order, use commercially reasonable efforts to obtain entry of the Confirmation Order promptly following the completion of the solicitation of acceptances of the Plan;

(e) subject to the Sale Procedures Order, as expeditiously as practicable following entry of the Confirmation Order, consummate the Plan and the Transactions in accordance with the terms and conditions set forth in the Plan and the Purchase and Sale Agreement; and

(f) if appropriate pursuant to the Sale Procedures Order, use commercially reasonable efforts to obtain approval and consummation of the Back-Up Purchase and Sale Agreement.

## ARTICLE 3
## OBLIGATIONS OF CIT, CROSS CANYON, THE PERMIAN ENTITIES AND WISENBAKER

Section 3.1 Support Of Plan. CIT, Cross Canyon, the Permian Entities, and Wisenbaker acknowledge, respectively, that he or it (or his or its counsel) has reviewed, or has had sufficient opportunity to review, the Plan, the Sale Procedures Order, the Purchase and Sale Agreement, and the Back-Up Purchase and Sale Agreement and by signing below, acknowledges and agrees that the Plan attached hereto as Exhibit A is in form and substance acceptable to him or it. CIT, Cross Canyon, the Permian Entities, and Wisenbaker further acknowledge and confirm, respectively, that he or it believes that prompt consummation of the Plan and the Transactions subject to the Sale Procedures Order, as well as the debtor-in-possession financing under the DIP Term Sheet as committed to by CIT Capital, are in the best interests of the Debtors' Estates. Accordingly, unless and until a Termination Event occurs, CIT, Cross Canyon, the Permian Entities, and Wisenbaker each agrees (and agrees to cause their respective Subsidiaries and/or Affiliates), subject to the Sale Procedures Order and any Order of the Bankruptcy Court, to:

(a) support, and not to commence any proceeding or prosecute, join in or otherwise encourage or support any objection to, (i) this Agreement, (ii) the Transactions and/or the terms and conditions of the Purchase and Sale Agreement, (iii) the Plan and/or the terms and conditions thereof, (iv) the approval of the Disclosure Statement and entry by the Bankruptcy Court of the Disclosure Statement Order, (v) the Sale Procedures Motion and entry by the Bankruptcy Court of the Sale Procedures Order and (vi) the confirmation of the Plan and entry by the Bankruptcy Court of the Confirmation Order;

(b) support, and not commence any proceeding or prosecute, join in or otherwise encourage or support any objection to, any motion filed with the Bankruptcy Court for approval of the Purchase and Sale Agreement, any Alternative Transaction Agreement, or any provisions under those agreements; and

4

(c) subject to the Sale Procedures Order, not take any other action that is inconsistent with, or that would reasonably be expected to prevent, delay or impede the Plan, the Purchase and Sale Agreement, any Alternative Transaction Agreement, the Back-Up Purchase and Sale Agreement, or the consummation of the Transactions in accordance with the terms and conditions of such agreements, or any approval or confirmation thereof. For the avoidance of doubt, nothing in this Support Agreement prohibits or limits (i) Wisenbaker from, together with others, making a qualified bid in accordance with the Plan and Sale Procedures Order, provided that Wisenbaker discloses his involvement with any such bidder; or (ii) the Debtors from soliciting higher and better offers to the Purchase and Sale Agreement and otherwise performing their fiduciary duty to creditors in that regard.

Section 3.2  Co-Proponent Letter to Creditors. The Debtors and CIT hereby agree to prepare a letter to be included in the solicitation package to be received by parties in interest of the Debtors in which the Parties advise of their support for the Plan and encourage creditors to support, and cast a ballot to accept, the Plan.

## ARTICLE 4
## REPRESENTATIONS AND COVENANTS

The Parties (as applicable) represent and warrant to the other Parties that:

Section 4.1  Existence and Power. The Debtors, CIT, Cross Canyon, and the Permian Entities are duly organized, validly existing and in good standing under the laws of their jurisdictions of formation or organization and have all corporate, partnership or limited liability company powers and all material governmental licenses, authorizations, permits, consents and approvals required to carry on their businesses as now conducted.

Section 4.2  Authorization. Subject to obtaining Bankruptcy Court approval, the execution, delivery and performance by the Debtors, CIT, Cross Canyon, and the Permian Entities of this Agreement and the consummation of the transactions contemplated hereby are within the corporate, partnership or limited liability company powers of the Debtors, CIT, Cross Canyon, and the Permian Entities and have been duly authorized by all necessary corporate, partnership or limited liability company action on the part of the Debtors, CIT, Cross Canyon, and the Permian Entities. The execution, delivery and performance by Wisenbaker of this Agreement and the consummation of the transactions contemplated hereby are within Wisenbaker's powers and authority. Subject to obtaining Bankruptcy Court approval, this Agreement constitutes a valid and binding agreement of the Parties.

