# SALE PROCEDURES

On September ___, 2010, the Debtors, together with CIT Capital USA Inc. ("CIT Capital") and Consolidated's secured lender (the "Lender"), filed their *Joint Plan of Reorganization for the Debtors* [Docket No. __] (as amended, supplemented, and modified, the "Plan"), and the Debtors filed their *Disclosure Statement for the Joint Plan of Reorganization for the Debtors* [Docket No. __] (as amended, supplemented, and modified, the "Disclosure Statement"). Subject to receipt of higher and better offer(s), the Debtors propose to, among other things, effectuate the sale and transfer of assets (the "Sale") under that certain Purchase and Sale Agreement dated as of September 7, 2010 by and among Permian Atlantis LLC ("Permian Atlantis"), Permian Phoenix LLC (together with Permian Atlantis, the "Permian Entities")[1] and the Debtors (the "Purchase and Sale Agreement"). Under the Purchase and Sale Agreement, the Permian Entities agree to serve as the stalking horse bidder with respect to certain assets associated with the Debtors' "Section 6 Assets" and "Non-Section 6 Assets" and to purchase those assets free and clear of any and all liens, claims, rights, interests, and encumbrances except as otherwise provided under the Plan.[2] Under the Purchase and Sale Agreement, the Permian Entities generally agree to assume substantial claims of CIT Capital and the Lender and to satisfy substantial claims of Standard under joint operating agreements. The Sale as contemplated under the Purchase and Sale Agreement and the Plan are subject to higher and better offers as more particularly set forth in these Sale Procedures.

These Sale Procedures have been approved and authorized pursuant to the *Order (A) Approving Sale Procedures and Bid Protections in Connection with Sale of Assets; (B) Approving Form and Manner of Notice of Sale and of Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. __] (the "Sale Procedures Order"), entered by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, on September __, 2010.

## Assets to be Sold

The assets of the Debtors to be sold consist of the "Properties" as defined in Section 2 of the Purchase and Sale Agreement. Except as otherwise provided under the Purchase and Sale Agreement and the Plan, the Transferred Properties shall be sold free and clear of all claims, encumbrances, liens, and interests subject to the Permitted Encumbrances. The Debtors shall consider at the auction bids for the Transferred Properties in a single bid from a single bidder (or from two or more persons acting together pursuant to a non-collusive agreement between or among them).

## Potential Purchasers

In order to qualify as a "Potential Purchaser", a bidder must demonstrate its willingness to bid in accordance with these Sale Procedures and deliver to the Debtors an executed confidentiality agreement in form and substance satisfactory to the Debtors and CIT Capital (the

---

1 The Permian Entities are indirect subsidiaries of Cross Canyon Energy Corporation ("Cross Canyon").

2 The Section 6 Assets and the Non-Section 6 Assets constitute substantially all of Consolidated's assets.

"Confidentiality Agreement"). The Debtors shall disclose the Potential Purchaser's interest and proposal (but not identity) to Cross Canyon and the Permian Entities within eight hours after the Debtors receive a bid.

The Form Purchase and Sale Agreement and Due Diligence

The Debtors shall send to each Potential Purchaser a form Purchase and Sale Agreement to be utilized in placing a bid (the "Form Purchase and Sale Agreement"). The Debtors will provide Potential Purchasers that have delivered to the Debtors an executed Confidentiality Agreement reasonable access to the Debtors' books, records, facilities, consultants and legal counsel for the purpose of conducting due diligence. Any information provided by or on behalf of the Debtors to a Potential Purchaser shall also be provided, at the same time, to CIT Capital, Cross Canyon and the Permian Entities if such information has not already been provided to them. Notwithstanding the foregoing, the Debtors are not required to provide confidential or proprietary information to a competitor if the Debtors reasonably believe that such disclosure would be detrimental to the interests and operation of the Debtors or any of the Debtors' affiliates.

Submission of Bids by Potential Purchasers

Any Potential Purchaser desiring to submit a bid for the Transferred Properties (a "Bid") and to participate in an auction of the Transferred Properties (the "Auction") shall deliver its Bid in writing to Munsch Hardt Kopf & Harr PC, Attn: Joe E. Marshall, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201-6659 and Rochelle McCullough, LLP, Attn.: Kevin McCullough, 325 N. Saint Paul Street, Suite 4500, Dallas, Texas, 75201 such that the Bid is actually received not later than October 29, 2010 at noon, Central time (the "Bid Deadline").

