| | |
|---|---|
| Joe E. Marshall<br>Texas Bar No. 13031100<br>Kathleen M. Patrick<br>Texas Bar No. 24037243<br>Lee J. Pannier<br>Texas Bar No. 24066705<br>**MUNSCH HARDT KOPF & HARR, P.C.**<br>3800 Lincoln Plaza<br>500 North Akard Street<br>Dallas, Texas 75201-6659<br>Telephone: (214) 855-7500<br>Facsimile: (214) 978-4365<br>jmarshall@munsch.com<br>kpatrick@munsch.com<br>lpannier@munsch.com<br><br>**(PROPOSED) COUNSEL FOR HERITAGE CONSOLIDATED, LLC,**<br>**DEBTOR AND DEBTOR IN POSSESSION** | Kevin McCullough<br>Texas Bar No. 00788005<br>Kerry Ann Miller<br>Texas Bar No. 24050875<br>**ROCHELLE McCULLOUGH LLP**<br>325 N. St. Paul, Suite 4500<br>Dallas, Texas 75201<br>Telephone: (214) 953-0182<br>Facsimile: (214) 953-0185<br>kdm@romclawyers.com<br>kmiller@romclawyers.com<br><br><br><br><br>**(PROPOSED) COUNSEL FOR HERITAGE STANDARD CORPORATION,**<br>**DEBTOR AND DEBTOR IN POSSESSION** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HERITAGE CONSOLIDATED, LLC; | § | Case No. 10-36484-HDH |
| HERITAGE STANDARD | § | |
| CORPORATION, | § | Case No. 10-36485-HDH |
| | § | |
| Debtors. | § | Chapter 11 |
| | § | |
| | § | (Joint Administration Requested) |
| | § | |

**DEBTORS' EMERGENCY MOTION FOR ORDER (A) AUTHORIZING**
**INTERIM AND FINAL USE OF CASH COLLATERAL; AND**
**(B) GRANTING ADEQUATE PROTECTION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Heritage Consolidated, LLC ("Consolidated") and Heritage Standard Corporation ("HSC" and together with Consolidated, the "Debtors"), the debtors and debtors-in-possession in the above-captioned bankruptcy cases, file their *Emergency Motion (A) Authorizing Interim and Final Use of Cash Collateral; and (B) Granting Adequate Protection* (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

# I. SUMMARY OF RELIEF REQUESTED

1. By and through the Motion, the Debtors request (a) interim authority to use the cash collateral ("Cash Collateral") of the Prepetition Lenders (as defined herein), Trade Lienholders (as defined herein) and HSC in accordance with the terms and conditions set forth herein, the proposed budget (the "Interim Budget") and the proposed Order (the "Interim Order"); (b) authority to use Cash Collateral on a final basis; and (c) the grant of adequate protection to the Prepetition Lenders and the Trade Lienholders pursuant to Sections 361 and 363 of the Bankruptcy Code. **The relief requested herein, and the Interim Order and Interim Budget filed in connection herewith, has been consented to by the Prepetition Lenders and the proposed DIP Lender.**

2. Pursuant to Rule 4001(b)(1)(B) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors provide the following summary of the key aspects of the relief sought:

   (a) Name of Each Entity with an Interest in Cash Collateral:

       (i) CIT Bank ("CIT"), CIT Capital USA Inc. ("CIT Capital"), as administrative agent, and other lenders from time to time thereto (together, with CIT, the "Prepetition Lenders") under the Credit Agreement with Consolidated dated October 30, 3008 (as amended, the "CIT Credit Agreement");

       (ii) Various vendors (including drilling contractors, labor and repair contractors, parts and equipment supplies, pipeline companies and lessors)("Trade Lienholders") which have properly and timely asserted statutory liens against certain leaseholds and related property and equipment as a result of providing goods and services to the Debtors in the ordinary course of business (the "Trade Liens"); and

       (iii) HSC, as the operator under various operating agreements, for unpaid joint interest billings ("JIBs") arising out of or related to HSC's operations on behalf of Consolidated and other working interest owners in the Debtors' oil and gas properties.

