| | |
|---|---|
| Joe E. Marshall<br>Texas Bar No. 13031100<br>Kathleen M. Patrick<br>Texas Bar No. 24037243<br>Lee J. Pannier<br>Texas Bar No. 24066705<br>**MUNSCH HARDT KOPF & HARR, P.C.**<br>3800 Lincoln Plaza<br>500 North Akard Street<br>Dallas, Texas 75201-6659<br>Telephone: (214) 855-7500<br>Facsimile: (214) 978-4365<br>jmarshall@munsch.com<br>kpatrick@munsch.com<br>lpannier@munsch.com | Kevin D. McCullough<br>Texas Bar No. 00788005<br>Kerry Ann Miller<br>Texas Bar No. 24050875<br>**ROCHELLE McCULLOUGH LLP**<br>325 N. St. Paul, Suite 4500<br>Dallas, Texas 75201<br>Telephone: (214) 953-0182<br>Facsimile: (214) 953-0185<br>kdm@romclawyers.com<br>kmiller@romclawyers.com |
| **(PROPOSED) COUNSEL FOR HERITAGE CONSOLIDATED, LLC,<br>DEBTOR AND DEBTOR IN POSSESSION** | **(PROPOSED) COUNSEL FOR HERITAGE STANDARD CORPORATION,<br>DEBTOR AND DEBTOR IN POSSESSION** |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HERITAGE CONSOLIDATED, LLC; | § | Case No. 10-36484-HDH |
| HERITAGE STANDARD | § | |
| CORPORATION, | § | Case No. 10-36485-HDH |
| | § | |
| Debtors. | § | Chapter 11 |
| | § | |
| | § | (Joint Administration Requested) |
| | § | |

**DEBTORS' APPLICATION FOR AUTHORITY TO: (A) EMPLOY BRIDGE ASSOCIATES, LLC AS FINANCIAL ADVISORS AND TO PROVIDE INTERIM MANAGEMENT ASSISTANCE; AND (B) DESIGNATE SCOTT PINSONNAULT AS INTERIM CHIEF RESTRUCTURING OFFICER**

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

Heritage Consolidated, LLC ("Consolidated") and Heritage Standard Corporation ("HSC" and together with Consolidated, the "Debtors"), the debtors and debtors-in-possession in the above-captioned bankruptcy cases, file their *Application For Authority to: (A) Employ Bridge*

*Associates, LLC as Financial Advisors and to Provide Interim Management Assistance; and (B) Designate Scott Pinsonnault as Interim Chief Restructuring Officer* (the "Application"). In support of the Application, the Debtors respectfully state as follows:

## I. JURISDICTION AND PROCEDURAL BACKGROUND

1. On September 14, 2010 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under Chapter 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), thereby initiating the above-captioned cases with this Court (the "Bankruptcy Cases").

2. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating and managing their business and properties as debtors-in-possession. No trustee or examiner has been appointed in the Bankruptcy Cases and no committees have yet been appointed or designated.

3. This Court has jurisdiction over the Bankruptcy Cases and this Application pursuant to 28 U.S.C. §§ 157 and 1334. This Application involves a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for the relief sought herein is sections 105(a) and 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. STATEMENT OF FACTS

5. The Debtors are privately-held companies that operate in the oil and gas industry. The Debtors' core operations consist of exploration for, and acquisition, production, and sale of, crude oil and natural gas. Consolidated is a Texas limited liability company that owns the

majority of the oil and gas wells, leasehold interests, and mineral interests that allow the Debtors to conduct their oil and gas operations. Specifically, Consolidated, among other things: (i) acquires and owns the pertinent oil and gas leases; (ii) participates in drilling and completing oil and gas wells on the properties covered by those leases; (iii) markets and sells oil, gas, and other hydrocarbons from those wells; and (iv) acquires and owns other oil and gas properties such as mineral interests and development and production rights. HSC, a Texas corporation, is an exploration and production company that develops oil and gas prospects and operates wells for Consolidated and other working interest owners; it is also a lessee under certain oil and gas leases.

6. The Debtors focus their development efforts primarily on the Permian Basis in west Texas and southeastern New Mexico (the "Target Area"). The Debtors and their predecessors have been exploring and developing the Target Area since 1984.

