| | |
|---|---|
| Joe E. Marshall | Kevin D. McCullough |
| Texas Bar No. 13031100 | Texas Bar No. 00788005 |
| Kathleen M. Patrick | Kerry Ann Miller |
| Texas Bar No. 24037243 | Texas Bar No. 24050875 |
| **MUNSCH HARDT KOPF & HARR, P.C.** | **ROCHELLE McCULLOUGH LLP** |
| 3800 Lincoln Plaza | 325 N. St. Paul, Suite 4500 |
| 500 North Award Street | Dallas, Texas 75201 |
| Dallas, Texas 75201-6659 | Telephone: (214) 953-0182 |
| Telephone: (214) 855-7500 | Facsimile: (214) 953-0185 |
| Facsimile: (214) 978-4365 | kdm@romclawyers.com |
| jmarshall@munsch.com | kmiller@romclawyers.com |
| kpatrick@munsch.com | |
| **(PROPOSED) COUNSEL FOR HERITAGE CONSOLIDATED, LLC, DEBTOR AND DEBTOR IN POSSESSION** | **(PROPOSED) COUNSEL FOR HERITAGE STANDARD CORPORATION, DEBTOR AND DEBTOR IN POSSESSION** |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 10-36484-hdh-11 |
| HERITAGE CONSOLIDATED, LLC, *et al.,* | § | |
| | § | Jointly Administered |
| | § | |
| Debtors. | § | **Expedited Hearing Requested** |

### APPLICATION FOR AUTHORITY TO EMPLOY MACQUARIE CAPITAL (USA) INC. AS INVESTMENT BANKER FOR PROPOSED 363 SALE

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Heritage Consolidated, LLC ("Consolidated") and Heritage Standard Corporation ("HSC" and together with Consolidated, the "Debtors"), as debtors and debtors-in-possession in the above-captioned bankruptcy cases (the "Bankruptcy Cases"), file their *Application for Authority to Employ Macquarie Capital (USA) Inc. as Investment Banker for Proposed 363 Sale* (the "Application"). In support of the Application, the Debtors respectfully state as follows:

#### Jurisdiction

1. On September 14, 2010 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), thereby initiating the Bankruptcy Cases.

2. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating and managing their business and properties as debtors in possession. On September 24, 2010, a committee formation meeting was conducted by the Office of the United States Trustee for the Northern District of Texas (the "United States Trustee") and, pursuant to that meeting, the Official Committee of Unsecured Creditors was formed in the Bankruptcy Cases.

3. This Court has jurisdiction over the Bankruptcy Cases and this Application pursuant to 28 U.S.C. §§ 157 and 1334. This Application involves a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Bankruptcy Cases and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 327, 328, and 329 of the Bankruptcy Code, Rule 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Northern District of Texas Local Bankruptcy Rules 2014-1 and 2016-1 (the "Local Rules").

**Relief Requested**

5. By and through this Application, the Debtors respectfully request authority to employ, effective immediately, Macquarie Capital (USA) Inc. ("Macquarie"), as the Debtors' investment banker for the proposed sale, transfer, or other disposition of all or a material portion of their assets, businesses, or equity securities (the "Proposed 363 Sale"). The Debtors also respectfully request authority pursuant to section 328(a) of the Bankruptcy Code to pay Macquarie as set forth below, subject this Court's final approval of such payments.

**Macquarie**

6. Macquarie is a professional services firm focused on providing financial and investment banking advice and transaction execution on behalf of its clients. Macquarie's

broad range of corporate advisory services includes services pertaining to restructuring, mergers and acquisitions, capital raises, project finance, privatizations, and tailored strategic and financial advice. In addition, acting through its Tristone division ("Tristone"), Macquarie has particular expertise in the specialized fields of energy products and services, where it has an industry leading acquisitions & divestitures group providing advisory services in energy asset transactions worldwide to a range of clients in the oil and gas industry. With its sophisticated suite of asset divestiture processes and senior-level industry relationships, Tristone is able to marshal significant resources in the areas of engineering, geoscience, and economics for the benefit of its clients.

7. Tristone's expertise extends across all phases of the disposition process, including: (a) deal strategy, negotiations and closing; (b) commercial and financial analysis; (c) value expectation analysis; (d) technical evaluations and upside identification including economic analysis; (e) identification and qualification of potential buyers; (f) hosting of technical presentations and management of and staffing of data rooms; (g) marketing materials; and (h) virtual data room technology.

