# Exhibit A to Order (A) Approving Plan Support Agreement, Sale Procedures and Bid Protections in Connection with Sale of Assets; (B) Approving Form and Manner of Notice of Sale and of Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief

Joe E. Marshall
Texas Bar No. 13031100
Kathleen M. Patrick
Texas Bar No. 24037243
Lee J. Pannier
Texas Bar No. 24066705
**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 978-4365
jmarshall@munsch.com
kpatrick@munsch.com
lpannier@munsch.com

Kevin D. McCullough
Texas Bar No. 00788005
Kerry Ann Miller
Texas Bar No. 24050875
**ROCHELLE McCULLOUGH LLP**
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185
kdm@romclawyers.com
kmiller@romclawyers.com

**COUNSEL FOR HERITAGE CONSOLIDATED, LLC,
DEBTOR AND DEBTOR IN POSSESSION**

**COUNSEL FOR HERITAGE STANDARD CORPORATION,
DEBTOR AND DEBTOR IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 10-36484-HDH-11 |
| HERITAGE CONSOLIDATED LLC, *et al.*, | § § § § | Chapter 11 |
| DEBTORS. | § § § | (Jointly Administered) |

## NOTICE OF AUCTION SALE AND BIDDING PROCEDURES

**PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS WILL BE AFFECTED AS SET FORTH HEREIN.**

On September 14, 2010, Heritage Consolidated LLC ("Consolidated") and Heritage Standard Corporation ("Standard"), debtors and debtors-in-possession in the above-referenced bankruptcy cases (collectively, the "Debtors"), each filed a voluntary petition for relief (collectively, the "Cases") under chapter 11 of title 11 of the United States Code.

On September 17, 2010, the Debtors, filed their *Joint Plan of Reorganization for the Debtors* (as amended, supplemented, and modified, the "Plan") which is attached as an exhibit to their *Disclosure Statement for the Joint Plan of Reorganization for the Debtors* [Docket No. 38] (as amended, supplemented, and modified, the "Disclosure Statement"). Subject to receipt of higher and better offer(s), the Debtors propose to, among other things, seek approval to sell substantially all of the Debtors' assets, including, without limitation, all mineral interests (the "Sale") under that certain

Purchase and Sale Agreement dated as of September 7, 2010 by and among Permian Atlantis LLC ("Permian Atlantis"), Permian Phoenix LLC (together with Permian Atlantis, the "Permian Entities")[1] and the Debtors (the "Purchase and Sale Agreement"). Under the Purchase and Sale Agreement, the Permian Entities agree to serve as the stalking horse bidder with respect to certain assets associated with the Debtors' "Section 6 Assets" and "Non-Section 6 Assets" and to purchase those assets free and clear of any and all liens, claims, rights, interests, and encumbrances except as otherwise provided under the Plan.[2] In addition, under the Purchase and Sale Agreement, the Permian Entities are entering into contracts with Heritage Disposal Corporation and Heritage Gathering Corp. for salt water disposal and transportation[3]. The Sale as contemplated under the Purchase and Sale Agreement and the Plan are subject to higher and better offers as more particularly set forth in the sale procedures in connection with the solicitation of higher and better offer(s), which are attached hereto as **Exhibit A** (the "Sale Procedures").[4]

On October ___, 2010, the Court entered the *Order (A) Approving Sale Procedures and Bid Protections in Connection with Sale of Assets; (B) Approving Form and Manner of Notice of Sale and of Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. ___ ] (the "Sale Procedures Order") in which it, among other things,(a) approves the Plan Support Agreement,[5] (b) approves the Sale Procedures, (c) schedules an auction, (d) approves the form and manner of notice of the Sale Procedures and the respective dates, times and places for an auction, if required under the Sale Procedures, (e) approves the form and manner of the notice of the assumption (and, if applicable, assignment) of executory contracts and unexpired leases, (f) establishes procedures for objecting to, and determining cure amounts in connection with, the assumption of executory contracts and unexpired leases, and (g) grants other relief.

Any party desiring to make an offer or proposal relating to the Transferred Properties must comply with the Sale Procedures.

Objections, if any, to the consummation of the Sale or to the assumption, assignment, or rejection of executory contracts and unexpired leases shall be filed and served such that each

---

[1] The Permian Entities are indirect subsidiaries of Cross Canyon Energy Corporation ("Cross Canyon"), which is an indirect subsidiary of CIT Capital USA Inc. ("CIT Capital"), the Debtors' secured lender and/or agent of the secured lender.

