

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed October 26, 2010**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 10-36484-HDH-11 |
| HERITAGE CONSOLIDATED LLC, *et al.*, | § § § | Chapter 11 |
| DEBTORS. | § § § | (Jointly Administered) |

**ORDER (A) APPROVING PLAN SUPPORT AGREEMENT,
SALE PROCEDURES AND BID PROTECTIONS IN
CONNECTION WITH SALE OF ASSETS; (B) APPROVING FORM AND MANNER OF
NOTICE OF SALE AND OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

On October 21, 2010 (the "Sale Procedures Hearing"), the Court considered the

*Expedited Motion for Order (A) Approving Plan Support Agreement, Sale Procedures and Bid*

*Protections in Connection with Sale of Assets; (B) Approving Form and Manner of Notice of*

*Sale and of Assumption and Assignment of Executory Contracts and Unexpired Leases; and*

*(C) Granting Related Relief* [Docket No. 14] (the "Sale Procedures Motion")[1] filed by Heritage Consolidated LLC and Heritage Standard Corporation, debtors and debtors-in-possession (collectively, the "Debtors").

**THE COURT FINDS THAT**:

A.   The Court has jurisdiction to consider the Sale Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334, the filing of the Sale Procedures Motion commenced a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.   Notice of the Sale Procedures Motion was reasonable and sufficient in light of the circumstances and nature of the relief requested therein, and no other or further notice is necessary. A reasonable and fair opportunity to object to the Sale Procedures Motion and the relief granted in this Order has been afforded.

C.   The legal and factual bases set forth in the Sale Procedures Motion establish just cause for the relief granted herein. Granting the relief is in the best interests of the Debtors, their estates and creditors.

D.   The Debtors have articulated good and sufficient reasons for this Court to grant the Sale Procedures Motion and to approve the Sale Notice [Docket No. 176] incorporated herein as **Exhibit A**, the Assumption Notice [Docket No. 177] incorporated herein as **Exhibit B**, and the Sale Procedures [Docket No. 178] incorporated herein as **Exhibit C**.

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

**ORDER (A) APPROVING PLAN SUPPORT AGREEMENT, SALE PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH SALE OF ASSETS; (B) APPROVING FORM AND MANNER OF NOTICE OF SALE AND OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**     **Page 2**

E.  The filing and service of the Sale Notice provide due, adequate and timely notice of the Sale of the Debtors' assets as set forth in the Motion in accordance with Bankruptcy Rule 2002 and the applicable provisions of the Bankruptcy Code.

F.  The Sale Procedures are reasonable and appropriate and are designed to maximize the value of the Debtors' assets.

G.  The Debtors have demonstrated compelling and sound business justification for the Sale Procedures and the bidding protections (as provided in the Sale Procedures) (the "<u>Bidding Protections</u>"), including the Break-Up Fee.

H.  Cross Canyon and the Permian Entities have expended, and likely will continue to expend, considerable time, money and energy pursuing the Sale.

I.  This Order and the Sale Procedures were negotiated, proposed, and entered into by the Debtors and the Permian Entities without collusion, in good faith and from arm's length bargaining positions.[2]

J.  The Break-Up Fee is (1) an actual and necessary cost of preserving the Debtors' estates within the meaning of Bankruptcy Code §§ 503(b) and 507(a), (2) commensurate to the real and substantial benefit conferred upon the Debtors' estates by Cross Canyon and the Permian Entities, (3) reasonable and appropriate in light of, among other things (a) the size and nature of the Sale and comparable transactions, (b) the substantial efforts that have been and will be expended by Cross Canyon and the Permian Entities, and (c) the benefits Cross Canyon and the Permian Entities have provided to the Debtors' estates, their creditors and other parties in interest, and (d) necessary to induce the Permian Entities to serve as "stalking horse" bidders and

---

[2] Nothing herein shall be deemed as a finding with respect to the good faith of any party with respect to the execution and negotiation of the Purchase and Sale Agreement.

