| | |
|---|---|
| Joe E. Marshall<br>Texas Bar No. 13031100<br>Kathleen M. Patrick<br>Texas Bar No. 24037243<br>**MUNSCH HARDT KOPF & HARR, P.C.**<br>3800 Lincoln Plaza<br>500 North Akard Street<br>Dallas, Texas 75201-6659<br>Telephone:    (214) 855-7500<br>Facsimile:    (214) 978-4365<br>jmarshall@munsch.com<br>kpatrick@munsch.com<br>lpannier@munsch.com | Kevin D. McCullough<br>Texas Bar No. 00788005<br>Scott DeWolf<br>Texas Bar No. 24050875<br>**ROCHELLE McCULLOUGH LLP**<br>325 N. St. Paul, Suite 4500<br>Dallas, Texas 75201<br>Telephone:    (214) 953-0182<br>Facsimile: (214) 953-0185<br>kdm@romclawyers.com<br>kmiller@romclawyers.com |
| Mary J. Koks<br>Texas Bar No. 04856800<br>**MUNSCH HARDT KOPF & HARR, P.C.**<br>700 Louisiana, Suite 4600<br>Houston, Texas  77002<br>Telephone: 713-222-4030<br>Facsimile:  713-222-5830<br>mkoks@munsch.com | **COUNSEL FOR HERITAGE STANDARD<br>CORPORATION, DEBTOR AND<br>DEBTOR IN POSSESSION** |
| **COUNSEL FOR HERITAGE<br>CONSOLIDATED, LLC, DEBTOR AND<br>DEBTOR IN POSSESSION** | |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| **HERITAGE CONSOLIDATED, LLC,** | § | **Case No. 10-36484-hdh-11** |
| *et al.,*[1] | § | |
| | § | **(Jointly Administered)** |
| **Debtors.** | § | |
| | § | |

**DEBTORS' RESPONSE TO CITY OF MIDLAND'S MOTION FOR
ESTIMATION OF CLAIMS AND OBJECTION TO CITY OF MIDLAND'S
REQUEST FOR ADMINISTRATIVE CLAIM AND BRIEF IN SUPPORT**

---

[1]   Pursuant to the Court's September 22, 2010, *Order Directing Joint Administration of Bankruptcy Cases*, Heritage Consolidated, LLC's case was jointly administered with Heritage Standard Corporation's Case No. 10-26485-hdh (collectively the "Debtors").

**DEBTOR'S RESPONSE TO CITY OF MIDLAND'S
MOTION FOR ESTIMATION OF CLAIMS AND
OBJECTION TO CITY OF MIDLAND'S REQUEST FOR
ADMINISTRATIVE CLAIM AND BRIEF IN SUPPORT—Page 1**

NOW COMES Heritage Consolidated, LLC and Heritage Standard Corporation (collectively the "Debtors"), through their respective counsel, and for their Response to City of Midland's Motion for Estimation of Claims and Objection to City of Midland's Request for Administrative Claim and Brief in Support would show the Court as follows:

## SUMMARY OF OBJECTION

The City of Midland (the "City" or "Midland") seeks an administrative expense claim pursuant to 11 U.S.C. §503(b)(1)(A) for remediation costs of alleged contamination of the Cenozoic Pecos Alluvium Aquifer (the "Aquifer"). The City also seeks allowance of additional and substantial claims for alleged property damages to the entire Aquifer.

The Debtors dispute the City's contentions that the salinity throughout the Aquifer was proximately caused by the Debtors. At the time of the Estimation Hearing on the City's Claim, the Debtors will show that the City's analysis of the source and extent of the salinity in the Aquifer is flawed and that it has overstated its claims and the Debtors' responsibility for any contamination. The City's Estimation Motion and the reports incorporated therein contain numerous overstatements and misstatements regarding the nature, cause and overall effect of the salinity in the Aquifer. To the contrary, the Debtors' analysis is more consistent with reality and it has adequately identified and initiated remediation efforts which more realistically address the scope of any contamination potentially caused by the Debtors. In fact, the Texas Railroad Commission ("RRC"), the governing body regulating environment damage and proposed remediation, has reviewed the Debtors' analysis and approved its remediation work plan (the "RRC-Approved Plan"). See Exhibit "A", the November 22, 2010 RRC Work Plan

and Exhibit "B" the November 30, 2010 Approval of the Work Plan. Accordingly, the Debtors assert that the City's Claims should be estimated at $0.00 for both voting and allowance.

