**EXHIBIT B** **TO EXPEDITED MOTION TO (A) SELL SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANT RELATED RELIEF; OR, IN THE ALTERNATIVE, MOTION TO (A) APPROVE THE BACK-UP PURCHASE AND SALE AGREEMENT; AND (B) GRANT RELATED RELIEF**

# PURCHASE AND SALE AGREEMENT

**for Oil and Gas Properties**
**located in**

**Winkler and Loving Counties, State of Texas**
**and Lea County, State of New Mexico**
**(Section 6 and Non-Section 6)**

**by and among**

**Heritage Consolidated LLC**

**and**

**Heritage Standard Corporation**

**as "Sellers"**

**and**

[_____]

**"Buyer"**

**Dated_____**

CONFIDENTIAL

# TABLE OF CONTENTS

**Page**

1.  **DEFINITIONS; CONSTRUCTION**. ............................................................. 1

2.  **PURCHASE AND SALE**. .......................................................................... 7

3.  **CONSIDERATION**. ................................................................................ 10

4.  **ASSIGNMENT EFFECTIVE DATE AND CLOSING**.............................. 10

5.  **REPRESENTATIONS AND WARRANTIES OF SELLERS** ................... 10

6.  **REPRESENTATIONS AND WARRANTIES OF BUYER** ...................... 11

7.  **CASUALTY LOSS**. ................................................................................ 12

8.  **COVENANTS PRIOR TO CLOSING**. ..................................................... 12

9.  **ADDITIONAL COVENANTS**. ................................................................ 14

10. **CONDITIONS PRECEDENT TO CLOSING**............................................ 15

11. **CLOSING** ............................................................................................... 17

12. **POST CLOSING OBLIGATIONS**. ......................................................... 18

13. **INDEPENDENT INVESTIGATION AND DISCLAIMER** ....................... 19

14. **TERMINATION**....................................................................................... 20

15. **MISCELLANEOUS**. ............................................................................... 21

## **Attachments**

Exhibits A-1(a) and A-1(b)    - Leases
Exhibits A-2(a) and A-2(b)    - Wells

Exhibit B                     - Excluded Items

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (the **"Agreement"**) is made this _____ day of _____, 2011 ("**Execution Date**") by and among **HERITAGE CONSOLIDATED LLC**, a Texas limited liability company, located at 2911 Turtle Creek Blvd., Suite 850, Dallas, Texas 75219 ("**HCL**"), **HERITAGE STANDARD CORPORATION**, a Texas corporation, located at 2911 Turtle Creek Blvd., Suite 850, Dallas, Texas 75219 ("**HSC**"), (HSC and HCL, are sometimes collectively referred to herein as the **"Sellers"**) and [_____], (Referred to herein as **"Buyer"**). The Buyer and Sellers may be collectively referred to herein as the **"Parties"** and individually as a **"Party."**

## RECITALS

**WHEREAS**, on September 14, 2010, Sellers commenced a voluntary case pursuant to Chapter 11 of Title 11 of the Bankruptcy Code, as defined herein, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, jointly administered as Case Number 10-36484-HDH-11;

**WHEREAS**, Sellers owns the Properties, as defined herein; and

**WHEREAS**, subject to the entry of an order from the Bankruptcy Court (as defined herein), Buyer desires to purchase the Properties and Sellers desires to sell, assign, transfer and convey the Properties to Buyer on the terms and conditions set forth in this Agreement and in accordance with section 363 and other application provisions of the Bankruptcy Code.

## AGREEMENT

1.  **Definitions; Construction**.  Unless provided otherwise in this Agreement or the Exhibits, each capitalized term in this Agreement and the Exhibits have the meaning given to it in this Section.

    (a)      **"Affiliate"** shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

    (b)      **"Agreement"** has the meaning given to it in the introductory paragraph.

    (c)      **"Assignment and Bill of Sale"** has the meaning given to it in Section 11 .

    (d)      **"Assignment Effective Date"** has the meaning given to it in Section 4.

    (e)      **"Assumed Obligations"** means the following obligations and no others, but expressly excluding any Retained Liabilities, to-wit: (a) all duties and obligations of Sellers arising from and after the Assignment Effective Date, under the terms of all oil, gas and mineral leases, easements and similar agreements constituting part of the Properties, as well as under the terms and provisions of all Contracts constituting part of the Properties and under any Contracts entered into by the Sellers after the Execution Date which are both attributable to, and constitute part

of, the Property, and (b) all Third Party claims, demands, violations, actions, assessments, penalties, fines, costs, expenses, obligations or other liabilities with respect to the ownership, operation or maintenance of any of the Property from and after the Assignment Effective Date.

(f)    **"Bankruptcy Cases"** shall mean the bankruptcy cases of HCL and HSC jointly administered under Bankruptcy Case No. 10-36484-HDH-11 currently pending in the Bankruptcy Court.

(g)    **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

(h)    **"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532, as may have been or are amended from time to time.

(i)    **"Bankruptcy Rules"** shall mean, collectively, (i) the Federal Rules of Bankruptcy Procedure, (ii) the Federal Rules of Civil Procedure, and (iii) the local rules of the Bankruptcy Court, as (i) through (iii) may be applicable to the Bankruptcy Cases and proceedings therein and as (i) through (iii) may have been or are amended from time to time.

(j)    **"Business Day"** means between 8:00 a.m., Central Time and 5:00 p.m., Central Time, on any Day other than a Saturday or Sunday or a Day on which banking institutions in Dallas, Texas are authorized by Law to close.

(k)    **"Buyer"** has the meaning given to it in the introductory paragraph of this Agreement.

(l)    **"Capital Expenditures"** means, with respect to the Properties, the sum of (a) the cost of (i) drilling and completion of any development and/or exploration well; (ii) providing surface, lease, and well equipment to produce such wells; (iii) deepening and/or recompleting an existing wellbore to a formation which has not previously produced; and (iv) renewing or extending any existing Lease included in the Properties; and (b) imputed interest on such costs calculated at a rate equal to 10% per annum from the date such costs are incurred until such costs are repaid in full.

(m)    **"Casualty Loss"** means an instance in which any portion of the Property is damaged, destroyed or taken by condemnation or eminent domain or suffers a reduction in value as a result of a volcanic eruption, act of God, terrorist act, fire, explosion, earthquake, wind storm, flood, drought, condemnation, the exercise of eminent domain, confiscation or seizure.

(n)     "**Claims**" means any and all claims, demands, suits, causes of action, losses, damages, liabilities, fines, penalties, expenses, and costs (including attorneys' fees and costs of litigation), whether known or unknown.

(o)     "**Closing**" or "**Closing Date**" has the meaning given to it in Section 4.

(p)     "**Contracts**" has the meaning given to it in the definition of "Properties".

(q)     "**Data**" means originals or copies (electronic media, hardcopy media or both) of the Sellers' books, records and files, wherever located and whether in the possession of Sellers' representatives, consultants, or employees, including all Contracts and any and all title, Tax, financial, joint interest billing, technical, engineering, environmental and safety records and information, and, to the extent available, such Data in an electronic format that relate to the Properties. "Data" shall include originals of lease files, land files, wells files, rights of way, easements, title opinions, run sheets, title documents, land data, and revenue decks, division order files, abstracts, title files, engineering and/or production files, maps, accounting records, proprietary seismic data, consultant's geologic, geophysical and engineering reports, studies and information and engineering, facility design (including equipment data books and design drawings), electrical (including equipment data books and design drawings), geological and geophysical information, automation (including equipment data books and design drawings, field automation software, piping and instrument drawings), mechanical, maintenance, property, property tax (including 2008 and 2009 filed ad valorem tax returns), contract, environmental, U.S. Department of Transportation documents and records, operational and land books, records, drawings, maps, manuals and files in their present form, and other information owned by Sellers or copies thereof related to the Properties, and all rights relating thereto.

(r)     "**Day**" means a calendar day consisting of twenty-four (24) hours from midnight to midnight central time.

(s)     "**Delivery Point**" means the tanks and facilities located at the Black Kettle #1W disposal well located 1420' FEL & 2180' FSL of Section 7, Block 74, PSL Survey, and the Little Wolf #1W disposal well located1660' FEL & 223' FNL of Section 16, Block C-23, PSL Survey, both in Winkler County, Texas, and to such other points as to which the Parties hereto may mutually agree.

(t)     "**Designation**" has the meaning given to it in Section 10.

(u)     "**Easements**" has the meaning given to it in the definition of "Properties".

(v)     "**Environmental Laws**" means any and all Laws that relate to (a) prevention of pollution or environmental damage, (b) removal or remediation of pollution or environmental damage, or (c) protection of the environment or health and safety.

(w)     "**Equipment**" has the meaning given to it in the definition of Properties.

(x)     "**Excluded Items**" has the meaning given to it in Section 2(b).

(y)     "**Execution Date**" has the meaning given to it in the introductory paragraph.

(z)     "**GAAP**" means generally accepted accounting principles, consistently applied, as recognized by the U.S. Financial Accounting Standards Board (or any generally recognized successor). The requisite that such principles be consistently applied means that the accounting principles in a current period are comparable in all material respects to those applied in preceding periods.

(aa)    "**Governmental Authority**" means any federal, state, local, municipal or other government or department thereof, any governmental, regulatory or administrative agency, commission, body or other authority exercising or entitled to exercise any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power, or any court or governmental tribunal, including without limitation, any tribal authority.

(bb)    "**Hydrocarbons**" means crude oil, natural gas, casinghead gas, condensate, sulfur, natural gas liquids and other liquid or gaseous hydrocarbons and such other substances conveyed to the lessee under each respective Lease.

(cc)    "**Knowledge of Sellers**" or "**Sellers' Knowledge**" means the actual knowledge after reasonable investigation.

(dd)    "**Laws**" means any and all laws, statutes, codes, ordinances, permits, licenses, authorizations, agreements, decrees, writs, orders, judgments, principles of common law, rules or regulations (including, for the avoidance of doubt, Environmental Laws) that are promulgated, issued or enacted by a Governmental Authority having jurisdiction.

(ee)    "**Leases**" has the meaning given to it in the definition of "Properties".

(ff)    "**Lender**" has the meaning given to it in the Plan.

(gg)    "**Lien**" means any lien, mortgage, security interest, pledge, burden, charge, encumbrance, restriction or rights of a vendor under any title retention.

(hh)    "**Marketable Title**" means (i) as defined in Standard 2.10 of the Texas Title Examination Standards, a record title that is free from reasonable doubt such that a prudent person, with knowledge of all salient facts and circumstances and their legal significance, would be willing to accept it, and (ii) all consents to assign and preferential rights to purchase applicable to the subject Lease have been obtained or waived, respectively.

(ii)    "**Non-Appealable Order**" has the meaning given to it in the Plan.

(jj)     "**Non-Section 6 JOAs**" has the meaning given to it in the Plan.

(kk)     "**Parties**" or "**Party**" has the meaning given to it in the introductory paragraph of this Agreement.

(ll)     "**Permit**" has the meaning given to it in the definition of "Properties."

(mm)     "**Permitted Encumbrances**" means any and all:

    (i)     Consents to assignment and similar contractual provisions affecting the Property;

    (ii)    Rights reserved to or vested in a Governmental Authority having jurisdiction to control or regulate the Properties in any manner whatsoever, and all Laws of such Governmental Authorities;

    (iii)   Easements, rights-of-way, servitudes, surface leases, sub-surface leases, grazing rights, logging rights, ponds, lakes, waterways, canals, ditches, reservoirs, equipment, pipelines, utility lines, railways, streets, roads and structures on, over and through the Properties; provided, that such encumbrances do not either individually or in the aggregate interfere materially with the use, operation or development of the Property affected thereby for the purpose for which such Property is currently used or is intended to be used; and

    (iv)    Liens for Taxes not yet delinquent.

(nn)     "**Person**" means an individual, group, partnership, limited partnership, limited liability company, corporation, trust, Governmental Authority or other entity.

(oo)     "**Plan**" means the Joint Plan of Reorganization for the Debtors dated September 17, 2010, as the same may be amended, supplemented, or otherwise modified.

(pp)     "**Properties**" has the meaning given to it in Section 2(a).

(qq)     "**Purchase Consideration**" has the meaning set forth in Section 3.

(rr)     "**Retained Liabilities**" means those liabilities and obligations of Sellers arising from the following: (i) all Claims arising out of, incident to or in connection with Sellers' failure to pay or incorrect payment of any Taxes relating to the Properties prior to the Assignment Effective Date (excluding any Sales Taxes arising from the transactions contemplated hereunder to occur at the Closing); (ii) Claims for bodily injury or death arising from operations on the Properties prior to the Assignment Effective Date; (iii) all Claims, violations, actions, assessments, obligations or other liabilities with respect to the ownership, operation or maintenance of any of the Properties prior to the Assignment

Effective Date, including, but not limited to, Claims related to the plugging and abandonment of wells that were plugged and abandoned prior to the Closing Date; and (iv) all Claims, violations, actions, assessments, obligations or other liabilities with respect to any of the Excluded Items whether or not attributable to periods before or after the Assignment Effective Date.

