E. Stuart Phillips
Matthew Crouch
Assistant Attorneys General
The Texas Attorney General's Office
Bankruptcy & Collections Division
P. O. Box 12548, MC-008
Austin, Texas  78711-2548
P: 512/463-2173   F: 512/482-8341

ATTORNEYS FOR THE RAILROAD COMMISSION OF TEXAS

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HERITAGE CONSOLIDATED, LLC, et al., | § | CASE NO. 10-36484-hdh |
| | § | |
| | § | CHAPTER 11 |
| | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |

**TEXAS RAILROAD COMMISSION'S MOTION FOR
ALLOWANCE OF AN ADMINISTRATIVE EXPENSE CLAIM
FOR PLUGGING AND ABANDONMENT LIABILITY**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TX 75242-1496 BEFORE CLOSE OF BUSINESS ON APRIL 18, 2011, WHICH IS AT LEAST 24 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

The RAILROAD COMMISSION OF TEXAS[1] ("RRC") files this Motion for Allowance of an Administrative Claim For Plugging and Abandonment Liability ("Motion") against Debtor Heritage Standard Corporation ("Standard"), seeking allowance of an administrative claim pursuant to 11 U.S.C. § 503(b)(1)(A) for plugging and abandonment liability and surface clean-up costs, and in support of the Motion would show the Court as follows:

*Overview*

1.      Standard, in its filings in this bankruptcy, indicated it intends to remain the oil and gas operator of record responsible for at least 17 oil and gas wellbores after the sale of substantially all its remaining assets. However, Standard's initial proposal was not to actively operate after confirmation of its chapter 11 plan.[2] Because Standard will remain responsible as a matter of Texas law for operations (including the plugging and abandonment) of all wellbores on which it is the operator of record, Standard must properly address its ongoing obligation to properly plug and abandon its wells. The RRC submits that it is thus appropriate to accord that obligation administrative expense status so Standard's plugging and abandonment ("P&A") obligations do not fall on the State and, further, that it is appropriate to place the funds necessary to satisfy this obligation in escrow, pending confirmation of a plan. Standard does not contest the RRC's request that this obligation be given administrative expense status.

---

[1] The RRC is a party-in-interest in these proceedings because the RRC regulates debtor Heritage Standard Corporation's oil and gas operations in the state of Texas. The RRC is the Texas state agency which enforces Texas environmental laws related to oil and gas operations in the state, including but not limited to proper plugging and abandonment of oil and gas wells.

[2] The RRC has been advised that the auction did not result in the response the debtors were hoping for, and as such, the RRC is unclear what Standard's plans are for operating or liquidating, post-sale. Because the purpose of this administrative expense claim is to provide for the operator responsibilities (including plugging and abandonment) for all wells left in Standard's name, the RRC reserves the right to seek allowance of an additional amount for the plugging and abandonment liability on any wells (in addition to the 17 wellbores already identified) for which Standard will remain liable post-confirmation.

*Background*

2.     As of the petition date, Standard was the operator of record on 60 wells and 49 wellbores located on 45 oil and gas leases in Texas.

3.     Jointly-administered Debtors Standard and Heritage Consolidated, LLC ("Debtors") filed a motion to sell assets[3] which contemplated that the purchaser(s) would assume operator responsibility for all but seventeen (17) of the wellbores as part of the sale. Those seventeen wellbores are listed on the spreadsheet attached to this Motion as Exhibit A. The Debtors recently had a sale of substantially all of their assets approved ("Asset Sale") by this Court. Docket ## 411, 506. Specifically excluded from the Asset Sale, however, were the 17 wellbores which the Debtors remain liable on for P&A costs and surface clean-up expenses. See Docket # 411, Schedule 2(b)(iv) of the Back-Up Purchase and Sale Agreement. Under the terms of the Asset Sale, the Debtors received $3,850,000 in cash. After $1,500,000 was used to satisfy a portion of the DIP financing, the remaining $2,350,000 was placed in escrow for payment of administrative claims. Docket # 504, Global Resolution Agreement.

4.     Standard remains liable as the operator of record for any properties for which the oil and gas operating authority and responsibility is not specifically assumed by (and properly transferred to) another entity. The RRC asks that this Court address that liability by requiring Standard to set aside sufficient funds (as an administrative expense) to properly plug and abandon these wellbores and complete necessary surface clean-up and repairs, before its plan is approved and the company stops actively conducting business as an oil and gas operator.

