Holland Neff O'Neil (14864700)
Michael S. Haynes (24050735)
**GARDERE WYNNE SEWELL LLP**
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@gardere.com
mhaynes@gardere.com

And

Terry W. Rhoads (16811750)
Matt Catalano (24003918)
**COTTON BLEDSOE TIGHE & DAWSON, PC**
500 West Illinois, Ste. 300
Midland, Texas 79701
Telephone: (432) 897-1440
Facsimile: (432) 682-3672
trhoads@cbtd.com
mcatalano@cbtd.com

**COUNSEL FOR CITY OF MIDLAND**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **HERITAGE CONSOLIDATED, LLC et al.,**[1] | § | **CASE NO. 10-36484-hdh-11** |
| | § | |
| | § | **(Jointly Administered)** |
| **DEBTORS.** | § | |

### CITY OF MIDLAND'S MOTION FOR RELIEF FROM AUTOMATIC STAY
### TO PURSUE CLAIMS AGAINST DEBTORS' INSURER

PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, DALLAS, TX 75242 BEFORE CLOSE OF BUSINESS ON **APRIL**

---

[1] Pursuant to the *Order Directing Joint Administration of Bankruptcy Cases*, Heritage Consolidated, LLC's case was jointly administered with Heritage Standard Corporation's case no. 10-26485-hdh (collectively, the "**Debtors**").

**12, 2011** WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.

The City of Midland ("**Midland**"), by and through its undersigned counsel, hereby files this motion (the "**Motion**") requesting the Court grant relief from the automatic stay to permit Midland to pursue its claims against the Debtors' insurer.  In support of this Motion, Midland respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

1.    On November 15, 2010, Midland filed the *City of Midland's Motion for Estimation of Claims for Purpose of Allowance, Voting, and Determining Plan Feasibility, and Request for Determination that Remediation Claim is Entitled to Administrative Expense Priority* (the "**Estimation Motion**").

2.    Through the Estimation Motion, Midland requested the Court estimate, for purposes of, inter alia, allowance, Midland's claims resulting from the Debtors' contamination of the Aquifer[2] containing a source of freshwater for Midland.  The Court conducted a trial on the Estimation Motion on January 10, 11, 13, and 14th.  Thereafter, on February 1, 2011, the Court entered the *Order on the City of Midland's Claim* [Docket No. 463] (the "**Order**").  On February 22, 2011, the Court amended the Order by entering the *Order Granting Midland's Motion for Amendment or Clarification of Order on City of Midland's Claim Pursuant to Fed. R. Bankr. Pro. 9023* [Docket No. 498] (the "**Amended Order**").

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Estimation Motion.

3.      The Amended Order clearly stated that Midland has an allowed claim against the Debtors in the amount of $6.5 million for damages (the "**Allowed Claim**"). Amended Order, Page 2.

4.      Midland believes its Allowed Claim for damages is covered by the Debtors' existing insurance policies.  Despite Midland's repeated requests for the Debtors' insurer to tender payment on the Allowed Claim, the Debtors' insurer has refused.  Therefore, Midland desires to pursue litigation against the insurer.  Although Midland believes it is entitled to pursue its Allowed Claim against the Debtors' insurer without obtaining relief from the automatic stay, out of an abundance of caution, Midland requests relief from the automatic stay for the limited purpose of pursuing litigation against the Debtors' insurer.

## II.
## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334, and this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B).  Venue is proper in this Court under 28 U.S.C. § 1409(a).  The predicates for the relief sought herein include provided in 11 U.S.C. § 362(d), Bankruptcy Rule 4001, Local Bankruptcy Rule 4001-1.

## III.
## BACKGROUND

6.      The Debtors commenced their chapter 11 bankruptcy proceedings on September 14, 2010.  Pursuant to Sections 1107 and 1108, the Debtors are operating their business and properties as debtors-in-possession.

7.      The Debtors, themselves and through their predecessors, have been engaged in the exploration, acquisition, production and sale of crude oil and gas in West Texas since 1984. Part of those operations was in the Crittendon field in Winkler County, Texas.  Sometime in

2005, one (or more) of the Debtors' underground injection wells being used in the Crittendon field leaked. The leaks resulted in the release of a tremendous amount of water contaminated with chloride (and other harmful elements) into the Aquifer. The rights to the fresh water in the Aquifer are owned by Midland and the water is intended to be a source of drinking water for the citizens of Midland, Texas.

