## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| HERITAGE CONSOLIDATED, LLC et al.,[1] | § | CASE NO. 10-36484-hdh-11 |
| | § | |
| | § | (Jointly Administered) |
| DEBTORS. | § | |

## AFFIDAVIT OF COURTNEY SHARP IN SUPPORT OF CITY OF MIDLAND'S MOTION
## FOR RELIEF FROM AUTOMATIC STAY TO PURSUE CLAIMS
## AGAINST DEBTORS' INSURER

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF MIDLAND | § |

I, Courtney Sharp, hereby state:

1.      My name is Courtney Sharp.  I am City Manager of the City of Midland ("**Midland**" or the "**Movant**").  I am over the age of twenty-one (21) and am competent in all respects to make this *Affidavit of Courtney Sharp in Support of City of Midland's Motion for Relief from Automatic Stay to Pursue Claims Against Debtors' Insurer* (the "**Affidavit**").

2.      I am voluntarily submitting this Affidavit in support of *City of Midland's Motion for Relief from Automatic Stay to Pursue Claims Against Debtors' Insurer* (the "**Motion**") filed by the Movant.

3.      On November 15, 2010, Midland filed the *City of Midland's Motion for Estimation of Claims for Purpose of Allowance, Voting, and Determining Plan Feasibility, and*

---

[1] Pursuant to the *Order Directing Joint Administration of Bankruptcy Cases*, Heritage Consolidated, LLC's case was jointly administered with Heritage Standard Corporation's case no. 10-26485-hdh (collectively, the "**Debtors**").

*Request for Determination that Remediation Claim is Entitled to Administrative Expense Priority* [Docket No. 256] (the "**Estimation Motion**").

4.      Through the Estimation Motion, Midland requested the Bankruptcy Court estimate Midland's claims for remediation and irreparable damage to the Aquifer.[2]

5.      After a lengthy trial on the Estimation Motion in mid-January 2011, the Court ruled on the Estimation Motion by issuing its *Order on the City of Midland's Claim* [Docket No. 463] (the "**Order**") and estimated Midland's Claims at $6.5 million.

6.      On February 2, 2011, Midland's counsel sent a letter to counsel for the Debtors requesting that the Debtors (through their insurer) fund a trust with $6.5 million cash, such trust to be administered by the City of Midland in coordination with the Railroad Commission of Texas (the "**RRC**").  A true and correct copy of that letter is attached hereto as Exhibit A.

7.      On February 3, 2011, Federal Insurance Company ("**Federal**"), one of the Debtors' insurance companies, responded by letter and declined Midland's request.  A true and correct copy of that letter is attached to the Motion as Exhibit B.

8.      On February 11, 2011, Midland filed *City of Midland's Motion for Amendment or Clarification of Order on City of Midland's Claim Pursuant to Fed. R. Bankr. Pro. 9023* [Docket No. 478] (the "**Motion to Clarify**"), which was granted by the Court's entry of the *Order Granting Midland's Motion for Amendment or Clarification of Order on City of Midland's Claim Pursuant to Fed. R. Bankr. Pro.* [Docket No. 498] (the "**Amended Order**").

9.      On March 1, 2011, Midland's counsel sent another letter to counsel for the Debtors requesting that the Debtors (through their insurer) fund a trust with $6.5 million in cash to address Midland's Allowed Claim.  A copy of that request is attached hereto as Exhibit C.

---

[2] As defined in the Motion.

10.     On March 10, 2011, Federal sent a letter to Midland's counsel, again declining to remit payment on the Allowed Claim.  A copy of that response is attached hereto as Exhibit D.

11.     On information and belief, the Debtors' insurance policies cover the Allowed Claim, yet Midland's previous attempts to obtain payment from such insurance have been unsuccessful.  Thus, relief from the automatic stay to permit Midland to pursue litigation against the Debtors' insurer is required.

12.     Affiant reserves the right to supplement this Affidavit.

**FURTHER AFFIANT SAYETH NOT.**

COURTNEY SHARP

SUBSCRIBED AND SWORN TO BEFORE ME this 13th day of April, 2011.

