Matthew P. Crouch
E. Stuart Phillips
Assistant Attorneys General
Texas Attorney General's Office
Bankruptcy & Collections Division
P. O. Box 12548, MC-008
Austin, Texas 78711-2548
P: 512/475-4933
F: 512/482-8341

ATTORNEYS FOR THE RAILROAD COMMISSION OF TEXAS

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| HERITAGE CONSOLIDATED, LLC, *et al.*, | § § § § § | CASE NO. 10-36484-hdh  CHAPTER 11 |
| DEBTORS | § | JOINTLY ADMINISTERED |

**OBJECTION OF THE RAILROAD COMMISSION OF TEXAS
TO THE EXPEDITED JOINT MOTION OF THE DEBTORS
AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR ORDER (A) AUTHORIZING CONTRACT OPERATING AGREEMENT
WITH EAGLE OIL & GAS, CO., (B) AUTHORIZING USE OF FUNDS HELD
IN ESCROW ACCOUNT AND (C) GRANTING ADEQUATE PROTECTION**
**(Relates to Docket # 605)**

TO THE HONORABLE HARLIN D. HALE, UNITED STATES BANKRUPTCY JUDGE:

The RAILROAD COMMISSION OF TEXAS ("RRC" or "State") respectfully files this Objection to the Joint Motion for Order (A) Authorizing Contract Operating Agreement with Eagle Oil & Gas, Co. (B) Authorizing Use of Funds Held in Escrow Account and (C) Granting Adequate Protection (the "Joint Motion") filed by Heritage Consolidated LLC and Heritage Standard Corporation ("Debtors") and the Official Committee of Unsecured Creditors ("OCUC"), and in response to the Joint Motion, the RRC states the following:

*Summary of the Response*

1.	The RRC files this objection to the Joint Motion in order to seek assurance (i) that the expenses of rework be limited to those funds already escrowed for that purpose (and that the balance of sales proceeds -- which the RRC understands and believes is the source for payment of the RRC's administrative expense obligations -- be preserved) and (ii) that Heritage Standard Corporation and the proposed contractor identified in the Joint Motion comply with applicable Texas law in connection with the rework.

2.	While the RRC does not generally object to the rework or to payment of the monies already set aside for that purpose in the order approving sale, the RRC has concerns with the proposed relief unless (i) Heritage Standard Corporation's operating authority is removed from delinquent status, (ii) the contractor's compensation is limited to funds already set aside for the workover, and (iii) the parties are not relieved of any liability to which they might otherwise be subject as a matter of state law.

*Procedural and Factual Background*

3.	Heritage Consolidated LLC and Heritage Standard Corporation ("Heritage Standard") each filed voluntary chapter 11 petitions on September 14, 2010.

4.	The Debtors filed an Expedited Sale Motion[1] in January, 2011, seeking approval to sell assets under §363 or, in the alternative, approval of a Back-Up Purchase and Sale Agreement. The Expedited Sale Motion was approved on February 28, 2011. Dkt.# 506.

---

[1] More fully titled "Expedited Motion to (A) Sell Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (B) Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Grant Related Relief; Or, in the Alternative, Motion to (A) Approve the Back-Up Purchase and Sale Agreement; and (B) Grant Related Relief."

5.     As the court noted in its order approving the Expedited Sale Motion, there were two separate escrow funds created. The first set aside $498,496.50 which was specifically to "be used to fund a workover or sidetrack of the Pat Howell #1 well...".[2] Order, Dkt. # 506, pg. 20, para. 23. The Order approving the Expedited Sale also noted that $2.3 million would be held in a separate escrow account and shall not be used except without notice and hearing. Order, Dkt. # 506, pg. 20, para. 23. For the purposes of this Objection, the $489,496.50 set aside for the future workover of the Pat Howell Well (and described as the "Escrow Amount" in the Order approving the Expedited Sale) will be referred to in this Objection as the "Workover Escrow." The remaining $2.3 million in escrowed monies from the sale will be referred to in this Objection as the "Remainder Escrow."

6.     The Debtors filed their Joint Motion requesting permission to use the Workover Escrow to fund a workover of the Pat Howell # 1 Well (the "Pat Howell Well") and to provide the proposed contractor ("Eagle") with "adequate protection with regard to expenses and claims arising from its performance and services" under the terms of the proposed workover contract. Joint Motion at para. 8.

*Heritage Standard is Not Presently Authorized to Act as an Operator*

---

[2] As set out in the Order (Dkt. # 506, pg. 20, para. 23):

Within two business days after the receipt of the DIP Repayment, CIT Capital shall deposit $489,496.50 (the "Escrow Amount") in Okin Adams & Kilmer LLP's Trust Account. The Escrow Amount shall be used to fund a workover or sidetrack of the Pat Howell #1 well pursuant to an Authorization for Expenditure as required by any and all joint operating agreements applicable to the Pat Howell #1 Well, and other operational costs of the "Section 6 Assets" or for any other purpose provided under a bankruptcy plan; provided, however, the Debtors shall be apprised on a reasonable basis of such proposed and ongoing operations and there shall be no distributions of the Escrow Amount without agreement among the Debtors and Committee or further order of the Court. The Escrow Amount shall be free and clear of any and all liens, claims, encumbrances, and interests of CIT Capital or any other party.

7.      Debtor Heritage Standard, as a Texas oil and gas operator, is obligated to operate its oil and gas properties in accordance with applicable state law, by virtue of 28 U.S.C. § 959(b). In order to legally operate oil and gas wells in Texas, Heritage Standard must, among other things, be a P-5[3] operator in good standing with the RRC and must post financial assurance in the form of a bond, cash deposit, or letter of credit. *See* TEX. NAT. RES. CODE ANN. § 91.142, 91.103–1091 (West 2007).

