Joe E. Marshall, SBT # 13031100
MUNSCH HARDT KOPF & HARR PC
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Tel: 214.855.7573
Fax: 214.978.4365
jmarshall@munsch.com

**COUNSEL FOR HERITAGE CONSOLIDATED
LLC AND HERITAGE STANDARD
CORPORATION**

Brian A. Kilmer, SBT # 24012963
OKIN ADAMS & KILMER LLP
3102 Maple Avenue, Suite 240
Dallas, Texas 75201
Telephone: 214.800.2390
Facsimile: 888.865.2118
bkilmer@oakllp.com

**COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF HERITAGE
CONSOLIDATED LLC, ET AL.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 10-36484-HDH-11 |
| | § | |
| HERITAGE CONSOLIDATED LLC, *et al.*, | § § § | Chapter 11 |
| | § | (Jointly Administered) |
| DEBTORS. | § § | |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS

**Date: December 12, 2012**

---

**FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS**
MHDocs 4131262_1 11672.2

## TABLE OF CONTENTS

Page

ARTICLE I.

DEFINITIONS ........................................................................................................................1

1.01   Ad Valorem Tax Claim ......................................................................................1
1.02   Administrative Claim .........................................................................................1
1.03   Allowed ...............................................................................................................1
1.04   Allowed Amount .................................................................................................2
1.05   Apollo Litigation ................................................................................................2
1.06   Assumed Contracts .............................................................................................2
1.07   Avoidance Actions .............................................................................................2
1.08   Ballot ..................................................................................................................2
1.09   Bankruptcy Code ................................................................................................2
1.010  Bankruptcy Court ...............................................................................................2
1.011  Bankruptcy Rules ...............................................................................................2
1.012  Bankruptcy Schedules ........................................................................................2
1.013  Bar Date ..............................................................................................................2
1.014  Business Day .......................................................................................................3
1.015  Cases ...................................................................................................................3
1.016  Cash ....................................................................................................................3
1.017  Causes of Action ................................................................................................3
1.018  CIT Capital .........................................................................................................3
1.019  CIT Deficiency Claim .........................................................................................3
1.020  Claim ..................................................................................................................3
1.021  Class ...................................................................................................................3
1.022  Collateral ............................................................................................................3
1.023  Committee ...........................................................................................................3
1.024  Confirmation .......................................................................................................3
1.025  Confirmation Date ..............................................................................................4
1.026  Confirmation Hearing .........................................................................................4
1.027  Confirmation Order ............................................................................................4
1.028  Consolidated .......................................................................................................4
1.029  Creditor ...............................................................................................................4
1.030  Cross Canyon ......................................................................................................4
1.031  Cryogenic Plant Lease ........................................................................................4
1.032  Cure Claim ..........................................................................................................4
1.033  D&O Claims ........................................................................................................4
1.034  Debtors in Possession .........................................................................................4
1.035  Debtors ................................................................................................................4
1.036  Designated Contracts ..........................................................................................4
1.037  Disallowed Claim ...............................................................................................4
1.038  Disclosure Statement ..........................................................................................5
1.039  Disclosure Statement Order ................................................................................5
1.040  Disposal ..............................................................................................................5

1.041    Disposal Agreement ...................................................................................5
1.042    Disputed Claim .........................................................................................5
1.043    Distribution ..............................................................................................5
1.044    Drilling Operations ...................................................................................5
1.045    Effective Date ...........................................................................................5
1.046    Environmental Claims ..............................................................................5
1.047    Environmental Reimbursement Claims .....................................................5
1.048    Environmental Insurance Claims ..............................................................5
1.049    Equity Interest ..........................................................................................5
1.050    Escrow Amounts .......................................................................................6
1.051    Estates ......................................................................................................6
1.052    Excluded Assets ........................................................................................6
1.053    Eunice Litigation ......................................................................................6
1.054    Face Amount .............................................................................................6
1.055    Federal Insurance Company ......................................................................6
1.056    Federal Insurance Policies ........................................................................6
1.057    Fee Application .........................................................................................6
1.058    Filed .........................................................................................................6
1.059    Free and Clear ..........................................................................................6
1.060    Gathering ..................................................................................................6
1.061    General Unsecured Claim ..........................................................................7
1.062    Global Resolution Proposal ......................................................................7
1.063    Governmental Authority ...........................................................................7
1.064    Hydrocarbons ...........................................................................................7
1.065    Impaired ...................................................................................................7
1.066    Lender ......................................................................................................7
1.067    Lender Bridge Secured Claim ...................................................................7
1.068    Lender Credit Agreements .........................................................................7
1.069    Lender Credit Documents ..........................................................................7
1.070    Lender Secured Claim ...............................................................................7
1.071    Lien ..........................................................................................................7
1.072    Liquidating Trust ......................................................................................8
1.073    Liquidating Trust Agreement ....................................................................8
1.074    Liquidating Trust Assets ...........................................................................8
1.075    Liquidating Trustee ..................................................................................8
1.076    M&M Liens ..............................................................................................8
1.077    M&M Secured Claim ................................................................................8
1.078    New Operator ...........................................................................................8
1.079    Non-Appealable Order ..............................................................................8
1.080    Non-Section 6 Assets ................................................................................8
1.081    Non-Section 6 JOAs ..................................................................................8
1.082    Non-Section 6 M&M Secured Claim .........................................................9
1.083    Oil and Gas Leases ...................................................................................9
1.084    Order ........................................................................................................9
1.085    Other Secured Claim .................................................................................9
1.086    P&A Administrative Claim Escrow ...........................................................9

1.087 Pathfinder Litigation ...................................................................................9
1.088 Permian Atlantis..........................................................................................9
1.089 Permian Cure Payment ...............................................................................9
1.090 Permian Transaction ....................................................................................9
1.091 Person ........................................................................................................10
1.092 Petition Date...............................................................................................10
1.093 Plan ............................................................................................................10
1.094 Plan Documents .........................................................................................10
1.095 Plan Interest Rate ......................................................................................10
1.096 Plan Proponents .........................................................................................10
1.097 Plan Supplement ........................................................................................10
1.098 Post-Confirmation Bar Date ......................................................................10
1.099 Priority Claim.............................................................................................10
1.0100 Priority Tax Claim .....................................................................................10
1.0101 Pro Rata......................................................................................................10
1.0102 Professional................................................................................................10
1.0103 Professional Fee Claim ..............................................................................10
1.0104 Proof of Claim............................................................................................10
1.0105 Released Parties .........................................................................................11
1.0106 Remediation Reserve .................................................................................11
1.0107 Ritter Work Plan ........................................................................................11
1.0108 RRC ...........................................................................................................11
1.0109 Scheduled ...................................................................................................11
1.0110 Secured Claim ............................................................................................11
1.0111 Section 6 Assets .........................................................................................11
1.0112 Section 6 JOA ............................................................................................11
1.0113 Section 6 M&M Secured Claim .................................................................11
1.0114 Setoff Claim ...............................................................................................11
1.0115 Sidetrack Costs...........................................................................................11
1.0116 Sidetrack Drilling Operation ......................................................................12
1.0117 Standard .....................................................................................................12
1.0118 Standard Operator Lien ..............................................................................12
1.0119 Subordinated Claim ....................................................................................12
1.0120 U.S. Trustee Fees .......................................................................................12
1.0121 Undeliverable or Unclaimed Distribution...................................................12
1.0122 Unimpaired .................................................................................................12
1.0123 Voting Deadline..........................................................................................12
1.0124 Voting Record Date ....................................................................................12
1.0125 Wisenbaker .................................................................................................12
1.0126 Wisenbaker Related Parties ........................................................................12

ARTICLE II.
TREATMENT OF ADMINISTRATIVE CLAIMS

TREATMENT OF ADMINISTRATIVE CLAIMS ..............................................................12

2.01 Treatment ...................................................................................................12
2.02 General Administrative Claims....................................................................13
2.03 Treatment of Priority Tax Claims ...............................................................13

2.04    Professional Fee Claims..................................................................................13
2.05    U.S. Trustee Fees ...........................................................................................13

ARTICLE III.
DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS .............................13

3.01    Introduction....................................................................................................13
3.02    Claims against and Equity Interests in Consolidated and Standard................14

ARTICLE IV.
PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS....................14

4.01    Introduction....................................................................................................14
4.02    Treatment of Classified Claims and Equity Interests .....................................14
4.03    Designation of Impaired and Unimpaired Classes..........................................16

ARTICLE V.
ACCEPTANCE OR REJECTION OF THIS PLAN ..................................................16

5.01    Classes Entitled to Vote .................................................................................16
5.02    Acceptance by Impaired Classes of Claims ...................................................16
5.03    Cramdown.......................................................................................................16

ARTICLE VI.
MEANS FOR IMPLEMENTATION OF THIS PLAN ...............................................17

6.01    Wisenbaker Settlement ...................................................................................17
6.02    Establishment of Liquidating Trust ................................................................18
6.03    Purpose of the Liquidating Trust ....................................................................19
6.04    Transfer of the Liquidating Trust Assets to the Liquidating Trust ..................19
6.05    Transfer Free and Clear of Claims; Stay of Actions Against Liquidating Trust or
        Trust Res ........................................................................................................19
6.06    Termination.....................................................................................................20
6.07    Liquidating Trust Interests .............................................................................20
6.08    Conditions Precedent to the Effective Date ....................................................20
6.09    Assumed Contracts .........................................................................................21
6.010   Cure Claims ....................................................................................................21
6.011   Oil and Gas Leases..........................................................................................21
6.012   Litigation Recoveries ......................................................................................21
6.013   Directors, Officers, and/or Managers of the Debtors......................................21
6.014   Preservation of Rights of Action; Settlement of Litigation Claims.................21
6.015   Authority .........................................................................................................22
6.016   Dissolution of Committee ...............................................................................22
6.017   Creditors' Oversight Committee......................................................................22

## ARTICLE VII.
THE LIQUIDATING TRUSTEE .................................................................................................23

7.01   The Liquidating Trustee .................................................................................................23
7.02   The Responsibilities of the Liquidating Trustee ...........................................................23
7.03   The Powers of the Liquidating Trustee .........................................................................23
7.04   Establishment of Reserves and Accounts .....................................................................24
7.05   Retention of Professionals ............................................................................................24
7.06   Compensation of the Liquidating Trustee .....................................................................24
7.07   Liquidating Trustee Expenses .......................................................................................24
7.08   Liability; Indemnification .............................................................................................24
7.09   Termination ...................................................................................................................25

## ARTICLE VIII.
PROVISIONS GOVERNING DISTRIBUTIONS ......................................................................25

8.01   Proceeds of Federal Insurance Policies .........................................................................25
8.02   Waterfall ........................................................................................................................25
8.03   Cash Distributions .........................................................................................................26
8.04   Distributions by Agent or Servicer ...............................................................................26
8.05   Means of Cash Payment ................................................................................................26
8.06   Delivery of Distribution ................................................................................................26
8.07   Fractional Dollars; De Minimis Distributions ..............................................................26
8.08   Withholding and Reporting Requirements ....................................................................27
8.09   Setoffs ...........................................................................................................................27
8.010  Duty to Disgorge Overpayments ..................................................................................27
8.011  Unclaimed Distributions ...............................................................................................27

## ARTICLE IX.
PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,
AND UNLIQUIDATED CLAIMS .............................................................................................27

9.01   Objection Deadline; Prosecution of Objections ............................................................27
9.02   No Distributions Pending Allowance ............................................................................28

## ARTICLE X.
TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ..............................................................................................................28

## ARTICLE XI.
EFFECTS OF CONFIRMATION ..............................................................................................28

11.01  Discharge .......................................................................................................................28
11.02  Legal Binding Effect .....................................................................................................29
11.03  Moratorium, Injunction and Limitation of Recourse For Payment ...............................29
11.04  Term of Injunction or Stays ..........................................................................................29
11.05  Exculpation and Limitation of Liability .......................................................................30
11.06  Release and Covenant Not to Sue .................................................................................30

11.07  Insurance ................................................................................................................31
11.08  Insurance Policies Vested in Liquidating Trust ..................................................31

ARTICLE XII.

RETENTION OF JURISDICTION .................................................................................31

12.01  Retention ................................................................................................................31
12.02  Rights of Liquidating Trustee ..............................................................................33

ARTICLE XIII.

MISCELLANEOUS PROVISIONS .................................................................................33

13.01  Revocation, Withdrawal or Non-Consummation ...............................................33
13.02  Severability of Plan Provisions ...........................................................................33
13.03  Exemption from Transfer Taxes and Recording Fees .......................................34
13.04  Expedited Tax Determination ..............................................................................34
13.05  Interest Accrual .....................................................................................................34
13.06  Allocation of Plan Distributions between Principal and Interest .....................34
13.07  Rules of Interpretation; Computation of Time ..................................................34
13.08  Plan Documents .....................................................................................................34
13.09  Reservation of Rights ...........................................................................................34
13.010 Further Assurances ...............................................................................................35
13.011 Successors and Assigns .........................................................................................35
13.012 Governing Law ......................................................................................................35
13.013 Abandonment .........................................................................................................35
13.014 Notice of Effective Date .......................................................................................35
13.015 Plan Supplement ....................................................................................................35
13.016 Entire Agreement ..................................................................................................35
13.017 Waiver of Stay ......................................................................................................35

ARTICLE XIV.