Section 4.3  Governmental Authorization. Subject to obtaining Bankruptcy Court approval, the execution, delivery and performance by the Parties of this Agreement and the consummation of the transactions contemplated hereby require no material action by or in respect of, or material filing with, any Governmental Authority.

Section 4.4  Noncontravention. The execution, delivery and performance by the Parties of this Agreement and the consummation of the transactions contemplated hereby do not and will not violate (a) in the case of the Debtors, CIT, Cross Canyon, and the Permian Entities, the certificate of incorporation, bylaws or other organizational documents of the Debtors, CIT,

5

Cross Canyon, and the Permian Entities, (b) in any material respect any Applicable Law or (c) any material agreement to which any of the Parties is a party.

## ARTICLE 5
## NO WAIVER OF PARTICIPATION AND PRESERVATION OF RIGHTS

Except as expressly provided in this Agreement, nothing herein is intended to, does or shall be deemed in any manner to waive, limit, impair or restrict the ability of any Party to protect and preserve its rights, remedies and interests, including, but not limited to, its Claims against any of the other Parties, any liens or security interests it may have in any assets of any Debtors or its full participation in the Bankruptcy Cases. Without limiting the foregoing sentence in any way, if the transactions contemplated by this Agreement or otherwise set forth in the Plan and the Purchase and Sale Agreement are not consummated as provided herein and therein, if a Termination Event occurs or if this Agreement is otherwise terminated for any reason, each Party fully reserves any and all of its rights, remedies and interests.

## ARTICLE 6
## ACKNOWLEDGEMENT OF THE PARTIES

This Agreement, the Plan, the Purchase and Sale Agreement and the transactions contemplated herein and therein are the product of negotiations between the Parties and their respective Representatives. Each Party hereby acknowledges that this Agreement is not and shall not be deemed to be a solicitation of votes for the acceptance of a chapter 11 plan for the purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise. The Debtors will not solicit acceptances of the Plan from CIT, Cross Canyon, the Permian Entities, Wisenbaker, or any other creditor or shareholder of any Debtor until such creditor or shareholder shall have been provided with a copy of the Disclosure Statement as approved by the Bankruptcy Court.

## ARTICLE 7
## TERMINATION EVENTS

Section 7.1  Termination Events.  This Agreement shall terminate at any time prior to the Closing (as defined in the Purchase and Sale Agreement) on the first to occur of any of the following events (each, a "**Termination Event**"):

(a) the Purchase and Sale Agreement is terminated;

(b) any of the Bankruptcy Cases is converted to a case under chapter 7 of the Bankruptcy Code;

(c) the Bankruptcy Court shall enter an order in any of the Bankruptcy Cases appointing a trustee under chapter 7 or chapter 11 of the Bankruptcy Code or an examiner, in either case with enlarged powers relating to the operation of the business (powers beyond those set forth in subclauses (3) and (4) of section 1106(a) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code;

(d) entry of an order by the Bankruptcy Court denying confirmation of the Plan (other than (i) in a fashion that reasonably leaves open the possibility that the Plan can still

be confirmed and effective prior to December 8, 2010 (the "**Final Deadline**") and (ii) the withdrawal of the Plan pursuant to the Sale Procedures Order);

(e) the Confirmation Order is reversed on appeal or vacated; or

(f) the Effective Date of the Plan does not occur on or prior to the Final Deadline.

# ARTICLE 8
# MISCELLANEOUS TERMS

Section 8.1   Amendments and Waivers.

(a) Any provision of this Agreement may be amended or waived prior to the Closing (as defined in the Purchase and Sale Agreement) if, but only if such amendment or waiver is in writing and is executed by each of the Parties.

(b) No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

Section 8.2   Successors and Assigns.   The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns; provided that no Party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement, in whole or in part, by operation of law or otherwise, without the prior written consent of each other Party hereto.

Section 8.3   Further Assurances.   The Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, from time to time, to effectuate the agreements and understandings of the Parties herein, whether the same occurs before or after the date of this Agreement.

Section 8.4   Headings.   The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

Section 8.5   Governing Law.   THE AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

Section 8.6   Jurisdiction.   Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement or the transactions contemplated by this Agreement exclusively in (a) the Bankruptcy Court so long as the Bankruptcy Cases remain open and (b) after the closing of the Bankruptcy Cases or in the event that the Bankruptcy Court determines that it does not have jurisdiction, the United States District

Court for the Northern District of Texas or any Texas State court sitting in Dallas (together with the Bankruptcy Court, the "**Chosen Courts**"), and solely in connection with claims arising under Transaction Documents or the Transactions (i) irrevocably submits to the exclusive jurisdiction of the Chosen Courts, (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Courts, (iii) waives any objection that the Chosen Courts are an inconvenient forum or do not have jurisdiction over any Party hereto and (iv) agrees that service of process upon such Party in any such action or proceeding shall be effective if notice is given in accordance with Section 8.13.