No Bid received at or prior to the Auction shall, under any circumstances, (i) be deemed to be a higher and better bid than the bid of the Permian Entities or (ii) be accepted by the Debtors unless, among other things, such Bid would, if accepted by the Debtors, result in the Debtors receiving aggregate consideration for the Transferred Properties in an amount greater than the Stalking Horse Bid as determined by the Debtors in consultation with CIT Capital and the Committee, plus cash consideration sufficient to cover the Break-Up Fee and any fees and costs of the Debtor's broker, and unless CIT Capital consents in writing, satisfy all of CIT Capital's claims against the Debtors in cash in full on the closing of the Sale (which claims are estimated to be approximately **$18.5 million** as of the date hereof, which includes its pre-petition secured claims and post-petition debtor-in-possession financing claims, plus any and all interests, fees, and costs to which they may be entitled under, among other things, their financing documents and Orders of the Bankruptcy Court).

If any bid includes the assumption and assignment of executory contracts and unexpired leases, then the Potential Purchaser is required to designate the executory contracts and unexpired leases that it expects to request the Debtors to assume and assign to the Potential Purchaser as well as information satisfactorily evidencing the Potential Purchaser's ability to provide adequate assurance of future performance of such contracts or leases (an "Adequate Assurance Package"). All Adequate Assurance Packages must be submitted in writing so that they are received with the Bid.

Determination of Qualified Bids

    To be a "Qualified Bid", it must be a bid that, in the Debtors' discretion:

a.     is in writing;

b.     can be effectuated promptly under the Plan or at a stand-alone sale hearing;

c.     is accompanied by a clean and duly executed version of the proposed asset purchase and sale agreement (the "Bid Purchase and Sale Agreement") and a marked Bid Purchase and Sale Agreement reflecting variations from the Form Purchase and Sale Agreement, subject to the minimum cash overbid requirement, set forth below, and that clearly specifies the amount the Potential Purchaser is willing to pay and that provides for the payment of the Break-Up Fee and Court-approved broker fees as necessary under these Sale Procedures;

d.     is a higher and better offer than the existing bid by the Stalking Horse Bidder, plus the amount of the Break-Up Fee and any approved Court-approved broker's fees;

e.     is accompanied by reasonably satisfactory evidence of committed financing or other ability to perform the transaction and provides an earnest money deposit of $1,000,000 (the "Earnest Money Deposit") in the form of a certified check or wire transfer to the Debtors in care of _____ as escrow agent, such Earnest Money Deposit being refundable within three (3) business days of Closing unless such Potential Purchaser is selected as the Backup Bidder and is required to close;

f.     provides that such bidder's offer is irrevocable until the closing of the purchase of the Transferred Properties if such bidder is the Successful Bidder (as defined below);

g.     provides sufficient indicia that such Potential Purchaser or its representative is legally empowered, by power of attorney or otherwise, and financially capable to (i) bid on behalf of such Potential Purchaser; and (ii) complete and sign, on behalf of such Potential Purchaser, a binding and enforceable purchase and sale agreement; and (iii) agree that the bid will contain no contingencies to the validity, effectiveness, and/or binding nature of the offer including, without limitation, contingencies for financing, due diligence, or inspection;

h.     meets all other requirements of these Sale Procedures; and

i.     unless CIT Capital consents in writing, provides for the satisfaction of all of CIT Capital's claims against the Debtors in cash in full on the closing of the Sale (which claims are estimated to be approximately **$18.5 million** as of the date hereof, which includes its pre-petition secured claims and post-petition debtor-in-possession financing claims, plus any and all interests, fees, and costs to which they may be entitled under, among other things, their financing documents and Orders of the Bankruptcy Court)

Determination of Qualified Bidders

    In order for a Potential Purchaser to qualify as a "Qualified Bidder" and be permitted to bid on the Transferred Properties, such Potential Purchaser must, in the Debtors' discretion:

a. have been deemed "financially qualified" by the Debtors which at a minimum shall require any such Potential Purchaser to (i) provide documentation establishing that such person has sufficient cash on hand or a binding financial commitment from an established and financially sound financial institution to ensure such Potential Purchaser's ability to meet its commitment pursuant to its bid and to close the transaction within the time frame established, and (ii) demonstrate to the Debtors' satisfaction that it has the legal capacity to complete the sale it is proposing and to satisfy the conditions under the Bidder Agreement;

b. have delivered to the Debtors a Qualified Bid; and

c. meet all other requirements of the Sale Procedures.