(b) <u>Purposes for the Use of Cash Collateral</u>: The Debtors propose to use Cash Collateral, pursuant to the Interim Budget, to pay the following types of expenses incurred by the Debtors during the pendency of the Bankruptcy Cases:

(i) Expenses incurred in the reorganization and restructuring of the Debtors and their operations for the preservation of value in the Debtors' assets that serve as collateral for amounts owing to the Prepetition Lenders, Trade Lienholders and HSC in relation to their prepetition claims and existing security interests and liens (all such collateral, including Cash Collateral, and the income, proceeds, products, rents or profits thereof referred to herein as the "<u>Prepetition Collateral</u>");

(ii) Expenses incurred in the reorganization and restructuring of the Debtors and their operations for the preservation of value in any of the Debtors' assets in which the Prepetition Lenders, Trade Lienholders and HSC do not hold validly-existing security interests or liens, or in relation to which such security interests or liens are avoided (the "<u>Unencumbered Assets</u>"); and

(iii) Expenses of case administration, including, without limitation, overhead incurred during the course of the Bankruptcy Cases (including, without limitation, labor and benefits, rent, utilities and other ordinary course operating expenses), fees and expenses (subject to court approval) incurred by professionals employed by the Debtors, and all statutory fees assessed by or payable to the U.S. Trustee or the Court (collectively, "<u>Case Administration Expenses</u>").

(c) <u>Material Terms</u>. The Debtors' proposed initial 13-week budget for the use of Cash Collateral (the "<u>Interim Budget</u>") is attached hereto as **Exhibit "A"** and incorporated herein for all intents and purposes. Subject to allowable variances during the 13-week period (the "<u>Usage Period</u>") of ten percent (10%) on a monthly basis category, the Debtors propose to restrict use of Cash Collateral to the items set forth in the Interim Budget. Authority to use Cash Collateral will terminate upon the earliest of the following (a "<u>Termination Event</u>"):

(i) the end of the Usage Period (unless extended by separate order in connection with the submission of a supplemental budget for the extension period);

(ii) the Court's entry of an order finding a violation of, or a default under, the Court's order authorizing use of Cash Collateral and/or the DIP Orders;

(iii) the Court's entry of an order converting the Bankruptcy Cases to proceedings under Chapter 7 of the Bankruptcy Code; and

(iv) the Court's entry of an order dismissing the Bankruptcy Cases.

(d) <u>Adequate Protection</u>. The Debtors propose to provide the following forms of adequate protection to the Prepetition Lenders:

(i) *Reporting*: During the Usage Period and until a Termination Event, Debtors will provide weekly reports to the Prepetition Lenders, executed by the Debtors' Chief Restructuring Officer, which set out a reconciliation of actual Cash Collateral usage during the foregoing week in comparison to the Interim Budget and certify compliance with the Interim Budget (subject to allowable variances);

(ii) *Segregation*: Debtors will segregate Cash Collateral from all other unencumbered funds, if any, and ensure that all post-petition collections generated from the Prepetition Collateral likewise be segregated as Cash Collateral for use in the Debtors' operations pursuant to the Interim Budget; and

(iii) *Maintenance*: Debtors will maintain adequate insurance coverage and operational production in relation to the Prepetition Collateral and timely pay all post-petition taxes assessed and royalties due in relation to the Prepetition Collateral in the ordinary course of the Debtors' businesses, thereby keeping the properties free of liens and therefore ready to be assigned.

## II. JURISDICTION AND PROCEDURAL BACKGROUND

3. On September 14, 2010 (the "<u>Petition Date</u>"), the Debtors filed their respective voluntary petitions for relief under Chapter 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "<u>Bankruptcy Code</u>"), thereby initiating the above-captioned cases with this Court (the "<u>Bankruptcy Cases</u>").

4. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating and managing their business and properties as debtors-in-possession. No trustee or examiner has been appointed in the Bankruptcy Cases and no committees have yet been appointed or designated.

5. This Court has jurisdiction over the Bankruptcy Cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion involves a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory and legal predicates for the relief requested herein are sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 6004, and Northern District of Texas Local Bankruptcy Rule 9007 (the "Local Rules").