7. As part of conducting their business, the Debtors are lessees under, or assignees of, oil and gas leases and are parties to certain operating agreements, farmout agreements, joint venture agreements, gas marketing agreements, gas transportation agreements, and other agreements.

B.  Events Leading to the Chapter 11 Filing

8. In August, 2009, HSC began operations on that certain oil and gas well in Winkler County, Texas, known as the Pat Howell well (the "Pat Howell Well"). The Pat Howell Well is located in the Permian Basin, which has proven reserves of approximately 16.9 billion cubic feet ("bcf") of natural gas in the Atoka formation. Over the course of ten (10) months, HSC conducted operations to re-enter the existing wellbore for the Pat Howell Well and then complete operations to the Atoka formation. Due to a series of operational mistakes and

**DEBTORS' APPLICATION FOR AUTHORITY TO: (A) EMPLOY BRIDGE ASSOCIATES, LLC AS FINANCIAL ADVISORS AND TO PROVIDE INTERIM MANAGEMENT ASSISTANCE; AND (B) DESIGNATE SCOTT PINSONNAULT AS INTERIM CHIEF RESTRUCTURING OFFICER– Page 3**

difficulties with the wellbore, the Pat Howell Well has not been completed and placed on online and approximately $11.6 million in contractor and service debt has been accumulated as a result thereof. Most, if not all, of the problems encountered in these operations were the result of contractor negligence, which is now the subject of lawsuits initiated by HSC and pending in various Texas state courts.

9. The Debtors' businesses depend heavily on the availability of capital and liquidity. The significant debt incurred in connection with the operations on the Pat Howell Well, coupled with the lack of anticipated production therefrom, has negatively impacted the ability of the Debtors to meet their ongoing obligations to trade creditors and their lenders, including but not limited to Consolidated's senior secured lender, CIT Capital USA, Inc. ("CIT Capital"). The Debtors have worked with CIT Capital and negotiated a plan of reorganization that provides for the funding of the Pat Howell Well and the sale of all assets in an attempt to maximize the return to all creditors and the estate. The Debtors and CIT are simultaneously seeking approval of that sale process in conjunction with the plan and disclosure process.

10. The Debtors believe that the filing of the Bankruptcy Cases and the expedited confirmation of the Plan are the Debtors' best option to preserve and maximize their assets, including the going concern value of their businesses and the value of the Debtors' estimated unproven reserves.

### III. RELIEF REQUESTED

11. By and through this Application, the Debtors seek to employ Bridge Associates, LLC ("Bridge") as their financial advisors and to provide interim management assistance in the Bankruptcy Cases. The Debtors further seek to designate Scott Pinsonnault as the Debtors' Interim Chief Restructuring Officer (the "CRO") during the pendency of the Bankruptcy Cases.

**DEBTORS' APPLICATION FOR AUTHORITY TO: (A) EMPLOY BRIDGE ASSOCIATES, LLC AS FINANCIAL ADVISORS AND TO PROVIDE INTERIM MANAGEMENT ASSISTANCE; AND (B) DESIGNATE SCOTT PINSONNAULT AS INTERIM CHIEF RESTRUCTURING OFFICER– Page 4**

MHDocs 28839036_3 11672.2

12. The Debtors are familiar with the professional standing and reputation of Bridge. The Debtors understand that Bridge has a wealth of experience in providing financial advisory services in restructurings and reorganizations and has an excellent reputation for services rendered on behalf of the debtors and creditors in large and complex chapter 11 cases throughout the United States.

13. The Debtors believe the services of Bridge are necessary to enable the Debtors to maximize the value of their estates and to successfully reorganize. Further, Bridge is well qualified and able to represent the Debtors in a cost-effective, efficient and timely manner.

## IV. SCOPE AND TERMS OF RETENTION OF THE CRO

14. Pursuant to Section 327 of the Bankruptcy Code, the Debtors seek authority to engage Scott Pinsonnault as the CRO to manage the Debtors' day-to-day operations and restructuring efforts, including negotiating with parties in interest and coordinating the "working group" of the Debtors' employees and external professionals who are assisting the Debtors in their restructuring. The terms of such employment and retention of the CRO are set forth in the Engagement Letter (the "Engagement Letter") attached as Exhibit "A" to the *Declaration of Scott Pinsonnault* ("Pinsonnault Declaration"), which was filed concurrently with the Application.