8. Since 2001, Tristone has completed transactions involving over 300 energy asset packages valued over $17 billion.

9. Prior to retaining Macquarie, the Debtors' senior management interviewed senior personnel of and considered proposals from other investment banking firms. The Debtors evaluated each firm on a number of criteria, including: the overall restructuring experience of each firm and their professionals; the overall financial advisory and investment banking capabilities of such firm; the firm's experience in advising companies in chapter 11; the likely attention of the senior personnel of the firm; and the compensation to be charged. After due consideration of the above and as an exercise of their business judgment, the Debtors concluded

that Macquarie was best qualified to provide financial advisory services to the Debtors at a reasonable level of compensation.

10. The Debtors have selected Macquarie as their financial advisor based upon, among other things, (a) the Debtors' need to retain an investment banking firm to provide advice with respect to the proposed sale, transfer, or other disposition of all or a material portion of the Debtors assets, businesses, or equity securities as set forth in the Expedited Motion for Order (i) Approving Plan Support Agreement, Sale Procedures and Bid Protections in Connection with Sale of Assets; (ii) Approving Form and Manner of Notice of Sale and of Assumption and Assignment of Executory Contracts and Unexpired Leases; and (iii) Granting Related Relief [Docket No. 14]; and (b) Macquarie's extensive experience and excellent reputation in providing financial advisory and investment banking services in complex chapter 11 cases.

11. Macquarie professionals have significant experience in restructuring matters. Their previous engagements have included providing services to the debtors in *In re Delta Air Lines, Inc., et al.*, Case No. 05-17923 (Bankr. S.D.N.Y.) and *In re Lazy Days' R.V. Center, Inc., et al.*, Case No. 09-13911 (Bankr. D. Del.), the chapter 11 trustee in *In re Sentinel Management Group, Inc.*, Case No. 07- 14987 (Bankr. N.D. Ill.), the senior lenders in *In re Refco, Inc., et al.*, Case No. 05-60006 (Bankr. S.D.N.Y.), and the statutory committees of unsecured creditors in *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y.) and *In re Mesa Air Group, Inc., et al.*, Case No. 10-10018 (Bankr. S.D.N.Y.).[1]

---

[1] On April 13, 2007 the Macquarie's parent acquired the business of Giuliani Capital Advisors LLC. The restructuring experience of the Macquarie team, including the services in certain of these proceedings refer to transactions completed prior to the acquisition. Professionals that worked on those transactions are now employed by Macquarie.

## Services to Be Provided

12. The professional services Macquarie will render the Debtors are necessary to assist the Debtors with the Proposed 363 Sale. As set forth in that certain letter agreement, dated as of October 5, 2010 (the "Engagement Letter")[2] those professional services (the "Services") include, but are not limited to, the following:

- Assist the Debtors with respect to evaluating the Proposed 363 Sale;

- Familiarize itself, to the extent feasible and appropriate, with the historical and projected business and financial performance of the Debtors;

- Advise the Debtors on the formulation of a strategy, procedures, and timetables for consummating the Proposed 363 Sale;

- Assist in the writing of a confidential management presentation, information memorandum, and/or executive summary describing the Debtors;

- Coordinate due diligence investigations of the Debtors in connection with the Proposed 363 Sale; and

- Assist the Debtors in evaluating proposals received in connection with the Proposed 363 Sale and formulating negotiation strategies, and assist in all negotiations on the Debtors' behalf with respect to the Proposed 363 Sale.

## Professional Compensation

13. Macquarie's decision to enter into this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices. As set forth in more detail in the

---

[2] A copy of the Engagement Letter is attached as Exhibit A to the affidavit of Jon Goddard (the "Goddard Affidavit"), which supports the Application and sets forth all disclosures required under Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1. The Goddard Affidavit is attached hereto as Exhibit 1.

Engagement Letter, the Debtors propose to pay Macquarie the following non-refundable fees as consideration for the Services (the "Compensation Structure"):[3]

- Monthly Advisory Fee: A monthly fee of $25,000 (the "Monthly Advisory Fee");

- Transaction Fee for a non-Stalking Horse Bid Party. If a Sale Transaction[4] is consummated with a potential acquirer other than a Stalking Horse Bid Party, Macquarie will be paid a transaction fee in an amount equal to two percent (2.0%) of the Transaction Value.