[2] The Section 6 Assets and the Non-Section 6 Assets constitute substantially all of Consolidated's assets.

[3] Heritage Disposal Corporation and Heritage Gathering Corp. are affiliates of the Debtors.

[4] Capitalized terms that are not defined herein shall have the meanings given to them in the Sale Procedures, attached hereto.

[5] The "Plan Support Agreement" shall mean that certain Plan Support Agreement dated as of September 14, 2010 by and among the Debtors, the Permian Entities, CIT Capital, and Wisenbaker.

objection is actually received by the following parties (collectively, the "Notice Parties") by the date set by further order of the Court (the "Objection Deadline"):

- Counsel for Heritage Consolidated: Munsch Hardt Kopf & Harr PC, Attn.: Joe E. Marshall, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas, 75201-6659, (fax) 214.978.4365;

- Counsel for Heritage Standard: Rochelle McCullough, LLP, Attn.: Kevin McCullough, 325 N. Saint Paul Street, Suite 4500, Dallas, Texas, 75201, (fax) 214.953.0185;

- Counsel for CIT Capital: Vinson & Elkins LLP, Attn.: Richard H. London, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas, 75201, (fax) 214.999.7823;

- Counsel for the Official Committee of Unsecured Creditors: Okin Adams & Kilmer, LLP, Attn.: Brian Kilmer, 3102 Maple Avenue, Ste. 240, Dallas, Texas 75201, (fax) 888.865.2118;

- Counsel for Michael B. Wisenbaker: Lidji Dorey Hooper, Attn.: Brian Lidji, 500 N. Akard, Suite 3500, Dallas, Texas, 75201, (fax) 214.774.1200; and

- The United States Trustee's Office at Office of the United States Trustee, Attn: Erin Schmidt, 1100 Commerce Street, Room 9-C-60, Dallas, Texas, 75242, (fax) 214.767.6530.

**Upon entry of an order of the Bankruptcy Court setting the Objection Deadline, the Debtors will serve a subsequent notice of the Objection Deadline on the parties that received this notice.**

Any person failing to timely file an objection to the Sale shall be forever barred from objecting to the Sale, including the transferring of substantially all of the Debtors' assets free and clear of any and all liens, claims and other interests except as otherwise set forth in the Plan, and will be deemed to consent to the Sale, including the rejection of such executory contract or unexpired lease, the transferring of substantially all of the Debtors' assets free and clear of any and all liens, claims and other interests except as otherwise set forth in the Plan.

Any person failing to timely file an objection to the assumption, assignment, or rejection of their executory contract or unexpired lease, shall be forever barred from objecting to the assumption, assignment, or rejection of such executory contract or unexpired lease and will be deemed to consent to the assumption, assignment, or rejection of such executory contract or unexpired lease.

If any person asserts that any property, other than an executory contract or unexpired lease, cannot be transferred, sold, assumed, and/or assigned free and clear of all, claims and other interests except as otherwise set forth in the Plan, in accordance with the Sale and Bankruptcy Code § 1141 on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights, then such person shall file and serve a notice (a "Rights Notice") so that the Rights Notice is actually received by the Notice

Parties on or before the Objection Deadline. Each Rights Notice must identify the property or properties that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.

Any person failing to timely file and serve a Rights Notice shall be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the properties, free and clear of all liens, claims and other interests except as otherwise set forth in the Plan, and from asserting any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the properties, and (ii) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of the properties, free and clear of all liens, claims and other interests except as otherwise set forth in the Plan (regardless of whether such consent must be in writing).

At the hearing concerning the approval of the Disclosure Statement, the Court shall set a date and time for the Confirmation Hearing and Sale Hearing (as applicable). **Upon entry of an order of the Bankruptcy Court setting the Confirmation Hearing and Sale Hearing (as applicable), the Debtors will serve a subsequent notice of the Confirmation Hearing and Sale Hearing (as applicable) on the parties that received this notice.**

Copies of the Plan, Disclosure Statement, Purchase and Sale Agreements, and Sale Procedures Order may be obtained upon receipt of a written request to the Debtors, c/o Munsch Hardt Kopf & Harr PC, Attn: Joe E. Marshall, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201-6659 and Rochelle McCullough, LLP, Attn.: Kevin McCullough, 325 N. Saint Paul Street, Suite 4500, Dallas, Texas, 75201.