**ORDER (A) APPROVING PLAN SUPPORT AGREEMENT, SALE PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH SALE OF ASSETS; (B) APPROVING FORM AND MANNER OF NOTICE OF SALE AND OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**    Page 3

to continue to pursue the Sale. The grant, allowance and payment of the Break-Up Fee are in the best interest of the Debtors, their respective estates and creditors. The Break-Up Fee induced the Permian Entities to submit a bid that will serve as a minimum floor on which the Debtors, their creditors and other bidders may rely. Cross Canyon and the Permian Entities have provided a material benefit to the Debtors and their creditors (and the Debtors have received a material benefit) by increasing the likelihood that the best possible price for the Transferred Properties will be received.

K.    The payment to the Permian Entities of the Break-Up Fee under the terms and conditions set forth in the Purchase and Sale Agreement, as modified by this Order and the Sale Procedures, should be approved because, among other things: (1) the Break-Up Fee was a material inducement for, and express condition of, the Permian Entities' willingness to enter into the Purchase and Sale Agreement, and (2) assurance to the Permian Entities of payment of the Break-Up Fee has promoted (and will promote) more competitive bidding by, among other things, inducing the Permian Entities' offer, which offer otherwise would not have been made and without which competitive bidding would be limited. Thus, Cross Canyon and the Permian Entities have provided a material and substantial benefit to the Debtors' estates, their creditors and other parties in interest by increasing the likelihood that the price at which the Sale may be effectuated will reflect the Transferred Properties' true value. Accordingly, the Sale Procedures and the Break-Up Fee are fair, reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

L.    The payment of the Break-Up Fee and the establishment of the Sale Procedures are both reasonable and necessary to induce the Permian Entities to enter into the transactions

contemplated under the Purchase and Sale Agreement and to obtain the highest price possible for the Transferred Properties.

**THEREFORE, IT IS ORDERED THAT**:

1. The Sale Procedures Motion is **GRANTED**.

2. Any objections to the Sale Procedures Motion are overruled in their entirety.

3. The Sale Notice, substantially in the form attached hereto as Exhibit A, is approved. Within five business days after the entry of this Order, the Debtors shall serve the Sale Notice by (a) first class United States mail, postage prepaid on (i) the parties identified on the Master Service List maintained in these Cases who do not receive electronic notice at the addresses set forth therein, (ii) the parties identified on the Creditor Matrix maintained in these Cases at the addresses set forth therein, (iii) all known holders of Liens, (iv) the parties that have filed proofs of claim in these Cases at the addresses set forth in the respective proofs of claim, (v) the counterparties to executory contracts and unexpired leases with one or more of the Debtors, and (vi) any party that has expressed an interest in acquiring any of the Debtors' assets; and (b) the Court's electronic filing system on those parties receiving electronic notice by such system.

4. The Assumption Notice, substantially in the form attached hereto as Exhibit B, is approved. Within five business days after the Court enters an Order approving this Motion, the Debtors shall serve the Assumption Notice by (a) first class United States mail, postage prepaid on (i) the parties identified on the Master Service List maintained in these Cases (who do not receive electronic notice) at the addresses set forth therein, and (ii) all counterparties to executory contracts and unexpired leases that may be assumed by one or more of the Debtors

pursuant to Bankruptcy Code § 365 (the "365 Contracts"); and (b) the Court's electronic filing system on those parties receiving electronic notice by such system. In combination with the Supplemental Notice, such Assumption Notice is proper, due, timely, good, and sufficient notice of, among other things, the possible assumption and assignment of 365 Contracts, the Cure Amounts, and the procedures for objecting thereto

5. In combination with the Supplemental Notice, the Sale Notice and Assumption Notice shall be deemed proper, due, timely, good, and sufficient notice to all interested parties of (a) the entry of this Order, (b) the Sale Procedures, (c) the Auction and Sale of the Transferred Properties, (d) the deadline to object to the consummation of the Sale and the assumption and assignment of 365 Contracts, (e) the Cure Amounts, and (f) the Confirmation Hearing or Sale Hearing (as applicable). No other or further notice is necessary.