Setting aside whether the City has any claim against the Debtors' Estates, the law is clear that any claim is not an administrative expense claim pursuant to 11 U.S.C. § 503. Rather, the City, to the extent it has any claim, is simply an unsecured claimant. Moreover, any Claim of the City is actually barred by the applicable statute of limitations and laches. Accordingly, the Debtors request that the Court estimate the City's Claims at $0.00 for both voting and allowance.

## FACTUAL BACKGROUND

The City asserts that the Debtors are responsible for the "release of a tremendous amount of water contaminated with chloride (and other harmful elements) into the [Aquifer]." *See* City of Midland's Motion to Estimate (at ¶ 1). The City asserts that the Debtors have created a "plume of chloride infested water that has contaminated approximately 6.2 billon gallons of water within the Aquifer. *See id.* at ¶ 2. The City asserts that the Debtors alleged actions have resulted in Claims with a value of over $60 million. *See id.* at ¶ 51.

While the City's putative claims are daunting on their face, they are neither the responsibility of the Debtors' nor supported by scientific fact. In the Estimation Motion, the City paints a decidedly bleak picture, depicting the Debtors as the sole cause for the high levels of salinity throughout the entire Aquifer, which is an area of approximately 600,000 acre feet and contains in excess of 6.2 billion gallons of water. *See* Estimation Motion at ¶ 3 (alleging that costs of remediation should be "borne by the offending

party—namely, the Debtors."). To be sure, the Debtors take their environmental obligations seriously. However, the City's assertions regarding the Debtors' alleged contamination of the Aquifer are generally without factual or scientific support. Instead, the evidence will show that the City is attempting to place blame where it does not lie.[2] The Debtors' analysis and position on the claims is supported by the RRC-Approved Plan.

As will be demonstrated fully at the Estimation Hearing, the Estimation Motion is a decidedly incomplete picture regarding the scope and cause of any contamination of the Aquifer. The City omits numerous critical facts from its Estimation Motion. Among them, the City fails to advise the Court of the lack of scientific data supporting the City's claims. For example, the City paints the picture of a pristine Aquifer with water of the highest quality. The reality is that the water in the Aquifer is of variable quality and has a naturally high level of both dissolved solids and salinity, which increase at depth, making the use of the water as drinking water impossible without treatment to remove the salinity. Further, the City fails to advise the Court that the location of the Debtors' well—the Tubb #1A—is located west of the area the City alleges is contaminated and west of the area the City plans to utilize for municipal drinking water wells  The established groundwater flow is in a southwesterly direction. In other words, to accept the City and its "experts" position is to believe that the water from the Tubb #1A flowed contrary to the established groundwater flow and is impacting waters the City claims is pristine.

---

[2] The Debtors are not assuming any burden of proof. Indeed, the City has the burden to prove its claims. However, given the blatant mischaracterizations and unsupported assertions in the Estimation Motion, the Debtors, out of an abundance of caution, file this Response to prevent any misunderstanding and expose the facial invalidity of the City's claim.

**DEBTOR'S RESPONSE TO CITY OF MIDLAND'S
MOTION FOR ESTIMATION OF CLAIMS AND
OBJECTION TO CITY OF MIDLAND'S REQUEST FOR
ADMINISTRATIVE CLAIM AND BRIEF IN SUPPORT—Page 4**

The Texas Railroad Commission, ("RRC") the state agency charged with regulating violations of operators like the Debtors, completely agrees with the Debtors' determination of the location of any contamination attributable to the Debtors' activities and has approved the Debtors' remediation work plan. These facts make it obvious that the City is attempting to improperly saddle the Debtors with liability it does not have.

### A. The Tubb #1A Well and the T-Bar Ranch

The City's theory of liability is that one of the Debtors' Tubb #1A Well (the "Tubb #1A"), is the "sole source" of the "plume of contamination" in certain land known as the "T-Bar Ranch" located in Winkler and Loving Counties. In 1970, the Debtors' predecessor in interest, ARCO, drilled the Tubb #1A Well. The Tubb #1A was a dry hole and subsequently converted into a saltwater disposal well in 1970. In 1984, predecessors of the Debtors purchased certain properties from ARCO, including the Tubb #1A, in 1984.

Five years prior to the drilling and conversion of the Tubb #1A to a saltwater disposal well, the City purchased 20,229 acres in Winkler and Loving Counties (the "T-Bar Ranch"). The T-Bar Ranch was purportedly purchased to be a source of future water for the City.[3] In 1965, the City retained a hydrologist, Ed Reed, to perform an initial groundwater evaluation. Mr. Reed completed a report on the groundwater in the T-Bar Ranch (the "Reed Report").