(ss)     "**Sale Motion**" has the meaning given to it in Section 10.

(tt)     "**Sale Order**" means the Order entered by the Bankruptcy Court providing for the approval of all of Sellers' obligations under the Sale Documents and the authorization of Sellers to perform all of their obligations under the Sale Documents.

(uu)     "**Sale Procedures Order**" has the meaning given to it in the Plan.

(vv)     "**Sales Tax**" means any and all transfer, sales, gross receipts, compensating use, use or similar taxes, and any associated penalties and interest.

(ww)     "**Section 6 JOA**" has the meaning given to it in the Plan.

(xx)     "**Seller**" or "**Sellers**" has the meaning given to it in the introductory paragraph.

(yy)     "**Seismic**" has the meaning given to it in the definition of Properties.

(zz)     "**Tax**" means all taxes, including income tax, surtax, remittance tax, presumptive tax, net worth tax, special contribution, production tax, pipeline transportation tax, value added tax, withholding tax and any gross receipts tax, windfall profits tax, profits tax, severance tax, personal property tax, real property tax, sale tax, ad valorem tax, transfer tax, use tax, excise tax, premium tax, environmental tax (including taxes under Section 59A of the Internal Revenue Code, as amended), customs duties, stamp tax, capital stock tax, franchise tax, occupation tax, payroll tax, employment tax, social security, unemployment tax, disability tax, alternative or add-on minimum tax, estimated tax, any similar tax or assessment imposed by any Governmental Authority thereof, together with any interest, fine or penalty or addition thereto, whether disputed or not.

(aaa)     "**Third Party**" or "**third party**" (whether or not capitalized) means any Person other than Sellers and Buyer; provided that a Claim against a Party by an officer, director or employee of that Party, an Affiliate of that Party, or any officer, director or employee of such an Affiliate shall not be a Claim brought by or owed to a "third party". No Sellers' Affiliates shall be considered to be third parties for purposes of this Agreement. No Buyer Affiliates shall be considered third parties for the purpose of this Agreement.

(bbb)     "**Units**" has the meaning given to it in the definition of Properties.

(ccc)     "**Wells**" has the meaning given to it in the definition of Properties

(ddd)    **References; Construction**. All references in this Agreement to Exhibits, Sections, paragraphs, subsections and other subdivisions refer to the corresponding Exhibits, Sections, paragraphs, subsections and other subdivisions of or to this Agreement unless expressly provided otherwise. Titles appearing at the beginning of any Sections, subsections or other subdivisions of this Agreement are for convenience only, do not constitute any part of this Agreement, and shall be disregarded in construing the language hereof. The words "this Agreement," "herein," "hereby," "hereunder" and "hereof," and words of similar import, refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited. The words "this Section" and "this subsection," and words of similar import, refer only to Section or subsection hereof in which such words occur. The word "or" is not exclusive, and the word "including" (in its various forms) means including without limitation. Each accounting term not defined herein, and each accounting term partly defined herein to the extent not defined, will have the meaning given to it under GAAP. Pronouns in masculine, feminine or neuter genders shall be construed to state and include any other gender, and words, terms and titles (including terms defined herein) in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires. When a term is defined as one part of speech (e.g., noun), any other part of speech (e.g., verb) with respect to the term has a comparable meaning.

2.    **Purchase and Sale**.

(a)    **Property Being Sold**. Subject to the terms and conditions of this Agreement, Sellers agree to sell and convey and Buyer agrees to purchase and accept the Property free and clear of all Liens and Claims for the Purchase Consideration as defined hereinafter. The term "**Property**" (or within context "**Properties**") means all of Sellers' right, title and interest (real, personal, mixed, contractual or otherwise, but only as such rights, title and interest relate to the Properties under this Agreement) in, to and under or derived from the following:

(i)    **Leaseholds**. All of Sellers' right, title and interest in and to all oil and gas leases, including renewals, extensions, ratifications and amendments to such leases, and further including working interests, rights of assignment and reassignment, net revenue interests and undeveloped locations under or in oil, gas or mineral leases, and interests in rights to explore for and produce oil, gas or other minerals insofar and only insofar as such rights, titles and interests cover and include the lands, depths and rights described in **Exhibits A-1(a)** and **A-1(b)**, attached hereto and made a part hereof (collectively, the **"Leases"**);

(ii)    **Wells**. All of Sellers' right, title and interest in and to the wells described in **Exhibits A-2(a)** and **A-2(b)**, attached hereto and made a part hereof (collectively, the **"Wells"**);

(iii) **Units**. All of Sellers' right to the unitization, communitization and pooling declarations, orders, agreements or designations (including all units formed by voluntary agreement and those formed under the rules, regulations, orders or other official acts of any Governmental Authority having jurisdiction) and statutorily, judicially or administratively created drilling, spacing and/or production units, whether recorded or unrecorded, to the extent they relate to the Leases and all of the interest of the Sellers in and to the properties covered or units created thereby (collectively, the "**Units**");

(iv) **Rights in Production**. All of Sellers' right, title and interest in and to all (A) other rights to oil, gas and minerals in place and similar interests and the production of Hydrocarbons attributable thereto together with all rights that arise by operation of Law or otherwise in all properties and land unitized, communitized or pooled with therewith, and (B) rights and benefits arising from or in connection with any gas production, pipeline, storage, processing or other imbalance attributable to Hydrocarbons produced from the Leases or the Units as of the Assignment Effective Date; and it being expressly understood that Buyer shall have all rights to all oil inventory in tanks as of the Assignment Effective Date;

(v) **Proprietary Seismic**. An undivided interest in the following: (A) Sellers' intellectual property rights relating to the Properties, including the 2-D and 3-D seismic to include all prestack and poststack volumes and other generated data sets including but not limited to AVO volumes, all forms of Gathers, velocity volumes, and inversion volumes; (B) all original field data, tapes, field records and all other data generated during acquisition and processing of seismic (2-D and 3-D) and derivative volumes, as well as project work flows, notes and digital copies of the projects used to generate any of the aforementioned data created in-house by the Seller to the extent available; and (C) All other geotechnical data relating to the Properties (collectively, the "**Seismic**");

(vi) **Contract Rights**. Unless otherwise rejected by the Debtors, all of Sellers' right, title and interest in or derived from all water rights contracts or other contracts providing access to water, all joint operating agreements and operating agreements, all farm-in and farm-out contracts, all agreements containing area of mutual interest provisions, all exploration agreements, development agreements, joint venture agreements or participation agreements or similar agreements, in each case to the extent any such agreement burdens or benefits any of the Leases or the Units, or the production of Hydrocarbons from the Leases, the Permits, all access agreements, easements, servitudes, surface leases, subsurface leases, licenses or right of way agreements or any other agreements relating to the Property to the extent such Contracts either: (x) are beneficial or would be reasonably expected to be beneficial in the operation or development of

the Property or (y) are used in connection with, are intended to be used or reasonably expected to be used in connection with the Property (the **"Contracts"**);

(vii) **Equipment**. All of Sellers' right, title and interest in and to the following:

a.     All equipment, production facilities, meters, flow lines (extending to the meters or upstream thereof);

b.     All water gathering lines, water transportation lines, water tanks and pumps (upstream to the Delivery Point); and

c.     All machinery, fixtures, and other tangible personal property and improvements located on the Properties or used or held for use in connection with the operation of the Properties or the production of Hydrocarbons from the Properties, including, flow lines and gathering lines extending to the Properties described on **Exhibits A-1(a)** and **A-1(b)**, attached hereto, but excluding the office equipment of Sellers (collectively, the **"Equipment"**);

(viii) **Easements**. All of Sellers' right, title and interest in and to all rights-of-way, easements, licenses, and servitudes (the **"Easements"**) appurtenant to or used in connection with those Properties described on **Exhibits A-1(a)**, **A-1(b)** , **A-2(a)** , and **A-2(b)**, attached hereto;

(ix) **Permits.** All of Sellers' right, title and interest in and to all permits and licenses of any nature owned, held or operated in connection with operations for the exploration and production of oil, gas or other minerals to the extent the same are used or obtained in connection with the Property (the **"Permits"**);

(x) **Title Documents**. All of Sellers' interests in and to all orders, title opinions and documents, run sheets, ownership reports, abstracts of title, division of interest statements, and similar rights and interests, subject to the rights of Third Parties;

(xi) **Data**. All Data with respect to the Properties and all rights relating thereto.

(b)     **No Assumption of Liabilities; Excluded Properties**. Buyer is not assuming any liabilities or obligations of Sellers related to the Properties or otherwise in connection with the transactions contemplated herein except as expressly provided for in this Agreement. Notwithstanding anything herein contained to the contrary and without limiting the preceding sentence, the Properties do not include, and there is hereby excepted and reserved unto Sellers, the following (the "**Excluded Items**"):

        (i)       All Vested Assets, as defined by the Plan;

        (ii)      All ad valorem, property, production, excise, severance, and any other taxes (except income or franchise taxes) based upon or measured by the ownership of the Properties or the production of Hydrocarbons or the receipt of proceeds therefrom attributable to the period prior to the Assignment Effective Date; and

        (iii)     Those items listed on **Exhibit B**.

3.    **Consideration**. The consideration for the sale and transfer of the Properties (the **"Purchase Consideration"**) shall be _____, (inclusive of the Earnest Money Deposit in the amount of _____), to be paid by Buyer at the Closing as provided in Section \_\_\_\_\_.

4.    **Assignment Effective Date and Closing**. The closing shall occur two Business Days after satisfaction or waiver by the requisite Parties of the conditions to closing set forth in Section 11 (other than those conditions that by their nature cannot be satisfied until the time of closing) (the **"Closing"**, or the **"Closing Date"**), unless an earlier time is mutually agreed upon. The conveyance of the Property to Buyer shall be effective as of the first day of the month in which the Closing takes place (the **"Assignment Effective Date"**).

5.    **Representations and Warranties of Sellers**. The Sellers, jointly and severally, hereby represent and warrant to Buyer as of the date hereof and will be deemed to represent and warrant to Buyer at the Closing, as follows:

        (a)      **Corporate Authority**. HCL is a limited liability company duly organized and in good standing under the laws of the State of Texas. HSC is a corporation duly organized and in good standing under the laws of the State of Texas. Each Seller is duly qualified and in good standing to carry on its respective business in the state where the Property is located, and has all the requisite power and authority to enter into, deliver and perform this Agreement and carry out the transactions contemplated under this Agreement subject to Bankruptcy Court approval.

        (b)      **Valid Agreement**. Subject to obtaining the approvals required under Section 11(a), this Agreement constitutes the legal, valid and binding Agreement of the Sellers.

        (c)      **Authorization**. Subject to obtaining the approvals required under Section 11(a), this Agreement has been duly authorized, executed and delivered by the Sellers. Subject to obtaining the approvals required under Section 11(a), all instruments required to be delivered by the Sellers at the Closing shall be duly authorized, executed and delivered by the Sellers. Subject to obtaining the approvals required under Section 11(a), this Agreement and all documents executed by Sellers in connection with this Agreement shall constitute legal, valid and binding obligations of the Sellers, enforceable against each Seller in

accordance with their terms, subject to the effects of bankruptcy, insolvency, reorganization, moratorium and similar laws from time to time in effect, as well as general principles of equity.

(d)     **Properties Conveyed**. Sellers are conveying to Buyer all of their interests in the oil and gas leases owned by Sellers in Sections 21, 22, 23, 24, and 25, Block C-23; Sections 1 and 2, Block C-24; Sections 6 and 9, Block 74; Section 1, Block 75; all Public School Land Surveys, Winkler and Loving Counties, Texas, and Section 21, Township 26 South, Range 35 East, Lea County, New Mexico, together with all of all of their interests in the wells located thereon, related Equipment, facilities, and contract rights, LESS AND EXCEPT the items listed on **Exhibit B.**

(e)     **Interest Conveyed**. The interests set forth on Exhibits A-1(b) and A-2(b) accurately reflect the ownership interests of Sellers in the Properties.

(f)     **Data**. The Data is in the possession or control of Sellers.

(g)     **Foreign Person**. Each Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code.

6.     **Representations and Warranties of Buyer**. Buyer represents and warrants to Sellers as of the date hereof and will represent and warrant at the Closing, as follows:

(a)     **Corporate Authority**. Buyer is a limited liability company duly organized and in good standing under the laws of the State of Delaware, is duly qualified and in good standing to carry on its business in the state where the Property is located and has all the requisite power and authority to enter into and perform this Agreement and carry out the transactions contemplated under this Agreement.