---

[3] More fully titled the Expedited Motion for Order (A) Approving Plan Support Agreement, Sale Procedures and Bid Protections in Connection with Sale of Assets; (B) Approving Form and Manner of Notice of Sale and of Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief (the "Sale Motion"). Docket # 14.

5.  Standard, like all debtors, is required to manage and operate the property in its estate in accordance with applicable state law. 28 U.S.C. § 959(b). *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dept. of Envt'l. Protection*, 474 U.S. 494 (1986); *In the Matter of Cajun Electric Power Coop., Inc.*, 185 F.3d 446 (5th Cir. 1999); and *In the Matter of H.L.S. Energy Co.*, 151 F.3d 434 (5th Cir. 1998); *In the Matter of Al Copeland Enterprises, Inc.*, 991 F.2d 233 (5th Cir. 1993). The obligation to manage and operate the property of the estate extends to any cleanup costs involving oil leases that are the property of the estate. *H.L.S. Energy,* 151 F.3d at 439 (expenses for clean-up of post-petition environmental liabilities are an administrative expense).

6.  Plugging and abandonment expenses, regardless of whether the wells "ripened" for plugging pre- or post-petition, have been accorded administrative expense status. *See In re Am. Coastal Energy, Inc.,* 399 B.R. 805 (Bankr. S.D. Tex. 2009)(holding that the RRC's claim for plugging oil and gas wells post-petition based on pre-petition conduct was an administrative expense under §503(b)(1)(A)); *see, also, In re H.L.S. Energy*, 151 F.3d at 439.

7.  The RRC agrees that Standard's estimate of $600,000 is the appropriate amount of the administrative expense claim, payable to and enforced by the RRC, for the 17 wellbores originally contemplated to stay with Standard after the sale(s). In the event that Standard is ultimately left with operator responsibility for more than those 17 wellbores, however, the RRC reserves the right to seek an additional administrative expense claim to completely address the P&A liability for all such additional wells.[4]

8.  Standard fully acknowledges and accepts its responsibility for the plugging and

---

[4] The RRC further reserves the right to seek administrative expense claims for post-petition fines and penalties relating to debtor's pollution of the Cenozoic Pecos Alluvium Aquifer.

abandonment liability of all remaining wellbores left in the estate, and Standard stipulates that these plugging and abandonment liabilities constitute an administrative claim. Standard reserves the right, however, to challenge the dollar amount of the plugging and abandonment liabilities for these wellbores.

9. The Debtors have advised the RRC that they intend to fund this administrative expense obligation with funds received from the Debtors' recent sale of its non-section 6 assets. Docket ## 412, 506. As the Debtors are presently attempting to resolve a number of other claims (such as the 9019 motion regarding employee claims filed as Docket # 512), the RRC requests that these funds be placed in an escrow account to ensure that the administrative expense obligation is funded in full.

WHEREFORE, the RRC requests that this Court enter an order granting it an administrative claim under 11 U.S.C. § 503(b)(1)(A) in an amount of at least $600,000 to address Standard's plugging and abandonment liability under Texas law.

    Respectfully submitted,

    GREG ABBOTT
    Attorney General of Texas

    DANIEL T. HODGE
    First Assistant Attorney General

    BILL COBB
    Deputy Attorney General for Civil Litigation

    RONALD R. DEL VENTO
    Assistant Attorney General
    Chief, Bankruptcy & Collections Division

>           */s/ Matthew Crouch*
> MATTHEW P. CROUCH
> Texas State Bar No. 24072482
> E. STUART PHILLIPS
> Texas Bar No. 15923600
> Assistant Attorneys General
> Bankruptcy & Collections Division
> P. O. Box 12548
> Austin, Texas 78711-2548
> P: (512) 463-2173/F: (512) 482-8341
> E-mail:   *matthew.crouch@oag.state.tx.us*
>               *stuart.phillips@oag.state.tx.us*
>
> ATTORNEYS FOR THE RAILROAD COMMISSION OF TEXAS

## CERTIFICATE OF CONFERENCE

On March 23, 2011, the RRC conferred with counsel for Standard. Standard does not dispute that it is liable for plugging and abandonment expenses and that this constitutes an administrative expense claim, but reserves the right to challenge the dollar amount of the liability.

> /S/ MATTHEW CROUCH
> MATTHEW CROUCH
> Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served via the Court's Electronic Filing System on parties-in-interest in this proceeding on March 24, 2011.

> */s/ Matthew Crouch*
> MATTHEW CROUCH
> Assistant Attorney General