8.      Because of these leaks, the Aquifer became contaminated with a "plume" of chloride infested water that is (and has been for some time) migrating through the Aquifer; thereby continually contaminating more-and-more fresh water.

9.      On November 15, 2010, Midland filed the Estimation Motion. Through the Estimation Motion, Midland requested the Bankruptcy Court estimate Midland's claims for: (a) the anticipated costs of remediating the Aquifer from the ongoing contamination (the "**Remediation Claim**") and (b) the irreparable damage and loss of water suffered by Midland as a result of the contamination (the "**Damage Claim**" and, with the Remediation Claim, the "**Claims**"). Midland requested the Court estimate the Claims for purposes of allowance, voting, and determining plan feasibility.

10.      The Court conducted a lengthy trial on the Estimation Motion in mid-January 2011. Thereafter, the Court ruled on the Estimation Motion, and estimated Midland's Claims at $6.5 million. Soon thereafter, on February 2, 2011, counsel for Midland sent a letter to counsel for the Debtors requesting that the Debtors (through their insurer) fund a trust with $6.5 million cash, such trust to be administered by the City of Midland in coordination with the Railroad Commission of Texas (the "**RRC**"). A copy of this letter is attached hereto as <u>Exhibit A</u>. On February 3, 2011, Federal Insurance Company ("**Federal**"), one of the Debtors' insurance companies, sent a letter to counsel for Midland, a copy of which is attached hereto as <u>Exhibit B</u>,

stating that the Court "did not enter a monetary award," and that the Order did not create an "immediate payment obligation of the Debtors or Federal." Federal declined Midland's request to fund a trust.

11.     Midland addressed Federal's assertion regarding the language in the Order by seeking to have that order amended. Specifically, on February 11, 2011, Midland filed *City of Midland's Motion for Amendment or Clarification of Order on City of Midland's Claim Pursuant to Fed. R. Bankr. Pro. 9023* [Docket No. 478] (the "**Motion to Clarify**"). The Court granted Midland's Motion to Clarify by amending Order through entry of the Amended Order. The Amended Order states (in pertinent part):

> Midland is entitled to have its damage repaired, and the cost of repair, in this case the remediation, is the measure of its claim. Midland's general unsecured claim for damages for the cost of remediation of the Aquifer is, therefore, allowed in the amount of $6.5 million. Such unsecured claim may very well be satisfied in a plan under which the Debtors show that they will have the funds and insurance necessary to complete the remediation, and responsible persons to see the remediation to a conclusion.

Amended Order, Page 2.

12.     After this Court entered the Amended Order, thereby making clear that Midland's claim is allowed in the amount of $6.5 million, Midland again requested that the Debtors (through their insurer) fund a trust with $6.5 million in cash to address Midland's Allowed Claim. A copy of that request is attached hereto as Exhibit C. Federal again declined to remit payment on the Allowed Claim. A copy of that response is attached hereto as Exhibit D. Therefore, it is apparent that Midland will need to pursue litigation against Federal in order to obtain payment on its Allowed Claim.

13.     The need to estimate Midland's Claims was precipitated by the Debtors' proposal to expeditiously confirm a chapter 11 plan whereby substantially all of the Debtors' assets would

be transferred to an affiliate of the Debtors' secured lender (thereby leaving the Debtors with virtually no operations or ability to remediate the Aquifer). However, after the trial on the Estimation Motion, the Debtors obtained authority to sell substantially all of their assets to an affiliate of the Debtors' secured lender pursuant to 11 U.S.C. § 363. That sale has been consummated, and the Debtors' operations are believed to be substantially reduced. It is unclear whether the Debtors will have the ability to confirm a chapter 11 plan.

14.     Therefore, it was (and is) necessary for Midland to move forward with its pursuit against Federal to protect Midland's interests and begin remediating the Aquifer. However, as stated above, Midland's previous attempts to obtain payment on its Allowed Claim from Federal have been unsuccessful. Midland, therefore, desires to pursue litigation against Federal to obtain payment on its Allowed Claim. Because the Debtors' insurance policies are specifically intended to cover environmental claims, such as the Allowed Claim, Midland does not believe the automatic stay prevents pursuit of litigation against Federal. Out of an abundance of caution, however, Midland requests relief from the automatic stay to pursue its claims against the Debtors' insurers.