Notary Public in and for the State of Texas

JENNIFER CEE SCHUMANN
Notary Public, State of Texas
My Commission Expires
May 13, 2014

AFFIDAVIT OF COURTNEY SHARP IN SUPPORT OF CITY OF MIDLAND'S MOTION
FOR RELIEF FROM AUTOMATIC STAY TO PURSUE CLAIMS
AGAINST DEBTORS' INSURER  Page 3
Mid: 000701\000056\930247.1

# Exhibit A



COTTON
BLEDSOE
TIGHE &
DAWSON, PC
Attorneys at Law

Post Office Box 2776
Midland, Texas 79702-2776
500 West Illinois, Suite 300
Midland, Texas 79701
(432) 684-5782
(432) 682-3672 Fax
www.cottonbledsoe.com

**TERRY W. RHOADS**
trhoads@cbtd.com

(432) 685-8570 Direct
(432) 684-3161 Facsimile

February 2, 2011

*Via email:  jmarshall@munsch.com*
Joe Marshall
Munsch Hardt Kopf Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, TX 75201-6659
Attorneys for Heritage Consolidated, LLC

*Via email:  sdewolf@romclawyers.com*
Scott DeWolf
Rochelle McCullough, L.L.P.
325 N. St. Paul St., Suite 4500
Dallas, Texas  75201
Attorneys for Heritage Standard Corporation

> Re:    Case No. 10-36484-HDH-11 (Jointly Administered); *In re: Heritage Consolidated, LLC, et al*; In the United States District Court for the Northern District of Texas, Dallas Division

Dear Joe and Scott:

As you know, Judge Hale ruled Monday on the City of Midland's motion for estimation of its claim in the above-captioned bankruptcy.  The Bankruptcy Court recognized that the City is entitled to have the damage to its aquifer repaired, and estimated the City's general unsecured claim in the amount of $6.5 million based on the Court's determination of the estimated cost of remediation.  Likewise, although the Court did not grant the City the administrative claim per se, it did find that the remediation obligation was an administrative obligation of the Debtors.  On page 4 of its Order, the Bankruptcy Court also indicated that this unsecured claim "may very well be satisfied in a plan under which the Debtors show that they will have the funds and insurance necessary to complete the remediation…."

As there now exists a legally binding obligation to the Debtors to pay the cost of remediation to not only satisfy this administrative obligation, but also to satisfy the City's unsecured claim, demand is hereby made that the Debtors (through their insurer) fund the amount awarded by the Bankruptcy Court.  Although the City has several options in which to

Mid: 000701\000056\897472.1

Mr. Joe Marshall
Mr. Scott DeWolf
February 2, 2011
Page 2

pursue a larger claim, it is willing to accept funding of $6.5 million cash into a trust to be administered by the City of Midland in coordination with the Railroad Commission of Texas.

If acceptable, the City will release the Debtors (and its insurers) from further liability and will discontinue its pursuance of the administrative appeal to the Railroad Commission.

This proposal remains open until February 7, 2011, at 12:00 p.m. (CST), at which time this proposal shall be deemed withdrawn if not previously accepted.  I look forward to your prompt reply.

Very truly yours,

COTTON, BLEDSOE, TIGHE & DAWSON, P.C.

Terry Rhoads

TWR:ca

*Board Certified Civil Trial Law & Personal Injury Trial Law - Texas Board of Legal Specialization*

Mr. Joe Marshall
Mr. Scott DeWolf
February 2, 2011
Page 3

bcc:   Matt Catalano - Firm

       Mr. Keith Stretcher             *Via Email:  kstretcher@midlandtexas.gov*
       City of Midland – City Hall
       P. O. Box 1152
       Midland, Texas 79702

       Holland Neff O'Neil             *Via Email:  honeil@gardere.com*
       Michael S. Haynes              *Via Email:  mhaynes@gardere.com*
       Gardere Wynne Sewell LLP
       3000 Thanskgiving Tower
       1601 Elm Street
       Dallas, Texas  75201-4761