8.      Heritage Standard's P-5 authorization came up for renewal on June 1, 2011. While the RRC has received Heritage Standard's request to renew the P-5, it has not yet received proof that the required financial assurance (here, anticipated to be an extension of the letter of credit posted as financial assurance in the past) is in place.[4]

9.      Until the RRC receives the required financial assurance, Heritage Standard's P-5 is considered delinquent as a matter of law. Heritage Standard, therefore, cannot conduct operations except as necessary to remedy a violation of law or commission rules and as authorized by the RRC. TEX. NAT. RES. CODE § 91.142(f).

10.     Unless the proposed rework operations on the Pat Howell Well are strictly limited to addressing the delinquent H-15 issue, Heritage Standard cannot proceed with any rework unless and until its P-5 is brought current. The RRC objects to the relief sought unless the Debtor (i) renews its P-5 or (ii) commits that the proposed rework will be limited to addressing the delinquent

---

[3] A "P-5" form is an "Organization Report" required for oil and gas operations in the state of Texas.

[4] Counsel for Heritage Standard has advised RRC's counsel that the debtor is attempting to obtain the required extension of its letter of credit posted as financial assurance. As of the date of this Objection, however, the RRC has not renewed the P-5 because it has not yet received the required financial assurance.

H-15 for the Pat Howell Well.

*The Contractor Should Not Receive Adequate Protection Unless the RRC is Assured of Receiving Payment of its Anticipated Administrative Expense Obligations*

11.  The Joint Motion also asks that Eagle receive adequate protection and administrative expense treatment of "any amount incurred by Eagle in the performance thereunder."  Joint Motion at para. 11.  There is no indication, however, that the adequate protection (and administrative expense treatment) proposed to be granted to Eagle is limited to the proposed expenditure described in the Joint Motion or to the monies specifically set aside as the Workover Escrow for rework of the Pat Howell Well.   There is no explanation why the contractor may need adequate protection in an amount greater than what is provided for by the Workover Escrow and no assurance that Eagle's potential administrative expense claim might not be satisfied, at least in part, from the Remainder Escrow after exhausting the Workover Escrow.  The RRC objects to an award of any administrative expense status or adequate protection in excess of that already set aside for the rework or that may cause an expenditure of the Remainder Escrow, unless or until the Debtors and/or Eagle returns to this Court to make such a request, after notice and an opportunity for all parties-in-interest to be heard.

*The Parties Should Clearly be Subject to Applicable Texas Law, Including Plugging & Abandonment Liabilities*

12.  According to the terms set out in the contract with Eagle in Exhibit A to the Joint Motion, the "Owner and Heritage" is liable for any plugging and abandonment liability. The agreement further provides that in the event the "owner" or Heritage cannot pay,  Eagle would not be liable for any plugging and abandonment expenses for the Pat Howell Well  unless there is a threat to public health and safety that requires Eagle to plug (in which case Eagle receives another

administrative expense for such expenses). This provision is especially odd in light of the fact that plugging and abandonment liability rests solely with the P-4[5] well operator of record. At this time, Debtor Heritage Standard is the P-4 operator of record for the Pat Howell Well and, as such, is responsible for plugging and abandonment liabilities on this well. If Eagle becomes the P-4 operator of the Pat Howell Well, Eagle should be subject to all Texas laws applicable to operators.

13.     The RRC requests that any order approving the Joint Motion prohibit the Debtors from transferring plugging and abandonment liability to the operator absent compliance with applicable RRC regulations.

*Prayer*

For the reasons set out above, the Texas Railroad Commission asks this Court to deny the Joint Motion and to grant any other such relief to which the RRC is entitled.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

---

[5] A "P-4" form is a "Certificate of Compliance and Transportation Authority." In order to transfer a well to a new operator, the old operator must file a P-4: Certificate of Compliance and Transportation Authority ("P-4"). Title 16, Part 1, Chapter 3, Rule § 3.58 of the Texas Administrative Code states the following in relevant part: "Each operator who seeks to operate wells related to crude oil, natural gas, or geothermal resources shall file with the commission's Austin office a commission form P-4 (certificate of compliance and transportation authority) for each property on which the wells are located certifying that the operator has complied with [the conservation laws and the oil, gas, and geothermal resources conservation orders, rules, and regulations of the commission] in respect to the property." The purpose of filing a P-4 is to (i) establish the operator of an oil lease, gas well, or other well and (ii) certify responsibility for regulatory compliance, including plugging the wells. *See* 16 TEX. ADMIN. CODE § 3.58 (2008) (Tex. R.R. Comm'n, Certificate of Compliance and Transport Authority; Operator Reports).

---

RONALD R. DEL VENTO
Assistant Attorney General
Chief, Bankruptcy & Collections Division

*/s/ Matthew Crouch*
MATTHEW P. CROUCH
Texas State Bar No. 24072482
E. STUART PHILLIPS
Texas Bar No. 15923600
Assistant Attorneys General
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
P: (512) 463-2173/F: (512) 482-8341
E-mail: *matthew.crouch@oag.state.tx.us*
*stuart.phillips@oag.state.tx.us*

ATTORNEYS FOR THE RAILROAD COMMISSION OF TEXAS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served via the Court's Electronic Filing System on parties-in-interest in this proceeding on June 14, 2011.

*/s/ Matthew Crouch*
MATTHEW CROUCH
Assistant Attorney General