MODIFICATION OF THIS PLAN ..................................................................................35

**EXHIBITS**

A – Subordinated Claims

B – Parties Against Whom Causes of Action are Preserved and Potential and Retained Claims and Causes of Action

C – Designated Contracts

D – Liquidating Trust Agreement

## FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS

Heritage Consolidated LLC and Heritage Standard Corporation, debtors and debtors-in-possession in the above-referenced bankruptcy cases, together with the Committee hereby propose this *First Amended Joint Plan of Reorganization for the Debtors* dated December 12, 2012 (this "Plan") pursuant to the provisions of chapter 11 of the Bankruptcy Code for the resolution and treatment of the Debtors' outstanding Claims, Liens and Equity Interests. Reference is hereby made to the *Second Amended Disclosure Statement for the First Amended Joint Plan of Reorganization for the Debtors* (the "Disclosure Statement") for a discussion of, among other things, the history, businesses, properties, results of operations, risk factors, and a summary and analysis of this Plan, and related matters of the Debtors. All holders of Claims, Liens and Equity Interests are encouraged to read both this Plan and the Disclosure Statement before voting to accept or to reject this Plan. In the event of any inconsistencies between this Plan and the Disclosure Statement, the terms and provisions of this Plan shall control. The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

**THE PLAN HAS THE SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS APPOINTED IN THESE BANKRUPTCY CASES.**

### ARTICLE I.
### DEFINITIONS

Except as expressly provided or unless the context otherwise requires, the terms set forth in this ARTICLE I shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form in this Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

**1.01** **Ad Valorem Tax Claim**. A Claim for taxes (together with any related interest, penalty, addition to tax or additional amount imposed by any Governmental Authority) which is assessed based upon the value of the applicable Debtor's property and which is secured by a statutory Lien upon that property, or the net proceeds from the sale of such property, to the extent of the value, as of the Effective Date (or such other date as is established by the Bankruptcy Court) of such Lien as determined by a Non-Appealable Order or as otherwise agreed upon in writing by the holder of such Claim and (a) the applicable Debtor (if such agreement is effectuated prior to the Effective Date) and the Committee; or (b) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date).

**1.02** **Administrative Claim**. A Claim for payment of an administrative expense of the kind specified in Bankruptcy Code § 503(b) and entitled to priority pursuant to Bankruptcy Code § 507(a)(2), including, without limitation, Professional Fee Claims and U.S. Trustee Fees.

**1.03** **Allowed**. In reference to a Claim or any portion thereof: (a) a Claim against one or more of the Debtors, proof of which, if required, was Filed on or before the Bar Date (or with respect to an Administrative Claim, the Post-Confirmation Bar Date), which is not a Disputed Claim; (b) if no Proof of Claim was so Filed, a Claim against one or more of the Debtors which has been or hereafter is listed by one or more of the Debtors in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent and on account of which payment has not been made; or (c) a Claim allowed hereunder or by a Non-Appealable Order. An Allowed Claim does not include any Claim, or portion thereof, which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof or pursuant to a Non-Appealable Order. Unless otherwise specifically provided in this Plan, or by a Non-Appealable Order of the Bankruptcy Court or otherwise allowed under

applicable bankruptcy law, an Allowed Claim shall not include any amount for punitive or exemplary damages, penalties, fines, post-petition interest, except that attorney's fees or other costs may be allowed to the extent provided under applicable State law or agreement

      **1.04**      **Allowed Amount**.  The amount of any Allowed Claim.

      **1.05**      **Apollo Litigation**.  The litigation that was pending in the District Court of Winkler County, Texas, 109th Judicial District styled *Heritage Standard Corporation v. Apollo Perforators, Inc.*; Cause No. 15,831, and which has been removed to the Bankruptcy Court as adversary proceeding no. 10-03417.

      **1.06**      **Assumed Contracts.**  Any and all Designated Contracts that are assumed by one or more of the Debtors on or before the Effective Date and assigned to the Liquidating Trust.

      **1.07**      **Avoidance Actions.**  Any and all rights, claims and causes of action which a trustee, one or more of the Debtors, or other appropriate party in interest would be able to assert on behalf of one or more of the Estates under applicable state law or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542 through 551, and 553. These claims include claims for preferences and will likely include any payments listed in section 3 of the Debtors' Statement of Financial Affairs and any amendments thereto as well as any other potential preferential payments that are located during the Liquidating Trustee's post-confirmation investigation.  In addition, these rights, claims and causes of action will include potential fraudulent transfer litigation as well as preference litigation against entities related to the Debtors including, but not limited to, Case Inlet, L.P., Heritage Disposal, Heritage Gathering, Heritage Oil, L.P., Michael B. Wisenbaker, Heritage Resources, Inc., Heritage Resources, Inc. JDD, HSC-AG Hill, Lonnie McDade, SSB, L.P., The Chase Avenue Corporation and Wise Oil Venture.

      **1.08**      **Ballot.**  Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote on which the holder is to indicate acceptance or rejection of this Plan in accordance with the voting instructions and make any other elections or representations required pursuant to this Plan or the Disclosure Statement Order.

      **1.09**      **Bankruptcy Code**.  Title 11 of the United States Code, as amended.

      **1.010**      **Bankruptcy Court**.  The United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

      **1.011**      **Bankruptcy Rules**.  The Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Northern District of Texas, each as now in effect or as hereafter amended, to the extent applicable to the Cases or proceedings therein, as the case may be.

      **1.012**      **Bankruptcy Schedules**.  The schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information Filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007, as same may be amended, supplemented or modified from time to time.

      **1.013**      **Bar Date**.  The deadline set by the Bankruptcy Court by which a Proof of Claim must have been Filed, which is (a) November 8, 2010 for non-governmental entities; (b) March 14, 2011 for governmental entities; (c) thirty days after the entry of an Order of the Bankruptcy Court approving the rejection of an executory contract or unexpired lease in the case of a Claim for damages arising from

the rejection of an executory contract or unexpired lease; and (d) such other date as the Bankruptcy Court may fix.

1.014    **Business Day**.  Any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Dallas, Texas.

1.015    **Cases**.  The Debtors' chapter 11 cases which are pending before the Bankruptcy Court and jointly administered under Case No. 10-36484 styled *In re Heritage Consolidated LLC, et al.*

1.016    **Cash**.  Legal tender of the United States of America or equivalents thereof.

1.017    **Causes of Action**.  Any and all rights, claims, causes of action, litigation, suits, proceedings, rights of setoff, rights of recoupment, complaints, defenses, counterclaims, cross-claims and affirmative defenses of any kind or character whatsoever whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, currently existing or hereafter arising, whether set forth in the Bankruptcy Schedules and whether arising under the Bankruptcy Code or other applicable law, in contract or in tort, in law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring, prior to the Effective Date, including, but not limited to all (a) claims pursuant to Bankruptcy Code § 362; (b) claims and defenses such as fraud, mistake, duress, usury, and fraudulent transfers; (c) claims under Bankruptcy Code § 510(c); (d) the Apollo Litigation; (e) the Eunice Litigation; (f) the Environmental Reimbursement Claims; (g) the Environmental Insurance Claims; (h) the D&O Claims; and (i) all Avoidance Actions.

1.018    **CIT Capital**.  CIT Capital USA Inc.

1.019    **CIT Deficiency Claim**.  The unsecured deficiency Claim of the Lender in the amount of $7,000,000.00 which is the only portion of the original Lender Secured Claim remaining after Permian Atlantis assumed a portion of the Lender Secured Claim in connection with and as a part of the Permian Transaction, and the Lender and CIT Capital waived any remaining Lender Secured Claim or any Unsecured Claim, other than the CIT Deficiency Claim, which is subordinated to Allowed Unsecured Claims.

1.020    **Claim**.  A claim as defined in Bankruptcy Code §101(5) against one or more of the Debtors.

1.021    **Class.**  All of the holders of Claims or Equity Interests with respect to any Debtor having characteristics substantially similar to the other Claims or Equity Interests with respect to such Debtor and which have been designated as a Class in this Plan.

1.022    **Collateral**.  Any property or interest in property of any of the Debtors subject to a valid, enforceable Lien that secures the payment or performance of any Claim, which Lien is not subject to avoidance and is not otherwise invalid under the Bankruptcy Code or other applicable law.

1.023    **Committee**.  The Official Committee of Unsecured Creditors appointed in the Debtors' Cases pursuant to Bankruptcy Code §1102(a).

1.024    **Confirmation**.  The entry of the Confirmation Order on the Bankruptcy Court's docket.

**1.025    Confirmation Date**.  The date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

**1.026    Confirmation Hearing**.  The hearing or hearings before the Bankruptcy Court at which the Bankruptcy Court will consider the Confirmation of this Plan pursuant to Bankruptcy Code §1128, as such hearings may be adjourned or continued from time to time.

**1.027    Confirmation Order**.  The Order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code § 1129, as such Order may be amended, modified or supplemented.

**1.028    Consolidated**.  Heritage Consolidated, LLC, a Texas limited liability company and one of the jointly-administered Debtors in these Cases.

**1.029    Creditor**.  A holder of a Claim.

**1.030    Cross Canyon**.  Cross Canyon Energy Corporation, a Delaware corporation and affiliate of CIT Capital.

**1.031    Cryogenic Plant Lease**.  The surface lease dated May 15, 1975 initially by and between the City of Midland and Atlantic Richfield Company for the Crittendon Gas Plant together with all physical plant equipment, compressors, machinery, parts, tools, furniture, and improvements located in or on the leased property.

**1.032    Cure Claim**.  A Claim relating to amounts that the Bankruptcy Court determines by Non-Appealable Order to be necessary to cure all defaults, if any, and to pay all losses that have resulted from defaults, under an Assumed Contract.

**1.033    D&O Claims**.  Any claims, causes of action, cross claims or counterclaims against any directors, officers, employees, partners, managers or members of the Debtors or anyone acting in concert therewith, including, but not limited to, claims for breach of their fiduciary duties.

**1.034    Debtors in Possession**.  The Debtors, when acting in their capacities as representatives of the Estates.

**1.035    Debtors**.  Consolidated and Standard, as debtors and debtors in possession of their respective Estates.

**1.036    Designated Contracts**.  Any and all contracts, agreements, leases, licenses, indentures, notes, bonds, sale and purchase orders, instruments or other commitments, whether oral or written (including any amendments or modifications thereto) which may be assumed by one or more of the Debtors pursuant to Bankruptcy Code §365 and which will be assigned to the Liquidating Trust on the Effective Date.

**1.037    Disallowed Claim**.  A Claim, or any portion thereof, that (a) has been disallowed by a Non-Appealable Order; (b) is Scheduled at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date; or (c) is not Scheduled and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date.

**1.038    Disclosure Statement**.  The Second Amended Disclosure Statement for this First Amended Joint Plan of Reorganization for the Debtors dated December 12, 2012, including all exhibits and schedules thereto, as amended, supplemented or modified from time to time.

**1.039    Disclosure Statement Order**.   The Order entered by the Bankruptcy Court approving the Disclosure Statement pursuant to Bankruptcy Code §1125, as such Order may be amended, modified or supplemented

**1.040    Disposal**.  Heritage Disposal Corporation, a Texas corporation.

**1.041    Disposal Agreement**.  That certain Salt Water Disposal Agreement dated as of August 1, 2006 by and between Gathering and Standard, as the same may be amended, supplemented, or otherwise modified.

**1.042    Disputed Claim**.  A Claim, or any portion thereof, that is set forth in a Filed Proof of Claim that (a)(i) has not been Scheduled; or (ii) has been Scheduled at zero or as contingent, unliquidated or disputed; (b)  differs in nature, amount or priority from the Bankruptcy Schedules; or (c) is the subject of an objection Filed by one or more of the Debtors or the Committee and which objection has not been withdrawn or overruled by a Non-Appealable Order; provided, however, that with respect to an Administrative Claim, "Disputed Claim" means an Administrative Claim that has not been paid, that has not been Allowed by Non-Appealable Order or that is a Disallowed Claim.

**1.043    Distribution**.  The payment of Cash or the issuance of other property from the Liquidating Trust to the holders of Allowed Claims pursuant to this Plan.

**1.044    Drilling Operations**.  Any and all Sidetrack Drilling Operations, workovers, reworks, deepenings, recompletions, plug-backs, or other drilling work of any kind on the Pat Howell #1 Well, the A.G. Hill #1 Well, or any Liquidating Trust Assets.

**1.045    Effective Date**.  The later of (a) the first Business Day on which all conditions precedent to the effectiveness of this Plan have been satisfied or waived as provided in Section 6.08 of this Plan; and (b) such other date agreed to by all of the Plan Proponents.

**1.046    Environmental Claims**.  Any and all claims asserted by the City of Midland and/or enforced by the Texas Railroad Commission against the Debtors related to environmental contamination associated directly or indirectly with any existing or prior operations of the Debtors.

**1.047    Environmental Reimbursement Claims**.  Claims against any and all former owners or operators of the Non-Section 6 Assets or any other potentially responsible parties that may owe reimbursement to the Debtors for any and all Environmental Claims.

**1.048    Environmental Insurance Claims**.  Claims by the Debtors against Federal Insurance Company under the Federal Insurance Policies arising out of or related to the Environmental Claims.