Section 8.7  WAIVER OF JURY TRIAL.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 8.8  Counterparts; Effectiveness; Third Party Beneficiaries.  This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. This Agreement does not become effective until it has been approved by the Bankruptcy Court and executed by each of the Parties. Notwithstanding the foregoing, unless otherwise agreed to in writing by the Parties, this Agreement will not be effective unless the foregoing conditions to effectiveness are satisfied on or before 30 days after the date of this Agreement. No provision of this Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any Person other than the Parties and their respective successors and assigns and there are no third party beneficiaries of this Agreement.

Section 8.9  Entire Agreement.  This Agreement, the other Transaction Documents and any confidentiality agreement entered into between any of the Parties constitute the entire agreement between the parties with respect to the subject matter hereof and thereof and supersede all prior agreements and understandings, both oral and written, between the parties with respect to the subject matter hereof and thereof.

Section 8.10  Severability.  If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated; and in lieu of each such invalid, void or unenforceable provision there shall be added automatically as part of this Agreement a provision as similar in terms to such invalid, void or unenforceable provision as may be valid, binding and enforceable.

Section 8.11  Specific Performance.  The Parties hereto agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement or to enforce specifically the performance of the terms and provisions hereof in Bankruptcy Court, in addition to any other remedy to which they are entitled at law or in equity.

Section 8.12  Interpretation.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no

presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

Section 8.13 Notices. All notices, requests and other communications to any Party hereunder shall be in writing (including facsimile transmission) and shall be given,

(a) if to Consolidated: Munsch Hardt Kopf & Harr PC, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas, 75201, facsimile: 214-978-4365, Attn: Joe E. Marshall;

(b) if to Standard, to: Rochelle McCullough, LLP, 325 N. Saint Paul Street, Suite 4500, Dallas, Texas, 75201, facsimile: 214-953-0185, Attn: Kevin McCullough;

(c) if to CIT, to: Vinson & Elkins LLP, First City Tower, 1001 Fannin Street, Suite 2500, Houston, TX 77002, facsimile: 713-758-2346, Attn: Harry Perrin;

(d) if to Wisenbaker, to: Lidji Dorey Hooper, 500 N. Akard, Suite 3500, Dallas, Texas, 75201, facsimile: (214) 774-1212 , Attn: Brian Lidji; and

(e) if to Cross Canyon or the Permian Entities, to: Burleson Cooke L.L.P., 711 Louisiana, Suite 1701, Houston, TX 77002, facsimile: 713-358-1717, Attn: Robert Ballentine.

or such other address or facsimile number as such Party may hereafter specify for the purpose by notice to the other Parties hereto. All such notices, requests and other communications shall be deemed received on the date of receipt by the recipient thereof if received prior to 5:00 p.m. in the place of receipt and such day is a Business Day in the place of receipt. Otherwise, any such notice, request or communication shall be deemed not to have been received until the next succeeding Business Day in the place of receipt.

IN WITNESS WHEREOF, the Parties have entered into this Agreement as of the day and year first above written.

**HERITAGE CONSOLIDATED LLC**

By: /s/ Michael Wisenbaker, Jr.
Name: Michael Wisenbaker, Jr.
Title: Managing Member

**HERITAGE STANDARD CORPORATION**

By: /s/ Michael Wisenbaker, Sr.
Name: Michael Wisenbaker, Sr.
Title: President

**CIT CAPITAL USA INC.**

By: _____
Name: _____
Title: _____

**MICHAEL B. WISENBAKER**

By: /s/ Michael B. Wisenbaker
Name: _____
Title: _____

**CROSS CANYON ENERGY CORPORATION**

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the Parties have entered into this Agreement as of the day and year first above written.

### HERITAGE CONSOLIDATED LLC

By: _____
Name: _____
Title: _____

### HERITAGE STANDARD CORPORATION

By: _____
Name: _____
Title: _____

### CIT CAPITAL USA INC.

By: _____/s/_____
Name: _George E. McLean_
Title: _Vice President_

### MICHAEL B. WISENBAKER

By: _____
Name: _____
Title: _____

### CROSS CANYON ENERGY CORP.

By: _____
Name: _____
Title: _____

**PERMIAN ATLANTIS LLC**

By: /s/ Robert P. Munn
Name: Robert P. Munn
Title: President

**PERMIAN PHOENIX LLC**

By: /s/ Robert P. Munn
Name: Robert P. Munn
Title: President