No Potential Purchaser will be a Qualified Bidder and have its bid considered by the Debtors unless such party has met the above requirements as determined by the Debtors. The Debtors shall promptly notify any Potential Purchaser who is selected as a Qualified Bidder of such selection. The Debtors shall also promptly notify Cross Canyon and the Permian Entities.

The Auction and Selection of the Successful Bid

In the event the Debtors receive one or more timely and conforming Qualified Bids by the Bid Deadline, the Debtors will conduct the Auction with respect to the Transferred Properties at the offices of Munsch Hardt Kopf & Harr PC, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201-6659, or at another location as may be timely disclosed by the Debtors to Qualified Bidders. The Auction shall commence on November 2, 2010 at 9:00 a.m., prevailing Central time (the "Auction Date"). No persons other than representatives of the Debtors, Michael B. Wisenbaker, CIT Capital, Cross Canyon, the Committee (if one is appointed), and each Qualified Bidder (including the Permian Entities) may participate in the Auction

All Qualified Bidders must appear in person at the Auction, or through a duly authorized representative present in person. By making a Qualified Bid at the Auction, a Qualified Bidder shall be deemed to have agreed to keep its final Qualified Bid made at the Auction open until three business days after the entry of an Order confirming the Plan or an Order approving the Sale (as applicable).

The Debtors shall consider Qualified Bids at the Auction in a single bid from a single bidder (or from two or more persons acting together pursuant to a non-collusive agreement between them). If multiple Qualified Bids satisfying all Auction requirements are received, each party shall have the right to continue to improve its bid at the Auction and all Qualified Bidders shall be present in a single room for an open auction at which each Qualified Bidder is allowed to hear all bids from all other Qualified Bidders.

With respect to each round of bidding at the Auction following the initial bid, each successive bid must be at least $50,000 in cash or other ascertainable value in excess of the aggregate consideration contained in the then highest standing Qualified Bid. Any bid by CIT Capital, Cross Canyon, or the Permian Entities shall include the amount of the Break-Up Fee and Court-approved broker's fees as a component of any subsequent Qualified Bid submitted by CIT Capital, Cross Canyon, or the Permian Entities. For example, if at the Auction, a subsequent Qualified Bid submitted by CIT Capital, Cross Canyon, or the Permian Entities is the Successful

Bid, then the consideration that must be provided by CIT Capital, Cross Canyon, or the Permian Entities pursuant to such Successful Bid shall be reduced by the amount of the Break-Up Fee.

The Auction shall conclude as determined by the Debtors after consultation with CIT Capital. At the conclusion of the Auction, and subject to Court approval following the Auction, the highest standing Qualified Bid as determined by the Debtors after consultation with CIT Capital shall be selected by the Debtors (the "Successful Bid").

Unless otherwise agreed to by the Sellers, within one day after the conclusion of the Auction, the entity that made the Successful Bid or the entities that together (non-collusively) made the Successful Bid (the "Successful Bidder") shall complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which such Qualified Bid was made. Within forty-eight hours after the conclusion of the Auction, the Successful Bidder shall provide updated financial information showing its ability to close and shall update and provide such additional financial information as required by the Debtors.

Break-Up Fee

A Break-Up Fee in the amount of $800,000 with an expense reimbursement of no more than $400,000, shall be payable to the Permian Entities. The Break-Up Fee shall be a joint and several obligation of the Debtors, shall be paid when due, and shall be payable as an allowed administrative expense pursuant to Bankruptcy Code §§ 503(b) and 507(a)(2). The Break-Up Fee shall be payable in cash, on the date of consummation of the Sale or one business day thereafter from the sale proceeds thereof or otherwise from the Debtors' cash balances in accordance with the Purchase and Sale Agreement and the Sale Procedures Order. The Break-Up Fee shall be paid without need for any further motion, application, notice, approval or order of the Court

Objections

Objections to the additional relief requested by the Sale Procedures Motion shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position and shall be filed with the Court on or before the date to be set forth in a subsequent notice and Order of the Court. Such objection shall be served so as to be received by that same date and time on (a) counsel for Heritage Consolidated: Munsch Hardt Kopf & Harr PC, Attn.: Joe E. Marshall, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas, 75201-6659, (fax) 214.978.4365; (b) counsel for Heritage Standard: Rochelle McCullough, LLP, Attn.: Kevin McCullough, 325 N. Saint Paul Street, Suite 4500, Dallas, Texas, 75201, (fax) 214.953.0185; (c) counsel for CIT Capital: Vinson & Elkins LLP, Attn.: Richard H. London, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas, 75201, (fax) 214.999.7823; (d) the United States Trustee's Office at Office of the United States Trustee, Attn: George McElreath, 1100 Commerce Street, Room 9-C-60, Dallas, Texas, 75242, (fax) 214.767.6530.