### III. STATEMENT OF FACTS

**A. The Debtors and their Operations**

7. The Debtors are privately-held companies that operate in the oil and gas industry. The Debtors' core operations consist of exploration for, and acquisition, production, and sale of, crude oil and natural gas. Consolidated is a Texas limited liability company that owns the majority of the oil and gas wells, leasehold interests, and mineral interests that allow the Debtors to conduct their oil and gas operations. Specifically, Consolidated, among other things: (i) acquires and owns the pertinent oil and gas leases; (ii) participates in drilling and completing oil and gas wells on the properties covered by those leases; (iii) markets and sells oil, gas, and other hydrocarbons from those wells; and (iv) acquires and owns other oil and gas properties such as mineral interests and development and production rights. HSC, a Texas corporation, is an exploration and production company that develops oil and gas prospects and operates wells for Consolidated and other working interest owners; it is also a lessee under certain oil and gas leases.

8. The Debtors focus their development efforts primarily on the Permian Basin in west Texas and southeastern New Mexico (the "Target Area"). The Debtors and their predecessors have been exploring and developing the Target Area since 1984.

9. As part of conducting their business, the Debtors are lessees under, or assignees of, oil and gas leases and are parties to certain operating agreements, farmout agreements, joint venture agreements, gas marketing agreements, gas transportation agreements, and other agreements.

**B.     Events Leading to the Chapter 11 Filing**

10. In August, 2009, HSC began operations on that certain oil and gas well in Winkler County, Texas, known as the Pat Howell well (the "Pat Howell Well"). The Pat Howell Well is located in the Permian Basin which has proven reserves of approximately 16.9 billion cubic feet ("bcf") of natural gas in the Atoka formation. Over the course of ten months, HSC conducted operations to re-enter the existing wellbore for the Pat Howell Well and then complete operations to the Atoka formation. Due to a series of operational mistakes and difficulties with the wellbore, the Pat Howell Well has not been completed and placed online and approximately $11.6 million in contractor and service debt has been accumulated as a result thereof. Most, if not all, of the problems encountered in these operations were the result of contractor negligence, which is now the subject of lawsuits initiated by HSC and pending in various Texas state courts. The significant debt incurred in connection with the operations on the Pat Howell Well, coupled with the lack of anticipated production therefrom, has negatively impacted the ability of the Debtors to meet their ongoing obligations to the trade creditors and their lenders. As a result, the Debtors determined that it was in the best interest of creditors to initiate the Bankruptcy Cases in order to protect and preserve their assets and while they implemented a plan of reorganization that facilitated the completion of the Pat Howell operations for the benefit of creditors. The proposed use of cash collateral contemplated by this Motion and the Interim Budget will help facilitate the reorganization and ultimate completion of the Pat Howell Well. The Debtors also

intend to utilize the recoveries from the pending suits involving the Pat Howell Well in their reorganization to satisfy all legitimate claims against their estates.

**C.    Secured Debt**

11.    Consolidated is the borrower under that certain Credit Agreement, dated October 30, 2008 (as amended from time to time, the "CIT Credit Agreement"), among Consolidated, CIT Bank ("CIT"), CIT Capital USA Inc. ("CIT Capital"), as administrative agent, and other lenders from time to time thereto (together, with CIT, the "Prepetition Lenders"). The CIT Credit Agreement, is a $30,000,000 revolving credit facility with an initial borrowing base limit of $18,000,000 (the "CIT Facility"). The CIT Facility was intended to provide working capital for the Debtors' exploration and production operations. The aggregate principal and interest amount of the advances currently outstanding under the CIT Credit Agreement is approximately $18.5 million.

12.    The Prepetition Lenders allege that Consolidated's obligations under the CIT Credit Agreement are secured by a first lien on substantially all of Consolidated's oil and gas assets, and that the proceeds, products and offspring of the Prepetition Collateral constitute the Prepetition Lenders' cash collateral. The Debtors acknowledge the validity and enforceability of the Prepetition Lenders' liens and security interests, however, the priority of such liens has been the subject of dispute.

**D.    Trade Lienholders**

13.    In the ordinary course of business, the Debtors use a variety of vendors, including labor and repair contractors, drilling contractors, parts and equipment suppliers, pipeline companies, heavy machinery and equipment lessors, hydrocarbon transporters, laborers and

professionals. As of the Petition Date, unsecured claims total approximately $17 million, which amount excludes deficiency claims under the CIT Credit Agreement, if any.

14. Certain of those trade creditors, which comprise the group of Trade Lienholders, allege that they hold the Trade Liens against certain leaseholds and related property and equipment as a result of providing goods and services to the Debtors.