15. The CRO will have direct control over all of the Debtors' employees. Furthermore, the CRO will have direct control over Bridge employees who are providing management assistance (the "Engagement Staff"). The CRO and the Engagement Staff will also be responsible, along with Debtors' counsel, for communicating with the Debtors' creditors and interest holders and this Court.

## V. SCOPE OF ASSISTANCE TO BE PROVIDED

16. Bridge's management assistance will include financial reporting, bankruptcy reporting, preparation of the Debtors' schedules and statements of financial affairs, preparing cash flow projections, evaluating the viability of the Debtors' business operations, and such other such consulting and advisory services as Bridge and the Debtors deem appropriate and feasible in the course of the Bankruptcy Cases. Bridge's responsibilities will include, without limitation:

- Manage the Debtors' restructuring process including without limitation, (a) developing possible restructuring plans or strategic alternatives for maximizing value for stakeholders, (b) negotiating with lenders, vendors, suppliers and other stakeholders in connection with a restructuring including with respect to interim or other financing and any restructuring process, and (c) managing and overseeing 11 U.S.C. § 363 asset sales (if any), and (d) proposing plans of reorganization or liquidation[1];

- Direct the cash management and treasury functions of the Debtors, including but not limited to development/maintenance of short-term weekly case use budgets, disbursement of cash and managing overall liquidity;

- Assist the Debtors in developing overall strategic and business plans, including but not limited to analyzing alternative plans and exit strategies, and evaluation of the possible rejection of any executory contracts and unexpired leases;

- Assist in the evaluation and analysis of avoidance actions, including fraudulent and preferential transfers;

- Analyze creditor claims;

- Manage the Debtors' accounting and financial reporting functions; provided, however, that neither Bridge nor the Engagement Staff will provide any services as part of the services provided to the Debtors that would require a professional license such as that of a certified public accountant or attorney-at-law;

---

[1] Although Bridge has certain personnel who happen to be lawyers, Bridge will not provide any legal advice or services to the Debtors.

- Manage the Debtors' reporting activities pertaining to requirements of the Bankruptcy Court, the U.S. Trustee's office and any DIP Lender, including but not limited to overseeing the preparation of the Debtors' Schedules and Statements of Financial Affairs;

- Serve as the Debtors' primary restructuring liaison with the business representatives and financial advisors to parties in interest in these cases, including but not limited to the pre-petition secured creditors and any committee subsequently appointed in these Bankruptcy Cases;

- Provide testimony before the Bankruptcy Court on matters within Bridge's areas of expertise and consistent with the roles of Bridge and its team;

- Direct the efforts and activities of the Debtors and assist Debtors' bankruptcy counsel in connection with any 11 U.S.C. § 363 asset sales, and, in connection with such sales, develop bid procedures, assist in negotiating "stalking horse" agreements, manage the marketing/solicitation process, assist in conducting auctions, and advise the Debtors' officers and bankruptcy counsel regarding determination of the "highest or best" offer;

- Assist in such other matters that fall within the expertise of Bridge and are consistent with the roles of Bridge as may be mutually agreed upon in writing between Bridge and the Debtors, including serving in other officer positions, if required.

## VI. BRIDGE'S DISINTERESTEDNESS

17. Bridge has informed the Debtors that, except as may be set forth in the Pinsonnault Declaration, it (i) has no connection with the Debtors, their creditors, or other parties in interest in this case, (ii) docs not hold any interest adverse to the Debtors' estates, and (iii) believes it is a "disinterested person" as defined within Section 101(14) of the Bankruptcy Code.

18. Bridge will conduct an ongoing review of its files to ensure that no conflicts or disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Bridge will supplement its disclosures to the Court.

## VII. COMPENSATION TERMS

19. Bridge is not owed any amounts with respect to its pre-petition fees and expenses.

The Debtors understand that Bridge intends to apply to the Court for allowances of compensation and reimbursement of expenses for interim management and management assistance provided by the CRO and the Engagement Staff in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding local rules, orders of this Court, and guidelines established by the United States Trustee.