- Transaction Fee for a Stalking Horse Bid Party.

    i. *Stalking Horse Bid At Par*: If a Sale Transaction is consummated with a Stalking Horse Bid Party at par to the bid as submitted and approved in the bidding procedures (the "Approved Bid"), then Macquarie shall be entitled to a $200,000 bonus in addition to its Monthly Retainer.

    ii. *Stalking Horse Bid with Incremental Value*: If a Sale Transaction is consummated with a Stalking Horse Bid Party and the difference between the economic values of the Approved Bid and the Stalking Horse Bid (the "Incremental Value") is a positive amount, then Macquarie shall be paid the $200,000 bonus described above as well as a three percent (3.0%) fee on the Incremental Value.

14. Because Macquarie does not bill its client on an hourly basis for services rendered, the Debtors request that this Court waive the applicable Bankruptcy Rules, Local Rules, and General Orders requiring Macquarie to keep time records broken down by tenths of an hour to support their compensation. Additionally, the Debtors request that, given the compensation terms of Macquarie's engagement, Macquarie's fees and expenses be reviewed under section 328(a) of the Bankruptcy Code upon Macquarie's submission of any interim fee applications and its final fee application. Accordingly, the Debtors believe that Macquarie's

---

[3] This summary is solely for the reference of the Court and parties in interest. Reference is made to the Engagement Letter for the full terms of Macquarie's proposed compensation. To the extent that this summary and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

[4] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.

compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

15. The Compensation Structure is consistent with and typical of compensation arrangements entered into by Macquarie and other comparable firms in connection with the rendering of similar services under similar circumstances. In determining the Compensation Structure to be paid to Macquarie and the reasonableness of such compensation, the Debtors compared Macquarie's fee proposal to other proposals received by the Debtors in the investment banker selection process. After such comparison, the Debtors believe, as does Macquarie, that the Compensation Structure is in fact reasonable, market-based, and designed to compensate Macquarie for its work fairly and to cover fixed and routine overhead expenses.

16. Macquarie / Tristone's strategic and financial expertise in the field of energy products and services, as well as its financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Macquarie's engagement, were all important factors in determining the Compensation Structure. The Debtors believe that the ultimate benefit of Macquarie's services hereunder cannot be measured by reference to the number of hours to be expended by Macquarie's professionals in the performance of such services. Indeed, the Debtors and Macquarie have agreed upon the Compensation Structure in anticipation that a substantial commitment of professional time and effort will be required of Macquarie and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Macquarie and (b) the actual time and commitment required of Macquarie and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Macquarie.

**Indemnification, Contribution, and Reimbursement Provisions**

17. The Debtors have agreed to indemnify, make certain contributions to and reimburse Macquarie and related entities in accordance with the provisions set forth in the indemnification agreement between Macquarie and the Debtors (the "Indemnification Agreement"), annexed to the Engagement Letter as Attachment 1.

18. The indemnification, contribution, and reimbursement provisions reflected in the Indemnification Agreement are customary and reasonable terms of consideration for financial advisors and investment bankers such as Macquarie for engagements both out of court and in chapter 11 cases. The terms of the Indemnification Agreement and the Engagement Letter were fully negotiated between the Debtors and Macquarie at arm's-length and the Debtors respectfully submit that the Indemnification Agreement and the Engagement Letter are reasonable and in the best interests of the Debtors, their estates, and creditors.

19. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Agreement.

**Macquarie's Disinterestedness**

20. To the best of the Debtors' knowledge, other than as set out in the Declaration, the employees and principals of Macquarie: (a) do not have any connection with the Debtors' creditors, equity security holders, or any other party-in-interest or their respective attorneys and accountants; (b) do not have any connection with the United States Trustee or any person employed in the Office of the United States Trustee; (c) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code; and (d) do not hold or represent any interest adverse to the Debtors' bankruptcy estates. As set forth in the Goddard Affidavit, Macquarie has reviewed its databases and provided disclosure regarding engagements it may have had since 2008 with potential parties in interest, which engagements regard matters that are

unrelated to the Debtors or these cases. To the extent that Macquarie discovers any additional material relationships bearing on the matters described in the Goddard Declaration during the period of Macquarie's retention, Macquarie will use reasonable efforts to supplement the information provided in the Goddard Declaration.