Dated: October ___, 2010

Respectfully Submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Joe E. Marshall
 Joe E. Marshall
 Texas Bar No. 13031100
 Kathleen M. Patrick
 Texas Bar No. 24037243
 Lee J. Pannier
 Texas Bar No. 24066705
 3800 Lincoln Plaza
 500 North Akard Street
 Dallas, Texas 75201-6659
 Telephone: (214) 855-7500
 Facsimile: (214) 978-4365
 jmarshall@munsch.com
 kpatrick@munsch.com
 lpannier@munsch.com

COUNSEL FOR HERITAGE CONSOLIDATED, LLC,
DEBTOR AND DEBTOR IN POSSESSION

-and-

**ROCHELLE McCULLOUGH LLP**

By: /s/ Kevin McCullough
 Kevin McCullough
 Texas Bar No. 00788005
 Kerry A. Miller
 Texas Bar No. 24050875
 325 N. St. Paul, Suite 4500
 Dallas, Texas 75201
 Telephone: (214) 953-0182
 Facsimile: (214) 953-0185
 kdm@romclawyers.com
 kmiller@romclawyers.com

COUNSEL FOR HERITAGE STANDARD CORPORATION,
DEBTOR AND DEBTOR IN POSSESSION

# EXHIBIT A

# SALE PROCEDURES

On September 17, 2010, Heritage Standard Corporation ("Standard") and Heritage Consolidated LLC ("Consolidated" and together with Standard, the "Debtors") filed their *Joint Plan of Reorganization for the Debtors* (as amended, supplemented, and modified, the "Plan"), which is attached as an exhibit to their *Disclosure Statement for the Joint Plan of Reorganization for the Debtors* [Docket No. 38] (as amended, supplemented, and modified, the "Disclosure Statement"). Subject to receipt of higher and better offer(s), the Debtors propose to, among other things, seek approval to sell substantially all of the Debtors' assets, including, without limitation, mineral interests (the "Sale") under that certain Purchase and Sale Agreement dated as of September 7, 2010 by and among Permian Atlantis LLC ("Permian Atlantis"), Permian Phoenix LLC (together with Permian Atlantis, the "Permian Entities")[1] and the Debtors (the "Purchase and Sale Agreement"). Under the Purchase and Sale Agreement, the Permian Entities agree to serve as the stalking horse bidder with respect to certain assets associated with the Debtors' "Section 6 Assets" and "Non-Section 6 Assets" and to purchase those assets free and clear of any and all liens, claims, rights, interests, and encumbrances except as otherwise provided under the Plan.[2] In addition, under the Purchase and Sale Agreement, the Permian Entities are entering into contracts with Heritage Disposal Corporation and Heritage Gathering Corp. for salt water disposal and transportation.[3] The Sale as contemplated under the Purchase and Sale Agreement and the Plan are subject to higher and better offers as more particularly set forth in these Sale Procedures.

These Sale Procedures have been approved and authorized pursuant to the *Order (A) Approving Sale Procedures and Bid Protections in Connection with Sale of Assets; (B) Approving Form and Manner of Notice of Sale and of Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. ___] (the "Sale Procedures Order"), entered by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, on October ___, 2010.

## Assets to be Sold

The assets of the Debtors to be sold consist of the "Properties" as defined in Section 2 of the Purchase and Sale Agreement. Except as otherwise provided under the Purchase and Sale Agreement and the Plan, the Debtors intend to sell the Properties free and clear of all claims, encumbrances, liens, and interests subject to certain permitted encumbrances. The Debtors shall consider at the auction bids from one or more bidders for the Section 6 Assets, Non-Section 6 Assets, and/or any other Properties provided that multiple bidders may not act together pursuant to a collusive agreement between or among them.

---

[1] **The Permian Entities are indirect subsidiaries of Cross Canyon Energy Corporation ("Cross Canyon"), which is an indirect subsidiary of CIT Capital USA Inc. ("CIT Capital"), the Debtors' secured lender and/or agent of the secured lender.**

[2] The Section 6 Assets and the Non-Section 6 Assets constitute substantially all of Consolidated's assets.