6. The following procedures shall be implemented with respect to the Sale Notice and Assumption Notice:

    a. Objections, if any, to the Sale and/or the proposed assumption and assignment of the 365 Contracts, including but not limited to objections relating to any Cure Amounts and/or adequate assurances of future performance, must (i) be in writing, (ii) state with specificity the nature of such objection, (iii) if concerning a Cure Amount, set forth a specific default in the 365 Contract and claim a specific monetary amount that differs from the Cure Amount (if any) specified by the Debtors in the Assumption Notice (with appropriate documentation in support thereof), (iv) comply with the Federal Rules of Bankruptcy Procedure, and (v) be filed with this Court and served upon the following parties (collectively, the "Notice

Parties") in accordance with the Assumption Notice on or before the deadline subsequently set by the Court (the "Objection Deadline"):[3]

- Counsel for Heritage Consolidated: Munsch Hardt Kopf & Harr PC, Attn.: Joe E. Marshall, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas, 75201-6659, (fax) 214.978.4365;

- Counsel for Heritage Standard: Rochelle McCullough, LLP, Attn.: Kevin McCullough, 325 N. St. Paul Street, Suite 4500, Dallas, Texas, 75201, (fax) 214.953.0185;

- Counsel for CIT Capital: Vinson & Elkins LLP, Attn.: Richard H. London, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas, 75201, (fax) 214.999.7823;

- Counsel for the Official Committee of Unsecured Creditors: Okin Adams & Kilmer LLP, Attn.: Brian A. Kilmer, 3102 Maple Avenue, Ste. 240, Dallas, Texas, 75201, (fax) 888.865.2118; and

- the United States Trustee's Office at Office of the United States Trustee, Attn: Erin Schmidt, 1100 Commerce Street, Room 9-C-60, Dallas, Texas, 75242, (fax) 214.767.6530.

b.  The Debtors are authorized to amend the Assumption Notice by adding and/or deleting 365 Contracts at any time prior to the Confirmation Hearing or Sale Hearing (as appropriate) (by sending a new or amended Assumption Notice), and they shall use commercially reasonable efforts to affect the assumption and assignment of such 365 Contract by the applicable Debtor in accordance with the Bankruptcy Code and the Plan; provided, however, that counterparties to any 365 Contracts that are added to or deleted from the Assumption Notice shall have at least five calendar days from service of the amended Assumption Notice to (i) properly object to such addition/deletion, and (ii) modify their vote to accept or reject the Plan.

---

[3] The Supplemental Notice, which the Debtors will serve on the parties as set forth in this Motion, will identify the Objection Deadline.

**ORDER (A) APPROVING PLAN SUPPORT AGREEMENT, SALE PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH SALE OF ASSETS; (B) APPROVING FORM AND MANNER OF NOTICE OF SALE AND OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**    **Page 7**

   c. Any person failing to timely file an objection to the Sale, shall be forever barred from objecting to the Sale or the consummation thereof, including the transferring of the Debtors' assets free and clear of any and all liens, claims and other interests except as otherwise set forth in the Plan, and will be deemed to consent to the Sale.

   d. Any Person failing to timely file an objection to any Cure Amounts set forth in the Assumption Notice or the proposed assumption and assignment of the 365 Contracts shall be forever barred from objecting to the Cure Amounts and from asserting a claim for any cure or other amounts (or asserting that any defaults exist under the 365 Contract as of the date of assumption) against any Debtors, their estates, the reorganized Debtors, the Buyer (as defined in the Plan), the Newco Entities (as defined in the Plan) or their respective successors and affiliates with respect to its 365 Contract arising prior to assumption and assignment of the 365 Contract and will be deemed to consent to the proposed assumption and assignment of its 365 Contract.

   e. Where a counterparty to a 365 Contract files a timely objection asserting a higher cure amount than the maximum Cure Amount set forth in the Assumption Notice and the parties are unable to consensually resolve the dispute prior to the Confirmation Hearing or Sale Hearing (as applicable), the amount to be paid with respect to such objection will be determined at the Confirmation Hearing or Sale Hearing (as applicable) or such other date and time as may be fixed by this Court. All other objections to the proposed assumption and assignment of the 365 Contracts will be heard at the Confirmation Hearing or Sale Hearing (as applicable).

   f. If any Person (as defined in the Plan) asserts that any property, other than an executory contract or unexpired lease, cannot be transferred, sold, assumed, and/or assigned

free and clear of all liens, claims and other interests except as otherwise set forth in the Plan, on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights, then such Person shall file and serve a notice (a "<u>Rights Notice</u>") so that the Rights Notice is actually received by the Notice Parties on or before the Objection Deadline.  Each Rights Notice must identify the property or properties that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.

    g. Any Person failing to timely file and serve a Rights Notice shall be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the properties, free and clear of all liens, claims and other interests except as otherwise set forth in the Plan, and from asserting any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the properties, and (ii) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of the properties, free and clear of all liens, claims and other interests except as otherwise set forth in the Plan (regardless of whether such consent must be in writing).