---

[3] Notably, the City has done nothing to develop the water in the T-Bar Ranch, save and except for a feasibility study in 2005. The study in question indicates that the cost to develop the T-Bar Ranch and supply water to the City's residents will be between $60-$90 million. At the risk of stating the obvious, the cost to develop this putative future water source is curiously similar to the alleged "damages" sought by the City against the Debtors.

Between 1965 and 2000, the City through its consultants performed tests and monitored the water in the T-Bar Ranch and surrounding areas. The existence of high salinity was noted from the beginning. During those thirty plus years, there were no problems reported with respect to the water in the T-Bar Ranch. The City and its consultants continued to monitor and test the water in the T-Bar Ranch. Unknown to the Debtors at the time, in 2003, the City's consultant's for the first time allegedly detected elevated chlorides when compared to historical results. According to the City, this prompted further investigation and testing that continued during 2004.

In the summer of 2005, the Debtors discovered damaged casing in the Tubb #1A and replaced the casing.[4] After the Debtors discovered damaged casing in the Tubb #1A, the City notified the Debtors of the results of the tests in 2003 that found elevated chlorides in the water at the T-Bar Ranch. Since that time, the City has unsuccessfully sought to blame the Debtors for contaminating the entire aquifer.

### B. The City's Theory Is Without Scientific Support

The City seeks to prove that the Debtors, through the Tubb #1A, are the sole cause of all contamination in the Aquifer. The City's theory is without scientific support. While the City will have "experts" that will advocate the City's theory, the reality is that the City's theories are without testing and data to support them. In other words, the City's theories are nothing more than the "ipse dixit" of their experts. Precisely the sort of expert testimony forbidden by *Daubert* and its progeny.

The City's theory is that the Tubb #1A is the sole cause of a massive plume of chloride and other harmful elements in the Aquifer. This alleged plume is located to the

---

[4] In the summer of 2007, the Tubb #1A was plugged and abandoned. In March 2008, the Tubb #1A was recompleted as a Groundwater Recovery Well.

**DEBTOR'S RESPONSE TO CITY OF MIDLAND'S
MOTION FOR ESTIMATION OF CLAIMS AND
OBJECTION TO CITY OF MIDLAND'S REQUEST FOR
ADMINISTRATIVE CLAIM AND BRIEF IN SUPPORT—Page 6**

east of the Tubb #1A. The location is significant because no contamination has been detected to the east of the Tubb #1A as verified by testimony from the RRC technical representative in charge of the remediation. Moreover, the peer reviewed literature and studies on the Aquifer all conclude that the groundwater flow immediately below the T-Bar Ranch is in a southwesterly direction.

In order to substantiate its claim of damage, the City relies upon testing in a failed well over a mile up gradient from the injection site.[5] Indeed, as the evidence will show, the City and its experts have no data (and have done no testing) to support their theory that the alleged water beneath the Tubb #1A flowed in the opposite direction of the established groundwater flow.

The City's theory and analysis is further undermined by its failure to account for the natural salinity existing in the Aquifer. The techniques employed in the Debtors' analysis distinguish the characteristics of native chlorides in the water from chlorides which are produced from oil & gas operations. The Debtors' analysis, as recognized and approved by the RRC, relies on the recognition of the chemical signature of brine which was caused from the Debtors' operations. The natural salinity in the Aquifer, which is not contaminated water and thus falls outside of the RRC-Approved Plan, has a distinct and different chemical signature which the City simply ignores.

The City also refuses to recognize that contaminated water is naturally much denser than native water and will sink into the poor quality water that occurs at depth in the Aquifer, a fact that helps explain the observed distribution of contamination and the absence of contamination in the area where the City claims a "plume" exists.

---

[5] The well relied upon by the City to demonstrate the change in water quality over time was not only up gradient, but the well from which it was taken had completely failed and had to be shut in making any sample corrupt and unreliable.

**DEBTOR'S RESPONSE TO CITY OF MIDLAND'S**
**MOTION FOR ESTIMATION OF CLAIMS AND**
**OBJECTION TO CITY OF MIDLAND'S REQUEST FOR**
**ADMINISTRATIVE CLAIM AND BRIEF IN SUPPORT—Page 7**

### C. The RRC Has Accepted the Debtors' Remediation Plan.

The RRC, the governmental agency responsible for overseeing the required remediation, finalized its review and analysis of the competing reports submitted by the City and the Debtors and ultimately agreed with the Debtors and accepted the RRC-Approved Plan. *See* the Work Plan, Exhibit "A" and the RRC Approval, Exhibit "B". Simply put, the Debtors have not attempted to shirk any environmental responsibility for their operations and in fact, have over the last four years, implemented a remediation program which has, thus far, cost over $2 Million. The Debtors have justifiably insisted that they only be responsible for costs and remediation that could be properly attributed to their operations. As evidenced by the RRC's acceptance of the Debtors' remediation work plan, the RRC agrees the Debtors are appropriately handling their environmental obligations.