(b)     **Valid Agreement**. This Agreement constitutes the legal, valid and binding Agreement of Buyer. At the Closing, all instruments required hereunder to be executed and delivered by Buyer shall be duly executed and delivered to Sellers and shall constitute legal, valid and binding obligations of Buyer. Buyer's execution and delivery of this Agreement, the consummation of the transactions set forth herein and Buyer's performance of Buyer's obligations hereunder have been duly and validly authorized by all requisite action on the part of Buyer. Buyer's execution and delivery of this Agreement and consummation of the transactions contemplated by this Agreement will not:

    (i)     conflict with or require consent of any Person under any terms, conditions or provisions of Buyer's formation documents;

    (ii)     violate any provision of, or require any consent or approval under any Law applicable to Buyer (except for consents and approvals of Governmental Authorities customarily obtained subsequent to transfer of title); or

<blockquote>

(iii)    conflict with, result in a breach of, constitute a default under or constitute an event that with notice or lapse of time, or both, would constitute a default under, accelerate or permit the acceleration of the performance required by, or require any consent, authorization or approval under: (i) any agreement of Buyer, or any mortgage, indenture, loan, credit agreement or other agreement evidencing indebtedness for borrowed money to which Buyer is a party, or (ii) any order, judgment or decree of any Governmental Authority.

</blockquote>

(c)    **Governmental Approvals**.  Buyer shall obtain all local, state, federal governmental and agency permissions, approvals, permits, bonds and consents, required for Buyer to assume the Assumed Obligations as contemplated hereunder.

(d)    **Independent Evaluation**.  Buyer is an experienced and knowledgeable investor in the oil and gas business.

(e)    **Financial Wherewithal**.  Buyer has the financial wherewithal and resources to satisfy the commitments in this Agreement, including, without limitation, (i) the payment of all cash at Closing, and (ii) in accordance with the requirements set forth in the Sale Procedures Order and exhibits thereto.

(f)    **Brokers**.  Buyer has incurred no obligation or liability, contingent or otherwise, for brokers' or finders' fees with respect to this transaction for which Sellers shall have any obligation or liability.

7.    **Casualty Loss.**

(a)    **Notice of Loss**.  Sellers shall promptly notify Buyer of all instances of Casualty Loss that occur and become known to Sellers between the Execution Date and the Closing.

(b)    **Casualty Loss**.  If, prior to the Closing any portion of the Properties suffers a material Casualty Loss, Sellers and Buyer shall meet to attempt to agree on an adjustment to the Purchase Consideration reflecting the "reduction in value" of the Properties because of such Casualty Loss.  For this purpose, "reduction in value" is based on the principle that Sellers should generally bear the costs of repairing the Properties to the state existing immediately prior to the Casualty Loss.  If the Parties are unable to agree on resolution of a Casualty Loss, then the reduction, if any, shall be determined by the Bankruptcy Court.

8.    **Covenants Prior to Closing**.

(a)    **Operations**.  Until the Closing, subject to the financial limitations contained in any approved operating budget as well as Sellers' liquidity, Sellers shall do the following:

| (i) | Operate the Property in a good and workmanlike manner consistent with prudent oilfield practices; |
|---|---|
| (ii) | Dispose of production from the Property; |
| (iii) | Comply with all material covenants and conditions contained in agreements relating to the Property; |
| (iv) | Maintain insurance now in force with respect to the Property; |
| (v) | Notify Buyer of any material Claim which might adversely affect title to or operation of the Property; |
| (vi) | Pay postpetition taxes, costs and expenses attributable to the Property as they become due, up through the Effective Date; and |
| (vii) | Advise and consult with Buyer on all material matters relating to the operation of the Property, including all authorizations for expenditures. |

(b) **Negative Covenants**. From the Execution Date until Closing Sellers shall not do any of the following with regard to the Property without Buyer's consent, which consent shall not be unreasonably withheld:

| (i) | Incur liabilities or obligations with respect to the Property for which Buyer would be responsible after the Closing other than transactions in the normal, usual and customary manner, of a nature and in an amount (not to exceed Ten Thousand Dollars ($10,000), counting liabilities or obligations arising from one transaction or a series of similar transactions, and all periodic installments or payments under any lease or other agreement providing for periodic installments or payments, as a single liability or obligation); |
|---|---|
| (ii) | Cancel any indebtedness or waive any Claims or rights against third parties, which Claims or rights have a value, individually or in the aggregate, in excess of Ten Thousand Dollars ($10,000); |
| (iii) | Make any material change in any method of accounting or accounting practice or policy consistent with past practices; |
| (iv) | Voluntarily permit, without consultation with the Buyer or approval by the Bankruptcy Court, any Leases or other material rights with respect to the Property to expire, waive or release any material rights with respect to the Property, or relinquish its position as operator with respect to the Property; |
| (v) | Release all or any portion of a Lease, Contract or Easement; |
| (vi) | Create a lien, security interest or other encumbrance on the Property; |

(vii)    Dispose of the Property;

(viii)    Enter into, terminate or amend any material contract or material agreement affecting the Property;

(ix)    Waive, compromise or settle any claim that would adversely affect ownership, operation or value of any of the Property by an amount exceeding Ten Thousand Dollars ($10,000) before the Closing;

(x)    Except upon Bankruptcy Court approval, enter into, terminate or amend any contract or commitment for capital expenditures or the acquisition or construction of fixed assets for which Buyer shall have financial responsibility after the Closing in an amount individually or in the aggregate in excess of Ten Thousand Dollars ($10,000), except in connection with situations believed in good faith by Sellers to constitute an emergency (in which case Sellers shall notify Buyer as soon as reasonably practicable of such emergency and obligations); or

(xi)    Agree, whether in writing or otherwise, to do any of the foregoing.

(c)    **Governmental Reviews**.  Sellers and Buyer shall each in a timely manner make (i) all required filings, including (if applicable) filings required under the Hart-Scott-Rodino Act, and prepare applications to and conduct negotiations with, each Governmental Authority as to which such filings, applications or negotiations are necessary or appropriate in the consummation of the transactions contemplated hereby, and (ii) provide such information as the other may reasonably request in order to make such filings, prepare such applications and conduct such negotiations. Each Party shall cooperate with and use all reasonable efforts to assist the other with respect to such filings, applications and negotiations.

9.    **Additional Covenants.**

(a)    **Assumed Obligations and Retained Liabilities**.  Upon the Closing the Buyer shall agree (and, upon the delivery by Sellers to Buyer of the Assignment and Bill of Sale, Buyer shall be deemed to have agreed) to assume the Assumed Obligations. At all times, the Sellers, either or both HSC or HCL, shall retain and be responsible for the Retained Liabilities, subject to the terms of the confirmed Plan, Confirmation Order and/or the Sale Order.

(b)    **Affiliate Contracts**.  Except as otherwise provided under the Plan, Confirmation Order, and/or the Sale Order if requested by Buyer, Sellers will terminate or cause Affiliates to terminate, effective as of the Assignment Effective Date, any contracts or agreements between such Sellers and Affiliates to the extent they relate to or bind the Property.

(c)      **General Access**.   After execution and delivery of this Agreement, Sellers shall provide Buyer and Buyer's representatives, reasonable access to all Properties following reasonable notice to inspect the condition of the same. Sellers shall also make available to Buyer and to Buyer's representatives from the Execution Date, for examination and copying, all Data and other information relating to the Properties, including, but not limited to, those records required by Buyer to ascertain title, lease expirations, continuous drilling obligations, rental payments, lease extension payments, net revenue interest, surface restrictions, water utilization rights, gathering/processing/ transportation/marketing arrangements, litigation files (including any potential conflicts, notices of violations or potential violations, or demands), regulatory compliance records, permits, environmental conditions and Sellers' corporate structure; provided Sellers may restrict access and provision of information to the extent it reasonably believes necessary to comply with existing confidentiality agreements with Third Parties (provided that Sellers shall use their best efforts to secure waivers of any such confidentiality agreements).  All access to the foregoing shall be provided by and through the Sellers' Chief Restructuring Officer and/or Sellers' counsel. If any of the referenced Data and information in this Section is in possession of Persons other than Sellers, Sellers shall make reasonable efforts to cause such access to be provided by the appropriate Person.

(d)      **Designation of Assumed Contracts**.  On or before _____, 2011, Buyer shall designate in writing to Sellers those Contracts which Buyer desires to have assumed by the applicable Seller(s) and assigned to Buyer by the applicable Seller(s) which designation shall include the maximum cure cost for each such Contract (each, a **"Designation"**).  Sellers shall, promptly after receiving the Designation, file a motion pursuant to Section 365 of the Bankruptcy Code (unless such Contracts are identified in the Plan as Contracts to be assumed and assigned) to assume and assign the Contracts identified in the Designation as of the Closing Date, and shall use their commercially reasonable efforts to obtain the approval of such assumption and assignment on such terms and conditions designated by Buyer.  If any Contract is required to be either assumed or rejected by any Seller prior to the Closing, the Sellers shall promptly notify Buyer in writing of such fact and, at the request of Buyer and upon the entry of a Bankruptcy Court order providing therefor, shall assume any such Contract. Nothing herein shall prevent the transfer and assignment to Buyer of any Contract that is not an executory contract or unexpired lease that may be assumed and assigned pursuant to section 365 of the Bankruptcy Code.

10.   **Conditions Precedent to Closing**.

(a)      **Bankruptcy Proceedings**. This Agreement is entered into by all parties with the express understanding that it is subject to approval of the Bankruptcy Court, and all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. At the election of the Debtors, the Debtors shall consummate either the Plan or the Sale Procedures Motion.

(i)      **Plan**. The Sellers shall file the Plan seeking authority via a Confirmation Order, which Plan, Confirmation Order, and scope and manner of notice thereof shall be reasonably acceptable to Sellers, Buyer, and Lender, to consummate the transactions contemplated hereunder, including (i) authority to convey and assign the Properties to the Buyer free and clear of any Liens, Claims, and encumbrances, other than Permitted Encumbrances, (ii) authority to permit the assumption of the Assumed Obligations by the Buyer, (iii) authority for Sellers to assume the Contracts and assign the same to the Buyer, (iv) authority to enter into each of the ancillary transactions, if any, contemplated by this Agreement and (v) authority to appoint the Buyer (or its assignee) as operator under the Section 6 JOAs, the Non-Section 6 JOAs, or the new joint operating agreements as provided under Article XI of the Plan, all pursuant to Sections 105, 363, and 365 of the Bankruptcy Code. Buyer shall have the right to review and reasonably designate additional parties and/or addressees for notice of the Plan and Confirmation Order prior to the filing with the Bankruptcy Court; or

(ii)     **Sale Motion**.    As promptly as possible following the Auction and execution of this Agreement, Sellers shall file a motion (the "**Sale Motion**") with the Bankruptcy Court seeking, approval of all Sellers' obligations under the Agreement and the authorization of Sellers to perform all its obligations under the Agreement.

(iii)    The Plan, the Sale Motion, and the Sale Order shall be in form and substance reasonably acceptable to Buyer.

(iv)     Sellers shall request that the Sale Motion be heard on an expedited basis.

(b)      **Conditions Precedent to Sellers' Obligation to Close**.    Sellers shall consummate the sale of the Properties on the Closing Date, provided the following conditions precedent have been satisfied or waived by Sellers at or prior to the Closing:

(i)      The Confirmation Order, or, at the election of the Sellers, the Sale Order, (i) shall have been entered by the Bankruptcy Court, (ii) shall include a finding that the sale was negotiated at arms' length and in good faith, and that Buyer is deemed a good faith purchaser for value, and (iii) shall not be subject to a stay;

(ii)     All representations and warranties of Buyer contained in this Agreement shall have been true and correct in all material respects when made and are true and correct in all material respects as of the time of the Closing as if then made; and

        (iii)     Buyer shall have complied in all material respects with all of Buyer's obligations and covenants in this Agreement to be performed or complied with at or prior to the Closing.

    (c)     **Conditions Precedent to Buyer's Obligation to Close**.   Buyer shall consummate the purchase of the Properties contemplated by this Agreement on the Closing Date provided the following conditions precedent have been satisfied or waived by Buyer at or prior to the Closing:

        (i)      The Confirmation Order, or, at the election of the Sellers, the Sale Order, (i) shall have been entered by the Bankruptcy Court, (ii) shall include a finding that the sale was negotiated at arms' length and in good faith, and that Buyer is deemed a good faith purchaser for value, and (iii) shall not be subject to a stay;

        (ii)     All representations and warranties of Sellers contained in this Agreement shall have been true and correct in all material respects when made and, as updated and amended by Sellers periodically prior to Closing, are true and correct in all material respects as of the time of the Closing as if then made;

        (iii)     Sellers shall have complied in all material respects with all of Sellers' obligations and covenants in this Agreement to be performed or complied with at or prior to the Closing;

        (iv)     Sellers will not have sold, assigned, transferred, encumbered, conveyed or otherwise disposed of any of the Properties;

        (v)     No injunction, order or award restraining, enjoining or otherwise prohibiting consummation of or granting material damages associated with the transactions contemplated by this Agreement or sale of any one or more of the Properties has been issued by any Governmental Authority or arbitrator of competent jurisdiction, and no suits, actions or other proceedings are pending before any such court, Governmental Authority or arbitrator in which a third party seeks to restrain, enjoin or otherwise prohibit consummation of or obtain material damages associated with the transactions contemplated by this Agreement or sale of any one or more of the Properties; provided, however, that notwithstanding the foregoing, if the Bankruptcy Court has issued a Non-Appealable Order authorizing the transfer of the Properties to Buyer free and clear of all liens, claims and encumbrances then such restriction shall have no force and effect;

11.    **Closing**.  The Closing shall be held in Dallas, Texas, or such other place as the Parties shall mutually agree. At the Closing, the following shall occur:

(a)      Sellers shall execute, acknowledge and deliver, in each case to the reasonably satisfaction of Buyer, the following:

     (i)     Four (4) originals of a certificate from each Seller pursuant to Internal Revenue Code Section 1445 certifying that such Seller is not a foreign person;

     (ii)    Four (4) originals of a certificate duly executed by the secretary or assistant secretary of each Seller, dated as of the Closing, certifying on behalf of each Seller the incumbency of each officer of such Seller executing this Agreement or any document delivered in connection with the Closing; and

     (iii)   An Assignment, Conveyance and Bill of Sale in a mutually satisfactory and recordable form containing a special warranty of title by, through and under Sellers, but not otherwise, of the Leases (the "**Assignment and Bill of Sale**").