## IV.
## AUTHORITY FOR RELIEF REQUESTED

15.     Section 362(d) governs relief from the automatic stay. That section provides, inter alia, that "the court shall grant relief from the stay . . . by terminating, annulling, modifying, or conditioning such stay . . . for cause. . . ." 11 U.S.C. § 362(d).

16.     The term "cause" is not defined in the Bankruptcy Code; thus, courts are free to determine it on a case-by-case basis. *See In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998) ("Because § 362 does not offer guidance as to what constitutes 'cause,' reviewing courts must determine whether cause existed on a case-by-case basis.); *In re Wilson*, 116 F.3d 87, 90 (3d Cir.

1997) (opining that cause is not defined in the Bankruptcy Code, "leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case"). In determining if cause exists, "… courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993). The automatic stay is intended to preserve the assets of the debtor and to provide an equitable procedure for all creditors. *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977)). When a pending action does not interfere with the bankruptcy proceeding, the automatic stay in no way fosters Bankruptcy Code policy. *See In re Holtkamp*, at 508 (citing S. Rep. No. 989, 95th Cong., 2d Sess. 50, 52 reprinted in [1978] U.S. Code Cong. & Ad. Nes 5836, 5638). Whether cause exists is committed to the discretion of the bankruptcy court, and the bankruptcy court's decision will be overturned only with an abuse of discretion. *See In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985).

17.     In the case at bar, the Debtors' insurance policies cover the Allowed Claim. In fact, the Amended Order specifically states that Midland's Allowed Claim "may very well be satisfied in a plan under which the Debtors show that they will have the funds ***and insurance necessary*** to complete the remediation." Amended Order, Page 2 (emphasis added). As stated above, it is uncertain whether the Debtors, with limited operations and cash flow, will be able to propose a confirmable chapter 11 plan. Therefore, it is necessary that Midland find an alternative means to obtain the "insurance necessary to complete the remediation." Such means is through litigation against the insurer. Because Midland's Claims have already been adjudicated and allowed in the amount of the Allowed Claim, and is not limited to just the

"Ritter Plan," it is not necessary for Midland to continue pursuit of its Allowed Claim against the Debtors. Rather, Midland seeks to recover its Allowed Claim from the Debtors' insurer.

18.     Midland's Allowed Claim is equivalent to a final judgment on the merits of Midland's Claim. *See, e.g., Bank of Lafayette v. Baudoin (in re Baudoin)*, 981 F.2d 736, 742 (5th Cir. 1993) ("[W]e read our prior holdings to establish that an order allowing a poof of claim is, likewise, a final judgment."); *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 164-5 (2d Cir. 1995) (holding that bankruptcy court has power and jurisdiction to enter money judgment against debtor); *In re Good Hope Chemical Corp.*, 747 F.2d 806, 808 n.5 (1st Cir. 1984) ("The bankruptcy court's allowance of a creditor's claim has the effect of a final judgment on the merits in a Chapter XI proceeding."); *Heller v. Cox*, 343 F.Supp. 519, 524 (S.D.N.Y. 1972) ("The law is settled that a judgment of a Referee in Bankruptcy with respect to a creditor's claim for money or for property is a final judgment and should be given the same effect as any other judgment of a competent court….").

19.     Therefore, as a judgment creditor, Midland is permitted under Texas law to pursue direct claims against the Debtors' insurer. *See, e.g., Rotella v. Mid-Continent Casualty Co.*, 2010 WL 1330449, at *5 (N.D. Tex. April 5, 2010) ("*Watson* reaffirmed that a third-party judgment creditor of an insured does have standing to bring contractual claims against an insurer.") (citation omitted); *Puente v. Chicago Ins. Co.*, 2010 WL 34163271, at *7 (S.D. Tex. May 20, 2010) ("A non-party to an insurance contract may enforce a contract (or have standing under the contract) 'if the non-party is the legally intended beneficiary of the contract or a judgment creditor of the insured.'") (citation omitted).

20.     Midland seeks relief from the automatic stay to pursue its state-law rights as a judgment creditor against the Debtors' insurers. As the largest unsecured creditor, Midland's

Allowed Claim will substantially reduce any recovery that may be obtained by the Debtors' other unsecured creditors.   Relief from the automatic stay will not impede administration of the Debtors' estates.   Therefore, relief from the automatic stay is in the best interests of Midland ***and the estates*** because it will allow Midland to pursue satisfaction and resolution of the Allowed Claim through the Debtors' insurers, rather than looking to estate assets.   Thus, there is "cause" to grant Midland relief from the automatic stay to pursue its claims against the Debtor's insurers.