*Board Certified Civil Trial Law & Personal Injury Trial Law - Texas Board of Legal Specialization*

# Exhibit B



**COZEN
O'CONNOR**

A PROFESSIONAL CORPORATION

ONE HOUSTON CENTER    SUITE 2900    1221 McKINNEY    HOUSTON, TX 77010
832.214.3900    800.448.8502    832.214.3905 FAX    www.cozen.com

Joseph A. Ziemianski
Member
Direct Dial: (832) 214-3920
jziemianski@cozen.com

February 3, 2011

Terry W. Rhoads                                          *Via E-Mail and Telecopy*
Cotton Bledsoe Tighe Dawson, PC                          *trhoads@cbtd.com*
P.O. Box 2776
Midland, Texas 79702-2776

> RE:    Case No. 10-36484-HDH-11 (Jointly Administered); *In re: Heritage Consolidated, LLC, et al.*; In the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

Dear Mr. Rhoads:

Federal Insurance Company ("Federal") is in receipt of your February 2, 2011 letter on behalf of the City of Midland (the "City") to Heritage in care of Joe Marshall of Munsch Hardt Kopf Harr, P.C., and Kevin McCullough of Rochelle McCullough, L.L.P., in which you have demanded that "the Debtors (through their insurer) fund the amount awarded by the Bankruptcy Court," and have proposed that the demand be met by "funding of $6.5 million cash into a trust to be administered by the City of Midland in coordination with the Railroad Commission of Texas."

Federal's express commitment has been, and continues to be, to pay the covered costs of the Ritter Plan as they are incurred, up to the amount of the remaining limits, subject to its previous reservation of rights. The Bankruptcy Court has now accepted the Ritter Plan and found its implementation to be sufficient relief. The Bankruptcy Court did not enter a monetary award, and, as you concede, it did not order allowance of an administrative claim. The order is devoid of any language creating an immediate payment obligation of the Debtors or Federal.

Terry W. Rhoads
February 3, 2011
Page 2 of 2

For these reasons, Federal respectfully declines your demand.

With best regards, I am

Sincerely yours,

COZEN O'CONNOR

Joseph A. Ziemianski

cc:    **VIA E-MAIL AND TELECOPY**:

Robert Townsend

Heritage Standard Corporation
c/o Mr. Scott DeWolf
Rochelle McCullough, L.L.P.
325 N. St. Paul Street
Suite 4500
Dallas, Texas 75201

Heritage Consolidated, LLC
c/o Mr. Joe Marshall
Ms. Mary Koks
Munsch Hardt Kopf Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659

# Exhibit C

# COTTON
# BLEDSOE
# TIGHE &
# DAWSON, PC
*Attorneys at Law*

Post Office Box 2776
Midland, Texas 79702-2776
500 West Illinois, Suite 300
Midland, Texas 79701
(432) 684-5782
(432) 682-3672 Fax
www.cottonbledsoe.com

**TERRY W. RHOADS**
trhoads@cbtd.com

(432) 685-8570 Direct
(432) 684-3161 Facsimile

March 1, 2011

*Via email: jziemianski@cozen.com*
Mr. Joseph A. Ziemianski
Cozen O'Connor, P.C.
1221 McKinney, Suite 2900
Houston, Texas 77010

*Via email: jmarshall@munsch.com*
Mr. Joe Marshall
Munsch Hardt Kopf Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, TX 75201-6659
Attorneys for Heritage Consolidated, LLC

*Via email: sdewolf@romclawyers.com*
Mr. Scott DeWolf
Rochelle McCullough, L.L.P.
325 N. St. Paul St., Suite 4500
Dallas, Texas 75201
Attorneys for Heritage Standard Corporation

Re:    Case No. 10-36484-HDH-11 (Jointly Administered); *In re: Heritage Consolidated, LLC, et al*; In the United States District Court for the Northern District of Texas, Dallas Division

Dear Gentlemen:

Given the recent amendment to the Court's Order (enclosed) which constitutes both a monetary award and provides for the allowance of the City's claim in the amount of $6.5 million, demand is made for immediate payment, on behalf of the Debtor and by its insurer, of the sum of $6.5 million in satisfaction of the Debtor's (and its insurer, Federal Insurance Company's) obligation to the City.