**1.049    Equity Interest**.  An existing membership, stock, and/or equity interest in either of the Debtors or equity security (within the meaning of Bankruptcy Code §101(16)), in or to either of the Debtors, including, without limitation, all issued, unissued, authorized or outstanding shares of stock or other equity interests (including common and preferred) of either of the Debtors, together with any warrants, options, other derivative securities, convertible securities, liquidating preferred securities or

contractual rights to purchase or acquire any such membership or equity interests at any time and all rights arising with respect thereto.

**1.050     Escrow Amounts**.  The amounts delivered and paid into escrow by CIT Capital and/or Permian Atlantis, in connection with and as a part of the Permian Transaction and currently held in escrow.

**1.051     Estates**.  The estates created by Bankruptcy Code §541 upon the commencement of the respective Cases.

**1.052     Excluded Assets**.  Any assets of the Estates identified by the Plan Proponents at or prior to Confirmation which will not be transferred to the Liquidating Trust due to the lack of value attributable to such asset or interest.

**1.053     Eunice Litigation**.  The litigation that was pending in the District Court of Winkler County, Texas, 109th Judicial District styled *ABC Rental Tools, Inc. and Eunice Well Servicing Co. v. Heritage Standard Corporation*; Cause No. 15,484, and which has been removed to the Bankruptcy Court as adversary proceeding no. 10-03420.

**1.054     Face Amount**.  (a) when used in reference to a Disputed or Disallowed Claim, the full, stated amount claimed by the holder of such Claim in any Proof of Claim timely Filed or otherwise deemed timely Filed by a Non-Appealable Order or other applicable bankruptcy law; (b) when used in reference to Cure Claims, the full stated amount claimed by the holder of such Claim; and (c) when used in reference to an Allowed Claim, the Allowed Amount of such Claim.

**1.055     Federal Insurance Company**.  Federal Insurance Company together with any of its successors or assigns.

**1.056     Federal Insurance Policies**.  Policy Nos. 3730-94-54DAL and 7984-37-37DAL issued by Federal Insurance Company under which Standard, its affiliates and/or others are each a named insured and any extensions or modifications thereof.

**1.057     Fee Application**.  An application to the Bankruptcy Court for allowance of a Professional Fee Claim pursuant to Bankruptcy Code §330 and Bankruptcy Rule 2016(a).

**1.058     Filed**.  Filed with the clerk of the Bankruptcy Court.

**1.059     Free and Clear**.  Free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of one or more of the Debtors or the Estates, and all expenses, and charges, of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order, except any Permitted Encumbrances that are not otherwise released or satisfied under this Plan.

**1.060     Gathering**.  Heritage Gathering Corp., a Texas corporation.

---

**FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS**                    Page 6

**1.061     General Unsecured Claim**.  A Claim that is not an Administrative Claim, Priority Tax Claim, Professional Fee Claim, U.S. Trustee Fee Claim, Ad Valorem Tax Claim, Priority Claim, Lender Secured Claim, Other Secured Claim, M&M Secured Claim, CIT Deficiency Claim, Environmental Claim, Subordinated Claim, or Equity Interest.

**1.062     Global Resolution Proposal**.  That certain settlement negotiated by and among CIT Capital, the Committee, Wisenbaker, and the Debtors resolving certain key disputes in the Bankruptcy Cases including the terms of the sale of the Non-Section 6 Assets to Permian Atlantis, the treatment of the senior secured debt through the partial satisfaction and waiver and subordination of claims, the subordination of insider claims and the funding of amounts for the Pat Howell operations, all of which was approved by the Bankruptcy Court by its Order entered February 28, 2011 [Docket No. 506].

**1.063     Governmental Authority**.  Any transnational, domestic or foreign federal, state or local, governmental unit, authority, department, court, agency or official, including any political subdivision thereof, or any tribal authority.

**1.064     Hydrocarbons**.  Crude oil, natural gas, condensate, casinghead gas, drip gasoline, natural gasoline, petroleum, natural gas liquids, products, liquids and other hydrocarbons.

**1.065     Impaired**.  When used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Bankruptcy Code §1124.

**1.066     Lender**.  Any holder of a Claim under the Lender Credit Agreements or any other Lender Credit Documents.

**1.067     Lender Bridge Secured Claim**.  That portion of the Lender Secured Claim arising under that certain Promissory Note dated July 30, 2010 by Standard and Consolidated, as maker, and CIT Capital, as holder, or any related Lender Credit Documents.

**1.068     Lender Credit Agreements**.  That certain Credit Agreement dated October 30, 2008 by and among Consolidated, CIT Capital, as administrative agent, and the lenders party thereto, as amended, and that certain Promissory Note dated July 30, 2010 by Standard and Consolidated, as maker, and CIT Capital, as holder.

**1.069     Lender Credit Documents**.  The Lender Credit Agreements, and all promissory notes, instruments, agreements, deeds of trust, mortgages, security agreements, assignments, pledges, and financing statements that evidence, secure or relate to the Lender Credit Agreements or any Liens securing the Lender Secured Claim.

**1.070     Lender Secured Claim**.  The entirety of any Claim arising out of or under the Lender Credit Agreements, or any other Lender Credit Documents, in each case as such amount may be adjusted from time to time consistent with Orders of the Bankruptcy Court.

**1.071     Lien**.  With respect to any property or asset, any mortgage, lien, interest pledge, charge, security interest, encumbrance, mechanics' lien, materialman's lien, statutory lien or right, and other consensual or non-consensual lien, whenever granted and including, without limitation, those charges or interests in property within the meaning of "lien" under Bankruptcy Code §101(37).

**1.072** **Liquidating Trust**. The trust created pursuant to the Liquidating Trust Agreement on the Effective Date in accordance with this Plan, the Confirmation Order and the Liquidating Trust Agreement.

**1.073** **Liquidating Trust Agreement**. The Liquidating Trust Agreement to be dated as of the Effective Date establishing the terms and conditions of the Liquidating Trust, substantially in the form annexed to this Plan as **Exhibit "D"**.

**1.074** **Liquidating Trust Assets**. The assets transferred to the Liquidating Trust pursuant to this Plan, including the Estates' interest in the Section 6 Assets, the Causes of Action, the Avoidance Actions, the amounts in the Escrow Accounts, any Cash or any and all proceeds, rents, products, offspring, and profits arising from or generated by such property on or after the Effective Date, but excluding the Excluded Assets.

**1.075** **Liquidating Trustee**. The trustee of the Liquidating Trust, as designated in this Plan and the Liquidating Trust Agreement, including the initial Liquidating Trustee who will be selected by the Committee, and any successor appointed in the manner set forth in the Liquidating Trust Agreement.

**1.076** **M&M Liens**. Any Liens or Claims of any Persons to the extent arising and validly claimed on or before the Bar Date on account of labor performed, or services, materials, goods or equipment furnished with respect to development, drilling, completion, maintenance, repair, operations or related activity on or with respect to any lands, material, machinery, supplies, improvements, oil and gas leases, or wells or pipelines owned, in whole or in part, by the Debtors, to the extent properly perfected and arising under these categories and pursuant to the requirements under applicable law, including without limitation, the Texas Property Code Chapter 56.

**1.077** **M&M Secured Claim**. A Secured Claim that is secured by an M&M Lien.

**1.078** **New Operator**. The new operator of the Section 6 Assets under the Section 6 JOA, or a new JOA entered into among all working interest owners to replace the Section 6 JOA.

**1.079** **Non-Appealable Order**. An order entered by the Bankruptcy Court or other court of competent jurisdiction on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument, new trial or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, new trial or rehearing shall then be pending; or (b) in the event that any appeal, writ of certiorari, reargument, new trial or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument, new trial or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument, new trial or rehearing shall have expired; provided, however, that no order shall fail to be a Non-Appealable Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or a similar rule under the Federal Rules of Bankruptcy Procedure may be filed with respect to such order.

**1.080** **Non-Section 6 Assets**. The assets transferred to Permian Atlantis in the Permian Transaction.

**1.081** **Non-Section 6 JOAs**. The following joint operating agreements: (a) Operating Agreement dated February 10, 1966 initially by and between Roden Oil Company, as Operator, and Sinclair Oil and Gas Company and Others, as Non-Operators; (b) Operating Agreement dated September 12, 1968 initially by and between Sinclair Oil and Gas Company, as Operator, and Getty Oil Company

and Others, as Non-Operators; (c) Operating Agreement dated February 1, 1977 initially by and between Atlantic Richfield Company, as Operator, and Superior Oil Company and Others, as Non-Operators; (d) Operating Agreement dated May 15, 1984 initially by and between Heritage Resources, Inc., as Operator, and Wisenbaker Production Company and Others, as Non-Operators; (e) Operating Agreement dated November 23, 1984 initially by and between Heritage Resources, Inc., as Operator, and Tribal Drilling Company and Others, as Non-Operators; (f) Operating Agreement dated October 23, 1985 initially by and between Heritage Resources, Inc., as Operator, and A.G. Hill Oil Producer and Others, as Non-Operators; (g) Operating Agreement dated August 1, 1987 initially by and between Heritage Resources, Inc., as Operator, and ARCO Oil & Gas Company and Others, as Non-Operators; and (h) Operating Agreement dated February 1, 1986 initially by and between Heritage Resources, Inc., as Operator, and Jack C. Bestram & Associates and Others, as Non-Operators.

      **1.082**    <u>Non-Section 6 M&M Secured Claim</u>.  Any Secured Claim against the segregated proceeds from the sale of the Non-Section 6 Assets, net of Ad Valorem Tax Claims, the allocable portion of the P&A Administrative Costs for the Non-Section 6 Assets and any other priority or administrative costs attributable to the Non-Section 6 Assets.

      **1.083**    <u>Oil and Gas Leases</u>.  Any contract, agreement, lease, license, instrument, or other document, whether oral or written, pursuant to which one or more of the Debtors leases, has rights of ingress, egress, easement or passage, or otherwise has rights in or access to surface or subsurface real property and/or Hydrocarbons or other minerals and materials of every kind and description located thereon or thereunder for the purpose or use of exploration, drilling, production, gathering, or transportation of Hydrocarbons.

      **1.084**    <u>Order</u>.  An order of the Bankruptcy Court.

      **1.085**    <u>Other Secured Claim</u>.  A Secured Claim that is not an Ad Valorem Tax Claim or M&M Secured Claim.

      **1.086**    <u>P&A Administrative Claim Escrow</u>.  That certain escrow to be established on the Effective Date in the amount of no more than $400,000.00 for the purpose of securing payment of Allowed Claims for any future P&A costs associated with the Debtors' interest in producing or nonproducing oil & gas wells.

      **1.087**    <u>Pathfinder Litigation</u>.  The litigation that was pending in the District Court of Winkler County, Texas, 109th Judicial District styled *Heritage Standard Corporation v. Pathfinder Energy Services, LLC*; Cause No. 15,830, and which has been removed to the Bankruptcy Court as adversary proceeding no. 10-03419.

      **1.088**    <u>Permian Atlantis</u>.  Permian Atlantis LLC, a Delaware limited liability company that is an affiliate of CIT Capital and subsidiary of Cross Canyon.

      **1.089**    <u>Permian Cure Payment</u>.  The payment of $3,850,000.00 in Cash to Standard from Permian Atlantis as part of the Permian Transaction, as cure of, and in full and final satisfaction of, among other things, (a) Standard's claims against Consolidated under the Non-Section 6 JOAs; and (b) M&M Secured Claims relating to the Non-Section 6 Assets.

      **1.090**    <u>Permian Transaction</u>.  That certain purchase and sale transaction approved by the Bankruptcy Court, and closed on February 28, 2011, pursuant to that certain Back-Up Purchase and Sale Agreement entered into between Permian Atlantis as "Buyer" and the Debtors as "Sellers" whereby Permian Atlantis purchased the Non-Section 6 Assets free and clear and assumed the Non-Section 6

JOAs in consideration of assumption by Permian Atlantis of a portion of the Lender Secured Claim, payment of the Cure Payment to Standard, and other good and valuable consideration.

       **1.091**     **Person**. Any person, entity or Governmental Authority of any nature whatsoever, specifically including an individual, firm, company, corporation, partnership, trust, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization or other entity or organization.

       **1.092**     **Petition Date**. September 14, 2010, the date on which the Debtors commenced these Cases in the Bankruptcy Court.

       **1.093**     **Plan**. This First Amended Joint Plan of Reorganization for the Debtors dated December 12, 2012, as the same may be amended, supplemented, or otherwise modified.

       **1.094**     **Plan Documents**. All documents, forms, lists, and agreements contemplated under this Plan to effectuate the terms and conditions hereof.

       **1.095**     **Plan Interest Rate**. 4.00% per annum.

       **1.096**     **Plan Proponents**. The Debtors and the Committee.

       **1.097**     **Plan Supplement**. The compilation of Plan Documents and any other documents, forms, exhibits, lists, and schedules as specified in this Plan and the Disclosure Statement which will be Filed with the Bankruptcy Court no later than 5 days prior to the Confirmation Hearing, as such documents may be altered, restated, modified, or supplemented from time to time.

       **1.098**     **Post-Confirmation Bar Date**. 4:00 p.m., prevailing Central time, on the first Business Day which is at least thirty days after the Effective Date.

       **1.099**     **Priority Claim**. A Claim that is entitled to priority under Bankruptcy Code §507(a)(4)-(7), (9)-(10).

       **1.0100**     **Priority Tax Claim**. A Claim that is entitled to priority under Bankruptcy Code §507(a)(8).

       **1.0101**     **Pro Rata**. The proportion that the amount of an Allowed Claim in a Class bears to the aggregate amount of all Claims in that Class, including Disputed Claims but excluding Disallowed Claims. For purposes of this calculation, the amount of a Disputed Claim will equal the lesser of (a) its Face Amount; and (b) the amount estimated as allowable by the Bankruptcy Court.