Court Approval

An evidentiary hearing to consider confirmation of the Plan (the "Confirmation Hearing") or approval of the Sale (the "Sale Hearing") (as appropriate) will be held before the

Honorable Harlin D. Hale, United States Bankruptcy Judge, on the date set by further order of the Bankruptcy Court. Upon entry of an order of the Bankruptcy Court setting the date of the Confirmation Hearing or Sale Hearing, the Debtors will serve notice of the same on the parties that received notice of these Sale Procedures. The Confirmation Hearing or Sale Hearing (as appropriate) may be adjourned or rescheduled as ordered by the Bankruptcy Court or by the Debtors with the approval of the Successful Bidder and CIT Capital but without further notice to creditors and parties in interest other than by announcement by Debtors of the adjourned date at the Confirmation Hearing or Sale Hearing (as appropriate).

The Debtors' presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute the Debtors' acceptance of the Bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

Closing

The closing of the sale of the Transferred Properties shall occur no later than fifteen days after the Court enters an Order confirming the Plan or approving the Sale (as applicable) (the "Final Closing Deadline").

Failure to Consummate Purchase

If the Successful Bidder other than the Purchaser fails to consummate the purchase of the Transferred Assets, and such failure to consummate the purchase is the result of a breach by such Successful Bidder, the Earnest Money Deposit of such Successful Bidder shall be forfeited to the Debtors.

Back-Up Bidders

If the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid at the Auction (the "Back-Up Bidder") will be deemed to be the Successful Bidder and the Debtors will be authorized to consummate the Sale with such Auction Participant without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid; provided that upon being notified that its Qualified Bid has become the Successful Bid, the Qualified Bidder submitting such Qualified Bid shall within three business days after such notification provide an Earnest Money Deposit (unless such Qualified Bidder previously shall have provided an Earnest Money Deposit that shall not have been returned as described below) and, upon providing such Earnest Money Deposit such Qualified Bidder shall be deemed the Successful Bidder. If any Qualified Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such Qualified Bidder (including without limitation the failure to timely deposit the Earnest Money Deposit), the process described above may continue as determined by Debtors until a Qualified Bidder shall consummate the Sale.

Return of Earnest Money Deposit

The Earnest Money Deposit of all Qualified Bidders (other than the Successful Bidder) will be returned, without interest (other than any earnings on any such amounts under, and

subject to, the terms of the escrow agreement pursuant to which such Earnest Money Deposit is held), to each such Qualified Bidder within ten business days after the entry of an Order confirming the Plan or approving the Sale (as applicable), subject to the terms of the escrow agreement pursuant to which such Earnest Money Deposit is held.

The Earnest Money Deposit of the Successful Bidder will be distributed pursuant to and in accordance with its purchase and sale agreement and/or the escrow agreement pursuant to which such Earnest Money Deposit is held.

CIT Capital Credit Bid

Cross Canyon, the Permian Entities, and CIT Capital shall be deemed to be Qualified Bidders for all purposes, and the Purchase and Sale Agreement shall be deemed to be Qualified Bids (without the need to post a deposit) for all purposes. CIT Capital's right to credit bid the full amount of its claim at the Auction (without the need to post a deposit) shall be preserved.

Alternative Transaction and Consummation of Back-Up Purchase and Sale Agreement

The Debtors may (a) adjourn the Confirmation Hearing if they determine that the Successful Bidder provides for the consummation of the Sale through a Sale Hearing (on the terms set forth in the Sale Procedures), (b) proceed with the Sale Hearing, and (c) withdraw the Plan upon the closing of the Sale. At the Confirmation Hearing or Sale Hearing (as applicable), the Court will consider approval of the Back-Up Purchase and Sale Agreement which, at the election of CIT Capital, may be effectuated without further Order of the Court as (a) a primary transaction in the event that the Sale is denied or the Sale is not approved on or before December 13, 2010; or (b) a back-up or secondary transaction under the "Back-Up Bidders" section of the Sale Procedures in the event that the Sale is approved but does not close on or before December 23, 2010. Any such approval of the Back-Up Purchase and Sale Agreement shall be reflected in the Order approving the Sale. If the Confirmation Hearing or Sale Hearing (as applicable) is not held (and the Back-Up Purchase and Sale Agreement is not approved) on or before December 13, 2010, at the election of CIT Capital, the Debtors shall seek an emergency setting to consider approval of the Back-Up Purchase and Sale Agreement.