### IV. BASIS FOR RELIEF REQUESTED

**A. The Debtors have an Immediate Need to Use Cash Collateral**

15. Bankruptcy Code Section 363(c) provides, in relevant part:

> (c) (1) If the business of the debtor is authorized to be operated under section 721, 1108, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale and lease of property of the estate in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or hearing.
>
> (2) The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless –
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

11 U.S.C. § 363(c)(1) & (2).

16. The Debtors have an immediate need to use Cash Collateral, including cash proceeds, to continue to operate their businesses. Without those funds, the Debtors will not be able to make cash expenditures for necessary costs incurred during their reorganization, including, maintenance and workover expenses, lease operating expenses, wages, salaries, rent, professional fees and other that arise in the administration of the Bankruptcy Cases and in the ordinary course of the Debtors' businesses. The Debtors have no source of unencumbered cash with which to operate their businesses.

17. If the Debtors are unable to use Cash Collateral, the Debtors will be forced to immediately cease business operations, which will negatively impact the value of their assets and eliminate the prospects of unsecured creditors receiving a distribution on account of their claims. The Debtors further believe that a shutdown of the Debtors' operations will result in a severe reduction in the value of the Prepetition Collateral securing Consolidated's obligations under the CIT Credit Agreement and the value of the Trade Liens.

18. The Debtors request interim authority to use Cash Collateral as set forth in the Interim Budget pending final hearing on the Motion and the Court's entry of a final order authorizing the Debtors' use of Cash Collateral. The Debtors do not have sufficient funds, other than Cash Collateral, to operate for fourteen or more days until a final hearing on the Motion can be held, and their inability to timely pay their costs and expenses as set forth herein will result in immediate and irreparable harm to their estates. Because the Debtors' request for interim authority seeks the use of only that amount of Cash Collateral necessary to avoid immediate and irreparable harm to the value of their assets pending a final hearing, the request contained herein complies with Bankruptcy Rules 4001(b)(2) and 6003.

19. The Interim Budget itemizes the sources and uses of cash and provides a weekly projection of cash receipts and expenditures. The Interim Budget provides a list of reasonable and necessary business expenses that must be paid in order to continue the Debtors' business until a final hearing on the Motion can be held. The Debtors request authority to apply any unused Interim Budget amounts from one line item to another line-item for that week or future weeks.

20. The terms and conditions of the Interim Budget and the proposed Interim Order are fair and reasonable, and reflect the exercise of the Debtors' prudent business judgment consistent with the fiduciary duties of a debtor-in-possession.

**B. Adequate Protection of Lenders' Interest in Cash Collateral**

21. Section 363(e) provides that "on request of an entity that has an interest in property used, sold, or leased…by the trustee, the court, with or without hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The provision of adequate protection is not subject to a debtor's discretion, and is geared to ensure that a secured party's economic position is not worsened because of the filing of a bankruptcy case *See In re Heaton, Inc.*, 6 B.R. 493, 494 (Bankr. W.D. Mo. 1980); *see also In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006). Although the Bankruptcy Code does not provide an all-encompassing definition of what will constitute adequate protection, section 361 provides a non-exhaustive list of factors that may constitute adequate protection, including granting a creditor replacement liens to the extent of diminution in the value of their security interest. 11 U.S.C. § 361; *see In re First Douth Sav. Ass'n.,* 820 F.2d 700, 710 (5th Cir. 1987). A determination of adequate protection is decided on a case by case basis, and involves a consideration of the "nature of the creditor's interest in the property, the potential harm to the creditor as a result of the property's decline in value of the method of protection." *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986).

22. The Debtors propose to adequately protect the interest of all secured creditors, including the Prepetition Lenders, Trade Lienholders and HSC, in the Cash Collateral in several different ways. First, the Debtors will segregate Cash Collateral from all other funds and ensure that all post-petition collections generated from the Prepetition Collateral likewise are segregated

as Cash Collateral and utilized only for the normal and necessary costs of business and administration of the bankruptcy estates pursuant to the Interim Order.

23. Second, Debtors will maintain adequate insurance coverage and operational production in relation to the Prepetition Collateral and timely pay all post-petition taxes assessed and royalties due in relation to the Prepetition Collateral in the ordinary course of the Debtors' businesses, thereby keeping the properties free of liens and therefore ready to be assigned.