20. The CRO and additional Bridge personnel will bill at Bridge's standard hourly billing rates. Bridge's hourly rates are as follows:

| | |
|---|---|
| Managing Directors, Directors Principals and Senior Consultants | $400.00-$650.00 |
| Senior Associates or Consultants | $350.00-$475.00 |
| Associates or Consultants | $200.00-$350.00 |
| Administration/Paraprofessionals | $ 90.00-$150.00 |

21. David Phelps will bill his time at his current hourly rate of $575.00 per hour, Scott Pinsonnault will bill his time at his current hourly rate of $475.00 per hour and Greg O'Briant will bill time at his current hourly rate of $425.00 per hour.

22. Bridge does not and will not share with any person or firm the compensation to be paid Bridge for professional services rendered in connection with these cases except to the extent that Bridge professionals and consultants are paid for their time out of the fees charged to the Debtors.

23. In addition to the fees outlined above, Bridge will bill for reasonable direct expenses incurred on behalf of the Debtors. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations, and other expenses specifically

related to the engagement.

24. Bridge should be employed under a general retainer because of the variety and complexity of the services that will be required during these proceedings. As of the Petition Date, Bridge holds an unapplied balance of its retainer in the amount of $0.00.

## VIII. AUTHORITY FOR THE RELIEF REQUESTED

25. Section 327 of the Bankruptcy Code permits the employment of professional persons who do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties. As detailed above and in the Pinsonnault Declaration, Bridge and the CRO are clearly qualified for the services for which they are being employed, and are disinterested persons pursuant to Section 101(14) of the Bankruptcy Code.

26. Further, under Bankruptcy Code § 328(a), a debtor in possession can, with the Court's approval, employ a professional "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis. or on a continent fee basis." 11 U.S.C. § 328(a).

27. Entering into contractual arrangements for the provision of interim management is within the ordinary course of the Debtors' business as contemplated by the Bankruptcy Code. Corporations routinely hire and fire senior executives. The absence of executives capable of achieving a successful reorganization would severely hinder a debtor's ability to reorganize in an efficient and effective manner.

28. The CRO's engagement is necessary to ensure that the Debtors have executive leadership that is experienced in the restructuring process. The Debtors' retention of the CRO will benefit the Debtors' estates by providing them an objective and skilled professional to assist

in, among other things, evaluating and implementing business strategies to facilitate their reorganization and providing other restructuring guidance. Accordingly, the retention of the CRO is in the best interest of the Debtors' estates, creditors, and other parties in interest.

29. The indemnification provisions of the type specified in the Engagement Letter are customary and reasonable for engagements of this type, in both out of court restructurings and chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in the Fifth Circuit and other jurisdictions. *See, e.g., In re Pilgrim's Pride Corp.*, Case No. 08-45665 (Bankr. N.D. Tex. Feb 9, 2009) (authorizing indemnification provisions relating to retention of CRO); *In re Tropicana Entm 't., LLC*, Case No. 08-10856 (Bankr. D. Del. May 30, 2008): *In re FLYi, Inc.*, Case No. 05-2001 (Bankr. D. Del. Jan. 17,2006); *In re Oakwood Homes Corp.*, Case No. 02-13396 (Bankr. D. Del. July 21, 2003).

30. The Debtors respectfully request that the Court authorize the employment and indemnification of the CRO be approved under section 327 of the Bankruptcy Code.

## IX. **IMMEDIATE AND IRREPARABLE HARM**

31. Rule 6003 to the Federal Rules of Bankruptcy Procedure generally precludes the Court from authorizing certain relief until 21 days after the first petition is filed, except to the extent necessary to prevent "immediate and irreparable harm." Specifically, Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following:
>
> (a) an application under Rule 2014;
>
> (b) a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001; and

(c) a motion to assume, assign, or reject an executory contract or unexpired lease in accordance with Section 365.

FED. R. BANKR. P. 6003.