**Basis for Relief**

21. Section 328 of the Bankruptcy Code permits the employment and retention of Macquarie pursuant to the terms in the Engagement Letter and Indemnification Agreement. The Debtors seek approval of the Engagement Letter and Compensation Structure contained therein pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

22. Furthermore, under the recently enacted Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a), which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

*See* 11 U.S.C. § 328(a). Section 328(a), as amended, now makes clear that debtors may retain, subject to bankruptcy court approval, a professional on a fee basis such as the Compensation Structure with Macquarie as proposed by the Debtors herein.

23. Notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, Macquarie intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter.

24. The Debtors believe that the Compensation Structure reflects appropriately the nature and scope of services to be provided by Macquarie, Macquarie's substantial experience with respect to investment banking and financial advisory services and the fee structures typically utilized by Macquarie and other leading investment banks and financial advisors that do not bill their clients on an hourly basis.

25. In light of the foregoing, and given the numerous issues that Macquarie may be required to address in the performance of its services hereunder, Macquarie's commitment to the variable level of time and effort necessary to address all such issues as they

arise and the market prices for Macquarie's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter and the Indemnification Agreement are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

### The Retention of Macquarie Is Critical to the Debtors' Success

26. Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banker and would hinder the Debtors efforts to maximize value from the Proposed 363 Sale for the benefit of all parties of interest. Indeed, the Debtors would be forced to engage new investment bankers delaying the prosecution of these chapter 11 cases and potentially depriving the Debtors of the benefits of having an investment banker with industry-specific expertise comparable to that of Macquarie.

### Notice

27. Notice of this Application has been provided to: (i) the United States Trustee for the Northern District of Texas; (ii) the Debtors' twenty (20) largest unsecured creditors ; (iii) counsel to the Debtors' pre-petition secured lenders; (iv) counsel to the Official Unsecured Creditors Committee; and (v) all parties requesting notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that no other or further notice need be provided.

### No Previous Request

28. No previous request for the relief sought herein has been made to this or any other Court.

**Prayer**

WHEREFORE, PREMISES CONSIDERED, the Debtors respectfully request that this Court enter an order: (a) granting this Application; (b) authorizing the Debtors to employ, effective immediately, Macquarie as its investment banker for the Proposed 363 Sale under the terms set forth above; and (c) granting the Debtors all such other and further relief as to which they have shown, or hereafter show, themselves to be justly entitled.

Dated: October 12, 2010                          Respectfully Submitted,

                                            **MUNSCH HARDT KOPF & HARR, P.C.**

                                            By:   /s/ Joe E. Marshall
                                                  Joe E. Marshall
                                                  Texas Bar No. 13031100
                                                  Kathleen M. Patrick
                                                  Texas Bar No. 24037243
                                                  Lee J. Pannier
                                                  Texas Bar No. 24066705
                                                  3800 Lincoln Plaza
                                                  500 North Akard Street
                                                  Dallas, Texas 75201-6659
                                                  Telephone:  (214) 855-7500
                                                  Facsimile:   (214) 978-4365
                                                  jmarshall@munsch.com
                                                  kpatrick@munsch.com
                                                  lpannier@munsch.com

                                            (PROPOSED) COUNSEL FOR HERITAGE
                                            CONSOLIDATED, LLC,
                                            DEBTOR AND DEBTOR IN POSSESSION

                                            -and-

ROCHELLE McCULLOUGH LLP

By:   /s/Kevin D. McCullough
     Kevin McCullough
     Texas Bar No. 00788005
     Kerry A. Miller
     Texas Bar No. 24050875
     325 N. St. Paul, Suite 4500
     Dallas, Texas 75201
     Telephone: (214) 953-0182
     kdm@romclawyers.com
     kmiller@romclawyers.com

(PROPOSED) COUNSEL FOR HERITAGE STANDARD CORPORATION, DEBTOR AND DEBTOR IN POSSESSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 12, 2010, the forgoing document was served on all parties requesting service via this Court's ECF system and on all parties listed on the attached master service list via first class United States mail, postage prepaid.

                                      */s/Kerry Ann Miller*
                                      Kerry Ann Miller