[3] Heritage Disposal Corporation and Heritage Gathering Corp. are affiliates of the Debtors.

Potential Purchasers

In order to qualify as a "Potential Purchaser", a bidder must demonstrate its willingness to bid in accordance with these Sale Procedures and deliver to the Debtors an executed confidentiality agreement (the "Confidentiality Agreement") in form and substance satisfactory to the Debtors, CIT Capital, and the Official Committee of Unsecured Creditors (the "Committee"). As soon as practicable, the Debtors shall disclose (a) the Potential Purchaser's interest and proposal to CIT Capital and the Committee and (b) the Potential Purchaser's interest and proposal (but not identity) to Cross Canyon and the Permian Entities.

The Form Purchase and Sale Agreement and Due Diligence

The Debtors shall send to each Potential Purchaser a form Purchase and Sale Agreement to be utilized in placing a bid (the "Form Purchase and Sale Agreement"). The Debtors will provide Potential Purchasers that have delivered to the Debtors an executed Confidentiality Agreement reasonable access to the Debtors' books, records, facilities, consultants and legal counsel for the purpose of conducting due diligence. Any information provided by or on behalf of the Debtors to a Potential Purchaser shall also be provided, at the same time, to the Committee, CIT Capital, Cross Canyon and the Permian Entities if such information has not already been provided to them. Notwithstanding the foregoing, the Debtors are not required to provide confidential or proprietary information to a competitor if the Debtors reasonably believe that such disclosure would be detrimental to the interests and operation of the Debtors.

Submission of Bids by Potential Purchasers

Any Potential Purchaser desiring to submit a bid for the Properties (a "Bid") and to participate in an auction of the Properties (the "Auction") shall deliver its Bid in writing to Munsch Hardt Kopf & Harr PC, Attn: Joe E. Marshall, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201-6659 and Rochelle McCullough, LLP, Attn.: Kevin McCullough, 325 N. Saint Paul Street, Suite 4500, Dallas, Texas, 75201 such that the Bid is actually received not later than January 18, 2011 at 4:00 p.m., Central time (the "Bid Deadline"). Counsel for the Debtors shall promptly provide copies of the Bid to counsel for CIT Capital and the Committee.

If any bid includes the assumption and assignment of executory contracts and unexpired leases, then the Potential Purchaser is required to designate the executory contracts and unexpired leases that it expects to request the Debtors to assume and assign to the Potential Purchaser as well as information satisfactorily evidencing the Potential Purchaser's ability to provide adequate assurance of future performance of such contracts or leases (an "Adequate Assurance Package"). All Adequate Assurance Packages must be submitted in writing so that they are received with the Bid.

Determination of Qualified Bids

To be a "Qualified Bid," it must be a bid that, in the discretion of the Debtors:

a. is in writing;

b.  can be effectuated on or before January 26, 2011 under the Plan or a stand-alone purchase and sale agreement approved at a sale hearing;

c.  is accompanied by a clean and duly executed version of the proposed asset purchase and sale agreement (the "Bid Purchase and Sale Agreement") and a marked Bid Purchase and Sale Agreement reflecting variations from the Form Purchase and Sale Agreement, subject to the minimum cash overbid requirement, set forth below, and that clearly specifies the amount the Potential Purchaser is willing to pay and that provides for the payment of the Break-Up Fee and Court-approved broker fees as necessary under these Sale Procedures;

d.  is accompanied by reasonably satisfactory evidence of committed financing or other ability to perform the transaction and provides an earnest money deposit of $500,000 for the Non-Section 6 Assets, $500,000 for the Section 6 Assets, or $1,000,000 for all of the Properties (the "Earnest Money Deposit") in the form of a certified check or wire transfer to the Debtors in care of their designated escrow agent, such Earnest Money Deposit being refundable within three (3) business days of Closing unless such Potential Purchaser is selected as the Backup Bidder and is required to close;

e.  provides that such bidder's offer is irrevocable until the closing of the purchase of the Transferred Properties if such bidder is the Successful Bidder (as defined below);

f.  provides sufficient indicia that such Potential Purchaser or its representative is legally empowered, by power of attorney or otherwise, and financially capable to (i) bid on behalf of such Potential Purchaser; and (ii) complete and sign, on behalf of such Potential Purchaser, a binding and enforceable purchase and sale agreement; and (iii) agree that the bid will contain no contingencies to the validity, effectiveness, and/or binding nature of the offer including, without limitation, contingencies for financing, due diligence, or inspection;