    7. The process for submitting Qualified Bids (as defined in the Sale Procedures) is fair, reasonable and appropriate and is designed to maximize recoveries for the benefit of the Debtors' estates, their creditors and other parties in interest.  The Debtors may proceed with the Sale in accordance with the Sale Procedures, which procedures are hereby approved in their entirety in the form attached hereto as <u>Exhibit C</u>.  No persons other than representatives of the

**ORDER (A) APPROVING PLAN SUPPORT AGREEMENT, SALE PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH SALE OF ASSETS; (B) APPROVING FORM AND MANNER OF NOTICE OF SALE AND OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF** **Page 9**

Debtors, Michael B. Wisenbaker, CIT Capital, Cross Canyon, the Permian Entities, the Official Committee of Unsecured Creditors (the "Committee"), including the members of the Committee solely in their capacity as members, and each Qualified Bidder may participate in the Auction.

8. Cross Canyon, the Permian Entities, and CIT Capital shall be deemed to be Qualified Bidders for all purposes, and the Purchase and Sale Agreement and the Back-Up Purchase and Sale Agreement shall be deemed to be Qualified Bids (without the need to post a deposit) for all purposes. CIT Capital's right to credit bid the full amount of its claim at the Auction (without the need to post a deposit) shall be preserved provided that CIT Capital proposes to satisfy any superior liens and security interests on the property that is subject to their Bid. The Purchase and Sale Agreement is approved as the "stalking horse" bids for the Transferred Properties, and the Bidding Protections, including, but not limited to, the Break-Up Fee in the amount of $300,000 plus an expense reimbursement of no more than $300,000, only payable to the Permian Entities upon the termination and/or cancellation of the Amended Purchase and Sale Agreement as it relates to the Non-Section 6 Assets, are approved and enforceable for all purposes. The Debtors and the Committee shall have the opportunity to review and object, if necessary, to any and all expenses claimed by the Permian Entities under the expense reimbursement provisions herein. Any objections to the expenses sought for reimbursement by the Permian Entities must be delivered to the Permian Entities and their counsel within ten (10) days after the receipt of the requested expense reimbursement. If a timely, written objection is delivered to the Permian Entities and their counsel, and if the Permian Entities and their counsel, and objecting party are unable to resolve the objection, (a) the undisputed portion of the expenses shall be promptly paid, and (b) the disputed portion of the

expenses shall not be paid, absent the agreement of the Debtors, the Permian Entities and their counsel and the Committee, or further Order of the Court.  There shall be no Break-Up Fee and/or expense reimbursement payable to the Permian Entities upon the termination and/or cancellation of the Amended Purchase and Sale Agreement as it relates to the Section 6 Assets. Nothing in this Order shall be interpreted to mean that any party in interest, including the Committee, agrees that the proposed "stalking horse" bid is an acceptable bid for the Transferred Properties, and those parties reserve their rights to object to the Sale and/or Plan.

9. The Break-Up Fee shall be a joint and several obligation of the Debtors, shall be paid when due, and shall be payable as an allowed administrative expense pursuant to Bankruptcy Code §§ 503(b) and 507(a)(2).  The Debtors are authorized and directed to pay the Break-Up Fee, in cash, on the date of consummation of the Sale or one business day thereafter from the sale proceeds thereof or otherwise from the Debtors' cash balances in accordance with the Purchase and Sale Agreement and this Order.  The Break-Up Fee shall be paid without need for any further motion, application, notice, approval or order of the Court.

10. No person or entity, other than the Permian Entities, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or similar fee or payment.

11. Except as modified by this Order, the Plan Support Agreement is hereby approved, and the Debtors may take all actions contemplated thereunder and necessary to effectuate the same.

12. The procedures concerning the assumption and assignment of executory contracts and unexpired leases as set forth in the Sale Procedures Motion and Sale Procedures are approved.