The City has now refused to acknowledge the findings and conclusions by the RRC and has actually filed an appeal of the RRC-Approved Plan.[6]

## LEGAL ARGUMENT

### A. THE CITY DOES NOT HAVE AN ADMINISTRATIVE EXPENSE CLAIM.

Section 503 of the Bankruptcy Code, in relevant part, provides:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A) the actual, necessary costs and expenses of *preserving the estate* . . .

11 U.S.C. § 503(b)(1)(A) (emphasis added).

---

[6] The Debtors have challenged the City's appeal both on procedural and substantive grounds and believes the appeal will ultimately be dismissed by the RRC.

DEBTOR'S RESPONSE TO CITY OF MIDLAND'S
MOTION FOR ESTIMATION OF CLAIMS AND
OBJECTION TO CITY OF MIDLAND'S REQUEST FOR
ADMINISTRATIVE CLAIM AND BRIEF IN SUPPORT—Page 8

The City claims it is the owner of the groundwater under the land it owns in Winkler County. *See* Estimation Motion at ¶ 1 ("The rights to the fresh water in the Aquifer are owned by Midland. . ."). Thus, the groundwater is the property of the City, not property of the Debtors' Estate. Consequently, there can be no administrative expense claim for remediation by the City as any such remediation is not preserving estate property. Nor can it be accurately said that the Debtors' are attempting to abandon environmentally hazardous property without addressing such issues.

The City will likely attempt to rely on cases related to the inability of a debtor or Chapter 7 trustee to abandon environmentally hazardous property without addressing such issues and/or providing an administrative expense claim for such clean up. *See e.g.,* Estimation Motion at ¶ 38 (citing *In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 438 (5th Cir. 1998)). However, in all such cases, the property at issue was *estate* property. *See e.g.*, *In re Shore Co., Inc.*, 134 B.R. 572, 576 (Bankr. E.D. Tex. 1991) (addressing motion to abandon "environmentally hazardous estate property").

Here, the City is (at best) attempting to convert, a common law pre-petition unsecured, unliquidated property damage claim to administrative priority status. The Court should decline the City's request for such relief to which it is not legally entitled. While the Debtors' vigorously dispute the nature and extent of any claim, even assuming a valid claim exists, it is nothing more than an unsecured claim for damages based on state law causes of action.

All of the cases granting an administrative expense claims for remediation of environmental hazards all share the same common elements: (a) the remediation was required by applicable environmental laws and (b) the property at issue was estate

property. *See e.g.*, *In re H.L.S. Energy Co., Inc.*, 151 F.3d 434 (5th Cir. 1998); *In re American Coastal Energy, Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009); *In re Shore Company, Inc.*, 134 B.R. 572 (Bankr. E.D. Tex. 1991). The property (water in the Aquifer) owned by the City is not property of the estate nor is it property that the Debtor will abandon. Thus, the City can have no administrative expense claim for its alleged damages.

The only other method by which the City could claim an administrative claim is if it were the regulatory authority that had the "police power" to require remediation of the aquifer and had actually issued an Order directing the Debtors to remediate property of the estate under an Administrative Order or injunctive relief. In other words, if the RRC had actually either issued an Administrative Order requiring the Debtors to remediate the *Debtors property* due to an imminent and substantial endangerment to public health or the environment, or if the RRC was incurring post-petition costs to remediate the *Debtors property,* then the RRC would have the right to seek an administrative claim. (See *In re Chateaugay Corp.,* 944 F.2d 997 (2nd Cir. 1991); *In re Wall Tube & Metal Products Co.,* 831 F.2d 118, 122 (6th Cir. 1987). However, the City of Midland is neither the regulating authority who can assert "police powers" against the Debtors and issue injunction or Administrative Orders, nor is the City expending post-petition monies to remediate property of the Debtors that is causing an imminent and substantial endangerment to health and the environment. That authority in this instance, falls to the RRC, and that regulatory body has agreed with the Debtors remediation work plan, and has not sought any injunctive relief or an Administrative Order, as the Debtor is complying with the RRC's requirements for remediation of any contamination for which the Debtors are

responsible. Thus, the Debtors have satisfied their obligations under the applicable environmental laws to the satisfaction of the governing regulatory body, here the RRC, and there can be no administrative expense claim by the City. At best, the City has a contingent, unliquidated unsecured property damage claim. However, as described below, any such claim is unquestionably time barred.