(b)      Buyer shall execute, acknowledge, and deliver, in each case to the reasonable satisfaction of Sellers, the following:

     (i)     Four (4) originals of a certificate duly executed by the secretary or assistant secretary of each Buyer, dated as of the Closing, certifying on behalf of each Buyer the incumbency of each officer of such Buyer executing this Agreement or any document delivered in connection with the Closing.

(c)      Payment of any portion of the Purchase Consideration payable at the Closing as required under the Plan or applicable order entered by the Bankruptcy Court shall be delivered by wire transfer in immediately available funds pursuant to wire instructions provided to Buyer by Sellers.

(d)      Sellers shall deliver the Data (as defined above) to Buyer. Sellers shall deliver possession of the Property transferred as part of the Closing to Buyer. Sellers shall provide Buyer access to all relevant computers, databases, and servers so that Buyer has the ability to copy therefrom all lease files, land files, well files, regulatory files, operational files, and anything else related to the Properties and/or the operation thereof.

12.   **Post Closing Obligations**.

(a)      **Post Closing Assignment of Leases**. Sellers acknowledge that for the consideration received by Sellers under this Agreement, Buyer is entitled to acquire, and Sellers are obligated to sell to Buyer, any and all of Seller's oil and gas leases covering the following lands: (i) Sections 21, 22, 23, 24, and 25, Block C-23; Sections 1 and 2, Block C-24; Sections 6 and 9, Block 74; Section 1, Block 75, all Public School Land Surveys, Winkler and Loving Counties, Texas; and (ii)

Section 21, Township 26 South, Range 35 East, Lea County, New Mexico. Therefore, from time to time following the Closing, should Sellers become aware of any additional oil and gas leases that Sellers did not disclose to or offer to Buyer prior to Closing, then, Sellers shall offer to assign such leases to Buyer, and if Buyer accepts such offer, such leases shall be deemed Leases for purposes of this Agreement and Sellers shall assign such Leases and all other Properties related to such Leases to Buyer for an additional consideration of Ten Dollars ($10.00). After the Closing, the acquisition of additional leases shall be at Buyer's sole option, and in no event shall Buyer be obligated to acquire such additional leases. In particular, Buyer shall have no obligations related to the items listed on **Exhibit B.**

(b) **Post Closing Revenues**. Except as expressly provided otherwise in this Agreement and/or the Plan or order entered by the Bankruptcy Court: (i) Buyer shall pay Sellers any and all amounts received by Buyer attributable to the Properties and relating to the period prior to the Assignment Effective Date, and (ii) Sellers shall pay Buyer any and all amounts received by Sellers attributable to the Properties and relating to the period on and after the Assignment Effective Date. The Party responsible for the payment of amounts shall make full payment to the other Party within fifteen (15) Business Days after receipt of such amounts. In no event shall Buyer be obligated to pay Sellers for crude oil inventory as of the Assignment Effective Date.

(c) **Post Closing Expenses**. Except as expressly provided otherwise in this Agreement and subject to Bankruptcy Court approval consistent with the terms of a confirmed Plan or order entered by the Bankruptcy Court: (a) Sellers shall reimburse Buyer for any and all pre-approved reasonable costs and expenses paid by Buyer attributable to the Properties and relating to the period prior to the Assignment Effective Date, if any, and (b) Buyer shall reimburse Sellers for any and all pre-approved reasonable costs and expenses paid by Sellers attributable to ownership of the Properties and relating to the period on and after the Assignment Effective Date. The Party responsible for the payment of such costs and expenses shall make full payment to the other Party within fifteen (15) Business Days after receipt of an applicable invoice and proof that such invoice was paid. Neither Party shall agree to settle any audit with respect to periods for which the other is in part responsible without the prior written consent of the other, such consent not to be unreasonably withheld

13. **Independent Investigation and Disclaimer**. The express representations of Sellers set forth in this Agreement, and the Assignment and Bill of Sale are exclusive and in lieu of any and all other representations. **EXCEPT FOR THE EXPRESS REPRESENTATIONS SET FORTH IN THIS AGREEMENT, AND THE ASSIGNMENT AND BILL OF SALE, SELLERS DISCLAIM ALL LIABILITY AND RESPONSIBILITY FOR ANY OTHER REPRESENTATION, WARRANTY, STATEMENT OR INFORMATION MADE OR COMMUNICATED, ORALLY OR IN WRITING, TO BUYER, INCLUDING ANY STATEMENTS,**

REPRESENTATIONS, OPINIONS, INFORMATION OR ADVICE WHICH MAY HAVE BEEN PROVIDED AS AN ACCOMMODATION TO THE BUYER BY AN OFFICER, SHAREHOLDER, DIRECTOR, EMPLOYEE, AGENT, CONSULTANT OR REPRESENTATIVE OF SELLERS, OR ANY ENGINEER OR ENGINEERING FIRM, OR ANY OTHER AGENT, CONSULTANT, OR REPRESENTATIVE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, AND THE ASSIGNMENT AND BILL OF SALE, SELLERS MAKE ABSOLUTELY NO REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED OR STATUTORY, AS TO: TITLE TO ANY OF THE PROPERTY;**

- **THE ABILITY OF ANY COMPONENT OF THE PROPERTY TO PRODUCE ANY HYDROCARBONS;**

- **THE AMOUNTS, QUALITY OR DELIVERABILITY OF HYDROCARBON RESERVES ATTRIBUTABLE TO THE PROPERTY, OR ANY PART THEREOF;**

- **GEOLOGICAL, GEOPHYSICAL OR OTHER INTERPRETATION OF ANY ECONOMIC EVALUATION;**

- **PRESENT OR FUTURE SALES PRICES, OPERATING COSTS, OR OTHER ECONOMIC FACTORS; OR**

- **THE REGULATORY STATUS OF THE PROPERTIES WITH RESPECT TO ACTIONS, PAST OR PENDING, BEFORE THE TEXAS RAILROAD COMMISSION.**

14. **Termination**

   (a)   **Termination**.  This Agreement may be terminated at any time prior to the Closing:

      (i)    by the mutual prior written consent of Sellers and Buyer;

      (ii)   by either Sellers or Buyer, if the Closing has not occurred within fifteen (15) days of the Confirmation Date; or

      (iii)  by either Party if the Bankruptcy Court has approved the sale or other disposition of the Properties to any entity other than Buyer or its Affiliates.

   provided, however, that no Party shall be entitled to terminate this Agreement under Section 14(a)(ii) if the Closing has failed to occur because such Party failed to perform or observe in any material respect its covenants and agreements hereunder or such Party is in breach of its representations and warranties set forth in this Agreement

(b)     **Effect of Termination**.  If this Agreement is terminated pursuant to Section 14(a) prior to Closing, this Agreement shall become void and of no further force or effect (except for the provisions of the following Sections: 14, 15(f), 15(i), 15(l), 15(m), and 15(o), all of which shall continue in full force and effect). Notwithstanding anything to the contrary in this Agreement, the termination of this Agreement under Section 14(a) shall not relieve any Party from liability for any willful or negligent failure to perform or observe in any material respect any of its agreements or covenants contained herein that are to be performed or observed at or prior to the Closing.  In the event this Agreement terminates under Section 14(a) and any Party has willfully or negligently failed to perform or observe in any material respect any of its agreements or covenants contained herein which are to be performed or observed at or prior to the Closing, then the other Party shall be entitled to all remedies available at law or in equity and shall be entitled to recover court costs and attorneys' fees in addition to any other relief to which such Party may be entitled; provided that, NO PARTY SHALL BE ENTITLED TO RECOVER ANY PUNITIVE DAMAGES OR ANY LOSS OF PROFITS, WHETHER ACTUAL OR CONSEQUENTIAL, OR ANY OTHER CONSEQUENTIAL DAMAGES suffered by such Party in connection with or as a result of any such termination.

15.  **Miscellaneous**.

(a)     **Further Assurances**.  The Parties agree to execute any documents, whether before or after the Closing to aid the other Party in fulfilling the purpose of this Agreement.

(b)     **Entire Agreement**.  This Agreement together with the Exhibits attached hereto, shall constitute the complete agreement between the Parties hereto and shall supersede all prior agreements, whether written or oral, and any representations or conversations with respect to the Property.

(c)     **Notices**.  Any notice, demand or communication required or permitted to be given by any provision of this Agreement will be in writing and will be deemed to have been given and received when (i) delivered personally, or (2) on the date of delivery when delivered prior to 5:00 p.m. local time on a Business Day by scanned email to the Party designated to receive such notice, otherwise on the next succeeding Business Day, or (3) on the date following the Day sent by overnight courier, or (4) on the third (3rd) Business Day after the same is sent by certified mail, postage and charges prepaid, directed to the following addresses or to such other or additional addresses as any Party might designate by written notice to the other Party:

Notices to Sellers:     Heritage Consolidated LLC
                        Heritage Standard Corporation
                        Turtle Creek

Dallas, Texas _____
Attn: _____
Telephone: (214) ____-____
Facsimile: (214) ____-____
Email: _____

And a copy to:

Joe E. Marshall
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 North Akard Street
Dallas, Texas 75201-6659
Telephone:(214) 855-7500
Facsimile:(214) 978-4365
Email: jmarshall@munsch.com

-and-

Kevin McCullough
Rochelle McCullough LLP
325 N. St. Paul, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185
Email:

Notices to Buyer:      [_____]

(d)      **Binding Effect**.  This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, and their successors and assigns.

(e)      **Counterparts**.  This Agreement may be executed in any number of counterparts, which taken together shall constitute one instrument and each of which shall be considered legally enforceable.

(f)      **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

(g)      **Headings**.  The headings of the articles and sections of this Agreement are for guidance and convenience of reference only and shall not limit or otherwise affect any of the terms and provisions of this Agreement.

(h)      **Timing**.  Time is of the essence in this Agreement.  If the date specified in this Agreement for giving any notice or taking any action is not a Business Day (or if the period during which any notice is required to be given or any action taken

expires on a date that is not a Business Day), then the date for giving such notice or taking such action (and the expiration date of such period during which notice is required to be given or action taken) shall be the next Day which is a Business Day.

(i)     **Expenses**.  All fees, costs and expenses incurred by the Parties in negotiating this Agreement and in consummating the transactions contemplated by this Agreement shall be paid by the Party that incurred such fees, costs and expenses.

(j)     **Amendment and Waiver**.  This Agreement may be altered, amended or waived only by a written agreement executed by both Buyer and Sellers.  No waiver of any provision of this Agreement shall be construed as a continuing waiver of the provision.

(k)     **Parties in Interest**.  This Agreement is binding upon and shall inure to the benefit of the Parties and, except where prohibited, their successors, representatives or assigns.

(l)     **No Partnership Created.**  It is not the purpose or intention of this Agreement to create (and it shall not be construed as creating) a joint venture, partnership or any type of association, and neither Party is authorized to act as an agent or principal for the other Party with respect to any matter related hereto.

(m)     **Third-Party Beneficiaries**.  Unless expressly stated to the contrary, no third party is intended to have any rights, benefits or remedies under this Agreement, however, Sellers acknowledge that following each Closing, Buyer may offer to assign a portion of the Property to a third party.

(n)     **Severance**.  If any provision of this Agreement is found to be illegal or unenforceable, the other terms of this Agreement shall remain in effect and this Agreement shall be construed as if the illegal or unenforceable provision had not been included.

(o)     **Not to be Construed Against Drafter**.  Each Party has had an adequate opportunity to review each and every provision of this Agreement and to submit the same to legal counsel for review and advice.  Based on the foregoing, the rule of construction, if any, that a contract be construed against the drafter shall not apply to interpretation or construction of this Agreement.

(p)     **Recordation**.  The Assignment and Bill of Sale is intended to convey all of the Properties.  Certain Properties or specific portions of the Properties that are leased from, or require the approval to transfer by, a Governmental Authority are conveyed under the Assignment and Bill of Sale and also are described and covered by separate assignments made by Sellers to Buyer on officially approved forms, or forms acceptable to such entity, in sufficient multiple originals to satisfy applicable statutory and regulatory requirements.