21.     Federal Bankruptcy Rule 4001 imposes a 14-day stay on all orders granting relief from the automatic stay imposed by 11 U.S.C. § 362 unless the Court orders otherwise.   FED. R. BANKR. PRO. 4001(a)(3).   In order to begin remediating the Aquifer as soon as possible, Midland seeks to immediately pursue its claims against the Debtors' insurer.   Therefore, Midland requests that this Court to waive the 14-day stay imposed by Federal Bankruptcy Rule 4001.

22.     WHEREFORE, Midland respectfully requests that the Court (a) grant relief from the automatic stay as set forth herein, (b) waive the 14-day stay of Federal Rule of Bankruptcy Procedure 4001, and (c) grant such other and further relief to which Midland may be justly entitled.

DATED:  March 29, 2011

Respectfully submitted,

**GARDERE WYNNE SEWELL LLP**

*/s/ Holland Neff O'Neil*
Holland Neff O'Neil (14864700)
Michael S. Haynes (24050735)
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
(214) 999-4961
(214) 999-4667 FAX
honeil@gardere.com
mhaynes@gardere.com

-AND-

Terry W. Rhoads (16811750)
Matt Catalano (24003918)
COTTON BLEDSOE TIGHE & DAWSON, P.C.
500 West Illinois, Suite 300
Midland, Texas 79701
Telephone (432) 685-8570
Facsimile (432) 684-6131
Email trhoads@cbtd.com

COUNSEL FOR THE CITY OF MIDLAND

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 29, 2011, I was unable to confer with counsel for Heritage Consolidated, LLC.  On March 29, 2011, I conferred with counsel for Heritage Standard Corporation.  Counsel for Heritage Standard is coordinating with counsel for Heritage Consolidated, LLC, but, at this time, is unable to give a position as to whether the Debtors oppose the relief requested herein.  Once counsel for Heritage Standard has conferred with counsel for Heritage Consolidated, an updated certificate of conference on this motion will be filed with the Court.

*/s/ Michael S. Haynes*
Michael S. Haynes

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2011 a true and correct copy of the foregoing

document was served electronically on all registered ECF users in this case.

*/s/ Michael S. Haynes*
Michael S. Haynes

# Exhibit A



## COTTON BLEDSOE TIGHE & DAWSON, PC
### Attorneys at Law

Post Office Box 2776
Midland, Texas 79702-2776
500 West Illinois, Suite 300
Midland, Texas 79701
(432) 684-5782
(432) 682-3672 Fax
www.cottonbledsoe.com

**TERRY W. RHOADS**
trhoads@cbtd.com

(432) 685-8570 Direct
(432) 684-3161 Facsimile

February 2, 2011

*Via email: jmarshall@munsch.com*
Joe Marshall
Munsch Hardt Kopf Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, TX 75201-6659
Attorneys for Heritage Consolidated, LLC

*Via email: sdewolf@romclawyers.com*
Scott DeWolf
Rochelle McCullough, L.L.P.
325 N. St. Paul St., Suite 4500
Dallas, Texas 75201
Attorneys for Heritage Standard Corporation

> Re:    Case No. 10-36484-HDH-11 (Jointly Administered); *In re: Heritage Consolidated, LLC, et al*; In the United States District Court for the Northern District of Texas, Dallas Division

Dear Joe and Scott:

As you know, Judge Hale ruled Monday on the City of Midland's motion for estimation of its claim in the above-captioned bankruptcy. The Bankruptcy Court recognized that the City is entitled to have the damage to its aquifer repaired, and estimated the City's general unsecured claim in the amount of $6.5 million based on the Court's determination of the estimated cost of remediation. Likewise, although the Court did not grant the City the administrative claim per se, it did find that the remediation obligation was an administrative obligation of the Debtors. On page 4 of its Order, the Bankruptcy Court also indicated that this unsecured claim "may very well be satisfied in a plan under which the Debtors show that they will have the funds and insurance necessary to complete the remediation…."

As there now exists a legally binding obligation to the Debtors to pay the cost of remediation to not only satisfy this administrative obligation, but also to satisfy the City's unsecured claim, demand is hereby made that the Debtors (through their insurer) fund the amount awarded by the Bankruptcy Court. Although the City has several options in which to

Mr. Joe Marshall
Mr. Scott DeWolf
February 2, 2011
Page 2

pursue a larger claim, it is willing to accept funding of $6.5 million cash into a trust to be administered by the City of Midland in coordination with the Railroad Commission of Texas.