Please advise when we may expect funding at your earliest convenience.

Mid: 000701\000056\909489.1

Mr. Joseph A. Ziemianski
Mr. Joe Marshall
Mr. Scott DeWolf
March 1, 2011
Page 2

Very truly yours,

COTTON, BLEDSOE, TIGHE & DAWSON, P.C.

Terry Rhoads

TWR:ca
Enclosure
(Order Granting City of Midland's Motion for
Amendment or Clarification of Order on
City of Midland's Claim Pursuant to
Fed.R.Bankr.Pro. 9023)[Doc 498]

*Board Certified Civil Trial Law & Personal Injury Trial Law - Texas Board of Legal Specialization*

Mr. Joseph A. Ziemianski
Mr. Joe Marshall
Mr. Scott DeWolf
March 1, 2011
Page 3

bcc:    Matt Catalano - Firm

    Mr. Keith Stretcher                 *Via Email: kstretcher@midlandtexas.gov*
    City of Midland – City Hall
    P. O. Box 1152
    Midland, Texas 79702

    Holland Neff O'Neil                 *Via Email: honeil@gardere.com*
    Michael S. Haynes                   *Via Email: mhaynes@gardere.com*
    Gardere Wynne Sewell LLP
    3000 Thanskgiving Tower
    1601 Elm Street
    Dallas, Texas  75201-4761

---

*Board Certified Civil Trial Law & Personal Injury Trial Law - Texas Board of Legal Specialization*



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Harlin DeWayne Hale*

**United States Bankruptcy Judge**

**Signed February 22, 2011**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **HERITAGE CONSOLIDATED, LLC et al.,[1]** | § | **CASE NO. 10-36484-hdh-11** |
| | § | |
| | § | **(Jointly Administered)** |
| **DEBTORS.** | § | |

**ORDER GRANTING CITY OF MIDLAND'S MOTION FOR AMENDMENT
OR CLARIFICATION OF ORDER ON CITY OF MIDLAND'S CLAIM
PURSUANT TO FED. R. BANKR. PRO. 9023**
**(RE: DOCKET NOS. 463, 478)**

Came on for consideration the *City of Midland's Motion for Amendment or Clarification*

*of Order on City of Midland's Claim Pursuant to Fed. R. Bankr. Pro. 9023* [Docket No. 478]

(the "**Motion**") filed by the City of Midland ("**Midland**"). Through the Motion, Midland seeks

amendment or clarification of the Court's *Order on the City of Midland's Claim* [Docket No.

463] (the "**Midland Claim Order**") entered by the Court on February 1, 2011, in the above-

referenced bankruptcy proceeding.

---

[1] Pursuant to the *Order Directing Joint Administration of Bankruptcy Cases*, Heritage Consolidated, LLC's case was jointly administered with Heritage Standard Corporation's case no. 10-26485-hdh (collectively, the "**Debtors**").

Based on the Court's review of the pleadings and the arguments and evidence presented

at the hearing on the Motion, the Court finds and concludes that it is appropriate to enter this

Order amending the Midland Claim Order.   It is therefore, ORDERED, ADJUDGED, AND

DECREED:

       1.     The first full paragraph of page 4 of the Midland Claim Order, which currently

reads:

> Midland is only entitled to one recovery, which is quantified under
> Texas law as either: (a) the diminution in value of the T-Bar Ranch
> as a result of the Debtors' activities, or (b) the cost to remediate the
> Aquifer. The more persuasive evidence offered at the estimation
> trial suggests that the cost to remediate will be $6.5 million.
> Midland is entitled to have its damage repaired, and the cost of
> repair, in this case the remediation, is the measure of its claim.
> Such unsecured claim may very well be satisfied in a plan under
> which the Debtors show that they will have the funds and
> insurance necessary to complete the remediation, and responsible
> persons to see the remediation to a conclusion.

is hereby replaced in its entirety with the following:

> Midland is only entitled to one recovery, which is quantified under
> Texas law as either: (a) the diminution in value of the T-Bar Ranch
> as a result of the Debtors' activities, or (b) the cost to remediate the
> Aquifer. The more persuasive evidence offered at the estimation
> trial suggests that the cost to remediate will be $6.5 million.
> Midland is entitled to have its damage repaired, and the cost of
> repair, in this case the remediation, is the measure of its claim.
> Midland's general unsecured claim for damages for the cost of
> remediation of the Aquifer is, therefore, allowed in the amount of
> $6.5 million. Such unsecured claim may very well be satisfied in a
> plan under which the Debtors show that they will have the funds
> and insurance necessary to complete the remediation, and
> responsible persons to see the remediation to a conclusion.

### ### End of Order ###

Prepared and submitted by:

ORDER GRANTING CITY OF MIDLAND'S MOTION FOR AMENDMENT OR CLARIFICATION                 PAGE 2
OF ORDER ON CITY OF MIDLAND'S CLAIM PURSUANT TO FED. R. PRO. 9023
DALLAS 2200847v.1

Holland Neff O'Neil (14864700)
Michael S. Haynes (24050735)
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
(214) 999-4961
(214) 999-4667 FAX
honeil@gardere.com
mhaynes@gardere.com

**GARDERE WYNNE SEWELL LLP**

And

Terry W. Rhoads (16811750)
Matt Catalano (24003918)
500 West Illinois, Ste. 300
Midland, Texas 79701
Telephone: (432) 897-1440
Facsimile: (432) 682-3672
trhoads@cbtd.com
mcatalano@cbtd.com

**COTTON BLEDSOE TIGHE & DAWSON, PC**

**COUNSEL FOR THE CITY OF MIDLAND**

# Exhibit D



COZEN
O'CONNOR

A PROFESSIONAL CORPORATION

ONE HOUSTON CENTER    SUITE 2900    1221 McKINNEY    HOUSTON, TX 77010
832.214.3900    800.448.8502    832.214.3905 FAX    www.cozen.com

Joseph A. Ziemianski
Member
Direct Dial: (832) 214-3920
jziemianski@cozen.com

March 10, 2011

Terry W. Rhoads                                     ***Via E-Mail and Telecopy***
Cotton Bledsoe Tighe Dawson, PC                         ***trhoads@cbtd.com***
P.O. Box 2776
Midland, Texas 79702-2776

> RE:    Case No. 10-36484-HDH-11 (Jointly Administered); *In re: Heritage
> Consolidated, LLC, et al.*; In the United States Bankruptcy Court for the Northern
> District of Texas, Dallas Division.

Dear Mr. Rhoads:

Federal Insurance Company ("Federal") is in receipt of your March 1, 2011 letter on behalf of the City of Midland (the "City") to the undersigned and Messrs. Marshall and DeWolf. Your letter presents the City's demand "for immediate payment, on behalf of the Debtor and by its insurer, of the sum of $6.5 million in satisfaction of the Debtor's (and its insurer, Federal Insurance Company's) obligation to the City." The demand is based on the amendment to the Court's order dated February 22, 2011. The amendment to the Court's order added the sentence "Midland's general unsecured claim for damages for the cost of remediation of the Aquifer is, therefore, allowed in the amount of $6.5 million."

Your demand letter appears to assume that all parts of the remediation plan discussed in the Court's order, for which the maximum estimated cost is $6.5 million, is covered by Federal. This assumption is incorrect for reasons explained on prior occasions. The only portion of the remediation plan covered by Federal is that portion addressing chloride contamination in groundwater beneath the Heritage facilities that is believed to result from a pollution incident after April 6, 2004 for which Heritage may have legal responsibility, and that was the subject of a claim first made between April 6, 2005 and April 6, 2006. While the site also has historic

Terry W. Rhoads
March 10, 2011
Page 2 of 4

contamination from other sources or periods (for example, contamination in and around Area C and monitor well TH-6), this other contamination is not the subject of the covered remediation effort and any attempts to address it will not be funded by Federal.