       **1.0102**     **Professional**. Any Person employed in the Cases pursuant to Bankruptcy Code §§ 327 or 1103.

       **1.0103**     **Professional Fee Claim**. An Administrative Claim of a Professional for compensation for services rendered and/or reimbursement of costs and expenses incurred on and after the Petition Date and prior to the Effective Date.

       **1.0104**     **Proof of Claim**. A written statement setting forth a Creditor's Claim and conforming substantially to the appropriate official form.

**1.0105    Released Parties.** The Debtors, the Estates, the Committee, the members of the Committee, CIT Capital, Cross Canyon, Permian Atlantis LLC, the Wisenbaker Related Parties and the current Debtors' current officers and employees; provided however, that such releases does not release any claims or liens between Standard and Consolidated.

**1.0106    Remediation Reserve.** The reserve to be established on the Effective Date in the amount of no more than $250,000.00 to secure payment of any portion of the Allowed Environmental Claims that are determined to be non-covered expenses under the Federal Insurance Policies by the Bankruptcy Court or agreement among the City of Midland, Federal Insurance Company, the RRC and the Liquidating Trustee.

**1.0107    Ritter Work Plan.** The environmental remediation work plan prepared in consultation and agreement with the Texas Railroad Commission and approved by the Bankruptcy Court, or as modified by agreement among the Texas Railroad Commission, Debtors and the City of Midland.

**1.0108    RRC.** The Texas Railroad Commission.

**1.0109    Scheduled.** With respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Bankruptcy Schedules.

**1.0110    Secured Claim.** (a) any Claim or portion thereof that is reflected in the Bankruptcy Schedules or a Proof of Claim as secured by a perfected security interest in, or Lien upon, any Collateral, or the net proceeds from the sale of such Collateral, in which one or more of the Debtors has an interest, to the extent of the value of the Collateral securing such Claim, as of the Petition Date (or such other date as is established by the Bankruptcy Court) of such security interest or Lien as determined by a Non-Appealable Order pursuant to Bankruptcy Code §506 or as otherwise agreed upon in writing by the holder of such Claim, the Committee, and (i) the applicable Debtor (if such agreement is effectuated prior to the Effective Date), or (ii) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date); or (b) a Setoff Claim.

**1.0111    Section 6 Assets.** All oil and gas interests of the Estates, including equipment utilized for such operations, but excluding (i) revenue from production and (ii) those assets sold to Permian Atlantis in the Permian Transaction.

**1.0112    Section 6 JOA.** That certain Operating Agreement dated January 25, 2008 initially by and between Stratco Operating Company, Inc., as Operator, and George G. Staley and Others, as Non-Operators.

**1.0113    Section 6 M&M Secured Claim.** Any Secured Claim against the Section 6 Assets, net of Ad Valorem Tax Claims, the allocable portion of the P&A Administrative Costs for the Section 6 Assets and any other priority or administrative costs attributable to the Section 6 Assets.

**1.0114    Setoff Claim.** A Claim of a holder that has a valid right of setoff with respect to such Claim which right is enforceable under Bankruptcy Code §553 as determined by a Non-Appealable Order or as otherwise agreed in writing by the holder of such Claim, the Committee, and (a) the applicable Debtor (if such agreement is effectuated prior to the Effective Date); or (b) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date), to the extent of the amount subject to such right of setoff.

**1.0115    Sidetrack Costs.** Any and all costs, expenses, or charges associated with the Sidetrack Drilling Operation.

**1.0116**    **Sidetrack Drilling Operation**.  The sidetrack of the Pat Howell #1 Well located in Section 6, Block 74, Winkler County, Texas.

**1.0117**    **Standard**.  Heritage Standard Corporation, a Texas corporation and one of the jointly administered Debtors in these Cases.

**1.0118**    **Standard Operator Lien**.  All statutory lien rights and payment priorities arising in favor of Standard in connection with the Section 6 JOA and applicable Texas law.

**1.0119**    **Subordinated Claim**.  Any Claim (a) arising from rescission of a purchase or sale of a security of any of the Debtors or of an affiliate of any of the Debtors; (b) for damages arising from the purchase or sale of such a security; (c) for reimbursement or contribution allowed under Bankruptcy Code §502 on account of a Claim described in (a) or (b) above; (d) otherwise subordinated pursuant to Bankruptcy Code §510; (e) subordinated by Non-Appealable Order; (f) based on fines, penalties, forfeiture or for multiple, exemplary, or punitive damages; or (g) subordinated by agreement, including any agreement reached pursuant to the terms of the Global Resolution Proposal and this Plan.

**1.0120**    **U.S. Trustee Fees**.  Fees payable pursuant to 28 U.S.C. §1930.

**1.0121**    **Undeliverable or Unclaimed Distribution**.  A Distribution by the Liquidating Trustee under this Plan that is either (a) attributable to a holder of an Allowed Claim that has failed to prepare, execute and return to the Liquidating Trustee an Internal Revenue Service Form W-9 if so requested by the Liquidating Trustee; or (b) returned to the Liquidating Trustee as undeliverable or otherwise unclaimed.

**1.0122**    **Unimpaired**.  When used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not Impaired.

**1.0123**    **Voting Deadline**.  The date and time, as fixed by an Order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received in order to be counted.

**1.0124**    **Voting Record Date**.  The record date for voting on this Plan, which shall be December 13, 2012.

**1.0125**    **Wisenbaker**.  Michael B. Wisenbaker.

**1.0126**    **Wisenbaker Related Parties**.  Wisenbaker and all direct and indirect affiliates and relatives of Wisenbaker, including, without limitation, Gathering, Disposal, Pat Howell LLC, Heritage Resources, Inc., Chase Avenue, Kaloni Place Interests, L.P., Jean Wisenbaker, Heritage Oil, LP, Case Inlet LP, SSB LP, Wise Oil Venture, and the owners, directors, managers, and officers of the foregoing entities.

## ARTICLE II.
## TREATMENT OF ADMINISTRATIVE CLAIMS

**2.01**    **Treatment**.  Except as otherwise provided herein, the holder of an Allowed Administrative Claim, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Administrative Claim, shall (a) receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (i) the Effective Date (or as soon as reasonably practicable thereafter) or (ii) fifteen Business Days following the date such Claim is Allowed by Non-Appealable

Order; or (b) receive such other treatment that may be agreed upon in writing by the holder of such Claim and the Committee (after the Effective Date, the Liquidating Trustee). The Allowed Administrative Claims are estimated to be approximately $300,000.

**2.02  General Administrative Claims**. Except as otherwise set forth in this ARTICLE II, each holder of an Administrative Claim shall be required to file with the Bankruptcy Court, and to serve upon all parties required to receive notice, an application for allowance of such Administrative Claim on or before the Post-Confirmation Bar Date or be forever barred and discharged from doing so. The Administrative Claims subject to the Post-Confirmation Bar Date include (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; and (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. An Administrative Claim with respect to which an application has been properly and timely filed pursuant to this Section 2.02 shall be treated and paid as an Administrative Claim only to the extent allowed by Non-Appealable Order; provided, however, that Administrative Claims incurred and paid by the Debtors in the ordinary course of business on and after the Petition Date shall be deemed Allowed Claims and shall not be required to submit applications for approval of Administrative Claims.

**2.03  Treatment of Priority Tax Claims**. Each holder of an Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Priority Tax Claim, shall be paid by the Liquidating Trustee in accordance with §1129(a)(9)(c) of the Bankruptcy Code, over a period not exceeding five years after the Effective Date, commencing as soon as funds are available, with interest accruing thereon from and after the Effective Date at the Plan Interest Rate.

**2.04  Professional Fee Claims**. Each Professional whose retention with respect to the Debtors' Cases has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Post-Confirmation Bar Date. The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred and discharged. A Professional Fee Claim with respect to which a Fee Application has been properly and timely Filed pursuant to this Section 2.04 shall be treated and paid as an Administrative Claim only to the extent allowed by Non-Appealable Order. No Professional Fee Claims shall be allowed on account of any services rendered by a Professional whose retention with respect to the Cases has not been approved by the Bankruptcy Court.

**2.05  U.S. Trustee Fees**. All unpaid U.S. Trustee Fees shall be paid in Cash in full on and after the Effective Date (or as soon as reasonably practicable after such fees become due).

### ARTICLE III.
### DESIGNATION OF CLASSES
### OF CLAIMS AND INTERESTS

**3.01  Introduction**. In accordance with Bankruptcy Code §1123(a)(1), all Claims and Equity Interests (except for Administrative Claims, Priority Tax Claims, Professional Fee Claims and U.S. Trustee Fees) are placed in the Classes described below for all purposes, including voting on, confirmation of, and Distributions under this Plan. Administrative Claims, Priority Tax Claims, Professional Fee Claims and U.S. Trustee Fees have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class and is classified in other Classes only to the extent the other portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

        3.02    **Claims against and Equity Interests in Consolidated and Standard**.    The Claims against and Equity Interests in and against the Debtors are classified as follows:

| Class | Class Description | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| Class 1 | Allowed Ad Valorem Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 | Allowed Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 3 | Allowed M&M Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Allowed Other Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Allowed General Unsecured Claims | Impaired | Entitled to Vote |
|  |     Class 5A | | |
|  |     Class 5B | | |
| Class 6 | Allowed Environmental Claims | Impaired | Entitled to Vote |
| Class 7 | Allowed CIT Deficiency Claim | Impaired | Entitled to Vote |
| Class 8 | Allowed Subordinated Claims | Impaired | Entitled to Vote |
| Class 9 | Allowed Equity Interests | Impaired | Entitled to Vote |

# ARTICLE IV.
## PROVISIONS FOR SATISFACTION
## OF CLAIMS AND INTERESTS

        4.01    **Introduction**.    The Claims and Equity Interests as classified in ARTICLE III shall be treated and satisfied in the manner set forth in this ARTICLE IV.  The payments or Distributions may be made as more particularly set forth in this Plan.

        4.02    **Treatment of Classified Claims and Equity Interests**.

        (a)    **Class 1 (Allowed Ad Valorem Tax Claims)**.    Each holder of an Allowed Ad Valorem Tax Claim against the Estates shall, at the election of the Liquidating Trustee, (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed Ad Valorem Tax Claim plus interest at the Plan Interest Rate from the Petition Date until such Claim has been satisfied in full as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee.  This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Ad Valorem Tax Claim.

        (b)    **Class 2 (Allowed Priority Claims)**.    Each holder of an Allowed Priority Claim against the Estates shall, at the election of the Liquidating Trustee, (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed Priority Claim until such Claim has been satisfied in full as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee.  This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Priority Claim.

(c)    **Class 3 (Allowed M&M Secured Claims)**.  Each holder of an Allowed M&M Secured Claim against the Estates shall (A) receive Distributions from the Liquidating Trust in the pro rata amount of such holder's Allowed M&M Secured Claim from the applicable assets identified in the sub-classes below, plus interest at the Plan Interest Rate from the Petition Date until such Claim has been satisfied in full, to the extent allowable under Title 11, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee.  This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed M&M Secured Claim.  Class 3 is further divided into sub-classes comprised of the Allowed Section 6 M&M Secured Claims and the Allowed Non-Section 6 M&M Secured Claims as follows:

> **Class 3A**: Allowed Section 6 M&M Secured Claims to be satisfied solely from the Section 6 Assets, or sale proceeds thereof, with any deficiency claim to be included with General Unsecured Claims in Class 5.

> **Class 3B**: Allowed Non-Section 6 M&M Secured Claims to be satisfied solely from the net sale proceeds of the Non-Section 6 Assets with any deficiency claim to be included with General Unsecured Claims in Class 5.

(d)    **Class 4 (Allowed Other Secured Claims)**.  Each holder of an Allowed Other Secured Claim against the Estates shall (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed Other Secured Claim plus interest at the Plan Interest Rate from the Petition Date until such Claim has been satisfied in full, to the extent allowable under Title 11, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee.  This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Other Secured Claim.

(e)    **Class 5 (Allowed General Unsecured Claims)**.  Each holder of an Allowed General Unsecured Claim against the Estates shall (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed General Unsecured Claim until such Claim has been satisfied in full, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee.  This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed General Unsecured Claim. Class 5 is further divided into sub-classes comprised of the Allowed Unsecured Claims against each of the Debtors as follows:

> **Class 5A**: Allowed General Unsecured Claims against Heritage Consolidated LLC.

> **Class 5B**: Allowed General Unsecured Claims against Heritage Standard Corporation.

(f)    **Class 6 (Allowed Environmental Claims)**.  Each holder of an Allowed Environmental Claim against the Estates shall be deemed to receive payment in full and final satisfaction on such claim an through the implementation and completion of the Ritter Work Plan under the direction of the Liquidating Trustee, the cost of which will be paid solely from (A) the proceeds of the Federal Insurance Policies will be paid by Federal Insurance as expenses are incurred until the Ritter Plan is satisfied or the proceeds of the Federal Insurance Policies have been exhausted, except with respect to TH 6 remediation expenses which shall be paid by Federal Insurance to the extent, if any, ordered by the Bankruptcy Court in its resolution of the coverage issues; and (B) from the Remediation Reserve established pursuant to this Plan to the extent that the Bankruptcy Court determines that any specific

portion of the Ritter Work Plan is not subject to the coverage provided under the Federal Insurance Policies and from future operations. Provided however, that each holder of an Allowed Environmental Claim receive such other less favorable treatment that may be agreed upon in writing by such holder, the Liquidating Trustee and the RRC. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Environmental Claim.