24. Third, the Debtors propose to grant the Prepetition Lenders replacement liens in their respective Prepetition Collateral as set forth herein and in the Interim Order as well as the Trade Lienholders to the extent of they hold any valid prepetition liens. Subject to any prior perfected and unavoidable liens and security interests and to the extent of any decrease in the value of the Prepetition Lenders' and Trade Lienholders' respective interests as a result of the Debtors' use of Cash Collateral, the Debtors propose to grant the Prepetition Lenders and Trade Lienholders replacement liens upon (a) all assets in which the Prepetition Lenders and Trade Lienholders hold a validly perfected lien as of the Petition Date; (b) all property acquired after the Petition Date that is of the exact nature, kind or character of the Prepetition Collateral; and (c) all cash and receivables that are the proceeds, products, offspring or profits of the Prepetition Collateral. The Debtors do not propose to grant either the Prepetition Lenders or the Trade Lienholders liens in avoidance actions under chapter 5 of the Bankruptcy Code. The Debtors anticipate that those replacement liens will adequately protect the Prepetition Lenders and Trade Lienholders from any diminution in the value of their interest in their collateral resulting from the use of Cash Collateral.

25. Furthermore, the Debtors will provide the Prepetition Lenders with accurate and detailed information relating to projected revenues and expenses, actual revenues and expenses

and variances from the Interim Budget, which will enable the Prepetition Lenders to monitor the use of the Prepetition Collateral and Cash Collateral. Provision of financial reports can constitute a valid form of adequate protection. *See, e.g., Mutual Benefit Life Ins. Co. v. Stanley Station Assocs., L.P. (In re Stanley Station Assocs., L.P.)*, 140 B.R. 806, 809 (D. Kan. 1992)("In addition, we believe that the request…'for timely filing of proper operating reports…' falls within the ambit of adequate protection….").

**WHEREFORE, PREMISES CONSIDERED,** Debtors respectfully request that this Court enter an order (i) authorizing, on an interim and final basis, the Debtors' use of Cash Collateral in accordance with the Proposed Interim Order and attached Interim Budget; (ii) granting adequate protection to the Prepetition Lenders and the Trade Lienholders as more particularly set forth herein; and (iv) providing Debtors with such other and further relief to which they may show themselves to be justly and equitably entitled.

Dated: September 15, 2010　　　　　　　Respectfully Submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By:　/s/ Joe E. Marshall
　　Joe E. Marshall
　　Texas Bar No. 13031100
　　Kathleen M. Patrick
　　Texas Bar No. 24037243
　　Lee J. Pannier
　　Texas Bar No. 24066705
　　3800 Lincoln Plaza
　　500 North Akard Street
　　Dallas, Texas 75201-6659
　　Telephone: (214) 855-7500
　　Facsimile: (214) 978-4365
　　jmarshall@munsch.com
　　kpatrick@munsch.com
　　lpannier@munsch.com

(PROPOSED) COUNSEL FOR HERITAGE
CONSOLIDATED, LLC,
DEBTOR AND DEBTOR IN POSSESSION
-and-

**ROCHELLE McCULLOUGH LLP**

By:　/s/ Kevin D. McCullough
　　Kevin D. McCullough
　　Texas Bar No. 00788005
　　Kerry Ann Miller
　　Texas Bar No. 24050875
　　**ROCHELLE McCULLOUGH LLP**
　　325 N. St. Paul, Suite 4500
　　Dallas, Texas 75201
　　Telephone: (214) 953-0182
　　Facsimile: (214) 953-0185
　　kdm@romclawyers.com
　　kmiller@romclawyers.com

(PROPOSED) COUNSEL FOR HERITAGE
STANDARD CORPORATION,
DEBTOR AND DEBTOR IN POSSESSION

## CERTIFICATE OF CONFERENCE

I certify that I have contacted the U.S. Trustee, the Prepetition Lenders and the proposed DIP Lender concerning the relief sought herein. I have also provided these parties with a copy of the Motion and proposed Interim Order. The Debtors will conduct ongoing discussions regarding the requested relief with these parties and any other affected party.

       /s/ Kevin D. McCullough
       Kevin McCullough