32. The Debtors believe the relief sought in the Application is critical to the success of the Bankruptcy Cases. Prior to the Petition Date, the Debtors worked with Consolidated's senior secured lender, CIT Capital USA, Inc. ("CIT Capital") and negotiated a plan of reorganization that proposes a sale of assets and satisfaction of certain liabilities through proceeds from the sold assets in an attempt to maximize the return to all creditors and the estate. The Debtors and CIT are simultaneously seeking approval of that sale process in conjunction with the plan and disclosure statement process, and the Debtors are required by CIT to confirm the plan of reorganization no later than December 13, 2010.

33. Accordingly, the Debtors submit that the relief sought herein is essential to the Debtors' ability to maximize the value of their estates, and without such relief, the Debtors will suffer immediate and irreparable harm. Pending this Court's approval of the Application, the CRO will be required to perform the duties and obligations as an officer of the Debtors without corporate or Court authority. Because Bridge and the CRO have agreed to serve without the benefit of D&O insurance coverage, it is critical that the Court authorize Bridge's employment and the appointment of the CRO on an interim basis. The relief sought will enable the Debtors to adhere to the negotiated schedule for the sale and the confirmation process of the proposed plan. In light of the schedule required for the sale and confirmation of the proposed plan of reorganization, the initial twenty-one (21) days after the Petition Date represents critical time that the Debtors require in order to proceed in the Bankruptcy Cases and will assist the Debtors in preserving the value of the Debtors' estates and value throughout the Bankruptcy Cases.

Accordingly, the Debtors seek immediate interim approval of the Application, with a final hearing to be set as soon as practicable.

34.     In light of the foregoing, the Debtors respectfully submit that the relief requested represents an exercise of the Debtors' sound business judgment, is in the best interests of the Debtors' estates and creditors, and is necessary to prevent immediate and irreparable harm to these estates.

## X.     CONCLUSION

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter an Order (a) authorizing the Debtors to retain and employ Bridge a financial advisors and restructuring consultants pursuant to section 327 of the Bankruptcy Code, in accordance with the terms set forth in the Application; (b) authorizing the Debtors to designate Scott Pinsonnault as Interim Chief Restructuring Officer, pursuant to section 363 of the Bankruptcy Code; and (c) granting such other and further relief as the Court may deem just and proper.

**DEBTORS' APPLICATION FOR AUTHORITY TO: (A) EMPLOY BRIDGE ASSOCIATES, LLC AS FINANCIAL ADVISORS AND TO PROVIDE INTERIM MANAGEMENT ASSISTANCE; AND (B) DESIGNATE SCOTT PINSONNAULT AS INTERIM CHIEF RESTRUCTURING OFFICER– Page 12**

MHDocs 2858970_1 11672.2

Respectfully submitted this 15th day of September, 2010.

           **HERITAGE CONSOLIDATED, LLC**

           By: _/s/ Michael Wisenbaker_
           Michael Wisenbaker
           Managing Member

-and-

           **HERITAGE STANDARD CORPORATION**

           By: _/s/ Michael Wisenbaker_
           Michael Wisenbaker
           President and CEO

**MUNSCH HARDT KOPF & HARR, P.C.**

By:   /s/ Joe E. Marshall
     Joe E. Marshall
     Texas Bar No. 13031100
     Kathleen M. Patrick
     Texas Bar No. 24037243
     Lee J. Pannier
     Texas Bar No. 24066705
     3800 Lincoln Plaza
     500 North Akard Street
     Dallas, Texas 75201-6659
     Telephone:   (214) 855-7500
     Facsimile:    (214) 978-4365
     jmarshall@munsch.com
     kpatrick@munsch.com
     lpannier@munsch.com

(PROPOSED) COUNSEL FOR HERITAGE CONSOLIDATED, LLC, DEBTOR AND DEBTOR IN POSSESSION

-and-

**ROCHELLE McCULLOUGH LLP**

By:   /s/ Kevin McCullough
     Kevin McCullough
     Texas Bar No. 00788005
     Kerry A. Miller
     Texas Bar No. 24050875
     325 N. St. Paul, Suite 4500
     Dallas, Texas 75201
     Telephone:   (214) 953-0182
     Facsimile:    (214) 953-0185
     kdm@romclawyers.com
     kmiller@romclawyers.com

(PROPOSED) COUNSEL FOR HERITAGE STANDARD CORPORATION, DEBTOR AND DEBTOR IN POSSESSION