g.  if the Bid is for the Non-Section 6 Assets and the Section 6 Assets, provides an allocation of the proposed consideration between the Non-Section 6 Assets and the Section 6 Assets;[4]

h.  provides consideration for the Non-Section 6 Assets and/or Section 6 Assets equal to or greater than the minimum allocable bids established by the Debtors with the consent of the Committee and CIT Capital (the "Minimum Qualifying Bid") which minimum bids, if established, will be communicated to Potential Purchasers at least ten (10) days prior to the Bid Deadline; and

i.  meets all other requirements of these Sale Procedures.

Determination of Qualified Bidders

In order for a Potential Purchaser to qualify as a "Qualified Bidder" and be permitted to bid on the Properties, such Potential Purchaser must, in the Debtors' discretion after consultation with CIT Capital and the Committee:

---

[4] This allocation will not be binding upon the Debtors, the Committee, and CIT Capital, and each of those parties reserve their rights with respect to such allocation.

a.  have been deemed "financially qualified" by the Debtors which at a minimum shall require any such Potential Purchaser to (i) provide documentation establishing that such person has sufficient cash on hand or a binding financial commitment from an established and financially sound financial institution to ensure such Potential Purchaser's ability to meet its commitment pursuant to its bid and to close the transaction within the time frame established, and (ii) demonstrate to the Debtors' satisfaction that it has the legal capacity to complete the sale it is proposing and to satisfy the conditions under the Bidder Agreement;

b.  have delivered to the Debtors a Qualified Bid; and

c.  meet all other requirements of the Sale Procedures.

No Potential Purchaser will be a Qualified Bidder and have its bid considered by the Debtors unless such party has met the above requirements as determined by the Debtors after consultation with CIT Capital and the Committee. The Debtors shall promptly notify any Potential Purchaser who is selected as a Qualified Bidder of such selection. The Debtors shall also promptly notify Cross Canyon and the Permian Entities.

The Auction and Selection of the Successful Bid

In the event the Debtors receive one or more timely and conforming Qualified Bids by the Bid Deadline, the Debtors will conduct one or more Auctions with respect to the Transferred Properties at the offices of Munsch Hardt Kopf & Harr PC, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201-6659, or at another location as may be timely disclosed by the Debtors to Qualified Bidders. The Debtors, after consultation with CIT Capital and the Committee, may determine to proceed with (a) an Auction of the Non-Section 6 Assets, (b) an Auction of the Section 6 Assets, and/or (c) an Auction of the Non-Section 6 Assets and Section 6 Assets. The Auction(s) shall commence on January 24, 2011 at 9:00 a.m., prevailing Central time (the "Auction Date"). No persons other than representatives of the Debtors, Michael B. Wisenbaker, CIT Capital, Cross Canyon, the Committee, including the members of the Committee solely in their capacity as members, and each Qualified Bidder (including the Permian Entities) may participate in the Auction(s).

If the Debtors proceed with separate Auctions of all or any portion of (a) the Non-Section 6 Assets or (b) the Section 6 Assets, then the Permian Entities shall not be required to effectuate any Sale under the Plan even if one or more of the Permian Entities is a Successful Bidder (as defined below) at an Auction.

All Qualified Bidders must appear in person at the Auction(s), or through a duly authorized representative present in person. By making a Qualified Bid at an Auction, a Qualified Bidder shall be deemed to have agreed to keep its final Qualified Bid made at the applicable Auction open until three business days after the entry of an Order confirming the Plan or an Order approving the Sale (as applicable).

If multiple Qualified Bids satisfying all Auction requirements are received and the Debtors determine to proceed with an Auction as set forth above, each party shall have the right to continue to improve its bid at the applicable Auction and all Qualified Bidders shall be present

in a single room for an open auction at which each Qualified Bidder is allowed to hear all bids from all other Qualified Bidders.