13. Any party desiring to submit a bid for the Transferred Properties shall comply with the Sale Procedures and, if selected as a Qualified Bidder, shall submit the original bid to Munsch Hardt Kopf & Harr PC, Attn: Joe E. Marshall, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201-6659 such that (a) the bid is actually received not later than January 18, 2011 at 4:00 p.m., Central time, and (b) the bid complies with the requirements set forth in the Sale Procedures.

14. In the event the Debtors receive one or more timely and conforming Qualified Bids by the Bid Deadline, the Debtors shall hold the Auction at the offices of Munsch Hardt Kopf & Harr PC, 3800 Lincoln Plaza, 500 N. Akard Street, Dallas, Texas 75201-6659, or at another location as may be timely disclosed by the Debtors to Qualified Bidders, which shall commence on January 24, 2011 at 9:00 a.m., Central time (the "Auction Date").

15. The hearing to consider the Sale shall be set by subsequent Order of the Court. As provided in the Sale Procedures and the Plan, the Sale may be effectuated pursuant to the Sale Motion or the Plan. Nothing herein shall be deemed as a waiver of the rights of the Committee or other parties in interest to object to the proposed Sale or the Plan.

16. At the Confirmation Hearing or Sale Hearing (as applicable), the Court will consider approval of the Back-Up Purchase and Sale Agreement which, at the election of CIT Capital, may be effectuated without further Order of the Court as (a) a primary transaction in the event that the Sale is denied or the Sale (other than as contemplated under the Back-Up Purchase and Sale Agreement) is not approved on or before January 26, 2011; or (b) a back-up or secondary transaction under the "Back-Up Bidders" section of the Sale Procedures. Any such approval of the Back-Up Purchase and Sale Agreement shall be reflected in the Order approving

the Sale. Nothing herein shall be interpreted as explicit or implicit approval by the Court or any parties in interest of the "stalking horse" bid or the Back-Up Purchase and Sale Agreement as an acceptable sale price or acceptable sale terms, and those parties reserve their rights to object to the Sale and/or Plan.

17. If the Confirmation Hearing or Sale Hearing (as applicable) is not held (and the Back-Up Purchase and Sale Agreement is not approved) on or before January 26, 2011, at the election of CIT Capital, the Debtors shall seek an emergency setting to consider approval of the Back-Up Purchase and Sale Agreement.

18. The terms of this Order shall control to the extent of any conflict with the Purchase and Sale Agreement. Except for the Bidding Protections and the Break-Up Fee approved herein, nothing in this Order shall constitute an approval of the Purchase and Sale Agreement.

19. The Sale will not transfer any interest of any non-Debtor (under Section 363(h) of the Bankruptcy Code or otherwise) and any third-party working interest and/or royalty interest will be unaffected by the Sale.

20. The Debtors shall comply with the terms of the Sale Procedures in all respects.

21. This Order shall be binding on any successor to or assignee of the Debtors, including, but not limited to, any trustee appointed in these Cases.

22. This Order shall become effective immediately upon its entry.

23. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

24.   The Debtors shall serve this Order by (a) first class United States mail, postage prepaid on the parties identified on the Master Service List who do not receive electronic notice at the addresses set forth therein; and (b) the Court's electronic filing system on those parties receiving electronic notice by such system.

# # # END OF ORDER # # #

*Upon entry, return copy to:*

Joe E. Marshall, SBT # 13031100
**MUNSCH HARDT KOPF & HARR PC**
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Tel: 214.855.7573
Fax: 214.978.4365
jmarshall@munsch.com

**COUNSEL FOR HERITAGE CONSOLIDATED LLC**

Kevin McCullough, SBT # 00788005
**ROCHELLE MCCULLOUGH, LLP**
325 N. St. Paul Street
Suite 4500
Dallas, Texas 75201
Tel: 214.953.0182
Fax: 214.953.0185
kdm@romclawyers.com

**COUNSEL FOR HERITAGE STANDARD CORPORATION**

**ORDER (A) APPROVING PLAN SUPPORT AGREEMENT, SALE PROCEDURES AND BID
PROTECTIONS IN CONNECTION WITH SALE OF ASSETS; (B) APPROVING FORM AND
MANNER OF NOTICE OF SALE AND OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY
<u>CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF</u>**    **Page 15**