### B. THE CITY'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS, AND/OR LACHES

The City is claiming damage to its property from the actions of the Debtors. *See e.g.,* Estimation Motion at ¶ 1 ("Sometime in 2005, it became clear that one (or more) of the Debtors' underground injection wells being used in the Crittendon field leaked. The leaks resulted in the release of a tremendous amount of water contaminated with chloride (and other harmful elements) into the Cenozoic Pecos Alluvium Aquifer."). The City, by its own admissions, knew in 2005 of potential contamination. A suit for damages to property is subject to a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.003.[7]

The City's claims are also in the nature of a claim for permanent damages. *See e.g.,* Estimation Motion at ¶ 2 ("Because of these leaks, the Aquifer is now contaminated with a "plume" of chloride infested water that is (and has been for some time) migrating

---

[7] TEX. CIV. PRAC. & REM. CODE § 16.003, in relevant part, provides: "(a) Except as provided by Sections 16.010, 16.0031, and 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues." None of the referenced subsections have any application to the City's claims. *See e.g.,* TEX. CIV. PRAC. & REM. CODE § 16.010 (misappropriation of trade secrets); TEX. CIV. PRAC. & REM. CODE § 16.0031 (asbestos-related or silica related injuries); and TEX. CIV. PRAC. & REM. CODE § 16.0045 (five year limitations for certain criminal related conduct).

**DEBTOR'S RESPONSE TO CITY OF MIDLAND'S
MOTION FOR ESTIMATION OF CLAIMS AND
OBJECTION TO CITY OF MIDLAND'S REQUEST FOR
ADMINISTRATIVE CLAIM AND BRIEF IN SUPPORT—Page 11**

through the Aquifer; thereby continually contaminating more-and-more fresh water.").[8] An action for permanent damages accrues, for limitations purposes, upon the date of discovery of the first actionable injury, not on the date the damages are fully ascertainable. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex. 1984), overruled on other grds, *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 281 n. 78 (Tex. 2004); *Corley v. Exxon Pipeline Co.*, 821 S.W.2d 435, 437 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Thus, an action to recover damages for permanent injury must be brought within two years from the date of discovery of the initial injury. *See id.* Again, at the latest this was the summer of 2005. *See* Estimation Motion at ¶ 1; *see also* July 21, 2005, Letter from City of Midland to Debtors, Exhibit __ (noting that the City had discovered elevated levels of chlorides in the T-Bar Field); Estimation Motion at ¶ 10 ("Midland began notifying the Debtors in June through August 2005 of increased chloride levels in the Aquifer.").

Further, the City cannot rely on § 16.061 of the Tex. Civ. Prac. & Rem. Code to avoid a statute of limitations defense because the City, knowing of the existence of contamination, never asserted any claim in any tribunal and waited over four (4) years after the Debtor expended over $2 million dollars to remediate the contamination, only to rush in when the bankruptcy was filed and now contends the entire aquifer is contaminated. The City's claims, should thus, be barred based on laches.

---

[8] The City's allegations make clear that their claim is one for permanent damages. A permanent injury is constant and continuous as opposed to occasional, intermittent, or recurrent. As the Texas Supreme Court has stated, a permanent injury results "from an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely." *Bayouth*, 671 S.W.2d at 868; *Atlas Chemical Industries, Inc. v. Anderson*, 524 S.W.2d 681, 684 (Tex. 1975). Temporary injuries, however, are injuries that are not continuous, but sporadic and contingent upon some irregular forces such as rain. *See id.*

**DEBTOR'S RESPONSE TO CITY OF MIDLAND'S
MOTION FOR ESTIMATION OF CLAIMS AND
OBJECTION TO CITY OF MIDLAND'S REQUEST FOR
ADMINISTRATIVE CLAIM AND BRIEF IN SUPPORT—Page 12**

Wherefore, the Debtor prays that the City of Midland's claims of administrative and/or unsecured liability be denied in full.