(q)     **Remedies Not Exclusive**.  The remedies set forth in this Agreement are intended to be cumulative and not exclusive and are intended to be in addition to any other rights a Party may have hereunder or under applicable Law.

(r)     **Survival of Certain Obligations**.  Except as expressly provided otherwise in this Agreement, representations and warranties, covenants, agreements, waivers, disclaimers, releases and obligations of indemnity and defense contained in this Agreement expire at Closing.

(s)     **Conspicuousness of Provisions**.  Except as otherwise expressly provided for in this Agreement, the release, defense, indemnification and hold harmless provisions provided for in this Agreement shall be applicable whether or not the Claims, (including attorneys' fees and costs of litigation) in question arose solely or in part from the active, passive or concurrent negligence, strict liability, breach of duty (statutory or otherwise), violation of Law, or other fault of any Indemnified Party, or from any pre-existing defect.  The Parties agree that provisions of this Agreement in "bold" type satisfy any requirement of the "express negligence rule" and other requirement at law or in equity that provisions be conspicuously marked or highlighted.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed below by their duly authorized representatives.

<table>
<tr><td align="center"><strong>SELLERS</strong></td><td align="center"><strong>BUYER</strong></td></tr>
</table>

**HERITAGE CONSOLIDATED LLC**          [_____]

By: _____          By:_____

      President                Its

Date:_____          Date:_____

**HERITAGE STANDARD CORPORATION**

By: _____

      President

Date:_____

# EXHIBIT A-1(a)

# PURCHASE AND SALE AGREEMENT FOR OIL AND GAS PROPERTIES LOCATED IN WINKLER AND LOVING COUNTIES, STATE OF TEXAS and LEA COUNTY, STATE OF NEW MEXICO

# NON-SECTION 6 and SECTION 6

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Mexico "I" Federal #1 | 120NM01 | The United States of America | Zonetta Dorland | 10/1/1961 | | W/2, W/2 E/2 and NE/4 NE/4 Section 21, Township 26 South, Range 35 East, N.M.P.M., Lea County, New Mexico | 227 | 250 |
| Mexico "I" Federal #1 | | The United States of America | Heritage Standard Corporation | 6/1/2002 | | SE/4SE/4 and E/2SE/4 Section 21, Township 26 South, Range 35 East, N.M.P.M., Lea County, New Mexico | 1196 | 708 |

WI - BPO    95.725870%
WI - APO    95.725870%
NRI - BPO    76.598441%
NRI - APO    76.598441%

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb Estates 2 - Unit 1 | 190TX002A | InterFirst Bank Ft. Worth (Tubb) | Lee House | 9/30/1982 | | All of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 74L | 245L |
| Tubb Estates 2 - Unit 1 | 190TX004B | Carrye C. Payton | Sinclair Oil & Gas Company | 9/8/1965 | | NE/4, SW/4, S/2 SE/4 and E/3 NW/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 212 | 83 |
| Tubb Estates 2 - Unit 1 | 190TX004C | Lydia P. Cowden, et al | B. H. Grabe | 5/13/1946 | | NE/4, SW/4, S/2 SE/4 and E/3 NW/4 of Section 2, Block C-34, PSL Survey, Winkler and Loving Counties, Texas | 87 | 474 |
| Tubb Estates 2 - Unit 1 | 190TX007A | Beth Brownlee | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 0L | 556W/25 |
| Tubb Estates 2 - Unit 1 | 190TX007B | Paralee P. McMahon | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 7L | 550W/25 |
| Tubb Estates 2 - Unit 1 | 190TX007C | Paralee M. Hays | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 4L | 544W/26 |
| Tubb Estates 2 - Unit 1 | 190TX007D | Patricia M. Crocker | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 1L | 538W/27 |
| Tubb Estates 2 - Unit 1 | 190TX007F | Jake H. Harrison (AIF - Michael Harrison) | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 5L | 526W/28 |
| Tubb Estates 2 - Unit 1 | 190TX007G | Ann B. Lankford | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 2L | 520W/29 |
| Tubb Estates 2 - Unit 1 | 190TX007H | Ellen Brownlee Roberts | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 9L | 514W/29 |
| Tubb Estates 2 - Unit 1 | 190TX007I | Marvin L. Welch | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 6L | 508W/30 |
| Tubb Estates 2 - Unit 1 | 190TX007J | Ann W. Gray | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 3L | 502W/31 |
| Tubb Estates 2 - Unit 1 | 190TX007K | Susan M. Barker-Benfield | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 0L | 496W/32 |
| Tubb Estates 2 - Unit 1 | 190TX007L | Linda H. Richey | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 7L | 490W/32 |
| Tubb Estates 2 - Unit 1 | 190TX007M | K. M. LeBlond | Heritage Resources, Inc. | 3/26/1984 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 339W/74 1L | 328W/71 |
| Tubb Estates 2 - Unit 1 | 190TX007N | Roy E. Kimsey, Jr | Heritage Resources, Inc. | 5/2/1984 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 339W/74 3L | 617W/71 |
| Tubb Estates 2 - Unit 1 | 190TX007P | Lee Caldwell | Heritage Resources, Inc. | 5/2/1984 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 339W/74 5L | 619W/71 |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb Estates 2 - Unit 1 | 190TX007Q | John H. Healey | Heritage Resources, Inc. | 5/2/1984 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 339W/74 L | 621W/71 7L. |
| Tubb Estates 2 - Unit 1 | 190TX007R | InterFirst Bank (AIF - Lela Brownlee) | Lee House | 5/3/1982 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 331W/74 L | 533W/27 8L. |
| Tubb Estates 2 - Unit 1 | 190TX007S | W. H. Hunt Trust | Heritage Resources, Inc. | 7/20/1984 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 341W/74 L | 393W/33 4L. |
| Tubb Estates 2 - Unit 1 | 190TX008A | Elliott Davis, et al | Wisenbaker Production Company | 3/7/1988 | | W/2 NW/4 and N/2 SE/4 of Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 377W/83 L | 382W/35 0L. |
| Tubb Estates 2 - Unit 1 | 190TX008B | Elliott Davis, et al | Wisenbaker Production Company | 7/29/1982 | | Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas, from surface to the base of the Pennsylvanian Formation | 341W/64 L | 539W/42 4L. |
| Tubb Estates 2 - Unit 1 | 190TX008C | InterFirst Bank Abilene | Heritage Resources, Inc. | 2/13/1984 | | Section 2, Block C-24, PSL Survey, Winkler and Loving Counties, Texas | 337W/74 L | 903W/67 9L. |

| | |
|---|---|
| WI - BPO | 32.035340% |
| WI - APO | 32.035340% |
| NRI - BPO | 25.744473% |
| NRI - APO | 25.744473% |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Wolfe Units #1,#2,#4,#5,#6 | 199TX00048 | Carrye Cowden Payton, et al | Sinclair Oil & Gas Company | 9/8/1965 | | SE/4 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 212 | 83 |
| Wolfe Units #1,#2,#4,#5,#6 | 199TX00HC | Lydia P. Cowden, et al | B. H. Grube | 5/13/1946 | | SW/4 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 87 | 474 |
| Wolfe Units #1,#2,#4,#5,#6 | 300TX0012 | T. H. Neel and the First National Bank of Fort Worth, Independent Executors U/W/O J. B. Tubb, deceased | Roy E. Kimsey, Jr. | 2/18/1964 | | N/2 and S/2 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 201 | 131 |
| Wolfe Units #1,#2,#4,#5,#6 | 300TX0013 | Cities Service Oil Company | Caroline Hunt Trust Estate | 2/10/1968 | | SW/4 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 332 | 443 |
| Wolfe Units #1,#2,#4,#5,#6 | 300TX0013A | The Citizens National Bank in Abilene | Roy E. Kimsey, Jr. | 2/3/1964 | | N/2 and S/2 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 200 | 301 |
| Wolfe Units #1,#2,#4,#5,#6 | 300TX0012 | Lela Cowden Brownlee, et vir | Roy E. Kimsey, Jr. | 2/3/1964 | | N/2 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 200 | 278 |
| Wolfe Units #1,#2,#4,#5,#6 | 300TX0014 | Carrye Cowden Payton | Roy E. Kimsey, Jr. | 2/3/1964 | | N/2 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 200 | 283 |
| Wolfe Units #1,#2,#4,#5,#6 | 300TX0037 | Paralee Manly Hays, et vir | Roy E. Kimsey, Jr. | 2/3/1964 | | N/2 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 200 | 279 |
| Wolfe Unit #1,#2,#4,#5,#6 | 300TX38 | Birdie Cowden Spaulding | Roy E. Kimsey | 02/0/64 | | N/2 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 200 | 281 |
| Wolfe Units #1,#2,#4,#5,#6 | Mineral Deed | Southland Royalty Company | Criterion Acquisition Company, et al | 6/23/1987 | | SE/4 of Section 24, Block C-23, PSL Survey, Winkler County, Texas | 369 | 24 |

**Wolfe Unit 1**

| | |
|---|---|
| WI - BPO | 47.40650% |
| WI - APO | 47.40650% |
| NRI - BPO | 40.28195% |
| NRI - APO | 40.28195% |

**Wolfe Unit 2**

| | |
|---|---|
| WI - BPO | 61.74930% |
| WI - APO | 61.74930% |
| NRI - BPO | 49.58819% |
| NRI - APO | 49.58819% |

**Wolfe Unit 4**

| | |
|---|---|
| WI - BPO | 62.74165% |
| WI - APO | 62.74165% |
| NRI - BPO | 50.52045% |
| NRI - APO | 50.52045% |

**Wolfe Unit 5**

| | |
|---|---|
| WI - BPO | 66.49169% |
| WI - APO | 66.49169% |
| NRI - BPO | 58.74797% |
| NRI - APO | 58.74797% |

**Wolfe Unit 6**

| | |
|---|---|
| WI - BPO | 67.47643% |
| WI - APO | 67.47643% |
| NRI - BPO | 54.46673% |
| NRI - APO | 54.46673% |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013A | Paralee McMahon | Heritage Resources, Inc. | 3/12/1984 | 3/12/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 338 | 775 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013B | Ellen Roberts | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 338 | 797 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013C | Interfirst Abilene | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 338 | 773 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013D | Ann Lankford | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 338 | 781 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013F | Susan Barker-Benfield | Heritage Resources, Inc. | 3/12/1984 | 3/12/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 339 | 128 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013G | Patricia Crocker | Heritage Resources, Inc. | 3/12/1984 | 3/12/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 338 | 799 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013H | Paralee Hays | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 339 | 126 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013I | Annie Welch | Heritage Resources, Inc. | 3/15/1984 | 3/15/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 338 | 805 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013J | Evelyn Harrison | Heritage Resources, Inc. | 3/15/1984 | 3/15/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 338 | 803 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX013K | Beth Brownlee | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 338 | 783 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016A | Katherine LeBlond | Heritage Resources, Inc. | 3/20/1984 | 3/20/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 339 | 132 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016B | Interfirst Bank | Heritage Resources, Inc. | 3/26/1984 | 3/26/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 339 | 130 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016C | Roy E Kimsey, Jr | Heritage Resources, Inc. | 2/4/1986 | 8/4/1986 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 355 | 134 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016D | John H. Healey | Heritage Resources, Inc. | 2/10/1986 | 8/10/1986 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 355 | 132 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016E | Lee Caldwell | Heritage Resources, Inc. | 2/6/1986 | 2/6/1987 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 355 | 127 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016F | A. G. Hill, et al | Heritage Resources, Inc. | 3/12/1986 | 7/12/1986 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 14,497' | 356 | 647 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016G | Frontier Fuels, Inc. | Heritage Resources, Inc. | 1/23/1986 | 1/23/1987 | SE/4 of Section 23, Block C-23, PSL Survey, Winkler County, Texas, from a depth of 13,800' to a depth of 14,650' | 359 | 212 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016H | W. H. Hunt Trust Estate (Paul A. Hope, Trustee) | Heritage Resources, Inc. | 2/9/1986 | 8/9/1986 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 14,497' | 359 | 877 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016I | Charles B. Renaud | Heritage Resources, Inc. | 9/26/1986 | 9/26/1989 | SE/4 of Section 23, Block C-23, PSL Survey, Winkler County, Texas | 362 | 318 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX016J | Anardarko Petroleum Corp. | Heritage Resources, Inc. | 9/19/1986 | 6/19/1987 | SE/4 of Section 23, Block C-23, PSL Survey, Winkler County, Texas, from a depth of 13,385' to a depth of 14,750' | 363/366 | 52/888 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX017A | Interfirst Ft. Worth (Tubb) | Heritage Resources, Inc. | 4/6/1984 | 4/6/1985 | All of Section 23, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 14,497' | 339 | 332 |
| Tubb Estate - 23 - Unit #1 & Unit #1R | 1901TX018A | Lennon & Interfirst | Heritage Resources, Inc. | 5/24/1984 | 5/24/1987 | SE/4 of Section 23, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 14,750' | 340 | 200 |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb Estate 23 - Unit #1 & Unit #1R | 190TX018F | Texas American Bank/Trustee for Renaud Mineral Trust dated 08/30/85 | John W B Northington | 3/18/1986 | 3/18/1987 | SE/4 of Section 23, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 14,497' | 357 | 230 |
| Tubb Estate 23 - Unit #1 & Unit #1R | 190TX018G | Texas American Bank/Ft. Worth, N.A., Trustee of the Bertha R. Koch Trust | John W B Northington | 3/18/1986 | 3/18/1987 | SE/4 of Section 23, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 14,497' | 357 | 233 |
| Tubb Estate 23 - Unit #1 & Unit #1R | Assignment of Mineral Interest | Amarillo National Bank | Michael B Wisenbaker as Agent | 5/12/1995 | | Section 23, Block C-23, PSL Survey, Winkler County, Texas | 428 | 136 |