If acceptable, the City will release the Debtors (and its insurers) from further liability and will discontinue its pursuance of the administrative appeal to the Railroad Commission.

This proposal remains open until February 7, 2011, at 12:00 p.m. (CST), at which time this proposal shall be deemed withdrawn if not previously accepted.  I look forward to your prompt reply.

Very truly yours,

COTTON, BLEDSOE, TIGHE & DAWSON, P.C.

Terry Rhoads

TWR:ca

Mid: 000701\000056\897472.1

_Board Certified Civil Trial Law & Personal Injury Trial Law - Texas Board of Legal Specialization_

Mr. Joe Marshall
Mr. Scott DeWolf
February 2, 2011
Page 3


bcc:    Matt Catalano - Firm

       Mr. Keith Stretcher                    *Via Email:  kstretcher@midlandtexas.gov*
       City of Midland – City Hall
       P. O. Box 1152
       Midland, Texas 79702

       Holland Neff O'Neil                  *Via Email:  honeil@gardere.com*
       Michael S. Haynes                 *Via Email:  mhaynes@gardere.com*
       Gardere Wynne Sewell LLP
       3000 Thanskgiving Tower
       1601 Elm Street
       Dallas, Texas  75201-4761

# Exhibit B



**COZEN
O'CONNOR**

A PROFESSIONAL CORPORATION

ONE HOUSTON CENTER    SUITE 2900    1221 McKINNEY    HOUSTON, TX 77010
832.214.3900    800.448.8502    832.214.3905 FAX    www.cozen.com

Joseph A. Ziemianski
Member
Direct Dial: (832) 214-3920
jziemianski@cozen.com

February 3, 2011

Terry W. Rhoads                                          *Via E-Mail and Telecopy*
Cotton Bledsoe Tighe Dawson, PC                         *trhoads@cbtd.com*
P.O. Box 2776
Midland, Texas 79702-2776

> RE:   Case No. 10-36484-HDH-11 (Jointly Administered); *In re: Heritage
>       Consolidated, LLC, et al.*; In the United States Bankruptcy Court for the Northern
>       District of Texas, Dallas Division.

Dear Mr. Rhoads:

Federal Insurance Company ("Federal") is in receipt of your February 2, 2011 letter on behalf of the City of Midland (the "City") to Heritage in care of Joe Marshall of Munsch Hardt Kopf Harr, P.C., and Kevin McCullough of Rochelle McCullough, L.L.P., in which you have demanded that "the Debtors (through their insurer) fund the amount awarded by the Bankruptcy Court," and have proposed that the demand be met by "funding of $6.5 million cash into a trust to be administered by the City of Midland in coordination with the Railroad Commission of Texas."

Federal's express commitment has been, and continues to be, to pay the covered costs of the Ritter Plan as they are incurred, up to the amount of the remaining limits, subject to its previous reservation of rights. The Bankruptcy Court has now accepted the Ritter Plan and found its implementation to be sufficient relief. The Bankruptcy Court did not enter a monetary award, and, as you concede, it did not order allowance of an administrative claim. The order is devoid of any language creating an immediate payment obligation of the Debtors or Federal.

Terry W. Rhoads
February 3, 2011
Page 2 of 2

For these reasons, Federal respectfully declines your demand.

With best regards, I am

Sincerely yours,

COZEN O'CONNOR

Joseph A. Ziemianski

cc:    **VIA E-MAIL AND TELECOPY**:

Robert Townsend

Heritage Standard Corporation
c/o Mr. Scott DeWolf
Rochelle McCullough, L.L.P.
325 N. St. Paul Street
Suite 4500
Dallas, Texas 75201

Heritage Consolidated, LLC
c/o Mr. Joe Marshall
Ms. Mary Koks
Munsch Hardt Kopf Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659

# Exhibit C

# COTTON
# BLEDSOE
# TIGHE &
# DAWSON, PC
*Attorneys at Law*

Post Office Box 2776
Midland, Texas 79702-2776
500 West Illinois, Suite 300
Midland, Texas 79701
(432) 684-5782
(432) 682-3672 Fax
www.cottonbledsoe.com

**TERRY W. RHOADS**
trhoads@cbtd.com

(432) 685-8570 Direct
(432) 684-3161 Facsimile

March 1, 2011

*Via email: jziemianski@cozen.com*
Mr. Joseph A. Ziemianski
Cozen O'Connor, P.C.
1221 McKinney, Suite 2900
Houston, Texas 77010