As a matter of law, the burden to segregate covered costs from noncovered costs rests with the insured or one claiming through the insured.  Here, the City is claiming through the insured but it has not yet performed the required segregation.  Federal can have no indemnity obligation until the segregation is performed.

In addition, the Court's order expressly states that the "unsecured claim may very well be satisfied in a plan under which the Debtors show that they will have the funds and insurance necessary to complete the remediation, and responsible persons to see the remediation to a conclusion."  The Court also wrote that it "accepts the Remediation Plan proposed by the Debtors and concludes that it is sufficient to remediate the Aquifer and adequately satisfy Midland for its damage claim."  Having the Debtors or Federal cut a check to the City is clearly not contemplated in the order, as the Court also acknowledged that "absent the Debtors abandoning this [remediation] obligation and Midland stepping in and performing the remediation of the Aquifer, any administrative claims asserted with regard to the remediation efforts belong to the RRC, the agency with the police power to enforce a remediation order under state law."  To date, the Debtors have not abandoned their remediation obligation, Federal has not disavowed its commitment to fund the covered costs of the remediation up to the remaining limits of its policy as the costs are incurred, the City has not had to step in and perform the remediation, and the RRC has not released its superior ownership of claims related to the remediation plan's implementation.

The basis for the $6.5 million amount stated in the order is Ritter's maximum estimate that is based on: (1) the cost for both the covered and noncovered work in the remediation plan; (2) a time period of 10 years to complete the remediation; and (3) provisional amounts for several contingencies that may or may not actually occur.  The Court itself treated the amount as a *maximum* estimate when it stated that "[t]he estimated costs of the Remediation Plan should not exceed $6.5 million."  Ritter has always acknowledged, even in his testimony at the estimation motion hearing, that the plan may take less time and far less money to implement and that the contingencies may not be realized.  Indeed, as recently as December 2, 2010, Ritter provided a $3,807,085 budget for the plan.  Federal's consultant, William R. Wilder, Ph.D. of Axis Environmental Services, Inc., also believes the ultimate covered cost outlay will be less than the $6.5 million estimate, as he testified at his deposition.

Finally, an insurer's duty to indemnify is determined by the policy language and the actual, adjudicated facts giving rise to an insured's liability.  The insuring agreement of the primary policy to which the Federal umbrella policy follows form states as follows:

> Subject to the applicable Limits Of Insurance, we will pay the following which the insured becomes legally obligated to pay by reason of liability imposed by law:

Terry W. Rhoads
March 10, 2011
Page 3 of 4

    1.       damages because of bodily injury or property damage to which this insurance applies; or

    2.       clean−up costs to which this insurance applies,

    caused by a pollution incident which commences on or after the Retroactive Date, but prior to the end of the policy period, both as stated in the Declarations of this policy.

The order falls under the second prong of the insuring agreement quoted above and should be addressed using that prong and employing ordinary rules of contract construction (specific provisions control over general provisions).  The policy defines clean-up costs as "the cost and expense to neutralize, remove or remedy the injurious presence of pollutants."  Since the Court made clear that remediation is the adequate remedy, logic dictates that Federal should only be required to pay the necessary covered cleanup costs, subject to Federal's policy language.

As previously stated, Federal's express commitment has been, and continues to be, to pay the covered costs of the Ritter Plan as they are incurred, subject to its previous reservation of rights.  The Bankruptcy Court has accepted the Ritter Plan and found its implementation to be sufficient relief.

For these reasons, Federal respectfully declines your demand.

With best regards, I am

Sincerely yours,

COZEN O'CONNOR

Joseph A. Ziemianski

JAZ/BPV/hm

Terry W. Rhoads
March 10, 2011
Page 4 of 4

cc:        **VIA E-MAIL AND TELECOPY**:

Robert Townsend

Heritage Standard Corporation
c/o Mr. Scott DeWolf
Rochelle McCullough, L.L.P.
325 N. St. Paul Street
Suite 4500
Dallas, Texas 75201

Heritage Consolidated, LLC
c/o Mr. Joe Marshall
Ms. Mary Koks
Munsch Hardt Kopf Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659