(g)    **Class 7 (Allowed CIT Deficiency Claim)**. The holder of the Allowed CIT Deficiency Claim shall (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed CIT Deficiency Claim until such Claim has been satisfied in full, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed CIT Deficiency Claim.

(h)    **Class 8 (Allowed Subordinated Claims)**. Each holder of an Allowed Subordinated Claim shall receive (A) Distributions from the Liquidating Trust in the amount of such holder's Allowed Subordinated Claim until such Claim has been satisfied in full, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Subordinated Claim.

(i)    **Class 9 (Allowed Equity Interests)**. On the Effective Date, each then-issued and outstanding Equity Interest in the Debtors shall receive (A) Distributions from the Liquidating Trust as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Equity Interest.

4.03    **Designation of Impaired and Unimpaired Classes**.

(a)    Impaired Classes of Claims. Classes 3, 4, 5, 6, 7, and 8 are Impaired, and therefore, holders of Claims in such Classes are entitled to cast Ballots with respect to this Plan.

(b)    Impaired Classes of Equity Interests. Class 9 is Impaired, and therefore, holders of Equity Interests in such Class are entitled to cast Ballots with respect to this Plan.

**ARTICLE V.
ACCEPTANCE OR REJECTION OF THIS PLAN**

5.01    **Classes Entitled to Vote**. Each Impaired Class of Claims that will receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan as provided in the Disclosure Statement Order or any other Order.

5.02    **Acceptance by Impaired Classes of Claims**. An Impaired Class of Claims shall have accepted this Plan if (a) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept this Plan; and (b) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

5.03    **Cramdown**. If each Impaired Class of Claims and Equity Interests does not accept this Plan, the Plan Proponents request Confirmation of this Plan under Bankruptcy Code § 1129(b). The Plan Proponents reserve the right to modify this Plan to the extent, if any, that

Confirmation pursuant to Bankruptcy Code § 1129(b) requires modification or for any other reason in their discretion.

## ARTICLE VI.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

      6.01   **Wisenbaker Settlement**. Confirmation of the Plan shall effect a settlement of any claims of the Debtors against Wisenbaker and the Wisenbaker Related Parties (except as to their respective obligations, if any, under this Plan, under any settlement agreement or mutual release entered into in connection herewith, and under the Section 6 JOA) on the following terms:

      (a)   Subordination of Claims. Wisenbaker and each Wisenbaker Related Party (except for Pat Howell LLC as to rights and interests under the Section 6 JOA) agree to subordinate all of their pre-petition claims against the Debtors to all Allowed Secured Claims and Allowed General Unsecured Claims, and such subordinated Claims shall be included in Class 8 (Allowed Subordinated Claims) of this Plan; provided, however that the last pre-petition charges by Disposal (for $44,523) and Gathering ($37,799) for August 2010 and part of September 2010 services will be Allowed and will be included in Class 5 (Allowed General Unsecured Claims) of this Plan.

      (b)   Salt Water Disposal Agreement. Disposal shall enter into a salt water disposal agreement with the Estate/Liquidating Trust substantially in the form of the salt water disposal agreement entered into between Disposal and Permian Atlantis, but with the following changes:

          (i)   the Primary Term of the agreement will be four (4) years, rather than two (2) years, from the Effective Date of this Plan;

          (ii)   a provision will be added to the agreement that will allow the operator of the Pat Howell #1 Well under the Section 6 JOA to transport gas through Disposal's pipeline at then current market rates from the Pat Howell #1 Well;

          (iii)   the operator of the Pat Howell #1 Well will have the option (but not the obligation) to purchase the pipeline and rights of way from Disposal for a total cost of $121,000 payable in 12 equal monthly installments (with no portion of that charge being assessed against Pat Howell LLC); and

          (iv)   the rights under 6.01(c) above, and this Section 6.01(d), may be assigned by the Debtors or the Liquidating Trust to the operator of the Pat Howell #1 Well and/or the operator under the Section 6 JOA, and the remaining rights to water disposal may be assigned by the Debtors or the Liquidating Trust to any party assuming the obligations to remediate water on Non-Section 6 Assets.

      (c)   Consent Required for certain Actions. Pat Howell LLC, as well as any successors or assigns, agrees that it will not undertake, and shall not undertake, (i) any effort to drill, work-over and/or develop the Pat Howell #1 Well until the earlier of December 31, 2012, or the Effective Date, and, additionally (ii) any effort to drill, work-over and/or develop the Pat Howell #1 Well for a period of four (4) years from the Effective Date, in either case without the prior written consent of the other 81.25% ownership interest in the Pat Howell #1 Well.

(d)  Payment of Suspended Revenue. All suspended revenues (estimated by the Debtors to be approximately $36,000) and future revenues related to or arising from the interests of the Wisenbaker Related Parties under the A.G. Hill #1 Well shall be released and paid per the terms of the Section 6 JOA.

(e)  Releases. The Wisenbaker Related Entities (except as to their respective obligations under this Plan, the Section 6 JOA, and any settlement agreement or other written agreement entered into between them and the Debtors) shall receive full and complete releases of any all claims and causes of action which have or can be asserted by or on behalf of the Debtors, their Estates and/or the Liquidating Trust pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  Such releases will be from the Debtors and not from any individual Creditor of the Debtors.  For purposes of clarity, nothing contained in this settlement shall impair, effect, release or otherwise infringe on any direct and independent claims and causes of action that any Creditor or third party has or may have against the Wisenbaker Related Parties, including, without limitation, those claims identified on **Exhibit "C"** to the Disclosure Statement.

(f)  Options on Section 6 Assets. Pat Howell LLC agrees that in the event the Liquidating Trustee desires to sell the Pat Howell # 1 Well, the Debtors' interests in the AG Hill #1 Well and/or the balance of the Section 6 Assets as a whole, Pat Howell LLC will agree to the inclusion of its interests in the Pat Howell #1 Well as part of the package of assets to be sold.  In the event that a buyer desires to purchase all of the Section 6 Assets (including the Pat Howell #1 Well), Pat Howell LLC will consent to such sale and agrees that four percent (4.00%) of the total net sales price received for the Section 6 Assets (including 100% of the Pat Howell #1 Well) shall be allocated to Pat Howell LLC's eighteen and three-fourths percent (18.75%) interest in the Pat Howell #1 Well.  In the event that a potential buyer does not desire to purchase the 18.75% interest in the Pat Howell well owned by Pat Howell LLC, then in such event Pat Howell LLC agrees not to object or impede any such sale of the remainder of the Pat Howell #1 Well, the AG #1 Hill well and/or the balance of the Section 6 Assets.

(g)  Apollo Litigation. Pat Howell LLC agrees that the Estates or the Liquidating Trust (as appropriate) shall receive twenty-five (25%) of Pat Howell LLC's share of any net recovery in the Apollo Litigation.

**6.02  Establishment of Liquidating Trust**.  On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement creating the Liquidating Trust.  A copy of the Liquidating Trust Agreement is attached hereto as **Exhibit "D."**  Following the Effective Date, the liquidation of the Estates shall be conducted by the Liquidating Trust, the Liquidating Trustee of which shall liquidate the Liquidating Trust Assets, object to Disputed Claims and Equity Interests, and make Distributions pursuant to this Plan and the Liquidating Trust Agreement.  The Liquidating Trust shall not retain cash or cash equivalents in excess of a reasonable amount to meet the Claims and contingent liabilities (including Disputed Claims) or to maintain the value of the Liquidating Trust Assets and shall make timely Distributions and not unduly prolong the duration of the Liquidating Trust.  The Liquidating Trustee will hold and manage the Liquidating Trust Assets in accordance with this Plan and the Liquidating Trust Agreement, subject to consent from the Creditors' Oversight Committee with regard to Drilling Operations and other material decisions as described in this Plan and the Liquidating Trust Agreement.  No Drilling Operations will be commenced or performed on the Pat Howell # 1 Well or the A.G. Hill #1 Well without the approval of the Liquidating Trustee and the unanimous consent of the Creditors' Oversight Committee.  The beneficiaries of the Liquidating Trust shall be the holders of Allowed Claims and Equity Interests who shall receive a beneficial interest in the Liquidating Trust in accordance with their respective treatment under the terms of this Plan and the Liquidating Trust Agreement.

The transfer of Liquidating Trust Assets to the Liquidating Trust shall be treated as a transfer to the Liquidating Trust Beneficiaries for all purposes of the Internal Revenue Code (e.g., sections 61(a)(12), 483, 1001, 1012, and 1274) followed by a deemed transfer by such beneficiaries to the Liquidating Trust. The Liquidating Trust shall be considered a "grantor" trust, and the Liquidating Trust Beneficiaries shall be treated as the grantors and deemed owners of the Liquidating Trust. Accordingly, the Liquidating Trustee will file the tax returns for the Liquidating Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. The Liquidating Trustee shall value the transferred property and notify in writing the Liquidating Trust Beneficiaries of such valuations. The assets transferred to the Liquidating Trust shall be valued consistently by the Liquidating Trustee and the Liquidating Trust Beneficiaries, and these valuations will be used for all federal income tax purposes.

      **6.03**     **Purpose of the Liquidating Trust**. The Liquidating Trust shall be established for the benefit of Creditors of the Estates, and Equity Interests to the extent of their distribution rights under the Plan. The Liquidating Trust will be a liquidating trust for tax purposes and will not operate a business or perform ongoing business activities except as reasonably necessary in order to maintain and preserve the value of the Liquidating Trust Assets while the Liquidating Trustee attempts to liquidate, sell and otherwise dispose of such Liquidating Trust Assets. The primary purposes of the Liquidating Trust shall be:

      (a)     to own, hold, manage and dispose of the Liquidating Trust Assets and any other assets for the purpose of making Distributions to holders of Allowed Claims as provided in this Plan.

      (b)     to litigate, prosecute, settle or otherwise resolve the Causes of Action belonging to the Liquidating Trust.

      (c)     to defend any counterclaims relating to the Causes of Action belonging to the Liquidating Trust; and

      (d)     to do anything necessary, related or incidental to the foregoing.

      **6.04**     **Transfer of the Liquidating Trust Assets to the Liquidating Trust**. On the Effective Date and upon the execution of the Liquidating Trust Agreement, all remaining property of the Estates (other than the Excluded Assets) shall be, and shall be deemed to be, transferred to the Liquidating Trustee to be held in the Liquidating Trust, including, without limitation, the Section 6 Assets, the Escrow Amounts, any and all Cash in the Debtors' operating accounts or other bank accounts, all tangible and intangible property, personal and real property, intellectual property, contractual rights, defenses, Causes of Action, Avoidance Actions, Debtors' attorney-client privilege as to all matters, and all other assets and rights of every kind whatsoever owned or possessed by the Debtors (other than the Excluded Assets). The Liquidating Trustee shall hold such property in trust and in its exclusive possession, custody and control. After the Effective Date, the Liquidating Trustee may present such Order(s) or assignment(s) to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where the Liquidating Trust Assets are or were located, which provide that such property is conveyed to the Liquidating Trustee to be held in the Liquidating Trust. The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned. At this time, the Plan Proponents are not aware of any assets which would constitute Excluded Assets under this Plan.

      **6.05**     **Transfer Free and Clear of Claims; Stay of Actions Against Liquidating Trust or Trust Res**. Except for the rights of beneficiaries of the Liquidating Trust as set forth in this Plan and the Liquidating Trust Agreement, all property transferred to the Liquidating Trustee from any of the Estates shall be Free and Clear of all Claims, interests, Liens and encumbrances, and such property

shall remain as property of the Liquidating Trust until distributed pursuant to this Plan and the Liquidating Trust Agreement, provided however, that all asserted M&M Secured Claims, and their corresponding Liens, shall continue in the same right and capacity until an agreement on the amount and validity of the M&M Secured Claim and Lien, or a determination is made as evidenced by a Non-Appealable Order, after appropriate notice and hearing, as to the validity and amount of the M&M Secured Claims and Liens and these claims are paid in full or fully reserved.  On the Effective Date, a stay of all actions (to the same extent as set forth in §362(a) of the Bankruptcy Code) with respect to the Estates, the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust Assets shall be and remain in effect pending consummation of this Plan.  The transfer of assets to the Liquidating Trustee pursuant to this Plan shall not constitute a default or breach under, or result in any forfeiture whatsoever with respect to, any asset or property interest transferred to the Liquidating Trustee.

      6.06        **Termination**.  The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets transferred and assigned to the Liquidating Trustee or involving the Liquidating Trustee on behalf of the Liquidating Trust are fully resolved and the Liquidating Trust Assets have been liquidated and distributed in accordance with this Plan and the Liquidating Trust Agreement.  The Liquidating Trust shall terminate no later than five (5) years from the Effective Date.  However, if warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Liquidating Trust, the term of Liquidating Trust may be extended for a finite period based on the particular circumstances at issue.  Each such extension must be approved by the Bankruptcy Court with notice thereof to all of the beneficiaries of the Liquidating Trust.