With respect to each round of bidding at the Auction(s) following the initial bid, each successive bid must be at least $50,000 in cash or other ascertainable value in excess of the aggregate consideration contained in the then highest standing Qualified Bid. Any bid by CIT Capital, Cross Canyon, or the Permian Entities shall include the amount of the Break-Up Fee and Court-approved broker's fees as a component of any subsequent Qualified Bid submitted by CIT Capital, Cross Canyon, or the Permian Entities. For example, if at the Auction, a subsequent Qualified Bid submitted by CIT Capital, Cross Canyon, or the Permian Entities is the Successful Bid, then the consideration that must be provided by CIT Capital, Cross Canyon, or the Permian Entities pursuant to such Successful Bid shall be reduced by the amount of the Break-Up Fee.

The Auction(s) shall conclude as determined by the Debtors after consultation with CIT Capital and the Committee. At the conclusion of the Auction(s), and subject to Court approval following the Auction(s), the highest standing Qualified Bid(s) as determined by the Debtors after consultation with CIT Capital and the Committee shall be selected by the Debtors (each, a "Successful Bid").

Unless otherwise agreed to by the Sellers, within two days after the conclusion of the Auction(s), the entity that made the Successful Bid(s) or the entities that together (non-collusively) made the Successful Bid(s) (each, a "Successful Bidder") shall complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which such Qualified Bid(s) was made. If the Successful Bid is for the Non-Section 6 Assets and the Section 6 Assets, at that time, the Successful Bidder shall provide an allocation of the consideration between the Non-Section 6 Assets and the Section 6 Assets.[5] Within forty-eight hours after the conclusion of the Auction, the Successful Bidder(s) shall provide updated financial information showing its ability to close and shall update and provide such additional financial information as required by the Debtors.

Break-Up Fee

A Break-Up Fee in the amount of $300,000 with an expense reimbursement of no more than $300,000, shall be payable to the Permian Entities upon termination and/or cancellation of the Amended and Restated Purchase and Sale Agreement as it relates to the Non-Section 6 Assets. The Break-Up Fee shall be a joint and several obligation of the Debtors, shall be paid when due, and shall be payable as an allowed administrative expense pursuant to Bankruptcy Code §§ 503(b) and 507(a)(2). The Break-Up Fee shall be payable in cash, on the date of consummation of the Sale or one business day thereafter from the sale proceeds thereof or otherwise from the Debtors' cash balances in accordance with the Purchase and Sale Agreement and the Sale Procedures Order. The Break-Up Fee shall be paid without need for any further motion, application, notice, approval or order of the Court. There shall be no Break-Up Fee and/or expense reimbursement payable to the Permian Entities upon the termination and/or

---

[5] This allocation will not be binding upon the Debtors, the Committee, and CIT Capital, and each of those parties reserve their rights with respect to such allocation.

cancellation of the Amended and Restated Purchase and Sale Agreement as it relates to the Section 6 Assets.

Objections

Objections to the additional relief requested by the Sale Procedures Motion shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position and shall be filed with the Court on or before the date to be set forth in a subsequent notice and Order of the Court. Such objection shall be served so as to be received by that same date and time on (a) counsel for Heritage Consolidated: Munsch Hardt Kopf & Harr PC, Attn.: Joe E. Marshall, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas, 75201-6659, (fax) 214.978.4365; (b) counsel for Heritage Standard: Rochelle McCullough, LLP, Attn.: Kevin McCullough, 325 N. Saint Paul Street, Suite 4500, Dallas, Texas, 75201, (fax) 214.953.0185; (c) counsel for CIT Capital: Vinson & Elkins LLP, Attn.: Richard H. London, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas, 75201, (fax) 214.999.7823; (d) counsel for the Committee: Okin Adams & Kilmer LLP, Attn.: Brian A. Kilmer, 3102 Maple Avenue, Ste. 240, Dallas, Texas, 75201, (fax) 888.865.2118; (e) the United States Trustee's Office at Office of the United States Trustee, Attn: Erin Schmidt, 1100 Commerce Street, Room 9-C-60, Dallas, Texas, 75242, (fax) 214.767.6530.

Court Approval

An evidentiary hearing to consider confirmation of the Plan (the "Confirmation Hearing") or approval of the Sale (the "Sale Hearing") (as appropriate) will be held before the Honorable Harlin D. Hale, United States Bankruptcy Judge, on the date set by further order of the Bankruptcy Court. Upon entry of an order of the Bankruptcy Court setting the date of the Confirmation Hearing or Sale Hearing, the Debtors will serve notice of the same on the parties that received notice of these Sale Procedures. The Confirmation Hearing or Sale Hearing (as appropriate) may be adjourned or rescheduled as ordered by the Bankruptcy Court or by the Debtors with the approval of the Successful Bidder(s) and CIT Capital (and after consultation with the Committee) but without further notice to creditors and parties in interest other than by announcement by Debtors of the adjourned date at the Confirmation Hearing or Sale Hearing (as appropriate).