Dated: December 31, 2010.    Respectfully Submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By:   /s/ Mary J. Koks
Joe E. Marshall
Texas Bar No. 13031100
Mary J. Koks
Texas Bar No. 04856800
3800 Lincoln Plaza
500 North Award Street
Dallas, Texas 75201-6659
Telephone:  (214) 855-7500
Facsimile:   (214) 978-4365
jmarshall@munsch.com
kpatrick@munsch.com
mkoks@munsch.com

COUNSEL FOR HERITAGE CONSOLIDATED, LLC, DEBTOR AND DEBTOR IN POSSESSION

**ROCHELLE McCULLOUGH LLP**

By:    /s/ Kevin D. McCullough
Kevin D. McCullough
Texas Bar No. 00788005
Kerry Ann Miller
Texas Bar No. 24050875
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
Telephone:  (214) 953-0182
Facsimile:   (214) 953-0185
kdm@romclawyers.com
kmiller@romclawyers.com

COUNSEL FOR HERITAGE STANDARD CORPORATION, DEBTOR AND DEBTOR IN POSSESSION

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that, on December 31, 2010, the forgoing document was served on all parties requesting service via this Court's ECF system and on all parties listed on the attached master service list via first class United States mail, postage prepaid.

              /s/ *Mary Koks*
              Mary Koks

HERITAGE CONSOLIDATED LLC
HERITAGE STANDARD CORPORATION

**MASTER/LIMITED SERVICE LIST**
(as of 12/20/10)

| | | |
|---|---|---|
| **Debtor:**<br>Heritage Standard Corporation<br>2911 Turtle Creek Blvd., Ste. 850<br>Dallas, TX 75219 | **Debtor**:<br>Heritage Consolidated, LLC<br>2911 Turtle Creek Blvd., Ste. 850<br>Dallas, TX 75219 | **U.S. Trustee:**<br>Office of the United States Trustee<br>1100 Commerce Street Room 976<br>Dallas TX 75242-1496 |

**GOVERNMENTAL AGENCIES**

| | | |
|---|---|---|
| Special Procedures Staff<br>Internal Revenue Service<br>Mail Code 5020-DAL<br>1100 Commerce St., Rm. 9B8<br>Dallas, TX 75242 | Office of the Attorney General<br>Main Justice Building, Room 5111<br>10th & Constitution Ave., N.W.<br>Washington, DC 20530 | State Comptroller of Public Accounts<br>Revenue Accounting Division<br>Bankruptcy Section<br>PO Box 13528<br>Austin TX 78711 |
| Texas Workforce Commission<br>TEC Building – Bankruptcy<br>101 East 15th Street<br>Austin TX 78778 | Office of the United States Attorney<br>3rd Floor, 1100 Commerce Street<br>Dallas, TX 75242 | |

**CREDITORS' COMMITTEE**

| | | |
|---|---|---|
| Aquila Drilling Co., L.P.<br>Attn: Justin Zukoff<br>5950 Berkshire Ln., Ste. 1100<br>Dallas, TX 75225-5854 | Baker Hughes Inc.<br>Attn: Susan Wooley<br>2929 Allen Parkway, #2100<br>Houston, TX 77019 | ~~M-I Swaco, LLC~~<br>~~Attn: Linda Norvell~~<br>~~5950 North Course Dr.~~<br>~~Houston, TX 77072~~ |
| Pathfinder Energy Services, Inc.<br>Attn: Greg Attrep<br>1310 Rankin Rd.<br>Houston, TX 77033 | Simons Petroleum<br>Attn: David Mulroney<br>210 Park Avenue, Ste.1800<br>Oklahoma City, OK 73102 | Weatherford International<br>Attn: Simon Lin<br>515 Post Oak Blvd., Ste. 600<br>Houston, TX 77027 |

**Counsel for Committee**:
Brian A. Kilmer, J. Meritt Crosby
Sara Mya Keith
Okin Adams & Kilmer LLP
3102 Maple Ave., Ste. 240
Dallas, TX 75201

**SECURED CREDITORS**

~~CIT Capital USA, Inc.~~
~~Attn: David Bornstein~~
~~700 Louisiana, Ste. 5200~~
~~Houston, TX 77002~~

CIT Capital USA, Inc.
c/o Pat Flynn
383 Main Ave., 6th Fl.
Norwalk, CT 06851

Counsel for CIT:

Richard H. London
Vinson & Elkins
2001 Ross Avenue, Suite 3700
Dallas, TX 75201-2975

Counsel for CIT:

Harry A. Perrin
Vinson & Elkins
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760

**20 LARGEST UNSECURED CREDITORS**

Aquila Drilling Company
Attn: Warren Ayres
2525 Kell Blvd., Ste. 405
Wichita Falls, TX 76308

~~Pathfinder Energy Services, Inc.~~
~~Attn: George Moody~~
~~6213 W. Interstate 20~~
~~Midland, TX 79706-3347~~