| Tubb Estate 23 - Unit 1 | |
|---|---|
| WI - BPO | 62.50R890% |
| WI - APO | 62.50R890% |
| NRI - BPO | 47.012828% |
| NRI - APO | 47.012828% |

| Tubb Estate 23 - Unit 1R | |
|---|---|
| WI - BPO | 81.854140% |
| WI - APO | 81.854140% |
| NRI - BPO | 60.842877% |
| NRI - APO | 60.842877% |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb Estate 25 - Units #1 #2, & #3 | 1907X0048 | Carrye C. Payton, et al | Sinclair Oil & Gas Company | 9/8/1965 | | Section 25, Block C-23, PSL Survey, Winkler County, Texas | 212 | 83 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0014 | T. H. Neel and the First National Bank of Fort Worth, Independent Executors U/W/O J. B. Tubb, deceased | Roy E. Kimsey, Jr. | 2/18/1964 | | Section 25, Block C-23, PSL Survey, Winkler County, Texas | 201 | 127 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0015 | Citizens National Bank Abilene | Roy E. Kimsey, Jr. | 2/3/1964 | | Section 25, Block C-23, PSL Survey, Winkler County, Texas | 200/204 | 105/509 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0016 | Olive S. Molumphy, et vir | Marjorie M. Weaver | 1/11/1966 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 214 | 385 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0018 | Grace P. Lybrand | Marjorie M. Weaver | 12/3/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 213 | 437 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0019 | Frances G. Snyder | Marjorie M. Weaver | 1/11/1966 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 214 | 271 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0020 | Fay B. Brown | Marjorie M. Weaver | 1/11/1966 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 215 | 355 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0021 | Joseph M. Barnhill | Marjorie M. Weaver | 1/11/1966 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 215 | 357 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0022 | Marjorie O. Hopewell | Marjorie M. Weaver | 12/3/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 213 | 363 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0023 | M.M. Priefer, et vir | Marjorie M. Weaver | 9/21/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 211 | 481 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0024 | Hilda S. Perrine | Marjorie M. Weaver | 9/27/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 211 | 565 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0025 | Cleo R. Hill, et vir | Marjorie M. Weaver | 9/23/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 211 | 549 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0044 | Buttram Texhoma Co. | Marjorie M. Weaver | 9/16/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 211 | 475 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0045 | Louise L. Dunnam, et vir | Marjorie M. Weaver | 8/25/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 211 | 243 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX0046 | Foster Petroleum Corporation | Marjorie M. Weaver | 10/4/1965 | | SW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 211 | 555 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX01414 | Cities Service Oil Company | Caroline Hunt Trust Estate | 2/10/1968 | | SW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 232 | 446 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX017 | H. G. Banks, et ux | Marjorie M. Weaver | 12/3/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 213 | 359 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX027 | M. L. McLain | Marjorie M. Weaver | 9/21/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 211 | 479 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX028 | Fred P. Myers, et al | Marjorie M. Weaver | 11/3/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 212 | 434 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX047 | Mary M. Fox | Marjorie M. Weaver | 9/21/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 211 | 571 |
| Tubb Estate 25 - Units #1 #2, & #3 | 300TX026 | M. W. McLain | Marjorie M. Weaver | 9/21/1965 | | NW/4 Section 25, Block C-23, PSL Survey, Winkler County, Texas | 211 | 477 |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|------|--------------|--------|--------|------------|-----------------|-------------|------|------|
| | | | Tubb Estate 25 - Unit 1 | | | | | |
| | | | WI - BPO | | 63.636960% | | | |
| | | | WI - APO | | 46.429790% | | | |
| | | | NRI - BPO | | 51.880071% | | | |
| | | | NRI - APO | | 38.046994% | | | |
| | | | | | | | | |
| | | | Tubb Estate 25 - Unit 2 | | | | | |
| | | | WI - BPO | | 46.429790% | | | |
| | | | WI - APO | | 46.429790% | | | |
| | | | NRI - BPO | | 38.046994% | | | |
| | | | NRI - APO | | 38.046994% | | | |
| | | | | | | | | |
| | | | Tubb Estate 25 - Unit 3 | | | | | |
| | | | WI - BPO | | 83.168550% | | | |
| | | | WI - APO | | 39.681065% | | | |
| | | | NRI - BPO | | 67.618939% | | | |
| | | | NRI - APO | | 31.832818% | | | |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001A | Clarence Cowden | Gary W. Winslow | 2/6/1984 | | All of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 338 | 771 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001B | Gulf Oil | Heritage Resources, Inc. | 1/10/1985 | | All of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to the base of the Fusselman Formation | 349 | 34 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001C | Helen Cowden Bazhee, et vir | Atlantic Richfield Company | 10/3/1983 | | All of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 335 | 716 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001D | Interfirst Bank of Abilene | Atlantic Richfield Company | 11/22/1983 | | SE/4, SW/4 and NW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 336 | 817 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2A | Marjorie Weaver | Heritage Resources, Inc. | 5/24/1984 | | NE/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 339 | 821 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2B | Mercantile Bank (Wolfeman) | Heritage Resources, Inc. | 10/30/1984 | | NE/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 343 | 868 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2C | Southland Royalty | Heritage Resources, Inc. | 6/19/1985 | | E/2 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,333' | 351 | 78 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2D | Cities Service Oil and Gas Corporation | Heritage Resources, Inc. | 6/17/1985 | | NW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,300' | 352 | 30 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2E | Doyle W. Cotton, Trustee | Heritage Resources, Inc. | 6/1/1985 | | NE/4 of Section 22, Block C-23, PSL Survey Winkler County, Texas | 354 | 93 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2F | Houston Royalty Company | Marjorie M. Weaver | 12/15/1965 | | NE/4 of Section 22, Block C-23, PSL Survey Winkler County, Texas | 214 | 393 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2G | Elsa Janet Vette, et vir | Atlantic Richfield Company | 10/7/1983 | | NE/4 of Section 22, Block C-23, PSL Survey Winkler County, Texas | 335 | 812 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2H | Luellen Clifton | Atlantic Richfield Company | 10/17/1983 | | NE/4 of Section 22, Block C-23, PSL Survey Winkler County, Texas | 335 | 791 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2I | First National Bank of Kansas City, Trustee | Atlantic Richfield Company | 10/28/1983 | | NE/4 of Section 22, Block C-23, PSL Survey Winkler County, Texas | 336 | 470 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2J | Mabel Buchanan | Atlantic Richfield Company | 12/20/1983 | | NE/4 of Section 22, Block C-23, PSL Survey Winkler County, Texas | 337 | 384 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 2K | Mabel C. Buchanan, Individually and Co-Executrix | Atlantic Richfield Company | 1/25/1984 | | NE/4 of Section 22, Block C-23, PSL Survey Winkler County, Texas | 338 | 317 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 5A | George Bristol | Heritage Resources, Inc. | 3/9/1984 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 338 | 528 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 5B | Frederick Bristol | Heritage Resources, Inc. | 3/9/1984 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 338 | 531 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 5C | Edwin Reynolds | Heritage Resources, Inc. | 3/9/1984 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 338 | 534 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 5D | Marjorie Huszagh | Heritage Resources, Inc. | 3/9/1984 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 338 | 537 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 190TX001 5E | Dorothea W. Huszagh | Heritage Resources, Inc. | 8/7/1984 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 353 | 557 |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|------|-------------|--------|--------|-----------|----------------|-------------|------|------|
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0015F | Charles B. Renaud | Heritage Resources, Inc. | 9/26/1986 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 362 | 320 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0017A | Interfirst Ft. Worth - Tubb Estate | Heritage Resources, Inc. | 4/6/1984 | | Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 20,012' | 339 | 332 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0017C | Caroline H. Schoellkopf and Loyd B. Sands | Heritage Resources, Inc. | 8/20/1986 | | Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,400' | 361 | 673 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0016A | Lennon & Interfirst | Heritage Resources, Inc. | 5/24/1984 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,400' | 340 | 200 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0018B | Louise Sylvia Allen, Individually and as Independent Executrix | Atlantic Richfield Company | 10/2/1983 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 335 | 701 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0018C | James Y. Phillips | Atlantic Richfield Company | 12/9/1983 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 336 | 815 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0018D | James Olcott Phillips, Individually and as Independent Executor | Atlantic Richfield Company | 11/30/1983 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 336 | 819 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0018E | David A. Phillips | Atlantic Richfield Company | 11/30/1983 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 337 | 32 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0018F | Texas American Bank/Trustee for Renaud Mineral Trust dated 08/30/85 | John W. B. Northington | 3/18/1986 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,164' | 357 | 230 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0016G | Texas American Bank, Ft. Worth, N.A., Trustee of the Bertha R. Koch Trust | John W. B. Northington | 3/18/1986 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,174' | 357 | 333 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0026A | Shannon, et al | Heritage Resources, Inc. | 8/31/1984 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 20,012' | 342 | 417 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | 1907X0026B | M. M. Trammell | Heritage Resources, Inc. | 8/31/1984 | | SW/4 of Section 22, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 20,012' | 342 | 419 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | Mineral Deed | Southland Royalty Company | Crittendon Acquisition Company, et al | 6/23/1987 | | E/2 of Section 22, Block C-23, PSL Survey Winkler County, Texas | 369 | 24 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | Mineral Deed | Doyle W. Cotton, Jr. Trustee of the D.W.C. Trust dated 6/15/77 | Michael B. Wisenbaker | 1/31/1989 | | NE/4 Section 22, Block C-23, PSL Survey, Winkler County, Texas | 382 | 874 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | Mineral Deed | C.J. Donally, Jr as a Trustee of the Margaret Hunt Hill- Albert G. Hill III Trust, et al | Crittendon Corporation | 2/14/1995 | | All of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 426 | 444 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | Mineral Deed | Lyda Hill | Crittendon Corporation | 2/20/1995 | | All of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 426 | 456 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | | PT Investments | Headwaters Oil Company | 9/13/1984 | | All of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 343 | 6 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | Assignment of Mineral Interest | Amarillo National Bank | Michael B. Wisenbaker as Agent | 5/12/1995 | | Section 22, Block C-23, PSL Survey, Winkler County, Texas | 428 | 136 |
| Tubb Estate 22 - Units #1,#2,#3,#1R | Mineral Deed | U.S. Financial Corporation | Crittendon Corporation | 2/13/1995 | | All of Section 22, Block C-23, PSL Survey, Winkler County, Texas | 426 | 442 |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| | | | **Tubb Estate 22 - Unit 1** | | | | | |
| | WI - BPO | | | | 79.45600000% | | | |
| | WI - APO | | | | 79.45600000% | | | |
| | NRI - BPO | | | | 59.10738010% | | | |
| | NRI - APO | | | | 59.10738010% | | | |
| | | | **Tubb Estate 22 - Unit 2** | | | | | |
| | WI - BPO | | | | 67.20157010% | | | |
| | WI - APO | | | | 58.13151010% | | | |
| | NRI - BPO | | | | 53.65005010% | | | |
| | NRI - APO | | | | 46.37459910% | | | |
| | | | **Tubb Estate 22 - Unit 3** | | | | | |
| | WI - BPO | | | | 67.84430010% | | | |
| | WI - APO | | | | 67.84430010% | | | |
| | NRI - BPO | | | | 58.38966910% | | | |
| | NRI - APO | | | | 58.38966910% | | | |
| | | | **Tubb Estate 22 - Unit 1R** | | | | | |
| | WI - BPO | | | | 78.26224010% | | | |
| | WI - APO | | | | 75.78667010% | | | |
| | NRI - BPO | | | | 61.83245410% | | | |
| | NRI - APO | | | | 59.85329810% | | | |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb Estate 21 Units 1 & 2 | 190TX002A | InterFirst Ft. Worth (Tubb) | Lee House | 9/30/1982 | 9/30/1985 | All of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 320 | 295 |
| Tubb Estate 21 Units 1 & 2 | 190TX003A | InterFirst Abilene | Heritage Resources, Inc. | 4/23/1984 | 10/15/1986 | All of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 339 | 576 |
| Tubb Estate 21 Units 1 & 2 | 190TX004A | Mbank Ft. Worth (McGinley Trust) | Heritage Resources, Inc. | 11/2/1984 | 7/7/1986 | SE/4 of Section 21, Block C-23, PSL Survey, to a depth of 19,018', Winkler County, Texas | 343 | 309 |
| Tubb Estate 21 Units 1 & 2 | 190TX004B | Carye Cowden Payton, et al | Sinclair Oil and Gas Company | 9/8/1965 | 9/8/1975 | SE/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 212 | 83 |
| Tubb Estate 21 Units 1 & 2 | 190TX005A | Paralee Payton McMahon | Lee House | 4/23/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 84 |
| Tubb Estate 21 Units 1 & 2 | 190TX005B | Evelyn Harrison | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 90 |
| Tubb Estate 21 Units 1 & 2 | 190TX005C | Beth Brownlee | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 96 |
| Tubb Estate 21 Units 1 & 2 | 190TX005D | Annie Welch | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 102 |
| Tubb Estate 21 Units 1 & 2 | 190TX005F | Jake Harrison (AIF - Michael Harrison) | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 399 |
| Tubb Estate 21 Units 1 & 2 | 190TX005G | Patricia Crocker | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 114 |
| Tubb Estate 21 Units 1 & 2 | 190TX005H | InterFirst Abilene (AIF - Brownlee) | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 120 |
| Tubb Estate 21 Units 1 & 2 | 190TX005I | Ann Lankford | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 126 |
| Tubb Estate 21 Units 1 & 2 | 190TX005J | Ellen Brownlee | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 132 |
| Tubb Estate 21 Units 1 & 2 | 190TX005K | Marvin Welch | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 138 |
| Tubb Estate 21 Units 1 & 2 | 190TX005L | Ann Gray | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 144 |
| Tubb Estate 21 Units 1 & 2 | 190TX005M | Susan Barker-Benfield | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 150 |
| Tubb Estate 21 Units 1 & 2 | 190TX005N | Linda Richey | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 156 |
| Tubb Estate 21 Units 1 & 2 | 190TX005P | Paralee Hays | Lee House | 4/22/1982 | 1/24/1986 | SW/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 330 | 108 |
| Tubb Estate 21 Units 1 & 2 | 190TX013A | Paralee McMahon | Heritage Resources, Inc. | 3/12/1984 | 3/12/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 775 |
| Tubb Estate 21 Units 1 & 2 | 190TX013B | Ellen Roberts | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 797 |
| Tubb Estate 21 Units 1 & 2 | 190TX013C | InterFirst Abilene (AIF - Lela Brownlee | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 773 |
| Tubb Estate 21 Units 1 & 2 | 190TX013D | Ann Lankford | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 781 |
| Tubb Estate 21 Units 1 & 2 | 190TX013F | Susan Barker-Benfield | Heritage Resources, Inc. | 3/12/1984 | 3/12/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 339 | 128 |
| Tubb Estate 21 Units 1 & 2 | 190TX013G | Patricia Crocker | Heritage Resources, Inc. | 3/12/1984 | 3/12/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 799 |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb Estate 21 Units 1 & 2 | 190TX0013H | Paralee Hays | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 339 | 126 |
| Tubb Estate 21 Units 1 & 2 | 190TX0013I | Annie Welch | Heritage Resources, Inc. | 3/15/1984 | 3/15/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 805 |
| Tubb Estate 21 Units 1 & 2 | 190TX0013J | Evelyn Harrison | Heritage Resources, Inc. | 3/15/1984 | 3/15/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 803 |
| Tubb Estate 21 Units 1 & 2 | 190TX0013K | Beth Brownlee | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 783 |
| Tubb Estate 21 Units 1 & 2 | 190TX014A | Jake Harrison (AIF - Michael Harrison) | Heritage Resources, Inc. | 3/15/1984 | 3/15/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 801 |
| Tubb Estate 21 Units 1 & 2 | 190TX014B | Marvin Welch | Heritage Resources, Inc | 3/15/1984 | 3/15/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 338 | 795 |
| Tubb Estate 21 Units 1 & 2 | 190TX014C | Ann Gray | Heritage Resources, Inc | 3/15/1984 | 3/15/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 339 | 366 |
| Tubb Estate 21 Units 1 & 2 | 190TX014D | Linda Richey | Heritage Resources, Inc | 3/15/1984 | 3/15/1987 | N/2 of Section 21, Block C-23, PSL Survey, Winkler County, Texas | 339 | 364 |
| Tubb Estate 21 Units 1 & 2 | 190TX015A | George Bristol | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | SE/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 338 | 528 |
| Tubb Estate 21 Units 1 & 2 | 190TX015B | Frederick Bristol | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | SE/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 338 | 531 |
| Tubb Estate 21 Units 1 & 2 | 190TX015C | Edwin Reynolds | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | SE/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 338 | 534 |
| Tubb Estate 21 Units 1 & 2 | 190TX015D | Marjorie Huszagh | Heritage Resources, Inc. | 3/9/1984 | 3/9/1987 | SE/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 338 | 537 |
| Tubb Estate 21 Units 1 & 2 | 190TX015E | Dorothea W. Huszagh | Heritage Resources, Inc. | 8/7/1984 | 8/7/1987 | SE/4 of Section 21, Block C-23, PSL Survey, Winkler County, Texas, to a depth of 19,806' | 353 | 557 |
| Tubb Estate 21 Units 1 & 2 | Assignment of Mineral Interests | Amarillo National Bank | Michael B. Wisenbaker as Agent | 5/12/1995 | | Section 21, Block C-23, PSL Survey, Winkler County, Texas | 428 | 136 |