*Via email: jmarshall@munsch.com*
Mr. Joe Marshall
Munsch Hardt Kopf Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, TX 75201-6659
Attorneys for Heritage Consolidated, LLC

*Via email: sdewolf@romclawyers.com*
Mr. Scott DeWolf
Rochelle McCullough, L.L.P.
325 N. St. Paul St., Suite 4500
Dallas, Texas 75201
Attorneys for Heritage Standard Corporation

Re:    Case No. 10-36484-HDH-11 (Jointly Administered); *In re: Heritage Consolidated, LLC, et al*; In the United States District Court for the Northern District of Texas, Dallas Division

Dear Gentlemen:

Given the recent amendment to the Court's Order (enclosed) which constitutes both a monetary award and provides for the allowance of the City's claim in the amount of $6.5 million, demand is made for immediate payment, on behalf of the Debtor and by its insurer, of the sum of $6.5 million in satisfaction of the Debtor's (and its insurer, Federal Insurance Company's) obligation to the City.

Please advise when we may expect funding at your earliest convenience.

Mid: 000701\000056\909489.1

---

*Board Certified Civil Trial Law & Personal Injury Trial Law - Texas Board of Legal Specialization*

Mr. Joseph A. Ziemianski
Mr. Joe Marshall
Mr. Scott DeWolf
March 1, 2011
Page 2

Very truly yours,

COTTON, BLEDSOE, TIGHE & DAWSON, P.C.

Terry Rhoads

TWR:ca
Enclosure
(Order Granting City of Midland's Motion for
Amendment or Clarification of Order on
City of Midland's Claim Pursuant to
Fed.R.Bankr.Pro. 9023)[Doc 498]

Mid: 000701\000056\909489.1

*Board Certified Civil Trial Law & Personal Injury Trial Law - Texas Board of Legal Specialization*

Mr. Joseph A. Ziemianski
Mr. Joe Marshall
Mr. Scott DeWolf
March 1, 2011
Page 3

bcc:    Matt Catalano - Firm

Mr. Keith Stretcher                      *Via Email:  kstretcher@midlandtexas.gov*
City of Midland – City Hall
P. O. Box 1152
Midland, Texas 79702

Holland Neff O'Neil                      *Via Email:  honeil@gardere.com*
Michael S. Haynes                        *Via Email:  mhaynes@gardere.com*
Gardere Wynne Sewell LLP
3000 Thanskgiving Tower
1601 Elm Street
Dallas, Texas  75201-4761

*Board Certified Civil Trial Law & Personal Injury Trial Law - Texas Board of Legal Specialization*



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Honli DeWayne Hale*

**United States Bankruptcy Judge**

Signed February 22, 2011

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| HERITAGE CONSOLIDATED, LLC et al.,[1] | § | CASE NO. 10-36484-hdh-11 |
| | § | |
| | § | (Jointly Administered) |
| DEBTORS. | § | |

### ORDER GRANTING CITY OF MIDLAND'S MOTION FOR AMENDMENT
### OR CLARIFICATION OF ORDER ON CITY OF MIDLAND'S CLAIM
### PURSUANT TO FED. R. BANKR. PRO. 9023
### (RE: DOCKET NOS. 463, 478)

Came on for consideration the *City of Midland's Motion for Amendment or Clarification*

*of Order on City of Midland's Claim Pursuant to Fed. R. Bankr. Pro. 9023* [Docket No. 478]

(the "**Motion**") filed by the City of Midland ("**Midland**"). Through the Motion, Midland seeks

amendment or clarification of the Court's *Order on the City of Midland's Claim* [Docket No.

463] (the "**Midland Claim Order**") entered by the Court on February 1, 2011, in the above-

referenced bankruptcy proceeding.

---

[1] Pursuant to the *Order Directing Joint Administration of Bankruptcy Cases*, Heritage Consolidated, LLC's case was jointly administered with Heritage Standard Corporation's case no. 10-26485-hdh (collectively, the "**Debtors**").