      6.07        **Liquidating Trust Interests**.  The beneficial interests in the Liquidating Trust will not be represented by certificates and will not be transferable except pursuant to the laws of descent and distribution or otherwise by operation of law; provided, however, that such prohibition on transferability of beneficial interests is not intended to impair the ability of holders of Claims to assign their Claims pursuant to and in accordance with the Bankruptcy Rules and applicable law.

      6.08        **Conditions Precedent to the Effective Date**.  Each of the following events shall occur on or before the Effective Date; provided however, except as otherwise provided in this Section 6.08, the Plan Proponents may waive in writing any or all of the following events, whereupon the Effective Date shall occur without further action by any Person:

      (a)        the Confirmation Order, in a form and substance reasonably acceptable to each of the Plan Proponents shall have been entered by the Bankruptcy Court and shall not be subject to a stay and shall include findings, among others, that (i) this Plan is confirmed with respect to the Debtors; (ii) the Plan Proponents have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code as set forth in Bankruptcy Code §1125(e); and (iii) the Debtors are authorized to take all actions and consummate all transactions contemplated under this Plan;

      (b)        all material documents, instruments, and agreements provided under, or necessary to implement, the Plan, including, but not limited to, the assignment and assumption agreements providing for the assignment and conveyance by the respective Debtors of all of the Liquidating Trust Assets (all of which shall be in form and substance acceptable to the Plan Proponents) shall have been executed and delivered by the applicable parties.

      As set forth in more detail in Section 13.14 the Liquidating Trustee shall file a Notice of Effective Date with the Bankruptcy Court and serve the Notice of Effective Date on all holders of Claims.

**6.09**    **Assumed Contracts**.    Except as otherwise set forth in this Plan or the Confirmation Order, on the Effective Date, the Designated Contracts shall be assumed by the Debtors and assigned to the Liquidating Trust, and the Liquidating Trustee on behalf of the Liquidating Trust shall be deemed to be the legal counterparty to such contracts. The Section 6 JOA shall be included within the Designated Contracts and shall be assumed and assigned to the Liquidating Trust with all terms and conditions remaining in full force and effect except for the designation and approval of the New Operator and except to the extent of any conflict with the terms of this Plan. The New Operator shall be selected by the Committee prior to Confirmation, disclosed at the Confirmation Hearing and approved by the Court under the Plan. On the Effective Date, the New Operator shall be deemed approved as the operator under the Section 6 JOA in which event the Confirmation Order shall contain findings and conclusions that the New Operator has been so designated and approved as operator under the Section 6 JOA. Those findings and conclusions shall serve as the written consent of the counterparties to the Section 6 JOA and those findings and conclusions shall be binding on all parties to such Section 6 JOA.

**6.010**    **Cure Claims**.    At least ten (10) days prior to Confirmation, the Debtors and/or Committee will provide notice to all counterparties to the Designated Contracts identifying such contract and the proposed Cure Claim to be paid pursuant to Bankruptcy Code §365 as a condition to assumption of the contract by the Liquidating Trust. Any unresolved disputes regarding the amount and payment of the Cure Claim shall be heard by the Bankruptcy Court at or prior to Confirmation, or as soon as possible thereafter if notice of such Designated Contract and Cure Claim is not sufficient.

**6.011**    **Oil and Gas Leases**.    To the extent any of the remaining Oil and Gas Leases in the Estates constitute executory contracts or unexpired leases of real property under Bankruptcy Code § 365, such Oil and Gas Leases shall be assumed by the respective Debtor and assigned to the Liquidating Trust, and the Liquidating Trustee on behalf of the Liquidating Trust shall be deemed to be the legal counterparty to such leases and, unless otherwise ordered by the Bankruptcy Court, the related cure amount shall be $0. To the extent any of the Oil and Gas Leases constitute contracts or other property rights not assumable under Bankruptcy Code §365, such Oil and Gas Leases shall be transferred and assigned to the Liquidating Trustee pursuant to this Plan. Except for the defaults of a kind specified in Bankruptcy Code §§ 365(b)(2) and 541(c)(1) (which defaults the Debtors and the Liquidating Trust will not be required to cure), or as otherwise provided herein, the legal, equitable and contractual rights of the counterparties to such Oil and Gas Leases shall be unaltered by the Plan.

**6.012**    **Litigation Recoveries**.    The Estates' net proceeds from settlements, judgments and other recoveries associated with the Eunice Litigation, the Apollo Litigation and any other Causes of Action or claims held by the Debtors and transferred to the Liquidating Trustee under Section 6.04 above, shall also be part of the Liquidating Trust Assets to be distributed from the Liquidating Trust in accordance with this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be vested with authority and standing to prosecute and handle all such litigation (including through any and all appeals) and shall make all decisions related thereto including with respect to any settlements, after consultation and approval by the Creditors' Oversight Committee.

**6.013**    **Directors, Officers, and/or Managers of the Debtors**.    Effective as of the Effective Date, all of the directors, officers, and/or managers of the Debtors shall be removed and the Liquidating Trustee shall have the sole authority regarding whether to retain any employees of the Debtors to help manage the Section 6 Assets and/or any other Assets of the Liquidating Trust.

**6.014**    **Preservation of Rights of Action; Settlement of Litigation Claims**.

(a)    Preservation of Rights of Action.    The Liquidating Trustee shall be appointed representative of the respective Estates pursuant to Bankruptcy Code §1123(b)(3)(B) with respect to the

Causes of Action which are part of the Liquidating Trust Assets, including the Apollo Litigation, the Environmental Reimbursement Claims, all preference actions, and all other Causes of Action held by the Debtors including, without limitation, any and all Causes of Action against the persons and entities listed in **Exhibit "B"** attached hereto and incorporated herein by reference. Except as otherwise ordered by the Bankruptcy Court and subject to any releases in this Plan, on the Effective Date, all of the Estates' interest in the Causes of Action shall vest in the Liquidating Trust and the Liquidating Trustee may, and shall have standing to, prosecute, enforce, sue on, and settle or compromise (or decline to do any of the foregoing) any or all of such Causes of Action. The Liquidating Trustee and his or her attorneys and other professional advisors shall have no liability for pursuing or failing to pursue any such Causes of Action.

(b)  Settlement of Litigation Claims and Disputed Claims. At any time after the Effective Date, notwithstanding anything in this Plan to the contrary, the Liquidating Trustee may settle some or all of the Causes of Action that would be Liquidating Trust Assets, and/or any of the Disputed Claims or any intercompany/inter-estate claims, subject in each case to obtaining any necessary Bankruptcy Court approval if litigation has been commenced by the Debtors or the Liquidating Trustee. The proceeds from the settlement of a Cause of Action shall constitute an asset of the applicable Estate that shall vest in the Liquidating Trust on the Effective Date in accordance with this Plan.

**6.015    Authority.** All actions and transactions contemplated under this Plan shall be authorized upon Confirmation of this Plan without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members, other than the notice provided by serving this Plan on (a) all known holders of Claims against the Debtors' Estates; and (b) all current holders of Equity Interests in the Debtors. The Confirmation Order shall include provisions dispensing with the need of further approvals, notices or meetings of the Debtors or holders of Equity Interests and authorizing and directing any director, officer, manager, or member of each respective Debtor to execute any document, certificate or agreement necessary to effectuate this Plan on behalf of such Debtor, which documents, certificates and agreements shall be binding on the Debtors, the Creditors, and all holders of Equity Interests.

**6.016    Dissolution of Committee.** The Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in Bankruptcy Code § 1103. Unless otherwise ordered by the Bankruptcy Court, on the Effective Date, (a) the Committee shall be dissolved and its members shall be released of all their duties, responsibilities and obligations in connection with the Cases, this Plan and the implementation of the same; and (b) the retention or employment of the Committee's Professionals and other agents shall terminate.

**6.017    Creditors' Oversight Committee.** The Liquidating Trust Agreement shall establish a committee (the "Creditors' Oversight Committee"), consisting of no more than three (3) creditors from the existing Committee, to consult with the Liquidating Trustee regarding the Liquidating Trust Assets. The initial members of the Creditors' Oversight Committee shall be selected by the Committee and disclosed at the hearing on Confirmation. The Creditors' Oversight Committee shall only exist so long as there are at least two (2) creditors willing to serve. No compensation to the members of the Creditors' Oversight Committee shall be paid by the Liquidating Trustee from the Liquidating Trust Assets; provided, however, that reasonable expenses of the Creditors' Oversight Committee will be reimbursed by the Liquidating Trustee. The Creditors' Oversight Committee shall have standing as a party in interest to enforce the terms and provisions of the Liquidating Trust Agreement and this Plan. The Creditors' Oversight Committee may take action by majority vote of its members; provided, however, that unanimous consent of all members of the Creditors' Oversight Committee shall be required in order to commence or perform any Drilling Operations. The Creditors' Oversight Committee shall have the authority to retain counsel if necessary to resolve a dispute with the Liquidating Trustee and the

reasonable fees and expenses of such counsel shall be a cost of administration of the Liquidating Trust. The members of the Creditors' Oversight Committee shall not be liable for any act done or omitted to be done as a member of the Creditors' Oversight Committee while acting in good faith and the Liquidating Trust shall indemnify and hold harmless the members of the Creditors' Oversight Committee and agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust; provided, however, that no such indemnification will be made to such Persons for actions or omissions that constitute willful misconduct, negligence or fraud. CIT Capital and its affiliates shall not be entitled to participate in or be a member of the Creditors' Oversight Committee.

## ARTICLE VII.
## THE LIQUIDATING TRUSTEE

**7.01    The Liquidating Trustee.**  The initial Liquidating Trustee shall be selected by the Committee. The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order and Liquidating Trust Agreement, provided however, that the Liquidating Trustee shall obtain the consent of the Creditors' Oversight Committee on any material decisions, as set forth in more detail in this Plan and the Liquidating Trust Agreement, including, without limitation, obtaining unanimous consent of the Creditors' Oversight Committee with respect to any Drilling Operations. The Liquidating Trustee shall be the representative of the Estates appointed pursuant to Bankruptcy Code §1123(b)(3)(B) and shall be required to perform his or her duties as set forth in this Plan.

**7.02    The Responsibilities of the Liquidating Trustee.**  The responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include (i) the receipt, management, supervision, and protection of the Liquidating Trust Assets on behalf of the beneficiaries of the Liquidating Trust; (ii) pursuit of objections to Disputed Claims; (iii) investigation, analysis, prosecution, and if necessary and appropriate, compromise of the claims and Causes of Action included among the Liquidating Trust Assets, including without limitation Avoidance Actions and non-bankruptcy causes of action against third parties; (iv) calculation and implementation of all Distributions to be made under this Plan to holders of Allowed Claims; (v) marketing, selling, leasing, or otherwise disposing of all of the Liquidating Trust Assets; (vi) filing all required tax returns and paying taxes and all other obligations of the Liquidating Trust; (vii) keeping or causing to be kept books and records regarding all material matters related to the Liquidating Trust; and (viii) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, or orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of this Plan.

**7.03    The Powers of the Liquidating Trustee.**  The powers of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the power to (i) invest funds; (ii) make Distributions; (iii) pay taxes and other obligations owed by the Liquidating Trust or incurred by the Liquidating Trustee; (iv) engage and compensate from the Liquidating Trust Assets, consultants, agents, employees and professional persons to assist the Liquidating Trustee with respect to the Liquidating Trustee's responsibilities; (v) retain and compensate from the Liquidating Trust Assets, the services of experienced auctioneers, brokers, and/or marketing agents to assist and/or advise in the sale or other disposition of the Liquidating Trust Assets; (vi) liquidate and dispose of the Liquidating Trust Assets; (vii) compromise and settle Claims and Causes of Action; (viii) act on behalf of the Debtors and the Estates in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere; (ix) commence and/or pursue any and all actions involving Liquidating Trust Assets that could arise or be asserted at any time, unless otherwise waived or

relinquished in this Plan; and (x) act and implement this Plan, the Liquidating Trust Agreement, and orders of the Bankruptcy Court, provided however, that the Liquidating Trustee shall obtain the consent of the Creditors' Oversight Committee on all material decisions regarding the Liquidating Trust Assets as set forth in more detail in the Liquidating Trust Agreement and this Plan, including obtaining unanimous consent of the Creditors' Oversight Committee with respect to any Drilling Operations. The Liquidating Trustee shall exercise such powers in accordance with the provisions of this Plan.

**7.04** **Establishment of Reserves and Accounts**. The Liquidating Trustee shall establish reasonable reserves (including adequate reserves for Disputed Claims that may become Allowed Claims after the Effective Date) and accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which cash and property may be deposited and checks drawn or withdrawals made to pay or Distribute such amounts as permitted or required for reasonable fees, expenses and liabilities of the Liquidating Trust pursuant to this Plan and the Liquidating Trust Agreement. Such funds shall not be subject to any claim by any Person except as provided under this Plan.

**7.05** **Retention of Professionals**. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trustee from the Liquidating Trust Assets upon the submission of statements or invoices and approval of the fees and expenses by the Liquidating Trustee. Professionals of, among others, the Debtors and the Committee, shall be eligible for retention by the Liquidating Trustee, and former employees of the Debtors shall be eligible for retention by the Liquidating Trustee.

**7.06** **Compensation of the Liquidating Trustee**. The Liquidating Trustee's compensation shall be determined by mutual agreement of the Liquidating Trustee and the Committee and disclosed prior to the Confirmation Hearing for approval by the Bankruptcy Court. The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made from the Liquidating Trust Assets.