The Debtors' presentation to the Bankruptcy Court for approval of a Successful Bid(s) does not constitute the Debtors' acceptance of the Bid(s). The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

Closing

The closing of the sale(s) of the Properties shall occur no later than fifteen days after the Court enters an Order confirming the Plan or approving the Sale(s) (as applicable) (the "Final Closing Deadline"); provided, however, that this requirement may be waived upon the agreement of the Debtors, CIT Capital, and the Committee.

## Failure to Consummate Purchase

If any Successful Bidder other than the Permian Entities fail or fails to consummate the purchase of any Properties, and such failure to consummate the purchase is the result of a breach by such Successful Bidder, the Earnest Money Deposit of such Successful Bidder shall be forfeited to the Debtors.

## Back-Up Bidders

If any Successful Bidder fails to consummate a Sale because of a breach or failure to perform on the part of such Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid at the applicable Auction (the "Back-Up Bidder") will be deemed to be the Successful Bidder of the applicable Properties and the Debtors will be authorized to consummate the Sale of such Properties with such Back-Up Bidder without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid; provided that upon being notified that its Qualified Bid has become the Successful Bid, the Qualified Bidder submitting such Qualified Bid shall within three business days after such notification provide an Earnest Money Deposit (unless such Qualified Bidder previously shall have provided an Earnest Money Deposit that shall not have been returned as described below) and, upon providing such Earnest Money Deposit such Qualified Bidder shall be deemed the Successful Bidder. If any Qualified Bidder fails to consummate a Sale because of a breach or failure to perform on the part of such Qualified Bidder (including without limitation the failure to timely deposit the Earnest Money Deposit) or for any reason within ten days after being deemed the Back-Up Bidder pursuant to this section of the Sale Procedures, the process described above may continue as determined by Debtors until a Qualified Bidder shall consummate the Sale.

## Return of Earnest Money Deposit

The Earnest Money Deposit of all Qualified Bidders (other than the Successful Bidder) will be returned, without interest (other than any earnings on any such amounts under, and subject to, the terms of the escrow agreement pursuant to which such Earnest Money Deposit is held), to each such Qualified Bidder within ten business days after the entry of an Order confirming the Plan or approving the applicable Sale (as applicable), subject to the terms of the escrow agreement pursuant to which such Earnest Money Deposit is held.

The Earnest Money Deposit of the Successful Bidder will be distributed pursuant to and in accordance with its purchase and sale agreement and/or the escrow agreement pursuant to which such Earnest Money Deposit is held.

## CIT Capital Credit Bid

Cross Canyon, the Permian Entities, and CIT Capital shall be deemed to be Qualified Bidders for all purposes, and the Purchase and Sale Agreement and the Back-Up Purchase and Sale Agreement shall be deemed to be Qualified Bids (without the need to post a deposit) for all purposes. CIT Capital's right to credit bid the full amount of its claim at the Auction(s) (without the need to post a deposit) shall be preserved.

## Alternative Transaction and Consummation of Back-Up Purchase and Sale Agreement

At the Confirmation Hearing or Sale Hearing (as applicable), the Court will consider approval of the Back-Up Purchase and Sale Agreement which, at the election of CIT Capital, may be effectuated without further Order of the Court as (a) a primary transaction in the event that the Sale is denied or the Sale (other than as contemplated under the Back-Up Purchase and Sale Agreement) is not approved on or before January 26, 2011; or (b) a back-up or secondary transaction under the "Back-Up Bidders" section of these Sale Procedures. Any such approval of the Back-Up Purchase and Sale Agreement shall be reflected in the Order approving the Sale. If the Confirmation Hearing or Sale Hearing (as applicable) is not held (and the Back-Up Purchase and Sale Agreement is not approved) on or before January 26, 2011, at the election of CIT Capital, the Debtors shall seek an emergency setting to consider approval of the Back-Up Purchase and Sale Agreement.