Weatherford US LP
Attn: Chrissy Sebesta
11943 FM 529 Rd.
Houston, TX 77041

C. C. Forbes Company LP
Attn: Franchesca Casas
4783 S. US Highway 281
Alice, TX 78332

SWACO
Attn: Maira Sosa
8522 Andrews Hwy.
Odessa, TX 79765-2831

Aries Well Service, Inc.
Attn: Glenda Saxon
P. O. Box 784
Hobbs, NM 88240

Simons Petroleum
Attn: Susan Bodger
210 Park Avenue, Ste. 1800
Oklahoma City, OK 73102

Coastal Chemical Co., LLC
Attn: Carrie Durk
6133 Highway 90E
Broussard, LA 70518

Patterson Rental Tools
Attn: Barbara Lawrence
1208 Airport Rd.
Alice, TX 78332

ITS Rental & Sales
Attn: Chris Bowman
10708 Hwy. 191
Midland, TX 79707

Arguijo Oilfield Serv., Inc.
Attn: Pete Hibler
2800 W. 42nd St.
Odessa, TX 79764

~~Smith International, Inc.~~
~~1310 Rankin Rd.~~
~~Houston, TX 77073~~

Nave Oil & Gas, LLC
Attn: Steve Nave
4008 N. Grimes #137
Hobbs, NM 88240

O-Tex Pumping, LLC
Attn: Lisa Ford
7303 N. Highway 81
Duncan, OK 73533

Frac Tech Services, Ltd.
Attn: Jeff Vogt
16858 IH 20
Cisco, TX 76437

Well-Foam, Inc.
Attn: Stewart McKeehan
1330 East 8th St., Ste. 320
Odessa, TX 79761

Liberty Pump & Supply Co.
Attn: Jennifer Ramirez
816 E. Hendricks Blvd.
Wink, TX 79789

Double R Pipe & Supply, Inc.
Attn: Amy Kirkpatrick
County Rd. 97
Lovington, NM 88260

Baker Oil Tools
Attn: Christopher J. Ryan
9100 Emmott Rd.
Houston, TX 77040

O-D Rentals
Attn: Ryan J. McNeel
8701 W. County Rd.
Odessa, TX 79764

## NOTICE PARTIES

Mark A. Weisbart
James S. Brouner
Law Offices of Mark A. Weisbart
12770 Coit Rd., Ste. 541
Dallas, TX 75251

Phil F. Snow
Kenneth Green
Snow Fogel Spence LLP
2929 Allen Parkway, Ste. 4100
Houston, TX 77019

Carl Dore, Jr.
Kristin S. Wallis
Dore & Associates, Attorneys, P.C.
17171 Park Row, Suite 350
Houston, TX 77084

Elizabeth Weller
Linebarger Goggan Blair & Sampson, LLP
2323 Bryan St., Ste. 1600
Dallas, TX 76201

Harry A. Perrin
Vinson & Elkins LLP
1001 Fannin St., Ste. 2500
Houston, TX 77002-6670

Richard H. London
Rebecca L. Petereit
Vinson & Elkins LLP
2001 Ross Ave., Ste. 3700
Dallas, TX 75201-2975

Philip G. Eisenberg
Locke Lord Bissell & Liddell LLP
600 Travis St., Ste. 2800
Houston, TX 77002

Gregory A. Lowry
Locke Lord Bissell & Liddell LLP
2200 Ross Ave., Ste. 2200
Dallas, TX 75201

Primeshares
Attn: RVS
261 Fifth Ave., 22nd Fl.
New York, NY 10016

Sean M. Guerrero
Angela N. Staples
Fletcher Law Offices, P.C.
6 Desta Dr., Ste. 5900
Midland, TX 79705

Thomas S. Henderson
Burleson Cooke LLP
711 Louisiana, Suite 1701
Houston, TX 77002

Office of the United States Trustee
Attn: Erin M. Schmidt
1100 Commerce Street Room 976
Dallas TX 75242-1496

John E. Leslie
John Leslie PLLC
1216 Florida Dr., Ste. 140
Arlington, TX 76015

Ronald A. Simank
Schauer & Simank, P.C.
615 North Upper Broadway, Ste. 2000-MSC 159
Corpus Christi, TX 78477

William Thomas McLain
Reagan & McLain
6060 N. Central Expwy., Ste. 690
Dallas, TX 75206

J. Robert Forshey
Kristin Schroeder
Forshey & Prostok, L.L.P.
777 Main St., Ste. 1290
Fort Worth, TX 76102

David G. Aelvoet
Linebarger Goggan Blair & Sampson, LLP
711 Navarro, Ste. 300
San Antonio, TX 78205