**Tubb Estate 21 Unit 1**

| | |
|---|---|
| WI - BPO | 54.31487070% |
| WI - APO | 54.31487070% |
| NRI - BPO | 40.15903370% |
| NRI - APO | 40.15903370% |

**Tubb Estate 21 Unit 2**

| | |
|---|---|
| WI - BPO | 82.88315050% |
| WI - APO | 80.78438070% |
| NRI - BPO | 61.1263499% |
| NRI - APO | 59.02757590% |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb 9 Units 1 & 2 | 190TX0048 | Carrye Cowden Payton, et al | Sinclair Oil & Gas Company | 9/8/1965 | | SW/4 and S/2 SE/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 212 | 83 |
| Tubb 9 Units 1 & 2 | 300TX0012 | Lela Cowden Brownlee, et vir | Roy E. Kimsey | 2/3/1964 | | N/2 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 200 | 278 |
| Tubb 9 Units 1 & 2 | 300TX0033 | T. H. Neel and the First National Bank of for Worth, Independent Executors U/W/O J. B. Tubb, deceased | Roy E. Kimsey | 2/18/1964 | | N/2, SE/4 and SW/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 201 | 133 |
| Tubb 9 Units 1 & 2 | 300TX0034 | Carrye Cowden Payton | Roy E. Kimsey | 2/3/1964 | | N/2 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 200 | 283 |
| Tubb 9 Units 1 & 2 | 300TX0035 | Citizens National Bank in Abilene, Texas | Roy E. Kimsey | 2/3/1964 | | N/2, SE/4 and SW/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 200 | 299 |
| Tubb 9 Units 1 & 2 | 300TX0027 | Paralee Manly Hays, et vir | Roy E. Kimsey | 2/3/1964 | | N/2 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 200 | 279 |
| Tubb 9 Units 1 & 2 | 300TX0038 | Birdie Cowden Spaulding | Roy E. Kimsey | 2/3/1964 | | N/2 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 200 | 281 |
| Tubb 9 Units 1 & 2 | 300TX0039 | Carrye Cowden Spaulding | Roy E. Kimsey | 7/9/1965 | | N/2 SE/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 210 | 212 |
| Tubb 9 Units 1 & 2 | 300TX0040 | Paralee Manly Hays, et vir | Roy E. Kimsey | 7/9/1965 | | N/2 SE/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 210 | 208 |
| Tubb 9 Units 1 & 2 | 300TX0041 | Birdie Cowden Spaulding | Roy E. Kimsey | 7/9/1965 | | N/2 SE/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 210 | 210 |
| Tubb 9 Units 1 & 2 | 300TX0042 | Lela Cowden Brownlee, et vir | Roy E. Kimsey | 7/9/1965 | | N/2 SE/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 210 | 206 |
| Tubb 9 Units 1 & 2 | 300TX0043 | Fostur Petroleum Corporation | Marjorie M. Weaver | 10/4/1965 | | SW/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 211 | 533 |
| Tubb 9 Units 1 & 2 | 300TX0016 | Cities Service Oil Company | Atlantic Richfield Company | 11/8/1973 | | SW/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 273 | 171 |
| Tubb 9 Units 1 & 2 | Mineral Deed | Sunrise Energy Partners, Ltd VI, A Limited Partnership | Crittendon Corporation | 8/13/1996 | | SW/4 of Section 9, Block 74, PSL Survey, Winkler County, Texas | 439 | 82 |

| Tubb 9 Unit 1 | |
|---|---|
| WI - BPO | 46.0028107% |
| WI - APO | 46.0028107% |
| NRI - BPO | 37.9586651% |
| NRI - APO | 37.9586651% |

| Tubb 9 Unit 2 | |
|---|---|
| WI - BPO | 66.8568204% |
| WI - APO | 44.9103200% |
| NRI - BPO | 58.7912827% |
| NRI - APO | 39.5098494% |

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb 1 Unit 1 | 1901TX04B | Carye Cowden Payton, et al | Sinclair Oil & Gas Company | 9/8/1965 | | Section 1, Block 75, PSL Survey, Winkler County, Texas | 212 | 83 |
| Tubb 1 Unit 1 | 300TX029 | Citizens National Bank of Abilene | Marjorie M. Weaver | 4/8/1965 | | Section 1, Block C-24, PSL Survey, Winkler County, Texas | 208 | 379 |
| Tubb 1 Unit 1 | 300TX030 | T. H. Neel and the First National Bank of for Worth, Independent Executors U/W/O J. B. Tubb, deceased | Marjorie M. Weaver | 4/15/1965 | | Section 1, Block C-24, PSL Survey, Winkler County, Texas | 208 | 633 |
| Tubb 1 Unit 1 | Mineral Deed | Southland Royalty Company | Crittendon Acquisition Company, et al | 6/23/1987 | | SW/4 of Section 1, Block 75, PSL Survey, Winkler County, Texas | 369 | 24 |
| Tubb 1 Unit 1 | 300TX031 | Evelyn Linebery, Individually and as Trustee and husband Tom Linebery | Bill Roden | 2/10/1966 | | Part of Section 2, Block WF, Scrap File 13022, Winkler County, Texas | 214 | 527 |
| Tubb 1 Unit 1 | 300TX04A | J. Winston Smith | Atlantic Richfield Company | 3/16/1987 | | Part of Section 2, Block WF, Scrap File 13022, Winkler County, Texas | 370 | 302 |
| Tubb 1 Unit 1 | 300TX04B | William S. Scarborough | Atlantic Richfield Company | 3/16/1987 | | Part of Section 2, Block WF, Scrap File 13022, Winkler County, Texas | 370 | 750 |
| Tubb 1 Unit 1 | 300TX04C | William S. Scarborough & William Francis Scarborough, Co-Trustees of the Estate of W. F. Scarborough, Deceased | Atlantic Richfield Company | 3/16/1987 | | Part of Section 2, Block WF, Scrap File 13022, Winkler County, Texas | 370 | 758 |
| Tubb 1 Unit 1 | 300TX04D | Deborah Scarborough Cleveland & Audrey Scarborough, Co-Trustees | Atlantic Richfield Company | 3/16/1987 | | Part of Section 2, Block WF, Scrap File 13022, Winkler County, Texas | 370 | 766 |
| Tubb 1 Unit 1 | 300TX04E | The Scarborough Foundation & Evelyn Linebery | Atlantic Richfield Company | 3/16/1987 | | Part of Section 2, Block WF, Scrap File 13022, Winkler County, Texas | 371 | 531 |
| Tubb 1 Unit 1 | 300TX04F | Winston R. Smith, Trustee for J. Winston Smith Trust | Atlantic Richfield Company | 3/16/1987 | | Part of Section 2, Block WF, Scrap File 13022, Winkler County, Texas | 371 | 523 |
| Tubb 1 Unit 1 | 300TX04G | Marie M. Rooney, Trustee for the Scarborough-Rooney Trust | Atlantic Richfield Company | 3/16/1987 | | Part of Section 2, Block WF, Scrap File 13022, Winkler County, Texas | 371 | 515 |
| Tubb 1 Unit 1 | 300TX04H | Texas Commerce Bank, El Paso, N.A., Trustee for the Esther S. Collier Trust, et al | Atlantic Richfield Company | 3/16/1987 | | Part of Section 2, Block WF, Scrap File 13022, Winkler County, Texas | 371 | 539 |