Based on the Court's review of the pleadings and the arguments and evidence presented at the hearing on the Motion, the Court finds and concludes that it is appropriate to enter this Order amending the Midland Claim Order.  It is therefore, ORDERED, ADJUDGED, AND DECREED:

1.    The first full paragraph of page 4 of the Midland Claim Order, which currently reads:

> Midland is only entitled to one recovery, which is quantified under Texas law as either: (a) the diminution in value of the T-Bar Ranch as a result of the Debtors' activities, or (b) the cost to remediate the Aquifer. The more persuasive evidence offered at the estimation trial suggests that the cost to remediate will be $6.5 million. Midland is entitled to have its damage repaired, and the cost of repair, in this case the remediation, is the measure of its claim. Such unsecured claim may very well be satisfied in a plan under which the Debtors show that they will have the funds and insurance necessary to complete the remediation, and responsible persons to see the remediation to a conclusion.

is hereby replaced in its entirety with the following:

> Midland is only entitled to one recovery, which is quantified under Texas law as either: (a) the diminution in value of the T-Bar Ranch as a result of the Debtors' activities, or (b) the cost to remediate the Aquifer. The more persuasive evidence offered at the estimation trial suggests that the cost to remediate will be $6.5 million. Midland is entitled to have its damage repaired, and the cost of repair, in this case the remediation, is the measure of its claim. Midland's general unsecured claim for damages for the cost of remediation of the Aquifer is, therefore, allowed in the amount of $6.5 million. Such unsecured claim may very well be satisfied in a plan under which the Debtors show that they will have the funds and insurance necessary to complete the remediation, and responsible persons to see the remediation to a conclusion.

### ### End of Order ###

Prepared and submitted by:

ORDER GRANTING CITY OF MIDLAND'S MOTION FOR AMENDMENT OR CLARIFICATION            PAGE 2
OF ORDER ON CITY OF MIDLAND'S CLAIM PURSUANT TO FED. R. PRO. 9023
DALLAS 2200847v.1

Holland Neff O'Neil (14864700)
Michael S. Haynes (24050735)
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
(214) 999-4961
(214) 999-4667 FAX
honeil@gardere.com
mhaynes@gardere.com

**GARDERE WYNNE SEWELL LLP**

And

Terry W. Rhoads (16811750)
Matt Catalano (24003918)
500 West Illinois, Ste. 300
Midland, Texas 79701
Telephone: (432) 897-1440
Facsimile: (432) 682-3672
trhoads@cbtd.com
mcatalano@cbtd.com

**COTTON BLEDSOE TIGHE & DAWSON, PC**

**COUNSEL FOR THE CITY OF MIDLAND**

# Exhibit D



COZEN
O'CONNOR

A PROFESSIONAL CORPORATION

ONE HOUSTON CENTER   SUITE 2900   1221 McKINNEY   HOUSTON, TX 77010
832.214.3900   800.448.8502   832.214.3905 FAX   www.cozen.com

Joseph A. Ziemianski
Member
Direct Dial: (832) 214-3920
jziemianski@cozen.com

March 10, 2011

Terry W. Rhoads                                    *Via E-Mail and Telecopy*
Cotton Bledsoe Tighe Dawson, PC                    *trhoads@cbtd.com*
P.O. Box 2776
Midland, Texas 79702-2776

> RE:   Case No. 10-36484-HDH-11 (Jointly Administered); *In re: Heritage
>        Consolidated, LLC, et al.*; In the United States Bankruptcy Court for the Northern
>        District of Texas, Dallas Division.

Dear Mr. Rhoads:

Federal Insurance Company ("Federal") is in receipt of your March 1, 2011 letter on behalf of the City of Midland (the "City") to the undersigned and Messrs. Marshall and DeWolf. Your letter presents the City's demand "for immediate payment, on behalf of the Debtor and by its insurer, of the sum of $6.5 million in satisfaction of the Debtor's (and its insurer, Federal Insurance Company's) obligation to the City." The demand is based on the amendment to the Court's order dated February 22, 2011. The amendment to the Court's order added the sentence "Midland's general unsecured claim for damages for the cost of remediation of the Aquifer is, therefore, allowed in the amount of $6.5 million."

Your demand letter appears to assume that all parts of the remediation plan discussed in the Court's order, for which the maximum estimated cost is $6.5 million, is covered by Federal. This assumption is incorrect for reasons explained on prior occasions. The only portion of the remediation plan covered by Federal is that portion addressing chloride contamination in groundwater beneath the Heritage facilities that is believed to result from a pollution incident after April 6, 2004 for which Heritage may have legal responsibility, and that was the subject of a claim first made between April 6, 2005 and April 6, 2006. While the site also has historic

Terry W. Rhoads
March 10, 2011
Page 2 of 4

contamination from other sources or periods (for example, contamination in and around Area C and monitor well TH-6), this other contamination is not the subject of the covered remediation effort and any attempts to address it will not be funded by Federal.