**7.07** **Liquidating Trustee Expenses**. All costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan or in any manner connected, incidental or related thereto, in effecting Distributions (including the reimbursement of reasonable expenses) shall be paid from the Liquidating Trust Assets. Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval.

**7.08** **Liability; Indemnification**. The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Liquidating Trustee's willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole, absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the

implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for actions or omissions that constitute willful misconduct, negligence or fraud.

        **7.09**         **Termination**.  The duties, responsibilities and powers of the Liquidating Trustee shall terminate in accordance with Section 6.06 of this Plan.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS

        **8.01**         **Proceeds of Federal Insurance Policies**.  The proceeds of the Federal Insurance Policies shall not be subject to the waterfall in Section 8.03 below.  All proceeds from the Federal Insurance Policies shall be utilized to perform the required remediation activities under the Ritter Work Plan and pay any reasonable attorney fees, expenses and other costs incurred by the Debtors and the Committee related to the Environmental Claims or the Ritter Work Plan.  Moreover, all Environmental Claims of both the City of Midland and the Texas Railroad Commission shall be deemed satisfied by completion of the remediation pursuant to the terms of the Ritter Work Plan.

        **8.02**         **Waterfall**.  The Liquidating Trustee shall use the Liquidating Trust Assets to pay all Allowed Administrative Claims and Cure Claims related to Assumed Contracts, to pay the costs and expenses of the Liquidating Trust, and to the extent that the Liquidating Trustee determines that there is excess Cash available in the Liquidating Trust for Distribution to holders of Claims and Equity Interests, then Distributions of Cash from the Liquidating Trust shall be made to holders of Allowed Claims as follows:

- First, to holders of Allowed Ad Valorem Tax Claims (or, with respect to Ad Valorem Tax Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed Ad Valorem Tax Claims are paid or reserved in full.  The Allowed Ad Valorem Tax Claims are estimated to be approximately $90,000;

- Second, to holders of Allowed Priority Claims (or, with respect to Priority Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee or established under this Plan) until all such Allowed Priority Claims are paid or reserved in full. The Allowed Priority Claims are estimated to be approximately $450,000.00 to $719,300.00, comprised almost exclusively of the P&A Administrative Claim.

- Third, to holders of Allowed M&M Secured Claims (or, with respect to M&M Secured Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed M&M Secured Claims are paid or reserved in full.  The asserted M&M Secured Claims are estimated to be between $12M and $15M; however, the Allowed amount of such Claims shall be capped at the value of the Estates' property securing such Claims;

- Fourth, to holders of Allowed Other Secured Claims (or, with respect to Other Secured Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed Other Secured Claims are paid or reserved in full.  The Allowed Other Secured Claims are estimated to be $0;

- Fifth, to holders of Allowed General Unsecured Claims (or, with respect to General Unsecured Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed General Unsecured Claims are paid or reserved in full. The General Unsecured Claims are estimated to be between $5M and $6M, exclusive of the deficiency claims asserted by the holders of the Class 3 Claims;

- Sixth, to holder of the CIT Deficiency Claim until such CIT Deficiency Claim is paid in full. The CIT Deficiency Claim is $7M;

- Seventh, to holders of Allowed Subordinated Claims (or, with respect to Subordinated Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed Subordinated Claims are paid or reserved in full. The Allowed Subordinated Claims are approximately $5M.

- Eighth, any remaining amounts in the Liquidating Trust shall be distributed (a) 50% pro rata to holders of General Unsecured Claims, (b) 30% to CIT Capital, (c) 10% pro rata to holders of Equity Interests in Consolidated, and (d) 10% pro rata to holders of Equity Interests in Standard.

      8.03    **Cash Distributions**. At any time that the Liquidating Trustee determines, after consultation and approval of the Creditors' Oversight Committee, that sufficient Cash exists in the Liquidating Trust to make a Distribution to holders of Allowed Claims pursuant to the provisions of this Plan, including Section 8.02 of this Plan, the Liquidating Trustee shall make such Cash Distribution Pro Rata to holders of Allowed Claims on a Class-by-Class basis.

      8.04    **Distributions by Agent or Servicer**. The Liquidating Trustee shall make all Distributions required under this Plan, except with respect to a Claim whose Distribution is governed by an agreement and is administered by an agent or servicer, which Distributions shall be deposited with the appropriate agent or servicer, who shall deliver such Distributions to the holders of Claims in accordance with the provisions of this Plan.

      8.05    **Means of Cash Payment**. Cash payments made pursuant to this Plan shall be in U.S. funds, by appropriate means, including by check or wire transfer.

      8.06    **Delivery of Distribution**. Distributions to holders of Allowed Claims shall be made (a) at the addresses set **forth** on the Proofs of Claim Filed by such holders (or at the last known address of such holders if no Proof of Claim is Filed or if the Liquidating Trustee has been notified of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee (or the Debtors if prior to the Effective Date) after the date of any related Proof of Claim; or (c) if no Proof of Claim has been Filed and the Debtors and Liquidating Trustee have not received a written notice of a change of address, then at the addresses reflected in the Bankruptcy Schedules, if any.

      8.07    **Fractional Dollars; _De Minimis_ Distributions**. Notwithstanding any other provision of this Plan, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down). No payment of less than $25.00 with respect to any Claim shall be made unless a request is made in writing to the Liquidating Trustee.

Notwithstanding the foregoing, the Liquidating Trustee may, in his or her discretion, make payments of fractions of dollars and/or of less than $25.00.

      **8.08**      **Withholding and Reporting Requirements**.  In connection with this Plan and all Distributions hereunder, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements.

      **8.09**      **Setoffs**.  The Liquidating Trustee may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Consolidated, Standard, or the Liquidating Trust may have against the holder of such Claim; provided, however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any claim against such holder, unless otherwise agreed to in writing by such holder and the Liquidating Trustee.

      **8.010**      **Duty to Disgorge Overpayments**.  To the extent that a Claim may be an Allowed Claim in more than one Class, the holder of such Claim shall not be entitled to recover more than the full amount of its Allowed Claim.  The holder of an Allowed Claim that receives more than payment in full of its Allowed Claim shall immediately return any excess payments to the Liquidating Trustee.  In the event that the holder of an Allowed Claim fails to return an excess payment, the Liquidating Trustee may bring suit against such holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

      **8.011**      **Unclaimed Distributions**.  Any Cash or property held for the benefit of any holder of an Allowed Claim, if unclaimed by the distributee within six (6) months after the Distribution shall be re-deposited into the general Liquidating Trust funds and be made available for other Allowed Claims and Equity Interests, and all liability and obligations of the Debtors and the Liquidating Trust to such distributee with respect thereto shall thereupon cease notwithstanding any federal or state escheat laws to the contrary.  Such holder shall be deemed to have forfeited its claim for such unclaimed Distribution and shall be forever barred and enjoined from asserting any claim for the unclaimed Distribution against any Debtor, any Estate, the Liquidating Trustee, the Liquidating Trust, or their respective properties and assets.  The Liquidating Trustee and his or her respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Claim holder, or (ii) obtain an executed Internal Revenue Service Form W-9 from any Claim holder.

## ARTICLE IX.
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,
## AND UNLIQUIDATED CLAIMS

      **9.01**      **Objection Deadline; Prosecution of Objections**.  The Liquidating Trustee shall File objections to Claims and serve such objections upon the holders of each of the Claims to which objections are made within 180 days of the Effective Date.  Subject to the limitations set forth in this Plan, the Liquidating Trustee shall be authorized to resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court (or such other court having competent jurisdiction) the validity, nature, and/or amount thereof.  If the Liquidating Trustee and the holder of a Disputed Claim agree to compromise, settle, and/or resolve a Disputed Claim by granting such holder an Allowed Claim, then the Liquidating Trustee may compromise, settle, and/or resolve such Disputed Claim without further Bankruptcy Court approval.

Any Proofs of Claim that are Filed after the applicable Bar Date or applications for the allowance of an Administrative Claim that are Filed after the Post-Confirmation Bar Date shall be deemed invalid and Disallowed unless authorized by Order of the Bankruptcy Court.

        **9.02**      **No Distributions Pending Allowance**. Notwithstanding any other provision of this Plan, no payments or Distribution by the Liquidating Trustee shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Non-Appealable Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. However, as set forth in Section 7.04, the Liquidating Trustee shall establish reasonable reserves for such Disputed Claims.

## ARTICLE X.
## TREATMENT OF EXECUTORY CONTRACTS AND
## UNEXPIRED LEASES

        Except to the extent (a) the Debtor previously has assumed or rejected an executory contract or unexpired lease, (b) prior to the Effective Date, the Bankruptcy Court has entered an Order assuming an executory contract or unexpired lease, (c) at the Confirmation Hearing, the Bankruptcy Court approves the assumption of any executory contracts or unexpired leases, or (d) the executory contract or unexpired lease is set forth on **Exhibit "C"** to this Plan, the Debtors' executory contracts and unexpired leases shall be deemed rejected on the Effective Date, pursuant to Bankruptcy Code §§ 365 and 1123. The executory contracts and unexpired leases identified on **Exhibit "C,"** which shall be the Designated Contracts, shall be assumed by the applicable Debtor and assigned to the Liquidating Trust.

        This Plan shall serve as, and shall be deemed to be, a motion for entry of an order approving the assumption of the Designated Contracts and the transfer of the Assumed Contracts to the Liquidating Trust and the Liquidating Trustee on behalf of the Liquidating Trust shall be deemed to be the legal counterparty to such contracts. Except as otherwise required under a separate motion addressing the assumption of a Designated Contract, or as otherwise set by Order of the Court, any objection to the assumption and vesting of, or the proposed cure amount under, the Designated Contracts must be made as an objection to Confirmation of this Plan. If no objection to the assumption and vesting of, or the proposed cure amount under, any particular Designated Contract is Filed and timely served, an Order (which may be the Confirmation Order) that approves the assumption and assignment of, and the proposed cure amount under, each respective Designated Contract may be entered by the Bankruptcy Court. If any such objections are Filed and timely served, a hearing with respect to the assumption and assignment or cure of any of the Designated Contracts, and the objections thereto, shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

        If the Bankruptcy Court approves the assumption and assignment of one or more Designated Contracts, those Designated Contracts shall be deemed Assumed Contracts, and they shall be assumed by the applicable Debtor and assigned to the Liquidating Trust effective as of the Effective Date. Any Cure Claims relating to the assumption and transfer of an executory contract or unexpired lease and ordered to be paid by the Bankruptcy Court shall be paid by the Liquidating Trust on or as soon as reasonably practicable after the Effective Date. Such Cure Claims shall be satisfied in full and final satisfaction of all defaults, including arrearages, under the Assumed Contracts as of the Effective Date.

## ARTICLE XI.
## EFFECTS OF CONFIRMATION

        **11.01**    **Discharge**. On the Effective Date, the Debtors, their Estates and their respective assets and properties are automatically and forever discharged and released from all Claims and are

vested in the Liquidating Trust to the fullest extent permitted under Bankruptcy Code §1141. Except as otherwise set forth in this Plan or the Confirmation Order, the rights afforded under this Plan and the treatment of Claims and Equity Interests under this Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims, including any interest accrued on any Claims, against the Debtors, the Liquidating Trust and the Estates. Except as set forth in this Plan or the Confirmation Order, Confirmation shall discharge the Debtors from all Claims or other debts that arose before the Effective Date, and all debts of a kind specified in Bankruptcy Code §§ 502(g), (h), or (i), whether or not (i) a Proof of Claim based on such debt is Filed or deemed Filed under Bankruptcy Code §501; (ii) a Claim based on such debt is Allowed; or (iii) the holder of a Claim based on such debt has accepted this Plan.

**11.02    Legal Binding Effect**.  The provisions of this Plan shall bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept this Plan.  On and after the Effective Date, except as expressly provided in this Plan, all holders of Claims, Liens and Equity Interests shall be precluded from asserting any Claim, Cause of Action or Liens against the Debtors, the Liquidating Trust, the Estates, and their respective property and assets based on any act, omission, event, transaction or other activity of any kind that occurred or came into existence prior to the Effective Date.

**11.03    Moratorium, Injunction and Limitation of Recourse For Payment**. EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN OR BY SUBSEQUENT ORDER OF THE BANKRUPTCY COURT, UPON CONFIRMATION OF THIS PLAN (AND FROM AND AFTER THE EFFECTIVE DATE) ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR LIENS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS OR THEIR PROPERTIES ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE DEBTORS, THE ESTATES, THE LIQUIDATING TRUST, OR ANY OF THEIR RESPECTIVE PROPERTY OR OTHER ASSETS ON ACCOUNT OF ANY SUCH CLAIMS OR EQUITY INTERESTS:  (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER;  (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, NETTING OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTORS; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN OR IN THE CONFIRMATION ORDER SHALL ENJOIN OR PRECLUDE SUCH PERSONS FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN.  SUCH INJUNCTION SHALL EXTEND TO AND FOR THE BENEFIT THE LIQUIDATING TRUST AND ITS RESPECTIVE PROPERTIES AND INTEREST IN PROPERTIES.  SUCH INJUNCTION SHALL NOT PRECLUDE ANY RIGHT OF AN ENTITY TO ASSERT A SEPARATE AND DIRECT CLAIM THAT IS NOT PROPERTY OF THE ESTATE AGAINST A PARTY THAT IS NOT A DEBTOR OR THE LIQUIDATING TRUST.