John E. Leslie
John Leslie PLLC
1216 Florida Dr., Ste. 140
Arlington, TX 76015

Terry W. Rhoads
Cotton Bledsoe Tighe & Dawson, P.C.
500 West Illinois, Ste. 300
Midland, TX 79701

Jeffrey F. Thomason
Todd, Barron, Thomason & Hudman, P.C.
3800 E. 42nd St., Ste. 409
Odessa, TX 79762

George S. Henry, Esq.
The Law Office of George S. Henry
4201 Spring Valley Rd., Ste. 1102
Dallas, TX 75244

Edith Stuart Phillips / Matthew P. Crouch
Texas Attorney General's Office
Bankruptcy and Collections Division
P. O. Box 12548
Austin, TX 78711-2548

Kevin M. Maraist
Anderson Lehrman Barre & Maraist, LLP
1001 Third St., Ste. 1
Corpus Christi, TX 78404

Michael W. Bishop
H. Joseph Acosta
Looper Reed McGraw, P.C.
1601 Elm St., Ste. 4600
Dallas, TX 75201

| | | |
|---|---|---|
| Iron Mountain Information Management, Inc.<br>c/o Frank F. McGinn<br>Bartlett Hackett Feinberg P.C.<br>155 Federal Street, 9th Floor<br>Boston, MA 02110 | Tyler Well Services, Inc.<br>c/o Jeffrey R. Erler / Brad W. Odell<br>Bell Nunnally & Martin LLP<br>3232 McKinney Avenue, Suite 1400<br>Dallas, TX 75204 | Brad Miller<br>Fletcher Law Offices, P.C.<br>6 Desta Dr., Ste. 5900<br>Midland, TX 79705 |
| Holland Neff O'Neil<br>Michael S. Haynes<br>Gardere Wynne Sewell LLP<br>1601 Elm St., Ste. 3000<br>Dallas, TX 75201 | Michelle E. Shriro<br>Singer & Levick, P.C.<br>16200 Addison Road, Suite 140<br>Addison, TX 75001 | Lawrence M. Jacobson<br>Glickfeld, Fields & Jacobsen LLP<br>315 South Beverly Dr., Ste. 415<br>Beverly Hills, CA 90212 |
| Barbara Hargis<br>Harris, Finley & Bogle, P.C.<br>777 Main St., Ste. 3600<br>Fort Worth, TX 76102 | Kent Hale<br>Craig, Terrill, Hale & Grantham, L.L.P.<br>9816 Slide Rd., Ste. 201<br>Lubbock, TX 79424 | Jason G. Cohen<br>Linda R. Rovira<br>Bracewell & Giuliani, LLP<br>711 Louisiana, Ste. 2300<br>Houston, TX 77002 |
| Southern Union<br>Attn: Bob Holmes<br>301 Commerce St.<br>Suite 700<br>Ft. Worth, TX 76102 | Keith Stretcher, City Attorney<br>City of Midland<br>300 North Loraine, Ste. 320<br>Midland, TX 79701 | Ronald J. Johnson<br>Law Offices of Ronald J. Johnson<br>111 Soledad, Ste. 1350<br>San Antonio, TX 78205 |
| Barbara Hargis<br>Harris, Finley & Bogle, P.C.<br>777 Main St., Ste. 3600<br>Fort Worth, TX 76102 | Carl Dore, Jr.<br>Kristin S. Wallis<br>Dore & Associates, Attorneys, P.C.<br>17171 Park Row, Suite 350<br>Houston, TX 77084 | Luke Madole<br>Lisa M. Lucas<br>Carrington Coleman Sloman & Blumenthal, LLP<br>901 Main Street, Suite 5500<br>Dallas, TX 75202 |
| Charles E. Williams<br>Barking Dog Enterprises, Inc.<br>6212 Wolf Ridge Drive<br>Plano, TX 75024 | Barking Dog Enterprises, Inc.<br>c/o Michael C. Moody<br>O'Rourke & Moody<br>55 W. Wacker Drive, 14th Floor<br>Chicago, IL 60601 | Gyrodata Incorporated<br>c/o Julie A. Linares<br>The Linares Law Firm, P.L.L.C.<br>2911 Turtle Creek Boulevard, Suite 300<br>Dallas, TX 75219 |
| Brian P. Vezey<br>Cozen O'Connor<br>One Houston Center<br>1221 McKinney Street, Suite 2900<br>Houston, TX 77010 | | |

MHDocs 2866004_9 11672.2