WI - BPO 43.90230000%
WI - APO 42.97189700%
NRI - BPO 36.42197500%
NRI - APO 35.71395900%

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|---|---|---|---|---|---|---|---|---|
| Tubb 75-1 | 1907X0043 | Carrye C. Payton | Sinclair Oil & Gas Company | 9/8/1965 | | Section 1, Block C-24, PSL Survey, Winkler County, Texas | 212 | 83 |
| Tubb 75-1 | 225TX001 | Bank of America, N.A. Trustee of the Cathy J. Yarbrough Tr., Deborah J. Shamme Tr., James D. Jackson Tr., & Judy R. McCollum Tr. | Heritage Resources, Inc. | 9/17/1999 | | Section 1, Block 75, PSL Survey, Winkler County, Texas | 465W/10 682W/67 L 1L | |
| Tubb 75-1 | 225TX002 | William C. Eiland | Heritage Resources, Inc. | 12/8/1999 | | Section 1, Block 75, PSL Survey, Winkler County, Texas | 467 | 493 |
| Tubb 75-1 | 225TX003 | N. R. Rousselot & Sons, a General Partnership | Heritage Resources, Inc. | 12/8/1999 | | Section 1, Block 75, PSL Survey, Winkler County, Texas | 488 | 696 |
| Tubb 75-1 | 225TX004 | Edward D. Rhodes | Heritage Resources, Inc. | 12/9/1999 | | Section 1, Block 75, PSL Survey, Winkler County, Texas | 467 | 496 |

WI - BPO   52.1370400%
WI - APO   52.1370400%
NRI - BPO   40.7690460%
NRI - APO   40.7690460%

# EXHIBIT A-1(b)

# PURCHASE AND SALE AGREEMENT FOR OIL AND GAS PROPERTIES LOCATED IN WINKLER AND LOVING COUNTIES, STATE OF TEXAS and LEA COUNTY, STATE OF NEW MEXICO

# NON-SECTION 6 and SECTION 6

| Well | Lease Number | Lessor | Lessee | Lease Date | Expiration Date | Description | Book | Page |
|------|--------------|--------|--------|------------|-----------------|-------------|------|------|
| A.G. Hill #1, Pat Howell #1 | | Noesis Exploration Company | Heritage Standard Corporation | 2/1/2004 | | All of Section 6, Block 74, PSL Survey, Winkler County, Texas | 509 | 879 |
| A.G. Hill #1, Pat Howell #1 | | Laura Kimach Howell | Heritage Standard Corporation | 2/1/2004 | | All of Section 6, Block 74, PSL Survey, Winkler County, Texas | 509 | 895 |
| A.G. Hill #1, Pat Howell #1 | | Elizabeth Fabian Howell | Heritage Standard Corporation | 2/1/2004 | | All of Section 6, Block 74, PSL Survey, Winkler County, Texas | 509 | 887 |
| A.G. Hill #1, Pat Howell #1 | | Gwyneth Webster Howell | Heritage Standard Corporation | 2/1/2004 | | All of Section 6, Block 74, PSL Survey, Winkler County, Texas | 510 | 16 |
| A.G. Hill #1, Pat Howell #1 | | Rusie Emily Howell | Heritage Standard Corporation | 2/1/2004 | | All of Section 6, Block 74, PSL Survey, Winkler County, Texas | 510 | 1 |

| A.G. Hill I | | |
|-------------|---|---|
| WI - BPO | 75.750000% | |
| WI - APO | 38.750000% | |
| NRI - BPO | 56.812500% | |
| NRI - APO | 29.062500% | |

| Pat Howell I | | |
|--------------|---|---|
| WI - BPO | 81.250000% | |
| WI - APO | 81.250000% | |
| NRI - BPO | 60.937500% | |
| NRI - APO | 60.937500% | |

# EXHIBIT A-2(a)

# PURCHASE AND SALE AGREEMENT FOR OIL AND GAS PROPERTIES LOCATED IN WINKLER AND LOVING COUNTIES, STATE OF TEXAS and LEA COUNTY, STATE OF NEW MEXICO

## NON-SECTION 6 and SECTION 6

## *NON- SECTION SIX WELLS*

### TUBB ESTATE 1-75

Location:                           Section 1, Block 75, Winkler County, Texas

Working Interest:        .52137040

Net Revenue Interest:            .40769046

### TUBB 1 UNIT 1
### (Before Payout Interests)

Location:                           Section 1, Block C-24, Winkler County, Texas

Working Interest:        .43902300

Net Revenue Interest:            .32974738

Overriding Royalty Interest:     .03447237

### TUBB UNIT 2

Location:                           Section 1, Block C-24, Winkler County, Texas

Working Interest:        .61538450

Net Revenue Interest:            .[          ]

### TUBB UNIT 3

Location:                           Section 1, Block C-24, Winkler County, Texas

Working Interest:        .76178020

Net Revenue Interest:            .47014510

Overriding Royalty Interest:     .00500824

### TUBB UNIT 4

Location:                           Section 1, Block C-24, Winkler County, Texas

Working Interest:        .[          ]

Net Revenue Interest:            .[          ]

PAGE 1

## TUBB ESTATE 1-2

| | |
|---|---|
| Location: | Section 2, Block C-24, Winkler County, Texas |
| Working Interest: | .32035340 |
| Net Revenue Interest: | .24367000 |
| Royalty Interest: | .00244140 |
| Overriding Royalty Interest: | .01133333 |

## TUBB 9 UNIT 1

| | |
|---|---|
| Location: | Section 9, Block 74, Winkler County, Texas |
| Working Interest: | .46002810 |
| Net Revenue Interest: | .34864624 |
| Royalty Interest: | .00520833 |
| Overriding Royalty Interest: | .02573194 |

## TUBB 9 UNIT 2
### (Before Payout Interests)

| | |
|---|---|
| Location: | Section 9, Block 74, Winkler County, Texas |
| Working Interest: | .66856820 |
| Net Revenue Interest: | .56707949 |
| Royalty Interest : | .02083333 |

## TUBB ESTATE 1-21

| | |
|---|---|
| Location: | Section 21, Block C-23, Winkler County, Texas |
| Working Interest: | .54314870 |
| Net Revenue Interest: | .38445416 |
| Royalty Interest: | .00015129 |
| Overriding Royalty Interest: | .01698488 |

## TUBB ESTATE 2-21
### (Before Payout Interests)

Location:                              Section 21, Block C-23, Winkler County, Texas

Working Interest:          .82883150

Net Revenue Interest:                  .60926349

Overriding Royalty Interest:           .00200000

## TUBB ESTATE 1-22
### (Before Payout Interests)

Location:                              Section 22, Block C-23, Winkler County, Texas

Working Interest:          .79456000

Net Revenue Interest:                  .57145444

Royalty Interest:                      .01436362

Overriding Royalty Interest:           .00525574

## TUBB 22 UNIT 1R
### (Before Payout Interests)

Location:                              Section 22, Block C-23, Winkler County, Texas

Working Interest:          .78262240

Net Revenue Interest:                  .57191524

Royalty Interest:                      .04101563

Overriding Royalty Interest:           .00539367

## TUBB ESTATE 22-2
### (Before Payout Interests)

Location:                              Section 22, Block C-23, Winkler County, Texas

Working Interest:          .5813151

Net Revenue Interest:                  .42046585

Royalty Interest:          .04101562

Overriding Royalty Interest            .00226452

## TUBB ESTATE 22-3

| Location: | Section 22, Block C-23, Winkler County, Texas |
|---|---|
| Working Interest: | .67844300 |
| Net Revenue Interest: | .48177409 |
| Royalty Interest: | .09520264 |
| Overriding Royalty Interest: | .00691996 |

## TUBB 23 UNIT 1R

| Location: | Section 23, Block C-23, Winkler County, Texas |
|---|---|
| Working Interest: | .81854140 |
| Net Revenue Interest: | .60414037 |
| Royalty Interest: | .00234250 |
| Overriding Royalty Interest: | .00200000 |

## TUBB ESTATE 1-23

| Location: | Section 23, Block C-23, Winkler County, Texas |
|---|---|
| Working Interest: | .62508890 |
| Net Revenue Interest: | .46812828 |
| Overriding Royalty Interest: | .00200000 |

## WOLFE UNIT 1

| Location: | Section 24, Block C-23, Winkler County, Texas |
|---|---|
| Working Interest: | .47406050 |
| Net Revenue Interest: | .38608412 |
| Royalty Interest: | .01673542 |

## WOLFE UNIT 2

| Location: | Section 24, Block C-23, Winkler County, Texas |
|---|---|
| Working Interest: | .61749300 |
| Net Revenue Interest: | .49067731 |
| Overriding Royalty Interest: | .00520459 |

## WOLFE UNIT 3

| Location: | Section 24, Block C-23, Winkler County, Texas |
|---|---|
| Working Interest: | .45768990 |
| Net Revenue Interest: | .34375268 |
| Royalty Interest: | .02039342 |
| Overriding Royalty Interest: | .00328490 |

## WOLFE UNIT 4

| Location: | Section 24, Block C-23, Winkler County, Texas |
|---|---|
| Working Interest: | .62741650 |
| Net Revenue Interest: | .50000000 |
| Overriding Royalty Interest: | .00520459 |

## WOLFE UNIT 5

| Location: | Section 24, Block C-23, Winkler County, Texas |
|---|---|
| Working Interest: | .66491690 |
| Net Revenue Interest: | .51196278 |
| Royalty Interest: | .07031250 |
| Overriding Royalty Interest: | .00520459 |

## WOLFE UNIT 6

Location:                              Section 24, Block C-23, Winkler County, Texas

Working Interest:          .67476430

Net Revenue Interest:              .53946278

Overriding Royalty Interest:       .00520459

## WOLFE UNIT 7

Location:                              Section 24, Block C-23, Winkler County, Texas

Working Interest:          .74600640

Net Revenue Interest:              .58545013

Overriding Royalty Interest:       .00375990

## WOLFE UNIT 8

Location:                              Section 24, Block C-23, Winkler County, Texas

Working Interest:          .63376662

Net Revenue Interest:              .[_____]

## TUBB ESTATE 1 (SEC 25)
## (Before Payout Interests)

Location:                              Section 25, Block C-23, Winkler County, Texas

Working Interest:          .63636960

Net Revenue Interest:              .51880071

## TUBB ESTATE 2 (SEC 25)

Location:                              Section 25, Block C-23, Winkler County, Texas

Working Interest:          .46429790

Net Revenue Interest:              .38046994

### TUBB ESTATE 3 (SEC 25)
### (Before Payout Interests)

Location:                        Section 25, Block C-23, Winkler County, Texas

Working Interest:        .86974800

Net Revenue Interest:            .70813499

### MEXICO "P" FEDERAL 1

Location:                        Section 21, Township 26 South, Range 35 East,
                                 N.M.P.M., Lea County, New Mexico

Working Interest:        .95725870

Net Revenue Interest:            .76098441

Overriding Royalty Interest:     .00500000

# EXHIBIT A-2(b)

# PURCHASE AND SALE AGREEMENT FOR OIL AND GAS PROPERTIES LOCATED IN WINKLER AND LOVING COUNTIES, STATE OF TEXAS and LEA COUNTY, STATE OF NEW MEXICO

## NON-SECTION 6 and SECTION 6

## *SECTION SIX WELLS*

### A. G. HILL #1 WELL

Location:                          Section 6, Block 74, Winkler County, Texas

Working Interest:        .79250000

Net Revenue Interest:         .59437500

### PAT HOWELL #1 WELL

Location:                          Section 6, Block 74, Winkler County, Texas

Working Interest:        .81250000

Net Revenue Interest:         .60937500

# EXHIBIT B

# PURCHASE AND SALE AGREEMENT FOR OIL AND GAS PROPERTIES LOCATED IN WINKLER AND LOVING COUNTIES, STATE OF TEXAS and LEA COUNTY, STATE OF NEW MEXICO

# NON-SECTION 6 and SECTION 6

## **EXHIBIT B**

Excluded Items for Section 6 and Non Section 6 Purchase and Sale Agreement

a) The surface lease dated May 15, 1975 initially by and between the City of Midland and Atlantic Richfield Company for the Crittendon Gas Plant together with all physical plant equipment, compressors, machinery, parts, tools, furniture, and improvements located in or on the leased property.

b) The following salt water disposal wells and remediation wells, together with any liability arising out of a Claim associated with those wells, the related facilities and equipment, or the operation thereof, to-wit:

      i. Tubb 2 Unit #1 Well, in Section 2, Block 24-C, Winkler County, Texas;

      ii. J.B. Tubb 1-A, remediation well, in Section 24, Block 23-C, Winkler County, Texas;

      iii. HRW-1 recovery (remediation) well, in Section 24, Block 23-C, Winkler County, Texas; and

      iv. HRW-2 recovery (remediation) well, in Section 24, Block 23-C, Winkler County, Texas.

Parties shall agree to the appropriate form and structure of exclusion of these wells and dealing with the remediation obligations for which these wells are being used in agreements between the parties on mutually acceptable terms.

c) All wells and/or wellbores not within the boundaries of Properties conveyed in Sections 21, 22, 23, 24, 25, Block C-23; Sections 1 and 2, Block C-24; Sections 6 and 9, Block 74; Section 1, Block 75; all Public School Land Surveys, Winkler and Loving Counties, Texas and Section 21, Township 26 South, Range 35 East, Lea County, New Mexico.