As a matter of law, the burden to segregate covered costs from noncovered costs rests with the insured or one claiming through the insured.  Here, the City is claiming through the insured but it has not yet performed the required segregation.  Federal can have no indemnity obligation until the segregation is performed.

In addition, the Court's order expressly states that the "unsecured claim may very well be satisfied in a plan under which the Debtors show that they will have the funds and insurance necessary to complete the remediation, and responsible persons to see the remediation to a conclusion."  The Court also wrote that it "accepts the Remediation Plan proposed by the Debtors and concludes that it is sufficient to remediate the Aquifer and adequately satisfy Midland for its damage claim."  Having the Debtors or Federal cut a check to the City is clearly not contemplated in the order, as the Court also acknowledged that "absent the Debtors abandoning this [remediation] obligation and Midland stepping in and performing the remediation of the Aquifer, any administrative claims asserted with regard to the remediation efforts belong to the RRC, the agency with the police power to enforce a remediation order under state law."  To date, the Debtors have not abandoned their remediation obligation, Federal has not disavowed its commitment to fund the covered costs of the remediation up to the remaining limits of its policy as the costs are incurred, the City has not had to step in and perform the remediation, and the RRC has not released its superior ownership of claims related to the remediation plan's implementation.

The basis for the $6.5 million amount stated in the order is Ritter's maximum estimate that is based on: (1) the cost for both the covered and noncovered work in the remediation plan; (2) a time period of 10 years to complete the remediation; and (3) provisional amounts for several contingencies that may or may not actually occur.  The Court itself treated the amount as a ***maximum*** estimate when it stated that "[t]he estimated costs of the Remediation Plan should not exceed $6.5 million."  Ritter has always acknowledged, even in his testimony at the estimation motion hearing, that the plan may take less time and far less money to implement and that the contingencies may not be realized.  Indeed, as recently as December 2, 2010, Ritter provided a $3,807,085 budget for the plan.  Federal's consultant, William R. Wilder, Ph.D. of Axis Environmental Services, Inc., also believes the ultimate covered cost outlay will be less than the $6.5 million estimate, as he testified at his deposition.

Finally, an insurer's duty to indemnify is determined by the policy language and the actual, adjudicated facts giving rise to an insured's liability.  The insuring agreement of the primary policy to which the Federal umbrella policy follows form states as follows:

> Subject to the applicable Limits Of Insurance, we will pay the following which the insured becomes legally obligated to pay by reason of liability imposed by law:

Terry W. Rhoads
March 10, 2011
Page 3 of 4

    1.      damages because of bodily injury or property damage to which this insurance applies; or

    2.      clean−up costs to which this insurance applies,

        caused by a pollution incident which commences on or after the Retroactive Date, but prior to the end of the policy period, both as stated in the Declarations of this policy.

The order falls under the second prong of the insuring agreement quoted above and should be addressed using that prong and employing ordinary rules of contract construction (specific provisions control over general provisions). The policy defines clean-up costs as "the cost and expense to neutralize, remove or remedy the injurious presence of pollutants." Since the Court made clear that remediation is the adequate remedy, logic dictates that Federal should only be required to pay the necessary covered cleanup costs, subject to Federal's policy language.

As previously stated, Federal's express commitment has been, and continues to be, to pay the covered costs of the Ritter Plan as they are incurred, subject to its previous reservation of rights. The Bankruptcy Court has accepted the Ritter Plan and found its implementation to be sufficient relief.

For these reasons, Federal respectfully declines your demand.

With best regards, I am

        Sincerely yours,

        COZEN O'CONNOR

        Joseph A. Ziemianski

JAZ/BPV/hm

Terry W. Rhoads
March 10, 2011
Page 4 of 4


cc:      **VIA E-MAIL AND TELECOPY**:

     Robert Townsend

     Heritage Standard Corporation
     c/o Mr. Scott DeWolf
     Rochelle McCullough, L.L.P.
     325 N. St. Paul Street
     Suite 4500
     Dallas, Texas 75201

     Heritage Consolidated, LLC
     c/o Mr. Joe Marshall
     Ms. Mary Koks
     Munsch Hardt Kopf Harr, P.C.
     3800 Lincoln Plaza
     500 N. Akard Street
     Dallas, Texas 75201-6659