THE CONFIRMATION ORDER SHALL, AMONG OTHER THINGS, CONTAIN, DIRECT AND PROVIDE FOR THE FOREGOING INJUNCTION.

**11.04    Term of Injunction or Stays**.  ANY INJUNCTION OR STAY ARISING UNDER OR ENTERED DURING THE CASE UNDER BANKRUPTCY CODE §§ 105 AND 362 OR OTHERWISE THAT IS IN EXISTENCE ON THE CONFIRMATION DATE SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE LATER OF THE EFFECTIVE DATE

AND THE DATE INDICATED IN THE ORDER PROVIDING FOR SUCH INJUNCTION OR STAY.

        11.05    <u>Exculpation and Limitation of Liability</u>.    NOTWITHSTANDING ANYTHING SET FORTH HEREIN, AND EXCEPT AS TO THE STANDARD OPERATOR LIEN, NO HOLDER OF ANY CLAIM OR EQUITY INTEREST SHALL HAVE ANY RIGHT OF ACTION AGAINST THE DEBTORS, DEBTORS' OFFICERS, DIRECTORS, MEMBERS AND EMPLOYEES, THE ESTATES, THE LIQUIDATING TRUSTEE, THE LIQUIDATING TRUST, THE COMMITTEE, THE COMMITTEE MEMBERS (OR EACH OF THESE PARTIES' PROFESSIONALS, INCLUDING ATTORNEYS, ACCOUNTANTS OR OTHER CONSULTANTS) OR ANY OF THEIR RESPECTIVE PROPERTY AND ASSETS FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO OR ARISING OUT OF THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE PREPARATION AND DISTRIBUTION OF THE DISCLOSURE STATEMENT, OR THE OFFER, ISSUANCE, SALE, OR PURCHASE OF A SECURITY OFFERED OR SOLD UNDER THIS PLAN, PROVIDED SUCH EXCULPATED PERSON DID NOT AND DOES NOT ENGAGE IN WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND PROVIDED FURTHER THAT SUCH EXCULPATION SHALL NOT EXTEND TO SUCH EXCULPATED PERSON'S RIGHTS AND OBLIGATIONS UNDER THIS PLAN OR THE LIQUIDATING TRUST AGREEMENT.

        11.06    <u>Release and Covenant Not to Sue</u>.

        (a)    NOTWITHSTANDING ANYTHING SET FORTH HEREIN, ON THE EFFECTIVE DATE, EACH OF THE RELEASED PARTIES SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED AND DISCHARGED THE OTHER RELEASED PARTIES, AGENTS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONALS, IF ANY, EMPLOYED BY ANY OF THE RELEASED PARTIES (BUT SOLELY IN THE CAPACITIES SO EMPLOYED) OF AND FROM ANY CLAIM OR CAUSE OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE IN CONNECTION WITH, BASED ON, RELATING TO OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE CASES, THE NEGOTIATION OF ANY SETTLEMENT OR AGREEMENT IN THE CASES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY RELATING TO THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CASES, THE NEGOTIATION, FORMULATION,  PREPARATION OR DISTRIBUTION OF THIS PLAN AND THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, AND THE RELEASED PARTIES COVENANT NOT TO SUE ANY OF THE OTHER PARTIES IDENTIFIED IN THIS SECTION  11.06(A) WITH RESPECT TO THE CLAIMS AND CAUSES OF ACTION RELEASED HEREIN (ALL OF THE FOREGOING BEING HEREIN CALLED THE "RELEASED CLAIMS"); PROVIDED, HOWEVER, THAT (I) NOTWITHSTANDING THE FOREGOING, THE RELEASED PARTIES

SHALL NOT RELEASE AND DISCHARGE THE FORMER OFFICERS, AGENTS, AND ACCOUNTANTS, IF ANY, EMPLOYED BY ONE OR MORE OF THE DEBTORS OF AND FROM ANY CLAIM OR CAUSE OF ACTION; AND (II) NO RELEASED PARTIES SHALL BE RELEASED AND DISCHARGED FROM (AND THE RELEASED CLAIMS SHALL NOT INCLUDE) OBLIGATIONS UNDER THIS PLAN, THE LIQUIDATING TRUST AGREEMENT, OR ANY CLAIM OR CAUSE OF ACTION ARISING FROM OR RELATED TO ACTS OR OMISSIONS INVOLVING FRAUD OR WILLFUL MISCONDUCT.  EACH OF THE RELEASED PARTIES REPRESENTS AND WARRANTS THAT EACH SUCH RELEASED PARTY HAS NOT TRANSFERRED, PLEDGED OR OTHERWISE ASSIGNED TO ANY OTHER PERSON OR ENTITY ALL OR ANY PORTION OF ANY CLAIM RELEASED UNDER THIS SECTION  11.06(A) OR ANY RIGHTS OR ENTITLEMENTS WITH RESPECT THERETO AND THE EFFECTUATION OF THIS RELEASE DOES NOT VIOLATE OR CONFLICT WITH THE TERMS OF ANY CONTRACT TO WHICH SUCH RELEASED PARTY IS A PARTY OR BY WHICH SUCH RELEASED PARTY OTHERWISE IS BOUND.

(b)     THE RELEASES IN THIS SECTION 11.06 ARE SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED OR PROVEN THAT ALL OR SOME OF THE CLAIMS OR DAMAGES RELEASED WERE SOLELY AND COMPLETELY CAUSED BY ANY ACTS OR OMISSIONS, WHETHER NEGLIGENT OR GROSSLY NEGLIGENT OF OR BY ONE OR MORE OF THE RELEASED PARTIES.

11.07    **Insurance**.  Confirmation and consummation of this Plan shall have no effect on insurance policies of any of the Debtors or their current or former directors and officers (including, but not limited to, director and officer liability policies to the extent that the Debtors or their current or former directors and officers have any rights under such policies) in which any of the Debtors or their current or former directors and officers are or were an insured party.  Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage for any Debtors (or their current or former directors and officers) on any basis regarding or related to any of the Debtors' Cases, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for insured Claims.

11.08    **Insurance Policies Vested in Liquidating Trust**.   The Federal Insurance Policies  shall vest in the Liquidating Trust free and clear of all liens, claims and encumbrances on the Effective Date under the terms of this Plan.  On and after the Effective Date, with the exception of whatever the Debtors, the Committee and Federal agree is still subject to a reservation of rights, the Federal Insurance Policies shall not be subject to any reservation of rights by Federal Insurance Company, and Federal Insurance Company shall be prohibited from commencing any actions to recover benefits previously paid by Federal Insurance Company pursuant to the Federal Insurance Policies. Federal Insurance Company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage under the Federal Insurance Policies on any basis regarding or related to any of the Debtors' Cases, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for insured claims.

## ARTICLE XII.
## RETENTION OF JURISDICTION

12.01    **Retention**.  Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Cases, the Liquidating Trust, and this Plan, to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application or request for payment of any Administrative Claim, and the resolution of any objections to the allowance or priority of Claims or Equity Interest;

(b)     hear and determine all Fee Applications;

(c)     determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim or Causes of Action;

(d)     enter such orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of this Plan, the Liquidating Trust Agreement, and all property, contracts, instruments, releases, and other agreements or documents transferred, vested, or created in connection therewith;

(e)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, the Liquidating Trust Agreement, the Confirmation Order, any transactions or payment contemplated hereby, or any disputes arising under agreements, documents or instruments executed in connection therewith;

(f)     consider any modifications of this Plan, the Disclosure Statement, and the Liquidating Trust Agreement, in each case to the extent requiring the approval of the Bankruptcy Court, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(g)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(h)     hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, or the Liquidating Trust;

(i)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Cases;

(j)     hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146 (including the expedited determination of taxes under Bankruptcy Code §505(b);

(k)     hear and determine all matters related to the property of the Estates, the Debtors, or the Liquidating Trust from and after the Effective Date;

(l)     hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code;

(m)     hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts;

(n)     enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(o)     hear and determine any other matters related to this Plan and not inconsistent with the Bankruptcy Code;

(p)     determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, the Liquidating Trust Agreement, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan, the Disclosure Statement or the Plan Supplement;

(q)     hear any other matter not inconsistent with the Bankruptcy Code;

(r)     to hear any motion by the Liquidating Trustee to sell Liquidating Trust Assets and enter and enforce any order any order for the sale or property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code; and

(s)     enter final decrees closing the Case.

**12.02**     **Rights of Liquidating Trustee**.  Nothing contained in this ARTICLE XII shall be construed so as to limit the rights of the Liquidating Trustee to commence or to prosecute any Cause of Action (in which it has an interest), in any court of competent jurisdiction.

**ARTICLE XIII.**
**MISCELLANEOUS PROVISIONS**

**13.01**     **Revocation, Withdrawal or Non-Consummation**.  The Plan Proponents, with the prior written consent of all Plan Proponents, reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to file any amended or subsequent plans.  If Confirmation does not occur, or if the Effective Date does not occur on or prior to 120 days after the Confirmation Date, then (a) this Plan shall be null and void in all respects; (b) settlements or compromises embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumptions or rejections of executory contracts or unexpired leases affected by this Plan, and any documents or agreements executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, any of the Debtors or any other Person; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission of any sort by the Debtors or any other Person.

**13.02**     **Severability of Plan Provisions**.  If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.03**     **Exemption from Transfer Taxes and Recording Fees**.  In accordance with Bankruptcy Code §1146(a), none of the issuance, transfer or exchange of any securities under this Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the vesting or transfer of title to or ownership of any of the Debtor's interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with this Plan, including the releases of Liens contemplated under this Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States.   The Confirmation Order shall direct the appropriate federal, state and/or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**13.04**     **Expedited Tax Determination**.   The Debtors may request an expedited determination of taxes under Bankruptcy Code §505(b) for all returns filed for or on behalf of such Debtors for all taxable periods through the Effective Date.

**13.05**     **Interest Accrual**.   Except as otherwise provided herein or as permitted by bankruptcy law, no post-petition interest shall accrue on any Claim or scheduled liability (including, but not limited to, Allowed Administrative Claims).

**13.06**     **Allocation of Plan Distributions between Principal and Interest**.   To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first, and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**13.07**     **Rules of Interpretation; Computation of Time**.   For purposes of this Plan, (a) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in this Plan to Sections, Articles, and Exhibits, if any, are references to Sections, Articles, and Exhibits of or to this Plan, (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (e) the words "include", "includes" or "including" shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import, (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, and (g) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply.   In computing any period of time prescribed or allowed by this Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.   All references to immediately available funds, dollar amounts, or Cash Distributions contained in this Plan shall mean United States dollars.

**13.08**     **Plan Documents**.  The Plan Documents are incorporated herein and are a part of this Plan as if set forth in full herein.

**13.09**     **Reservation of Rights**.   This Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained herein or the taking of any action by the Debtors with

respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

13.010   **Further Assurances**.   The Debtors and all holders of Claims receiving Distributions hereunder and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

13.011   **Successors and Assigns**.   This Plan and all rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

13.012   **Governing Law**.   Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan; and (b) governance matters shall be governed by the laws of the State of Texas, without giving effect to the principles of conflict of law thereof.

13.013   **Abandonment**.   As part of the Plan Supplement, the Debtors will File a list of property of the Estates to be abandoned which will include the Excluded Assets.   Such property, including the Excluded Assets, will be deemed abandoned upon entry of the Confirmation Order.

13.014   **Notice of Effective Date**.   On or before five Business Days after the occurrence of the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all holders of Claims that are not Disallowed Claims a notice that informs such Persons of (a) the entry of the Confirmation Order; (b) the occurrence of the Effective Date; and (c) such other matters as the Liquidating Trustee deem appropriate or as may be ordered by the Bankruptcy Court.

13.015   **Plan Supplement**.   Any and all documents, forms, exhibits, lists, or schedules specified in this Plan but not Filed with this Plan shall be contained in the Plan Supplement and Filed with the Bankruptcy Court five (5) days prior to the Confirmation Hearing.   Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal Bankruptcy Court hours.

13.016   **Entire Agreement**.   This Plan and this Plan Documents set forth the entire agreement and understanding among the parties in interest relating to the subject matter hereof and supersede all prior discussions and documents.

13.017   **Waiver of Stay**.   Notwithstanding Bankruptcy Rules 3002(e), 6004(h), and 6006(d), the Debtor's shall be authorized to consummate this Plan and the transactions and transfers contemplated thereby immediately after entry of the Confirmation Order.

## ARTICLE XIV.
## MODIFICATION OF THIS PLAN

With the prior, written consent of all Plan Proponents, the Plan Proponents may alter, amend, or modify this Plan or any Plan Documents under Bankruptcy Code §1127(a) at any time prior to the Confirmation Date.   With the prior, written consent of all Plan Proponents, after the Confirmation Date and prior to the Effective Date, the Plan Proponents may, under Bankruptcy Code §1127(b), (a) amend this Plan so long as such amendment shall not materially and adversely affect the treatment of any holder

of a Claim; (b) commence proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order; and (c) amend this Plan as may be necessary to carry out the purposes and effects of this Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Equity Interests under this Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

**DATED**:  December 12, 2012

Respectfully submitted,

**HERITAGE CONSOLIDATED, LLC**

By: _____
Name: Michael B. Wisenbaker
Title: Managing Member

**HERITAGE STANDARD CORPORATION**

By: _____
Name: Michael B. Wisenbaker
Title: President