Joe E. Marshall, SBT # 13031100
MUNSCH HARDT KOPF & HARR PC
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Tel: 214.855.7573
Fax: 214.978.4365
jmarshall@munsch.com

**COUNSEL FOR HERITAGE CONSOLIDATED
LLC AND HERITAGE STANDARD
CORPORATION**

Brian A. Kilmer, SBT # 24012963
CHAMBERLAIN HRDLIKA
1200 Smith Street, 14th Floor
Houston, Texas 77002
Telephone: 713.658.2505
Facsimile: 713.658.2553
brian.kilmer@chamberlainlaw.com

**COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF HERITAGE
CONSOLIDATED LLC, ET AL.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-36484-HDH-11 |
| HERITAGE CONSOLIDATED LLC, *et al.*, | § § § | Chapter 11 |
| | § | |
| DEBTORS. | § § | (Jointly Administered) |

**SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS**

Date: July 11, 2013



**EXHIBIT
1**

# TABLE OF CONTENTS

Page

ARTICLE I.

DEFINITIONS.................................................................................................................1

| | | |
|---|---|---|
| 1.01 | Ad Valorem Tax Claim | 1 |
| 1.02 | Administrative Claim | 1 |
| 1.03 | Allowed | 1 |
| 1.04 | Allowed Amount | 2 |
| 1.05 | Apollo Litigation | 2 |
| 1.06 | Assumed Contracts | 2 |
| 1.07 | Avoidance Actions | 2 |
| 1.08 | Ballot | 2 |
| 1.09 | Bankruptcy Code | 2 |
| 1.010 | Bankruptcy Court | 2 |
| 1.011 | Bankruptcy Rules | 2 |
| 1.012 | Bankruptcy Schedules | 2 |
| 1.013 | Bar Date | 2 |
| 1.014 | Business Day | 3 |
| 1.015 | Cases | 3 |
| 1.016 | Cash | 3 |
| 1.017 | Causes of Action | 3 |
| 1.018 | CIT Capital | 3 |
| 1.019 | CIT Deficiency Claim | 3 |
| 1.020 | Claim | 3 |
| 1.021 | Class | 3 |
| 1.022 | Collateral | 3 |
| 1.023 | Committee | 3 |
| 1.024 | Confirmation | 3 |
| 1.025 | Confirmation Date | 4 |
| 1.026 | Confirmation Hearing | 4 |
| 1.027 | Confirmation Order | 4 |
| 1.028 | Consolidated | 4 |
| 1.029 | Creditor | 4 |
| 1.030 | Cross Canyon | 4 |
| 1.031 | Cryogenic Plant Lease | 4 |
| 1.032 | Cure Claim | 4 |
| 1.033 | D&O Claims | 4 |
| 1.034 | Debtors in Possession | 4 |
| 1.035 | Debtors | 4 |
| 1.036 | Designated Contracts | 4 |
| 1.037 | Disallowed Claim | 4 |
| 1.038 | Disclosure Statement | 5 |
| 1.039 | Disclosure Statement Order | 5 |
| 1.040 | Disposal | 5 |

1.041  Disposal Agreement ..................................................................................5
1.042  Disputed Claim .........................................................................................5
1.043  Distribution ..............................................................................................5
1.044  Drilling Operations ...................................................................................5
1.045  Effective Date ...........................................................................................5
1.046  Environmental Claims ..............................................................................5
1.047  Environmental Claim Escrow ...................................................................5
1.048  Environmental Claim Global Settlement ..................................................5
1.049  Environmental Insurance Claims ..............................................................5
1.050  Environmental Reimbursement Claims .....................................................6
1.051  Equity Interest ..........................................................................................6
1.052  Escrow Amounts .......................................................................................6
1.053  Estates ......................................................................................................6
1.054  Excluded Assets ........................................................................................6
1.055  Eunice Litigation ......................................................................................6
1.056  Face Amount .............................................................................................6
1.057  Federal Insurance Company .....................................................................6
1.058  Federal Insurance Policies ........................................................................6
1.059  Fee Application .........................................................................................6
1.060  Filed ........................................................................................................6
1.061  Free and Clear ..........................................................................................6
1.062  Gathering ..................................................................................................7
1.063  General Unsecured Claim .........................................................................7
1.064  Global Resolution Proposal ......................................................................7
1.065  Governmental Authority. ..........................................................................7
1.066  Hydrocarbons ...........................................................................................7
1.067  Impaired ...................................................................................................7
1.068  Lender ......................................................................................................7
1.069  Lender Bridge Secured Claim. ..................................................................7
1.070  Lender Credit Agreements ........................................................................7
1.071  Lender Credit Documents. ........................................................................7
1.072  Lender Secured Claim. ..............................................................................8
1.073  Lien ..........................................................................................................8
1.074  Liquidating Trust ......................................................................................8
1.075  Liquidating Trust Agreement ....................................................................8
1.076  Liquidating Trust Assets ...........................................................................8
1.077  Liquidating Trustee ...................................................................................8
1.078  M&M Liens ..............................................................................................8
1.079  M&M Secured Claim ................................................................................8
1.080  New Operator ...........................................................................................8
1.081  Non-Appealable Order ..............................................................................8
1.082  Non-Section 6 Assets ...............................................................................9
1.083  Non-Section 6 JOAs .................................................................................9
1.084  Non-Section 6 M&M Secured Claim ........................................................9
1.085  Oil and Gas Leases ...................................................................................9
1.086  Order ........................................................................................................9

1.087   Other Secured Claim................................................................9
1.088   P&A Administrative Claims.......................................................9
1.089   Pathfinder Litigation..............................................................9
1.090   Permian Atlantis...................................................................10
1.091   Permian Cure Payment...........................................................10
1.092   Permian Transaction..............................................................10
1.093   Person................................................................................10
1.094   Petition Date........................................................................10
1.095   Plan...................................................................................10
1.096   Plan Documents....................................................................10
1.097   Plan Interest Rate..................................................................10
1.098   Plan Proponents....................................................................10
1.099   Plan Supplement...................................................................10
1.0100  Post-Confirmation Bar Date....................................................10
1.0101  Priority Claim......................................................................10
1.0102  Priority Tax Claim.................................................................10
1.0103  Pro Rata.............................................................................10
1.0104  Professional........................................................................11
1.0105  Professional Fee Claim..........................................................11
1.0106  Proof of Claim.....................................................................11
1.0107  Released Parties...................................................................11
1.0108  Ritter Work Plan...................................................................11
1.0109  RRC...................................................................................11
1.0110  Scheduled...........................................................................11
1.0111  Secured Claim......................................................................11
1.0112  Section 6 Assets....................................................................11
1.0113  Section 6 JOA.......................................................................11
1.0114  Section 6 M&M Secured Claim.................................................11
1.0115  Setoff Claim........................................................................11
1.0116  Sidetrack Costs.....................................................................12
1.0117  Sidetrack Drilling Operation....................................................12
1.0118  Standard.............................................................................12
1.0119  Standard Operator Lien..........................................................12
1.0120  Subordinated Claim...............................................................12
1.0121  U.S. Trustee Fees..................................................................12
1.0122  Undeliverable or Unclaimed Distribution....................................12
1.0123  Unimpaired..........................................................................12
1.0124  Voting Deadline....................................................................12
1.0125  Voting Record Date................................................................12
1.0126  Wisenbaker..........................................................................12
1.0127  Wisenbaker Related Parties......................................................12

ARTICLE II.

TREATMENT OF ADMINISTRATIVE CLAIMS

TREATMENT OF ADMINISTRATIVE CLAIMS..................................................13

2.01    Treatment...........................................................................13
2.02    General Administrative Claims.................................................13

2.03    Treatment of Priority Tax Claims ................................................................13
2.04    Professional Fee Claims................................................................................13
2.05    U.S. Trustee Fees .........................................................................................13

ARTICLE III.
DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ............................................14

3.01    Introduction.................................................................................................14
3.02    Claims against and Equity Interests in Consolidated and Standard.................14

ARTICLE IV.
PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS.................................14

4.01    Introduction.................................................................................................14
4.02    Treatment of Classified Claims and Equity Interests .....................................14
4.03    Designation of Impaired and Unimpaired Classes...........................................16

ARTICLE V.
ACCEPTANCE OR REJECTION OF THIS PLAN ......................................................................16

5.01    Classes Entitled to Vote................................................................................16
5.02    Acceptance by Impaired Classes of Claims....................................................16
5.03    Cramdown....................................................................................................17

ARTICLE VI.
MEANS FOR IMPLEMENTATION OF THIS PLAN ....................................................................17

6.01    Wisenbaker Settlement .................................................................................17
6.02    Environmental Litigation and Related Claims Settlement................................18
6.03    Establishment of Liquidating Trust ...............................................................21
6.04    Purpose of the Liquidating Trust ...................................................................22
6.05    Transfer of the Liquidating Trust Assets to the Liquidating Trust ...................22
6.06    Transfer Free and Clear of Claims; Stay of Actions Against Liquidating Trust or
        Trust Res ....................................................................................................23
6.07    Termination..................................................................................................23
6.08    Liquidating Trust Interests............................................................................23
6.09    Conditions Precedent to the Effective Date ....................................................23
6.010   Assumed Contracts ......................................................................................24
6.011   Cure Claims .................................................................................................24
6.012   Oil and Gas Leases........................................................................................24
6.013   Litigation Recoveries.....................................................................................25
6.014   Directors, Officers, and/or Managers of the Debtors........................................25
6.015   Preservation of Rights of Action; Settlement of Litigation Claims....................25
6.016   Authority......................................................................................................25
6.017   Dissolution of Committee ..............................................................................25
6.018   Creditors' Oversight Committee......................................................................26

ARTICLE VII.

THE LIQUIDATING TRUSTEE .................................................................................................26

7.01    The Liquidating Trustee ...........................................................................................26
7.02    The Responsibilities of the Liquidating Trustee .....................................................26
7.03    The Powers of the Liquidating Trustee ...................................................................27
7.04    Establishment of Reserves and Accounts ...............................................................27
7.05    Retention of Professionals .......................................................................................27
7.06    Compensation of the Liquidating Trustee ..............................................................27
7.07    Liquidating Trustee Expenses .................................................................................27
7.08    Liability; Indemnification ........................................................................................28
7.09    Termination ..............................................................................................................28

ARTICLE VIII.

PROVISIONS GOVERNING DISTRIBUTIONS ...................................................................28

8.01    Proceeds of Federal Insurance Policies ..................................................................28
8.02    Waterfall ..................................................................................................................28
8.03    Cash Distributions ...................................................................................................29
8.04    Distributions by Agent or Servicer .........................................................................29
8.05    Means of Cash Payment ..........................................................................................30
8.06    Delivery of Distribution ..........................................................................................30
8.07    Fractional Dollars; De Minimis Distributions ........................................................30
8.08    Withholding and Reporting Requirements ..............................................................30
8.09    Setoffs .....................................................................................................................30
8.010   Duty to Disgorge Overpayments .............................................................................30
8.011   Unclaimed Distributions .........................................................................................30

ARTICLE IX.

PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,
AND UNLIQUIDATED CLAIMS .............................................................................................31

9.01    Objection Deadline; Prosecution of Objections ......................................................31
9.02    No Distributions Pending Allowance ......................................................................31

ARTICLE X.

TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ..............................................................................................................31

ARTICLE XI.

EFFECTS OF CONFIRMATION .............................................................................................32

11.01   Discharge .................................................................................................................32
11.02   Legal Binding Effect ...............................................................................................32
11.03   Moratorium, Injunction and Limitation of Recourse For Payment .........................32
11.04   Term of Injunction or Stays ....................................................................................33
11.05   Exculpation and Limitation of Liability ..................................................................33
11.06   Release and Covenant Not to Sue ...........................................................................33

11.07  Insurance ...................................................................................................34
11.08  Insurance Policies Vested in Liquidating Trust .............................................34

ARTICLE XII.
RETENTION OF JURISDICTION ...............................................................................35

12.01  Retention .......................................................................................................35
12.02  Rights of Liquidating Trustee .......................................................................36

ARTICLE XIII.
MISCELLANEOUS PROVISIONS ...............................................................................36

13.01  Revocation, Withdrawal or Non-Consummation ...........................................36
13.02  Severability of Plan Provisions ....................................................................37
13.03  Exemption from Transfer Taxes and Recording Fees .....................................37
13.04  Expedited Tax Determination ......................................................................37
13.05  Interest Accrual ..........................................................................................37
13.06  Allocation of Plan Distributions between Principal and Interest .....................37
13.07  Rules of Interpretation; Computation of Time ...............................................37
13.08  Plan Documents ..........................................................................................38
13.09  Reservation of Rights ..................................................................................38
13.010 Further Assurances ....................................................................................38
13.011 Successors and Assigns ..............................................................................38
13.012 Governing Law ..........................................................................................38
13.013 Abandonment ............................................................................................38
13.014 Notice of Effective Date .............................................................................38
13.015 Plan Supplement .......................................................................................38
13.016 Entire Agreement .......................................................................................39
13.017 Waiver of Stay ...........................................................................................39

ARTICLE XIV.
MODIFICATION OF THIS PLAN ...............................................................................39

**EXHIBITS**

A – Subordinated Claims

B – Parties Against Whom Causes of Action are Preserved and Potential and Retained Claims and Causes of Action

C – Designated Contracts

D – Liquidating Trust Agreement

## SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS

Heritage Consolidated LLC and Heritage Standard Corporation, debtors and debtors-in-possession in the above-referenced bankruptcy cases, together with the Committee hereby propose this *Second Amended Joint Plan of Reorganization for the Debtors* dated July 11, 2013 (this "Plan") pursuant to the provisions of chapter 11 of the Bankruptcy Code for the resolution and treatment of the Debtors' outstanding Claims, Liens and Equity Interests. Reference is hereby made to the *Second Amended Disclosure Statement for the First Amended Joint Plan of Reorganization for the Debtors* (the "Disclosure Statement") for a discussion of, among other things, the history, businesses, properties, results of operations, risk factors, and a summary and analysis of this Plan, and related matters of the Debtors. All holders of Claims, Liens and Equity Interests are encouraged to read both this Plan and the Disclosure Statement before voting to accept or to reject this Plan. In the event of any inconsistencies between this Plan and the Disclosure Statement, the terms and provisions of this Plan shall control. The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

**THE PLAN HAS THE SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS APPOINTED IN THESE BANKRUPTCY CASES.**

### ARTICLE I.
### DEFINITIONS

Except as expressly provided or unless the context otherwise requires, the terms set forth in this ARTICLE I shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form in this Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

**1.01     Ad Valorem Tax Claim.** A Claim for taxes (together with any related interest, penalty, addition to tax or additional amount imposed by any Governmental Authority) which is assessed based upon the value of the applicable Debtor's property and which is secured by a statutory Lien upon that property, or the net proceeds from the sale of such property, to the extent of the value, as of the Effective Date (or such other date as is established by the Bankruptcy Court) of such Lien as determined by a Non-Appealable Order or as otherwise agreed upon in writing by the holder of such Claim and (a) the applicable Debtor (if such agreement is effectuated prior to the Effective Date) and the Committee; or (b) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date).

**1.02     Administrative Claim.** A Claim for payment of an administrative expense of the kind specified in Bankruptcy Code § 503(b) and entitled to priority pursuant to Bankruptcy Code § 507(a)(2), including, without limitation, Professional Fee Claims and U.S. Trustee Fees.

**1.03     Allowed.** In reference to a Claim or any portion thereof: (a) a Claim against one or more of the Debtors, proof of which, if required, was Filed on or before the Bar Date (or with respect to an Administrative Claim, the Post-Confirmation Bar Date), which is not a Disputed Claim; (b) if no Proof of Claim was so Filed, a Claim against one or more of the Debtors which has been or hereafter is listed by one or more of the Debtors in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent and on account of which payment has not been made; or (c) a Claim allowed hereunder or by a Non-Appealable Order. An Allowed Claim does not include any Claim, or portion thereof, which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof or pursuant to a Non-Appealable Order. Unless otherwise specifically provided in this Plan, or by a Non-Appealable Order of the Bankruptcy Court or otherwise allowed under

applicable bankruptcy law, an Allowed Claim shall not include any amount for punitive or exemplary damages, penalties, fines, post-petition interest, except that attorney's fees or other costs may be allowed to the extent provided under applicable State law or agreement

   **1.04**   **Allowed Amount**. The amount of any Allowed Claim.

   **1.05**   **Apollo Litigation**. The litigation that was pending in the District Court of Winkler County, Texas, 109th Judicial District styled *Heritage Standard Corporation v. Apollo Perforators, Inc.*; Cause No. 15,831, and which was removed to the Bankruptcy Court as adversary proceeding no. 10-03417.

   **1.06**   **Assumed Contracts.** Any and all Designated Contracts that are assumed by one or more of the Debtors on or before the Effective Date and assigned to the Liquidating Trust.

   **1.07**   **Avoidance Actions.** Any and all rights, claims and causes of action which a trustee, one or more of the Debtors, or other appropriate party in interest would be able to assert on behalf of one or more of the Estates under applicable state law or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542 through 551, and 553. These claims include claims for preferences and will likely include any payments listed in section 3 of the Debtors' Statement of Financial Affairs and any amendments thereto as well as any other potential preferential payments that are located during the Liquidating Trustee's post-confirmation investigation.  In addition, these rights, claims and causes of action will include potential fraudulent transfer litigation as well as preference litigation against entities related to the Debtors including, but not limited to, Case Inlet, L.P., Heritage Disposal, Heritage Gathering, Heritage Oil, L.P., Michael B. Wisenbaker, Heritage Resources, Inc., Heritage Resources, Inc. JDD, HSC-AG Hill, Lonnie McDade, SSB, L.P., The Chase Avenue Corporation and Wise Oil Venture.

   **1.08**   **Ballot.** Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote on which the holder is to indicate acceptance or rejection of this Plan in accordance with the voting instructions and make any other elections or representations required pursuant to this Plan or the Disclosure Statement Order.

   **1.09**   **Bankruptcy Code**. Title 11 of the United States Code, as amended.

   **1.010**   **Bankruptcy Court**. The United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

   **1.011**   **Bankruptcy Rules**. The Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Northern District of Texas, each as now in effect or as hereafter amended, to the extent applicable to the Cases or proceedings therein, as the case may be.

   **1.012**   **Bankruptcy Schedules**.  The schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information Filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007, as same may be amended, supplemented or modified from time to time.

   **1.013**   **Bar Date**. The deadline set by the Bankruptcy Court by which a Proof of Claim must have been Filed, which is (a) November 8, 2010 for non-governmental entities; (b) March 14, 2011 for governmental entities; (c) thirty days after the entry of an Order of the Bankruptcy Court approving the rejection of an executory contract or unexpired lease in the case of a Claim for damages arising from

the rejection of an executory contract or unexpired lease; and (d) such other date as the Bankruptcy Court may fix.

      **1.014**    **Business Day**. Any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Dallas, Texas.

      **1.015**    **Cases**. The Debtors' chapter 11 cases which are pending before the Bankruptcy Court and jointly administered under Case No. 10-36484 styled *In re Heritage Consolidated LLC, et al.*

      **1.016**    **Cash**. Legal tender of the United States of America or equivalents thereof.

      **1.017**    **Causes of Action**. Any and all rights, claims, causes of action, litigation, suits, proceedings, rights of setoff, rights of recoupment, complaints, defenses, counterclaims, cross-claims and affirmative defenses of any kind or character whatsoever whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, currently existing or hereafter arising, whether set forth in the Bankruptcy Schedules and whether arising under the Bankruptcy Code or other applicable law, in contract or in tort, in law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring, prior to the Effective Date, including, but not limited to all (a) claims pursuant to Bankruptcy Code § 362; (b) claims and defenses such as fraud, mistake, duress, usury, and fraudulent transfers; (c) claims under Bankruptcy Code § 510(c); (d) the Apollo Litigation; (e) the Eunice Litigation; (f) the Environmental Reimbursement Claims; (g) the Environmental Insurance Claims; (h) the D&O Claims; and (i) all Avoidance Actions.

      **1.018**    **CIT Capital**. CIT Capital USA Inc.

      **1.019**    **CIT Deficiency Claim**. The unsecured deficiency Claim of the Lender in the amount of $7,000,000.00 which is the only portion of the original Lender Secured Claim remaining after Permian Atlantis assumed a portion of the Lender Secured Claim in connection with and as a part of the Permian Transaction, and the Lender and CIT Capital waived any remaining Lender Secured Claim or any Unsecured Claim, other than the CIT Deficiency Claim, which is subordinated to Allowed Unsecured Claims.

      **1.020**    **Claim**. A claim as defined in Bankruptcy Code §101(5) against one or more of the Debtors.

      **1.021**    **Class**. All of the holders of Claims or Equity Interests with respect to any Debtor having characteristics substantially similar to the other Claims or Equity Interests with respect to such Debtor and which have been designated as a Class in this Plan.

      **1.022**    **Collateral**. Any property or interest in property of any of the Debtors subject to a valid, enforceable Lien that secures the payment or performance of any Claim, which Lien is not subject to avoidance and is not otherwise invalid under the Bankruptcy Code or other applicable law.

      **1.023**    **Committee**. The Official Committee of Unsecured Creditors appointed in the Debtors' Cases pursuant to Bankruptcy Code §1102(a).

      **1.024**    **Confirmation**. The entry of the Confirmation Order on the Bankruptcy Court's docket.

**1.025**   **Confirmation Date**. The date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

**1.026**   **Confirmation Hearing**. The hearing or hearings before the Bankruptcy Court at which the Bankruptcy Court will consider the Confirmation of this Plan pursuant to Bankruptcy Code §1128, as such hearings may be adjourned or continued from time to time.

**1.027**   **Confirmation Order**. The Order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code §1129, as such Order may be amended, modified or supplemented.

**1.028**   **Consolidated**. Heritage Consolidated, LLC, a Texas limited liability company and one of the jointly-administered Debtors in these Cases.

**1.029**   **Creditor**. A holder of a Claim.

**1.030**   **Cross Canyon**. Cross Canyon Energy Corporation, a Delaware corporation and affiliate of CIT Capital.

**1.031**   **Cryogenic Plant Lease**. The surface lease dated May 15, 1975 initially by and between the City of Midland and Atlantic Richfield Company for the Crittendon Gas Plant together with all physical plant equipment, compressors, machinery, parts, tools, furniture, and improvements located in or on the leased property.

**1.032**   **Cure Claim**. A Claim relating to amounts that the Bankruptcy Court determines by Non-Appealable Order to be necessary to cure all defaults, if any, and to pay all losses that have resulted from defaults, under an Assumed Contract.

**1.033**   **D&O Claims**. Any claims, causes of action, cross claims or counterclaims against any directors, officers, employees, partners, managers or members of the Debtors or anyone acting in concert therewith, including, but not limited to, claims for breach of their fiduciary duties.

**1.034**   **Debtors in Possession**. The Debtors, when acting in their capacities as representatives of the Estates.

**1.035**   **Debtors**. Consolidated and Standard, as debtors and debtors in possession of their respective Estates.

**1.036**   **Designated Contracts**. Any and all contracts, agreements, leases, licenses, indentures, notes, bonds, sale and purchase orders, instruments or other commitments, whether oral or written (including any amendments or modifications thereto) which may be assumed by one or more of the Debtors pursuant to Bankruptcy Code §365 and which will be assigned to the Liquidating Trust on the Effective Date.

**1.037**   **Disallowed Claim**. A Claim, or any portion thereof, that (a) has been disallowed by a Non-Appealable Order; (b) is Scheduled at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date; or (c) is not Scheduled and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date.

1.038    **Disclosure Statement**. The Second Amended Disclosure Statement for this First Amended Joint Plan of Reorganization for the Debtors dated December 12, 2012, including all exhibits and schedules thereto, as amended, supplemented or modified from time to time.

1.039    **Disclosure Statement Order**.    The Order entered by the Bankruptcy Court approving the Disclosure Statement pursuant to Bankruptcy Code §1125, as such Order may be amended, modified or supplemented

1.040    **Disposal**.  Heritage Disposal Corporation, a Texas corporation.

1.041    **Disposal Agreement**. That certain Salt Water Disposal Agreement dated as of August 1, 2006 by and between Gathering and Standard, as the same may be amended, supplemented, or otherwise modified.

1.042    **Disputed Claim**.  A Claim, or any portion thereof, that is set forth in a Filed Proof of Claim that (a)(i) has not been Scheduled; or (ii) has been Scheduled at zero or as contingent, unliquidated or disputed; (b) differs in nature, amount or priority from the Bankruptcy Schedules; or (c) is the subject of an objection Filed by one or more of the Debtors or the Committee and which objection has not been withdrawn or overruled by a Non-Appealable Order; provided, however, that with respect to an Administrative Claim, "Disputed Claim" means an Administrative Claim that has not been paid, that has not been Allowed by Non-Appealable Order or that is a Disallowed Claim.

1.043    **Distribution**.  The payment of Cash or the issuance of other property from the Liquidating Trust to the holders of Allowed Claims pursuant to this Plan.

1.044    **Drilling Operations**.  Any and all Sidetrack Drilling Operations, workovers, reworks, deepenings, recompletions, plug-backs, or other drilling work of any kind on the Pat Howell #1 Well, the A.G. Hill #1 Well, or any Liquidating Trust Assets.

1.045    **Effective Date**.  The later of (a) the first Business Day on which all conditions precedent to the effectiveness of this Plan have been satisfied or waived as provided in Section 6.08 of this Plan; and (b) such other date agreed to by all of the Plan Proponents.

1.046    **Environmental Claims**.  Any and all claims asserted by the City of Midland and/or enforced by the RRC against the Debtors related to environmental contamination associated directly or indirectly with any existing or prior operations of the Debtors.

1.047    **Environmental Claim Escrow**.  That certain escrow to be established on the Effective Date in the amount of no more than $1,025,000.00 for the purpose of securing payment of Allowed Claims for any future P&A costs associated with the Debtors' interest in producing or nonproducing oil & gas wells and the TH-6 Remediation.

1.048    **Environmental Claim Global Settlement**.   The global compromise and settlement as set forth in Section 6.02 of this Plan (i) among the Debtors, RRC, City of Midland and Federal Insurance Company regarding the Environmental Claims and the Environmental Insurance Claims as set forth in Section 6.02 of the Plan, and (ii) between the Debtors and RRC regarding the P&A Administrative Claim.

1.049    **Environmental Insurance Claims**.  Claims by the Debtors against Federal Insurance Company under the Federal Insurance Policies arising out of or related to the Environmental

Claims, including any defenses and/or counterclaims thereto as asserted in the Federal Adversary Proceeding.

**1.050     Environmental Reimbursement Claims.** Claims against any and all former owners or operators of the Non-Section 6 Assets or any other potentially responsible parties that may owe reimbursement to the Debtors for any and all Environmental Claims.

**1.051     Equity Interest.** An existing membership, stock, and/or equity interest in either of the Debtors or equity security (within the meaning of Bankruptcy Code §101(16)), in or to either of the Debtors, including, without limitation, all issued, unissued, authorized or outstanding shares of stock or other equity interests (including common and preferred) of either of the Debtors, together with any warrants, options, other derivative securities, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such membership or equity interests at any time and all rights arising with respect thereto.

**1.052     Escrow Amounts.** The amounts delivered and paid into escrow by CIT Capital and/or Permian Atlantis, in connection with and as a part of the Permian Transaction and currently held in escrow.

**1.053     Estates.** The estates created by Bankruptcy Code §541 upon the commencement of the respective Cases.

**1.054     Excluded Assets.** Any assets of the Estates identified by the Plan Proponents at or prior to Confirmation which will not be transferred to the Liquidating Trust due to the lack of value attributable to such asset or interest.

**1.055     Eunice Litigation.** The litigation that was pending in the District Court of Winkler County, Texas, 109th Judicial District styled *ABC Rental Tools, Inc. and Eunice Well Servicing Co. v. Heritage Standard Corporation*; Cause No. 15,484, and was removed to the Bankruptcy Court as adversary proceeding no. 10-03420.

**1.056     Face Amount.** (a) when used in reference to a Disputed or Disallowed Claim, the full, stated amount claimed by the holder of such Claim in any Proof of Claim timely Filed or otherwise deemed timely Filed by a Non-Appealable Order or other applicable bankruptcy law; (b) when used in reference to Cure Claims, the full stated amount claimed by the holder of such Claim; and (c) when used in reference to an Allowed Claim, the Allowed Amount of such Claim.

**1.057     Federal Insurance Company.** Federal Insurance Company together with any of its successors or assigns.

**1.058     Federal Insurance Policies.** Policy Nos. 3730-94-54DAL and 7984-37-37DAL issued by Federal Insurance Company under which Standard, its affiliates and/or others are each a named insured and any extensions or modifications thereof.

**1.059     Fee Application.** An application to the Bankruptcy Court for allowance of a Professional Fee Claim pursuant to Bankruptcy Code §330 and Bankruptcy Rule 2016(a).

**1.060     Filed.** Filed with the clerk of the Bankruptcy Court.

**1.061     Free and Clear.** Free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on

use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of one or more of the Debtors or the Estates, and all expenses, and charges, of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable except as otherwise provided herein.

      1.062    **Gathering**. Heritage Gathering Corp., a Texas corporation.

      1.063    **General Unsecured Claim**. A Claim that is not an Administrative Claim, Priority Tax Claim, Professional Fee Claim, U.S. Trustee Fee Claim, Ad Valorem Tax Claim, Priority Claim, Lender Secured Claim, Other Secured Claim, M&M Secured Claim, CIT Deficiency Claim, Environmental Claim, Subordinated Claim, or Equity Interest.

      1.064    **Global Resolution Proposal**. That certain settlement negotiated by and among CIT Capital, the Committee, Wisenbaker, and the Debtors resolving certain key disputes in the Bankruptcy Cases including the terms of the sale of the Non-Section 6 Assets to Permian Atlantis, the treatment of the senior secured debt through the partial satisfaction and waiver and subordination of claims, the subordination of insider claims and the funding of amounts for the Pat Howell operations, all of which was approved by the Bankruptcy Court by its Order entered February 28, 2011 [Docket No. 506].

      1.065    **Governmental Authority**. Any transnational, domestic or foreign federal, state or local, governmental unit, authority, department, court, agency or official, including any political subdivision thereof, or any tribal authority.

      1.066    **Hydrocarbons**. Crude oil, natural gas, condensate, casinghead gas, drip gasoline, natural gasoline, petroleum, natural gas liquids, products, liquids and other hydrocarbons.

      1.067    **Impaired**. When used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Bankruptcy Code §1124.

      1.068    **Lender**. Any holder of a Claim under the Lender Credit Agreements or any other Lender Credit Documents.

      1.069    **Lender Bridge Secured Claim**. That portion of the Lender Secured Claim arising under that certain Promissory Note dated July 30, 2010 by Standard and Consolidated, as maker, and CIT Capital, as holder, or any related Lender Credit Documents.

      1.070    **Lender Credit Agreements**. That certain Credit Agreement dated October 30, 2008 by and among Consolidated, CIT Capital, as administrative agent, and the lenders party thereto, as amended, and that certain Promissory Note dated July 30, 2010 by Standard and Consolidated, as maker, and CIT Capital, as holder.

      1.071    **Lender Credit Documents**. The Lender Credit Agreements, and all promissory notes, instruments, agreements, deeds of trust, mortgages, security agreements, assignments, pledges, and financing statements that evidence, secure or relate to the Lender Credit Agreements or any Liens securing the Lender Secured Claim.

1.072    **Lender Secured Claim**. The entirety of any Claim arising out of or under the Lender Credit Agreements, or any other Lender Credit Documents, in each case as such amount may be adjusted from time to time consistent with Orders of the Bankruptcy Court.

1.073    **Lien**. With respect to any property or asset, any mortgage, lien, interest pledge, charge, security interest, encumbrance, mechanics' lien, materialman's lien, statutory lien or right, and other consensual or non-consensual lien, whenever granted and including, without limitation, those charges or interests in property within the meaning of "lien" under Bankruptcy Code §101(37).

1.074    **Liquidating Trust**. The trust created pursuant to the Liquidating Trust Agreement on the Effective Date in accordance with this Plan, the Confirmation Order and the Liquidating Trust Agreement.

1.075    **Liquidating Trust Agreement**. The Liquidating Trust Agreement to be dated as of the Effective Date establishing the terms and conditions of the Liquidating Trust, substantially in the form annexed to this Plan as **Exhibit "D"**.

1.076    **Liquidating Trust Assets**. The assets transferred to the Liquidating Trust pursuant to this Plan, including, without limitation, the Estates' interest in the Section 6 Assets, the Causes of Action, the Avoidance Actions, the amounts in the Escrow Accounts, all rights under the Federal Insurance Policies, any Cash or any and all proceeds, rents, products, offspring, and profits arising from or generated by such property on or after the Effective Date, but excluding the Excluded Assets.

1.077    **Liquidating Trustee**. The trustee of the Liquidating Trust, as designated in this Plan and the Liquidating Trust Agreement, including the initial Liquidating Trustee who will be selected by the Committee, and any successor appointed in the manner set forth in the Liquidating Trust Agreement.

1.078    **M&M Liens**. Any Liens or Claims of any Persons to the extent arising and validly claimed on or before the Bar Date on account of labor performed, or services, materials, goods or equipment furnished with respect to development, drilling, completion, maintenance, repair, operations or related activity on or with respect to any lands, material, machinery, supplies, improvements, oil and gas leases, or wells or pipelines owned, in whole or in part, by the Debtors, to the extent properly perfected and arising under these categories and pursuant to the requirements under applicable law, including without limitation, the Texas Property Code Chapter 56, the Bankruptcy Code, and in any Orders entered, or previous rulings, made by the Bankruptcy Court in these Cases.

1.079    **M&M Secured Claim**. A Secured Claim that is secured by an M&M Lien.

1.080    **New Operator**. The new operator of the Section 6 Assets under the Section 6 JOA, or a new JOA entered into among all working interest owners to replace the Section 6 JOA.

1.081    **Non-Appealable Order**. An order entered by the Bankruptcy Court or other court of competent jurisdiction on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument, new trial or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, new trial or rehearing shall then be pending; or (b) in the event that any appeal, writ of certiorari, reargument, new trial or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument, new trial or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument, new trial or rehearing shall have expired; provided,

however, that no order shall fail to be a Non-Appealable Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or a similar rule under the Federal Rules of Bankruptcy Procedure may be filed with respect to such order.

**1.082    Non-Section 6 Assets**.  The assets transferred to Permian Atlantis in the Permian Transaction.

**1.083    Non-Section 6 JOAs**.  The following joint operating agreements: (a) Operating Agreement dated February 10, 1966 initially by and between Roden Oil Company, as Operator, and Sinclair Oil and Gas Company and Others, as Non-Operators; (b) Operating Agreement dated September 12, 1968 initially by and between Sinclair Oil and Gas Company, as Operator, and Getty Oil Company and Others, as Non-Operators; (c) Operating Agreement dated February 1, 1977 initially by and between Atlantic Richfield Company, as Operator, and Superior Oil Company and Others, as Non-Operators; (d) Operating Agreement dated May 15, 1984 initially by and between Heritage Resources, Inc., as Operator, and Wisenbaker Production Company and Others, as Non-Operators; (e) Operating Agreement dated November 23, 1984 initially by and between Heritage Resources, Inc., as Operator, and Tribal Drilling Company and Others, as Non-Operators; (f) Operating Agreement dated October 23, 1985 initially by and between Heritage Resources, Inc., as Operator, and A.G. Hill Oil Producer and Others, as Non-Operators; (g) Operating Agreement dated August 1, 1987 initially by and between Heritage Resources, Inc., as Operator, and ARCO Oil & Gas Company and Others, as Non-Operators; and (h) Operating Agreement dated February 1, 1986 initially by and between Heritage Resources, Inc., as Operator, and Jack C. Bestram & Associates and Others, as Non-Operators.

**1.084    Non-Section 6 M&M Secured Claim**.  Any Secured Claim against the segregated proceeds from the sale of the Non-Section 6 Assets, net of Ad Valorem Tax Claims, the allocable portion of the P&A Administrative Costs for the Non-Section 6 Assets and any other priority or administrative costs attributable to the Non-Section 6 Assets.

**1.085    Oil and Gas Leases**.  Any contract, agreement, lease, license, instrument, or other document, whether oral or written, pursuant to which one or more of the Debtors leases, has rights of ingress, egress, easement or passage, or otherwise has rights in or access to surface or subsurface real property and/or Hydrocarbons or other minerals and materials of every kind and description located thereon or thereunder for the purpose or use of exploration, drilling, production, gathering, or transportation of Hydrocarbons.

**1.086    Order**.  An order of the Bankruptcy Court.

**1.087    Other Secured Claim**.  A Secured Claim that is not an Ad Valorem Tax Claim or M&M Secured Claim.

**1.088    P&A Administrative Claims**.  Any and all claims of the RRC against the Debtors for plugging and abandonment obligations on the Section 6 Assets and Non-Section 6 Assets which have been retained by the Debtors' estates as an operator and/or working interest owner and not otherwise transferred to a third party.

**1.089    Pathfinder Litigation**.  The litigation that was pending in the District Court of Winkler County, Texas, 109th Judicial District styled *Heritage Standard Corporation v. Pathfinder Energy Services, LLC*; Cause No. 15,830, and which has been removed to the Bankruptcy Court as adversary proceeding no. 10-03419.

1.090    **Permian Atlantis**.  Permian Atlantis LLC, a Delaware limited liability company that is an affiliate of CIT Capital and subsidiary of Cross Canyon.

1.091    **Permian Cure Payment**.  The payment of $3,850,000.00 in Cash to Standard from Permian Atlantis as part of the Permian Transaction, as cure of, and in full and final satisfaction of, among other things, (a) Standard's claims against Consolidated under the Non-Section 6 JOAs; and (b) M&M Secured Claims relating to the Non-Section 6 Assets.

1.092    **Permian Transaction**.  That certain purchase and sale transaction approved by the Bankruptcy Court, and closed on February 28, 2011, pursuant to that certain Back-Up Purchase and Sale Agreement entered into between Permian Atlantis as "Buyer" and the Debtors as "Sellers" whereby Permian Atlantis purchased the Non-Section 6 Assets free and clear and assumed the Non-Section 6 JOAs in consideration of assumption by Permian Atlantis of a portion of the Lender Secured Claim, payment of the Cure Payment to Standard, and other good and valuable consideration.

1.093    **Person**.  Any person, entity or Governmental Authority of any nature whatsoever, specifically including an individual, firm, company, corporation, partnership, trust, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization or other entity or organization.

1.094    **Petition Date**.  September 14, 2010, the date on which the Debtors commenced these Cases in the Bankruptcy Court.

1.095    **Plan**.  This Second Amended Joint Plan of Reorganization for the Debtors dated July 11, 2013, as the same may be amended, supplemented, or otherwise modified.

1.096    **Plan Documents**.  All documents, forms, lists, and agreements contemplated under this Plan to effectuate the terms and conditions hereof.

1.097    **Plan Interest Rate**.  4.00% per annum.

1.098    **Plan Proponents**.  The Debtors and the Committee.

1.099    **Plan Supplement**.  The compilation of Plan Documents and any other documents, forms, exhibits, lists, and schedules as specified in this Plan and the Disclosure Statement which will be Filed with the Bankruptcy Court no later than 5 days prior to the Confirmation Hearing, as such documents may be altered, restated, modified, or supplemented from time to time.

1.0100    **Post-Confirmation Bar Date**.  4:00 p.m., prevailing Central time, on the first Business Day which is at least thirty days after the Effective Date.

1.0101    **Priority Claim**.  A Claim that is entitled to priority under Bankruptcy Code §507(a)(4)-(7), (9)-(10).

1.0102    **Priority Tax Claim**.  A Claim that is entitled to priority under Bankruptcy Code §507(a)(8).

1.0103    **Pro Rata**.  The proportion that the amount of an Allowed Claim in a Class bears to the aggregate amount of all Claims in that Class, including Disputed Claims but excluding Disallowed Claims.  For purposes of this calculation, the amount of a Disputed Claim will equal the lesser of (a) its Face Amount; and (b) the amount estimated as allowable by the Bankruptcy Court.

**1.0104   Professional**.  Any Person employed in the Cases pursuant to Bankruptcy Code §§ 327 or 1103.

**1.0105   Professional Fee Claim**.  An Administrative Claim of a Professional for compensation for services rendered and/or reimbursement of costs and expenses incurred on and after the Petition Date and prior to the Effective Date.

**1.0106   Proof of Claim**.  A written statement setting forth a Creditor's Claim and conforming substantially to the appropriate official form.

**1.0107   Released Parties**.  The Debtors, the Estates, the Committee, the members of the Committee, CIT Capital, Cross Canyon, Permian Atlantis LLC, the Wisenbaker Related Parties and the current Debtors' current officers and employees; provided however, that such releases does not release any claims or liens between Standard and Consolidated.

**1.0108   Ritter Work Plan**.  The environmental remediation work plan prepared in consultation and agreement with the Texas Railroad Commission and approved by the Bankruptcy Court, or as modified by agreement among the Texas Railroad Commission, Debtors and the City of Midland.

**1.0109   RRC**.  The Texas Railroad Commission.

**1.0110   Scheduled**.  With respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Bankruptcy Schedules.

**1.0111   Secured Claim**.  (a) any Claim or portion thereof that is reflected in the Bankruptcy Schedules or a Proof of Claim as secured by a perfected security interest in, or Lien upon, any Collateral, or the net proceeds from the sale of such Collateral, in which one or more of the Debtors has an interest, to the extent of the value of the Collateral securing such Claim, as of the Petition Date (or such other date as is established by the Bankruptcy Court) of such security interest or Lien as determined by a Non-Appealable Order pursuant to Bankruptcy Code §506 or as otherwise agreed upon in writing by the holder of such Claim, the Committee, and (i) the applicable Debtor (if such agreement is effectuated prior to the Effective Date), or (ii) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date); or (b) a Setoff Claim.

**1.0112   Section 6 Assets**.  All oil and gas interests of the Estates, including equipment utilized for such operations.  Notably, the scope of what actually constitutes the "Section 6 Assets" is expressly reserved for a determination at a later date and all parties reserve all rights regarding this determination.

**1.0113   Section 6 JOA**.  That certain Operating Agreement dated January 25, 2008 initially by and between Stratco Operating Company, Inc., as Operator, and George G. Staley and Others, as Non-Operators.

**1.0114   Section 6 M&M Secured Claim**.  Any Secured Claim against the Section 6 Assets, net of Ad Valorem Tax Claims, the allocable portion of the P&A Administrative Claim obligations for the Section 6 Assets and any other priority or administrative costs attributable to the Section 6 Assets.

**1.0115   Setoff Claim**.  A Claim of a holder that has a valid right of setoff with respect to such Claim which right is enforceable under Bankruptcy Code §553 as determined by a Non-Appealable Order or as otherwise agreed in writing by the holder of such Claim, the Committee, and (a) the

applicable Debtor (if such agreement is effectuated prior to the Effective Date); or (b) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date), to the extent of the amount subject to such right of setoff.

   **1.0116** <u>Sidetrack Costs</u>. Any and all costs, expenses, or charges associated with the Sidetrack Drilling Operation.

   **1.0117** <u>Sidetrack Drilling Operation</u>. The sidetrack of the Pat Howell #1 Well located in Section 6, Block 74, Winkler County, Texas.

   **1.0118** <u>Standard</u>. Heritage Standard Corporation, a Texas corporation and one of the jointly administered Debtors in these Cases.

   **1.0119** <u>Standard Operator Lien</u>. All statutory lien rights and payment priorities arising in favor of Standard in connection with the Section 6 JOA and applicable Texas law.

   **1.0120** <u>Subordinated Claim</u>. Any Claim (a) arising from rescission of a purchase or sale of a security of any of the Debtors or of an affiliate of any of the Debtors; (b) for damages arising from the purchase or sale of such a security; (c) for reimbursement or contribution allowed under Bankruptcy Code §502 on account of a Claim described in (a) or (b) above; (d) otherwise subordinated pursuant to Bankruptcy Code §510; (e) subordinated by Non-Appealable Order; (f) based on fines, penalties, forfeiture or for multiple, exemplary, or punitive damages; or (g) subordinated by agreement, including any agreement reached pursuant to the terms of the Global Resolution Proposal and this Plan.

   **1.0121** <u>U.S. Trustee Fees</u>. Fees payable pursuant to 28 U.S.C. §1930.

   **1.0122** <u>Undeliverable or Unclaimed Distribution</u>. A Distribution by the Liquidating Trustee under this Plan that is either (a) attributable to a holder of an Allowed Claim that has failed to prepare, execute and return to the Liquidating Trustee an Internal Revenue Service Form W-9 if so requested by the Liquidating Trustee; or (b) returned to the Liquidating Trustee as undeliverable or otherwise unclaimed.

   **1.0123** <u>Unimpaired</u>. When used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not Impaired.

   **1.0124** <u>Voting Deadline</u>. The date and time, as fixed by an Order of the Bankruptcy Court, by which all Ballots to accept or reject this Plan must be received in order to be counted.

   **1.0125** <u>Voting Record Date</u>. The record date for voting on this Plan, which shall be December 13, 2012.

   **1.0126** <u>Wisenbaker</u>. Michael B. Wisenbaker.

   **1.0127** <u>Wisenbaker Related Parties</u>. Wisenbaker and all direct and indirect affiliates and relatives of Wisenbaker, including, without limitation, Gathering, Disposal, Pat Howell LLC, Heritage Resources, Inc., Chase Avenue, Kaloni Place Interests, L.P., Jean Wisenbaker, Heritage Oil, LP, Case Inlet LP, SSB LP, Wise Oil Venture, and the owners, directors, managers, and officers of the foregoing entities.

## ARTICLE II.
## TREATMENT OF ADMINISTRATIVE CLAIMS

2.01   **Treatment**.   Except as otherwise provided herein, the holder of an Allowed Administrative Claim, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Administrative Claim, shall (a) receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (i) the Effective Date (or as soon as reasonably practicable thereafter) or (ii) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order; or (b) receive such other treatment that may be agreed upon in writing by the holder of such Claim and the Committee (and after the Effective Date, the Liquidating Trustee).   The Allowed Administrative Claims are estimated to be approximately $300,000.

2.02   **General Administrative Claims**.   Except as otherwise set forth in this ARTICLE II, each holder of an Administrative Claim shall be required to file with the Bankruptcy Court, and to serve upon all parties required to receive notice, an application for allowance of such Administrative Claim on or before the Post-Confirmation Bar Date or be forever barred and discharged from doing so.   The Administrative Claims subject to the Post-Confirmation Bar Date include (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; and (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.   An Administrative Claim with respect to which an application has been properly and timely filed pursuant to this Section 2.02 shall be treated and paid as an Administrative Claim only to the extent allowed by Non-Appealable Order; provided, however, that Administrative Claims incurred and paid by the Debtors in the ordinary course of business on and after the Petition Date shall be deemed Allowed Claims and shall not be required to submit applications for approval of Administrative Claims.

2.03   **Treatment of Priority Tax Claims**.   Each holder of an Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Priority Tax Claim, shall be paid by the Liquidating Trustee in accordance with §1129(a)(9)(c) of the Bankruptcy Code, over a period not exceeding five years after the Effective Date, commencing as soon as funds are available, with interest accruing thereon from and after the Effective Date at the Plan Interest Rate.

2.04   **Professional Fee Claims**.   Each Professional whose retention with respect to the Debtors' Cases has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Post-Confirmation Bar Date.   The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred and discharged.   A Professional Fee Claim with respect to which a Fee Application has been properly and timely Filed pursuant to this Section 2.04 shall be treated and paid as an Administrative Claim only to the extent allowed by Non-Appealable Order.   No Professional Fee Claims shall be allowed on account of any services rendered by a Professional whose retention with respect to the Cases has not been approved by the Bankruptcy Court.

2.05   **U.S. Trustee Fees**.   All unpaid U.S. Trustee Fees shall be paid in Cash in full on and after the Effective Date (or as soon as reasonably practicable after such fees become due).

# ARTICLE III.
## DESIGNATION OF CLASSES
## OF CLAIMS AND INTERESTS

**3.01** **Introduction.** In accordance with Bankruptcy Code §1123(a)(1), all Claims and Equity Interests (except for Administrative Claims, Priority Tax Claims, Professional Fee Claims and U.S. Trustee Fees) are placed in the Classes described below for all purposes, including voting on, confirmation of, and Distributions under this Plan. Administrative Claims, Priority Tax Claims, Professional Fee Claims and U.S. Trustee Fees have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class and is classified in other Classes only to the extent the other portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**3.02** **Claims against and Equity Interests in Consolidated and Standard.** The Claims against and Equity Interests in and against the Debtors are classified as follows:

| Class | Class Description | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Allowed Ad Valorem Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 | Allowed Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 3 | Allowed M&M Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Allowed Other Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Allowed General Unsecured Claims | Impaired | Entitled to Vote |
| | Class 5A | | |
| | Class 5B | | |
| Class 6 | Allowed Environmental Claims | Impaired | Entitled to Vote |
| Class 7 | Allowed CIT Deficiency Claim | Impaired | Entitled to Vote |
| Class 8 | Allowed Subordinated Claims | Impaired | Entitled to Vote |
| Class 9 | Allowed Equity Interests | Impaired | Entitled to Vote |

# ARTICLE IV.
## PROVISIONS FOR SATISFACTION
## OF CLAIMS AND INTERESTS

**4.01** **Introduction.** The Claims and Equity Interests as classified in ARTICLE III shall be treated and satisfied in the manner set forth in this ARTICLE IV. The payments or Distributions may be made as more particularly set forth in this Plan.

**4.02** **Treatment of Classified Claims and Equity Interests.**

(a) **Class 1 (Allowed Ad Valorem Tax Claims).** Each holder of an Allowed Ad Valorem Tax Claim against the Estates shall, at the election of the Liquidating Trustee, (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed Ad Valorem Tax Claim plus interest at the Plan Interest Rate from the Petition Date until such Claim has been satisfied in full as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment

shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Ad Valorem Tax Claim.

(b)     **Class 2 (Allowed Priority Claims)**.  Each holder of an Allowed Priority Claim against the Estates shall, at the election of the Liquidating Trustee, (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed Priority Claim until such Claim has been satisfied in full as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Priority Claim.

(c)     **Class 3 (Allowed M&M Secured Claims)**.  Each holder of an Allowed M&M Secured Claim against the Estates shall (A) receive Distributions from the Liquidating Trust in the pro rata amount of such holder's Allowed M&M Secured Claim from the applicable assets identified in the sub-classes below, plus interest at the Plan Interest Rate from the Petition Date until such Claim has been satisfied in full, to the extent allowable under Title 11, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed M&M Secured Claim. Class 3 is further divided into sub-classes comprised of the Allowed Section 6 M&M Secured Claims and the Allowed Non-Section 6 M&M Secured Claims as follows:

Class 3A: Allowed Section 6 M&M Secured Claims to be satisfied solely from the Section 6 Assets, or sale proceeds thereof, with any deficiency claim to be included with General Unsecured Claims in Class 5.

Class 3B: Allowed Non-Section 6 M&M Secured Claims to be satisfied solely from the net sale proceeds of the Non-Section 6 Assets with any deficiency claim to be included with General Unsecured Claims in Class 5.

(d)     **Class 4 (Allowed Other Secured Claims)**.  Each holder of an Allowed Other Secured Claim against the Estates shall (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed Other Secured Claim plus interest at the Plan Interest Rate from the Petition Date until such Claim has been satisfied in full, to the extent allowable under Title 11, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Other Secured Claim.

(e)     **Class 5 (Allowed General Unsecured Claims)**.  Each holder of an Allowed General Unsecured Claim against the Estates shall (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed General Unsecured Claim until such Claim has been satisfied in full, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed General Unsecured Claim. Class 5 is further divided into sub-classes comprised of the Allowed Unsecured Claims against each of the Debtors as follows:

Class 5A: Allowed General Unsecured Claims against Heritage Consolidated LLC.

Class 5B: Allowed General Unsecured Claims against Heritage Standard Corporation.

(f)    Class 6 (Allowed Environmental Claims).    Each holder of an Allowed Environmental Claim against the Estates shall be deemed to receive payment in full and final satisfaction on such claim through the terms of the Environmental Claims Global Settlement as set forth in Section 6.02 of this Plan.

(g)    Class 7 (Allowed CIT Deficiency Claim).    The holder of the Allowed CIT Deficiency Claim shall (A) receive Distributions from the Liquidating Trust in the amount of such holder's Allowed CIT Deficiency Claim until such Claim has been satisfied in full, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed CIT Deficiency Claim.

(h)    Class 8 (Allowed Subordinated Claims).    Each holder of an Allowed Subordinated Claim shall receive (A) Distributions from the Liquidating Trust in the amount of such holder's Allowed Subordinated Claim until such Claim has been satisfied in full, as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Subordinated Claim.

(i)    Class 9 (Allowed Equity Interests).    On the Effective Date, each then-issued and outstanding Equity Interest in the Debtors shall receive (A) Distributions from the Liquidating Trust as and at the time provided under ARTICLE VIII of this Plan; or (B) receive such other less favorable treatment that may be agreed upon in writing by such holder and the Liquidating Trustee. This treatment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Equity Interest.

4.03    Designation of Impaired and Unimpaired Classes.

(a)    Impaired Classes of Claims.    Classes 3, 4, 5, 6, 7, and 8 are Impaired, and therefore, holders of Claims in such Classes are entitled to cast Ballots with respect to this Plan.

(b)    Impaired Classes of Equity Interests.    Class 9 is Impaired, and therefore, holders of Equity Interests in such Class are entitled to cast Ballots with respect to this Plan.

ARTICLE V.
ACCEPTANCE OR REJECTION OF THIS PLAN

5.01    Classes Entitled to Vote.    Each Impaired Class of Claims that will receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan as provided in the Disclosure Statement Order or any other Order.

5.02    Acceptance by Impaired Classes of Claims.    An Impaired Class of Claims shall have accepted this Plan if (a) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept this Plan; and (b) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

5.03     **Cramdown**.  If each Impaired Class of Claims and Equity Interests does not accept this Plan, the Plan Proponents request Confirmation of this Plan under Bankruptcy Code § 1129(b).  The Plan Proponents reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code § 1129(b) requires modification or for any other reason in their discretion.

## ARTICLE VI.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

6.01     **Wisenbaker Settlement**.  Confirmation of the Plan shall approve and effectuate a settlement pursuant to Bankruptcy Rule 9019 of any claims of the Debtors against Wisenbaker and the Wisenbaker Related Parties (except as to their respective obligations, if any, under this Plan, under any settlement agreement or mutual release entered into in connection herewith, and under the Section 6 JOA) on the following terms:

(a)     **Subordination of Claims**.  Wisenbaker and each Wisenbaker Related Party (except for Pat Howell LLC as to rights and interests under the Section 6 JOA) agree to subordinate all of their pre-petition claims against the Debtors to all Allowed Secured Claims and Allowed General Unsecured Claims, and such subordinated Claims shall be included in Class 8 (Allowed Subordinated Claims) of this Plan; provided, however that the last pre-petition charges by Disposal (for $44,523) and Gathering ($37,799) for August 2010 and part of September 2010 services will be Allowed and will be included in Class 5 (Allowed General Unsecured Claims) of this Plan.

(b)     **Salt Water Disposal Agreement**.  Disposal shall enter into a salt water disposal agreement with the Estate/Liquidating Trust substantially in the form of the salt water disposal agreement entered into between Disposal and Permian Atlantis, but with the following changes:

(i)     the Primary Term of the agreement will be four (4) years, rather than two (2) years, from the Effective Date of this Plan;

(ii)     a provision will be added to the agreement that will allow the operator of the Pat Howell #1 Well under the Section 6 JOA to transport gas through Disposal's pipeline at then current market rates from the Pat Howell #1 Well;

(iii)     the operator of the Pat Howell #1 Well will have the option (but not the obligation) to purchase the pipeline and rights of way from Disposal for a total cost of $121,000 payable in 12 equal monthly installments (with no portion of that charge being assessed against Pat Howell LLC); and

(iv)     the rights under 6.01(c) above, and this Section 6.01(d), may be assigned by the Debtors or the Liquidating Trust to the operator of the Pat Howell #1 Well and/or the operator under the Section 6 JOA, and the remaining rights to water disposal may be assigned by the Debtors or the Liquidating Trust to any party assuming the obligations to remediate water on Non-Section 6 Assets.

(c)     **Consent Required for certain Actions**.  Pat Howell LLC, as well as any successors or assigns, agrees that it will not undertake, and shall not undertake, (i) any effort to drill, work-over and/or develop the Pat Howell #1 Well until the earlier of December 31, 2012, or the Effective Date, and, additionally (ii) any effort to drill, work-over and/or develop the Pat Howell #1 Well for a

period of four (4) years from the Effective Date, in either case without the prior written consent of the other 81.25% ownership interest in the Pat Howell #1 Well.

**(d)    Payment of Suspended Revenue.** All suspended revenues (estimated by the Debtors to be approximately $46,647.07) and future revenues related to or arising from the interests of the Wisenbaker Related Parties under the A.G. Hill #1 Well shall be released and paid per the terms of the Section 6 JOA.

**(e)    Releases.** The Wisenbaker Related Entities (except as to their respective obligations under this Plan, the Section 6 JOA, and any settlement agreement or other written agreement entered into between them and the Debtors) shall receive full and complete releases of any all claims and causes of action which have or can be asserted by or on behalf of the Debtors, their Estates and/or the Liquidating Trust pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Such releases will be from the Debtors and not from any individual Creditor of the Debtors. For purposes of clarity, nothing contained in this settlement shall impair, effect, release or otherwise infringe on any direct and independent claims and causes of action that any Creditor or third party has or may have against the Wisenbaker Related Parties, including, without limitation, those claims identified on **Exhibit "C"** to the Disclosure Statement.

**(f)    Options on Section 6 Assets.** Pat Howell LLC agrees that in the event the Liquidating Trustee desires to sell the Pat Howell # 1 Well, the Debtors' interests in the AG Hill #1 Well and/or the balance of the Section 6 Assets as a whole, Pat Howell LLC will agree to the inclusion of its interests in the Pat Howell #1 Well as part of the package of assets to be sold. In the event that a buyer desires to purchase all of the Section 6 Assets (including the Pat Howell #1 Well), Pat Howell LLC will consent to such sale and agrees that four percent (4.00%) of the total net sales price received for the Section 6 Assets (including 100% of the Pat Howell #1 Well) shall be allocated to Pat Howell LLC's eighteen and three-fourths percent (18.75%) interest in the Pat Howell #1 Well. In the event that a potential buyer does not desire to purchase the 18.75% interest in the Pat Howell well owned by Pat Howell LLC, then in such event Pat Howell LLC agrees not to object or impede any such sale of the remainder of the Pat Howell #1 Well, the AG #1 Hill well and/or the balance of the Section 6 Assets.

**(g)    Apollo Litigation.** Pat Howell LLC agrees that the Estates or the Liquidating Trust (as appropriate) shall receive twenty-five (25%) of Pat Howell LLC's share of any net recovery in the Apollo Litigation.

**6.02    Environmental Litigation and Related Claims Settlement.** Confirmation of the Plan shall approve and effectuate a settlement pursuant to Bankruptcy Rule 9019 of all pending litigation and claims between and among the Debtors, the RRC, City of Midland and Federal Insurance Company as follows:

**(a)** Immediately upon approval of the Plan, the parties shall approve and submit an agreed judgment in the adversary proceeding styled: *Federal Insurance Company v. City of Midland, et al.*; Adversary No. 11-03512, pending in the Bankruptcy Court (the "Federal Adversary Proceeding"), which shall also include the terms of this Agreement to the extent necessary to address the disputed issues therein. Federal Insurance Company and the City of Midland shall then dismiss with prejudice all claims and causes of action brought in the proceeding styled: *The City of Midland v. Federal Insurance Company*; MO:11-CV-00105-RAJ, pending in the United States District Court, Western District of Texas.

**(b)** Federal Insurance Company acknowledges that the plume of contamination in the Cenozoic Pecos Alluvium Aquifer (the "Aquifer") in the vicinity of and related to the Tubb 1A Well (the

"Tubb 1A Contamination") was caused by a "pollution incident" as defined by Federal Insurance Company's policies that commenced on or after the Retroactive Date of the policies (as defined therein), and before the end of the policy period, and that a claim based on this contamination was first made against the insured during the policy period, so that the requirements of the policies' insuring agreements are fulfilled. Therefore, Federal Insurance Company has and hereby, subject to the remaining limits of policy 7984-37-37, acknowledges its obligation through this Plan and the agreed judgment referenced hereinabove to pay pursuant to the terms and conditions of the policies the costs and expenses related to the Debtors' environmental obligations as identified in the Adversary Proceeding, arising from or related to the plume of contamination in the Aquifer in the vicinity of and related to the Tubb 1A Well and the resolution of related disputes (exclusive of costs related to the investigation, evaluation and remediation of TH 6 and the resolution of disputes related thereto) as those costs and expenses are incurred. The obligations by Federal Insurance Company shall be for those non-TH 6 costs under the Ritter Plan, as that plan now exists or as it may be amended by agreement or compelled by the RRC subject to all available appeal rights by the City of Midland, the Debtors and/or Federal Insurance Company (the "Remediation Plan"), plus any Tubb 1A plume related reasonable costs and expenses incurred by or on behalf of the Debtors in connection with the enforcement, defense and/or negotiation of any amendments thereto in accordance with the Federal Insurance Policies.

(c)     The Debtors shall engage licensed consultants and/or professionals (selected at their sole discretion) to evaluate and perform the Remediation Plan and the remediation for TH 6 (the "TH 6 Remediation") subject to oversight by the RRC and to contest and/or defend the Debtors' interests in relation thereto; provided, however, that (i) the Debtors shall have no further financial responsibility except for the funding of a reserve as set forth herein, and (ii) the Liquidating Trustee, as set out in paragraph 6.02(l) below, shall retain licensed consultants and/or professionals at his or her discretion to implement the Remediation Plan (with the approval of Federal Insurance Company) and the TH 6 Remediation (with the approval of the RRC) if such remediation efforts take place after the Effective Date.

(d)     All parties agree to continue to meet and confer as promptly as possible with their technical staff to analyze and discuss the contamination of the Aquifer, relevant technical aspects of the City of Midland's plans to produce groundwater from the Aquifer, options for remediation and how the Remediation Plan and the TH 6 Remediation can be accomplished on a consensual basis. All parties agree to cooperate and share all available testing and remediation/supply well installation and operating information and documents as part of these meet and confer obligations. If no such agreement on a remediation plan is reached on or before June 30, 2013 (or to such later date as agreed to by the RRC), the Debtors shall continue implementing the then-currently approved plan of remediation while awaiting a final resolution of such disputes pursuant to appropriate RRC hearings and appeals; provided, however, the Debtors shall provide the City of Midland with thirty (30) days' notice before actually recommencing the Ritter Plan and agree to the expedited consideration of any request by the City of Midland to the RRC to further extend the stay of the Ritter Plan.

(e)     All rights to challenge or appeal the RRC's demands to amend the Ritter Plan are expressly preserved by Federal Insurance Company, the City of Midland and/or the Debtors. The RRC agrees to expedite the docket scheduling and resolution in any such appeal or challenge. At its discretion, the City of Midland may be a party to any such appeal or challenge and the City of Midland's standing to fully participate shall not be challenged by any party hereto. Subject to the remaining limits of policy 7984-37-37, the Debtors' reasonable attorneys' fees and related costs, expenses and expert fees related to such actions that are incurred in accordance with the Federal Insurance Policies shall be paid by Federal Insurance Company under the Federal Insurance Policies.

(f)     This Agreement shall resolve all coverage disputes between the Debtors and Federal Insurance Company in the Federal Adversary Proceeding, except for any non-TH 6 expenses which the Debtors or the RRC claim are reimbursable under the Federal Insurance Policies and that Federal Insurance Company refuses to fund. The Bankruptcy Court, so long as it continues to have subject matter jurisdiction, and otherwise the United States District Court for the Northern District of Texas, shall have exclusive jurisdiction to hear and resolve any disputes related to expenses or the determination of what is a Tubb 1A liability, a non-Tubb 1A liability, a TH 6 liability or a non-TH 6 liability upon motion by any party. The Bankruptcy Court shall have exclusive jurisdiction to resolve disputes between the Liquidating Trustee and any Party as to what is a Tubb 1A expense and what is a TH6 Remediation expense. The Bankruptcy Court shall have exclusive jurisdiction to resolve any new coverage disputes that may arise under the Federal policies based on events subsequent to this agreement. No party shall challenge the Bankruptcy Court's jurisdiction.

(g)     On or before the Effective Date of the Plan, the Debtors shall establish and fully fund the Environmental Escrow in the amount of $1,025,000 to pay for a portion of the TH 6 liability and the P&A Administrative Claim obligations in the order designated by the RRC. The Environmental Escrow shall be funded based upon the Debtors' estimates for all P&A liabilities pursuant to the schedule of such liabilities agreed to by the Debtors and the RRC, plus an additional $250,000 to cover the Debtors' alleged share of the TH 6 Remediation.

(h)     The Liquidating Trust will obtain a P-5 within 30 days of the Effective Date of the Plan and will promptly file the necessary documents to transfer the P-4 liability for all of the wells on which Standard is currently the P-4 operator of record unless the Liquidating Trustee deems it necessary to maintain Standard as the operator for plugging and abandonment purposes for a limited period of time as provided in Section 6.010 hereinbelow. The Debtors shall be entitled to apply the $50,000 in existing operator bonds currently held by the RRC for purposes of posting the financial assurance required for the Liquidating Trust to be issued a P-5 and also for purposes of partial credit for funding the Environmental Escrow.

(i)     The Liquidating Trust will be responsible for plugging the wells and will do so when directed by the RRC. Within 90 days after the RRC notifies the Liquidating Trustee to plug a well, the Liquidating Trustee will (i) obtain at least 3 bids from qualified plugging contractors, (ii) utilize the best bid, and (iii) ensure that the selected contractor properly completes plugging and surface cleanup. The Liquidating Trustee will maintain all bids solicited by the Liquidating Trust and will make them available to the RRC for its inspection on reasonable notice.

(j)     The Debtors and RRC shall agree on reasonable payment procedures from the Environmental Escrow; provided, however, that (i) after a well is plugged and abandoned pursuant to the Remediation Plan, the Debtors may withdraw from the Environmental Escrow the actual P&A costs for that well; and (ii) if a third party assumes the liability for a particular well to the satisfaction of the RRC, the Debtors may withdraw from the Environmental Escrow the estimated amount of P&A liability (as set out on the agreed P&A schedule) for the transferred well. Costs for plugging and abandonment of wells for which the Debtors are responsible and that are covered under the Federal Insurance Policies would be limited to HRW-1, HRW-2, Tubb 1A and the treated groundwater injection well which may be required under the revisions to the Ritter Plan currently being discussed, and any other wells that are required pursuant to the Remediation Plan. The Environmental Escrow will contain a $260,000 reserve to cover the P&A for the Pat Howell well ($180k) and the AG Hill well ($80k), and that reserve must be maintained until the earlier of (i) funds being released on the lawful transfer by the Liquidating Trust of the P-4 for the Pat Howell or AG Hill wells, or (ii) 49 months after the Effective Date of the Plan. Any ripe wells not directed to be plugged within the first 3 years after the Effective Date of the Plan will be plugged during the 4th year after the Effective Date. Any funds remaining in the Environmental Escrow at

the earlier of (i) 5 years after the Effective Date of the Plan, or (ii) termination of the Liquidating Trust, will be transferred to the Texas Oil and Gas Regulation and Cleanup Fund. The Liquidating Trustee shall submit quarterly reports to the RRC reflecting all remediation and P&A expenditures from the Environmental Escrow.

      (k)    To the extent that the Environmental Escrow is insufficient to fund the completion of the remediation related to the TH 6 contamination and the Debtors' obligations to P&A its wells, the RRC shall provide the remaining funding from the Oil and Gas Regulation and Cleanup Fund for the remediation of all contamination in any way related to TH6 and the Debtor's obligation to P&A its wells.

      (l)    The rights and obligations of the Debtors herein, as approved by the Bankruptcy Court, shall be transferred to and binding upon the Liquidating Trustee, or any subsequently appointed Chapter 7 Trustee if approved by the Bankruptcy Court outside of a plan of reorganization (including but not limited to the right to select consultants or contractors to implement the Remediation Plan).

      (m)    The Bankruptcy Court's order dated May 6, 2011 (Dkt. #572) allowing the RRC's fines and penalties as a general unsecured claim, together with this agreements herein and the implementation thereof, shall resolve all of the RRC's claims against the Debtors, including, without limitation the P&A Administrative Claims. **Subject to compliance with the terms of this Agreement and applicable state law to the extent consistent with the parties' agreements, the Debtors and all affiliates, officers, insiders, agents, and the Liquidating Trust and Liquidating Trustee shall be released from any further liability from the State of Texas, RRC and the City of Midland.**

      (n)    Any and all claims of the City of Midland against the Debtors and Federal Insurance Company, including, without limitation, the City of Midland's claims or rights of execution, garnishment or collection relative to its allowed claim (docket entry nos. 463 and 498) in the Bankruptcy Court (whether pursued in Civil Action No. 7:11-CV-00105 in the United States District Court for the Western District of Texas, Midland-Odessa Division, in the Federal Adversary Proceeding, or elsewhere) shall be deemed satisfied by the completion of the Remediation Plan and the administration of the TH 6 Remediation as provided herein (or, with respect to Federal Insurance Company only, by the exhaustion of the Federal Insurance Policies' limits, if exhaustion takes place earlier than the completion of the Remediation Plan).

      6.03    <u>Establishment of Liquidating Trust</u>.  On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement creating the Liquidating Trust. A copy of the Liquidating Trust Agreement is attached hereto as **Exhibit "D."**  Following the Effective Date, the liquidation of the Estates shall be conducted by the Liquidating Trust, the Liquidating Trustee of which shall liquidate the Liquidating Trust Assets, object to Disputed Claims and Equity Interests, and make Distributions pursuant to this Plan and the Liquidating Trust Agreement. The Liquidating Trust shall not retain cash or cash equivalents in excess of a reasonable amount to meet the Claims and contingent liabilities (including Disputed Claims) or to maintain the value of the Liquidating Trust Assets and shall make timely Distributions and not unduly prolong the duration of the Liquidating Trust. The Liquidating Trustee will hold and manage the Liquidating Trust Assets in accordance with this Plan and the Liquidating Trust Agreement, subject to consent from the Creditors' Oversight Committee with regard to Drilling Operations and other material decisions as described in this Plan and the Liquidating Trust Agreement. No Drilling Operations will be commenced or performed on the Pat Howell # 1 Well or the A.G. Hill #1 Well without the approval of the Liquidating Trustee and the unanimous consent of the Creditors' Oversight Committee. The beneficiaries of the Liquidating Trust shall be the holders of Allowed Claims and Equity Interests who shall receive a beneficial interest in the Liquidating Trust in

accordance with their respective treatment under the terms of this Plan and the Liquidating Trust Agreement.

If any Liquidating Trust Beneficiary disagrees with a decision of the Liquidating Trustee and/or the Creditors' Oversight Committee with respect to the timing and manner of disposition of any Liquidating Trust Assets, they may petition the Court to request alternative disposition actions based on a showing that decisions of the Liquidating Trustee and/or Oversight Committee are not reasonable and prudent under the circumstances.

The transfer of Liquidating Trust Assets to the Liquidating Trust shall be treated as a transfer to the Liquidating Trust Beneficiaries for all purposes of the Internal Revenue Code (e.g., sections 61(a)(12), 483, 1001, 1012, and 1274) followed by a deemed transfer by such beneficiaries to the Liquidating Trust. The Liquidating Trust shall be considered a "grantor" trust, and the Liquidating Trust Beneficiaries shall be treated as the grantors and deemed owners of the Liquidating Trust. Accordingly, the Liquidating Trustee will file the tax returns for the Liquidating Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. The Liquidating Trustee shall value the transferred property and notify in writing the Liquidating Trust Beneficiaries of such valuations. The assets transferred to the Liquidating Trust shall be valued consistently by the Liquidating Trustee and the Liquidating Trust Beneficiaries, and these valuations will be used for all federal income tax purposes.

      6.04    **Purpose of the Liquidating Trust**. The Liquidating Trust shall be established for the benefit of Creditors of the Estates, and Equity Interests to the extent of their distribution rights under the Plan. The Liquidating Trust will be a liquidating trust for tax purposes and will not operate a business or perform ongoing business activities except as reasonably necessary in order to maintain and preserve the value of the Liquidating Trust Assets while the Liquidating Trustee attempts to liquidate, sell and otherwise dispose of such Liquidating Trust Assets. The primary purposes of the Liquidating Trust shall be:

        (a)    to own, hold, manage and dispose of the Liquidating Trust Assets and any other assets for the purpose of making Distributions to holders of Allowed Claims as provided in this Plan.

        (b)    to litigate, prosecute, settle or otherwise resolve the Causes of Action belonging to the Liquidating Trust.

        (c)    to defend any counterclaims relating to the Causes of Action belonging to the Liquidating Trust;

        (d)    to complete any plugging and abandoning obligations of the estates and to formally dissolve the Debtors; and

        (e)    to do anything necessary, related or incidental to the foregoing.

      6.05    **Transfer of the Liquidating Trust Assets to the Liquidating Trust**. On the Effective Date and upon the execution of the Liquidating Trust Agreement, all remaining property of the Estates (other than the Excluded Assets) shall be, and shall be deemed to be, transferred to the Liquidating Trustee to be held in the Liquidating Trust, including, without limitation, the Section 6 Assets, the Escrow Amounts, any and all Cash in the Debtors' operating accounts or other bank accounts, all tangible and intangible property, personal and real property, intellectual property, contractual rights, defenses, Causes of Action, Avoidance Actions, Debtors' attorney-client privilege as to all matters, and all other assets and rights of every kind whatsoever owned or possessed by the Debtors (other than the Excluded Assets). The Liquidating Trustee shall hold such property in trust and in its exclusive

possession, custody and control. After the Effective Date, the Liquidating Trustee may present such Order(s) or assignment(s) to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where the Liquidating Trust Assets are or were located, which provide that such property is conveyed to the Liquidating Trustee to be held in the Liquidating Trust. The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned. At this time, the Plan Proponents are not aware of any assets which would constitute Excluded Assets under this Plan.

**6.06**    **Transfer Free and Clear of Claims; Stay of Actions Against Liquidating Trust or Trust Res**. Except for the rights of beneficiaries of the Liquidating Trust as set forth in this Plan and the Liquidating Trust Agreement, all property transferred to the Liquidating Trustee from any of the Estates shall be Free and Clear of all Claims, interests, Liens and encumbrances, and such property shall remain as property of the Liquidating Trust until distributed pursuant to this Plan and the Liquidating Trust Agreement, provided however, that all asserted M&M Secured Claims, and their corresponding Liens, shall continue in the same right and capacity until an agreement on the amount and validity of the M&M Secured Claim and Lien, or a determination is made as evidenced by a Non-Appealable Order, after appropriate notice and hearing, as to the validity and amount of the M&M Secured Claims and Liens and these claims are paid in full or fully reserved. On the Effective Date, a stay of all actions (to the same extent as set forth in §362(a) of the Bankruptcy Code) with respect to the Estates, the Liquidating Trust, the Liquidating Trustee and the Liquidating Trust Assets shall be and remain in effect pending consummation of this Plan. The transfer of assets to the Liquidating Trustee pursuant to this Plan shall not constitute a default or breach under, or result in any forfeiture whatsoever with respect to, any asset or property interest transferred to the Liquidating Trustee.

**6.07**    **Termination**. The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets transferred and assigned to the Liquidating Trustee or involving the Liquidating Trustee on behalf of the Liquidating Trust are fully resolved and the Liquidating Trust Assets have been liquidated and distributed in accordance with this Plan and the Liquidating Trust Agreement. The Liquidating Trust shall terminate no later than five (5) years from the Effective Date. However, if warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Liquidating Trust, the term of Liquidating Trust may be extended for a finite period based on the particular circumstances at issue. Each such extension must be approved by the Bankruptcy Court with notice thereof to all of the beneficiaries of the Liquidating Trust.

**6.08**    **Liquidating Trust Interests**. The beneficial interests in the Liquidating Trust will not be represented by certificates and will not be transferable except pursuant to the laws of descent and distribution or otherwise by operation of law; provided, however, that such prohibition on transferability of beneficial interests is not intended to impair the ability of holders of Claims to assign their Claims pursuant to and in accordance with the Bankruptcy Rules and applicable law.

**6.09**    **Conditions Precedent to the Effective Date**. Each of the following events shall occur on or before the Effective Date; provided however, except as otherwise provided in this Section 6.08, the Plan Proponents may waive in writing any or all of the following events, whereupon the Effective Date shall occur without further action by any Person:

(a)      the Confirmation Order, in a form and substance reasonably acceptable to each of the Plan Proponents shall have been entered by the Bankruptcy Court and shall not be subject to a stay and shall include findings, among others, that (i) this Plan is confirmed with respect to the Debtors; (ii) the Plan Proponents have acted in good faith and in compliance with the applicable provisions of the

Bankruptcy Code as set forth in Bankruptcy Code §1125(e); and (iii) the Debtors are authorized to take all actions and consummate all transactions contemplated under this Plan;

(b)     all material documents, instruments, and agreements provided under, or necessary to implement, the Plan, including, but not limited to, the assignment and assumption agreements providing for the assignment and conveyance by the respective Debtors of all of the Liquidating Trust Assets (all of which shall be in form and substance acceptable to the Plan Proponents) shall have been executed and delivered by the applicable parties.

As set forth in more detail in Section 13.14 the Liquidating Trustee shall file a Notice of Effective Date with the Bankruptcy Court and serve the Notice of Effective Date on all holders of Claims.

6.010     **Assumed Contracts**.    Except as otherwise set forth in this Plan or the Confirmation Order, on the Effective Date, the Designated Contracts shall be assumed by the Debtors and assigned to the Liquidating Trust, and the Liquidating Trustee on behalf of the Liquidating Trust shall be deemed to be the legal counterparty to such contracts. The Section 6 JOA shall be included within the Designated Contracts and shall be assumed and assigned to the Liquidating Trust with all terms and conditions remaining in full force and effect except for the designation and approval of the New Operator and except to the extent of any conflict with the terms of this Plan.  The New Operator shall be selected by the Committee prior to Confirmation, disclosed at the Confirmation Hearing and approved by the Court under the Plan.  The New Operator shall be deemed approved as the operator under the Section 6 JOA in which event the Confirmation Order shall contain findings and conclusions that the New Operator has been so designated and approved as operator under the Section 6 JOA.   Those findings and conclusions shall serve as the written consent of the counterparties to the Section 6 JOA and those findings and conclusions shall be binding on all parties to such Section 6 JOA.  Notwithstanding the selection of the New Operator and anything to the contrary in this Plan, the Liquidating Trustee, with the approval of the Trust Committee, may retain Standard as the operator for the Section 6 Assets for any time period that the Liquidating Trustee deems appropriate to complete any plugging and abandoning obligations of the estates before the New Operator takes over as operator under the Section 6 JOA.

6.011     **Cure Claims**.    At least ten (10) days prior to Confirmation, the Debtors and/or Committee will provide notice to all counterparties to the Designated Contracts identifying such contract and the proposed Cure Claim to be paid pursuant to Bankruptcy Code §365 as a condition to assumption of the contract by the Liquidating Trust.  Any unresolved disputes regarding the amount and payment of the Cure Claim shall be heard by the Bankruptcy Court at or prior to Confirmation, or as soon as possible thereafter if notice of such Designated Contract and Cure Claim is not sufficient.

6.012     **Oil and Gas Leases**.   To the extent any of the remaining Oil and Gas Leases in the Estates constitute executory contracts or unexpired leases of real property under Bankruptcy Code § 365, such Oil and Gas Leases shall be assumed by the respective Debtor and assigned to the Liquidating Trust, and the Liquidating Trustee on behalf of the Liquidating Trust shall be deemed to be the legal counterparty to such leases and, unless otherwise ordered by the Bankruptcy Court, the related cure amount shall be $0.  To the extent any of the Oil and Gas Leases constitute contracts or other property rights not assumable under Bankruptcy Code §365, such Oil and Gas Leases shall be transferred and assigned to the Liquidating Trustee pursuant to this Plan.  Except for the defaults of a kind specified in Bankruptcy Code §§ 365(b)(2) and 541(c)(1) (which defaults the Debtors and the Liquidating Trust will not be required to cure), or as otherwise provided herein, the legal, equitable and contractual rights of the counterparties to such Oil and Gas Leases shall be unaltered by the Plan.

**6.013    Litigation Recoveries**. The Estates' net proceeds from settlements, judgments and other recoveries associated with the Eunice Litigation, the Apollo Litigation and any other Causes of Action or claims held by the Debtors and transferred to the Liquidating Trustee under Section 6.04 above, shall also be part of the Liquidating Trust Assets to be distributed from the Liquidating Trust in accordance with this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be vested with authority and standing to prosecute and handle all such litigation (including through any and all appeals) and shall make all decisions related thereto including with respect to any settlements, after consultation and approval by the Creditors' Oversight Committee.

**6.014    Directors, Officers, and/or Managers of the Debtors**. Effective as of the Effective Date, all of the directors, officers, and/or managers of the Debtors shall be removed and the Liquidating Trustee shall have the sole authority regarding whether to retain any employees of the Debtors to help manage the Section 6 Assets and/or any other Assets of the Liquidating Trust.

**6.015    Preservation of Rights of Action; Settlement of Litigation Claims**.

(a)    **Preservation of Rights of Action**. The Liquidating Trustee shall be appointed representative of the respective Estates pursuant to Bankruptcy Code §1123(b)(3)(B) with respect to the Causes of Action which are part of the Liquidating Trust Assets, including the Apollo Litigation, the Environmental Reimbursement Claims, all preference actions, and all other Causes of Action held by the Debtors including, without limitation, any and all Causes of Action against the persons and entities listed in **Exhibit "B"** attached hereto and incorporated herein by reference. Except as otherwise ordered by the Bankruptcy Court and subject to any releases in this Plan, on the Effective Date, all of the Estates' interest in the Causes of Action shall vest in the Liquidating Trust and the Liquidating Trustee may, and shall have standing to, prosecute, enforce, sue on, and settle or compromise (or decline to do any of the foregoing) any or all of such Causes of Action. The Liquidating Trustee and his or her attorneys and other professional advisors shall have no liability for pursuing or failing to pursue any such Causes of Action.

(b)    **Settlement of Litigation Claims and Disputed Claims**. At any time after the Effective Date, notwithstanding anything in this Plan to the contrary, the Liquidating Trustee may settle some or all of the Causes of Action that would be Liquidating Trust Assets, and/or any of the Disputed Claims or any intercompany/inter-estate claims, subject in each case to obtaining any necessary Bankruptcy Court approval if litigation has been commenced by the Debtors or the Liquidating Trustee. The proceeds from the settlement of a Cause of Action shall constitute an asset of the applicable Estate that shall vest in the Liquidating Trust on the Effective Date in accordance with this Plan.

**6.016    Authority**. All actions and transactions contemplated under this Plan shall be authorized upon Confirmation of this Plan without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members, other than the notice provided by serving this Plan on (a) all known holders of Claims against the Debtors' Estates; and (b) all current holders of Equity Interests in the Debtors. The Confirmation Order shall include provisions dispensing with the need of further approvals, notices or meetings of the Debtors or holders of Equity Interests and authorizing and directing any director, officer, manager, or member of each respective Debtor to execute any document, certificate or agreement necessary to effectuate this Plan on behalf of such Debtor, which documents, certificates and agreements shall be binding on the Debtors, the Creditors, and all holders of Equity Interests.

**6.017    Dissolution of Committee**. The Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in Bankruptcy Code § 1103. Unless otherwise ordered by the Bankruptcy Court, on the Effective Date, (a) the Committee shall be

dissolved and its members shall be released of all their duties, responsibilities and obligations in connection with the Cases, this Plan and the implementation of the same; and (b) the retention or employment of the Committee's Professionals and other agents shall terminate.

      **6.018**   **Creditors' Oversight Committee**. The Liquidating Trust Agreement shall establish a committee (the "Creditors' Oversight Committee"), consisting of no more than three (3) creditors from the existing Committee, to consult with the Liquidating Trustee regarding the Liquidating Trust Assets. The initial members of the Creditors' Oversight Committee shall be selected by the Committee and disclosed at the hearing on Confirmation. The Creditors' Oversight Committee shall only exist so long as there are at least two (2) creditors willing to serve. No compensation to the members of the Creditors' Oversight Committee shall be paid by the Liquidating Trustee from the Liquidating Trust Assets; provided, however, that reasonable expenses of the Creditors' Oversight Committee will be reimbursed by the Liquidating Trustee. The Creditors' Oversight Committee shall have standing as a party in interest to enforce the terms and provisions of the Liquidating Trust Agreement and this Plan. The Creditors' Oversight Committee may take action by majority vote of its members; provided, however, that unanimous consent of all members of the Creditors' Oversight Committee shall be required in order to commence or perform any Drilling Operations. The Creditors' Oversight Committee shall have the authority to retain counsel if necessary to resolve a dispute with the Liquidating Trustee and the reasonable fees and expenses of such counsel shall be a cost of administration of the Liquidating Trust. The members of the Creditors' Oversight Committee shall not be liable for any act done or omitted to be done as a member of the Creditors' Oversight Committee while acting in good faith and the Liquidating Trust shall indemnify and hold harmless the members of the Creditors' Oversight Committee and agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust; provided, however, that no such indemnification will be made to such Persons for actions or omissions that constitute willful misconduct, negligence or fraud. CIT Capital and its affiliates shall not be entitled to participate in or be a member of the Creditors' Oversight Committee.

**ARTICLE VII.**
**THE LIQUIDATING TRUSTEE**

      **7.01**   **The Liquidating Trustee**. The initial Liquidating Trustee shall be selected by the Committee. The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order and Liquidating Trust Agreement, provided however, that the Liquidating Trustee shall obtain the consent of the Creditors' Oversight Committee on any material decisions, as set forth in more detail in this Plan and the Liquidating Trust Agreement, including, without limitation, obtaining unanimous consent of the Creditors' Oversight Committee with respect to any Drilling Operations. The Liquidating Trustee shall be the representative of the Estates appointed pursuant to Bankruptcy Code §1123(b)(3)(B) and shall be required to perform his or her duties as set forth in this Plan.

      **7.02**   **The Responsibilities of the Liquidating Trustee**. The responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include (i) the receipt, management, supervision, and protection of the Liquidating Trust Assets on behalf of the beneficiaries of the Liquidating Trust; (ii) pursuit of objections to Disputed Claims; (iii) investigation, analysis, prosecution, and if necessary and appropriate, compromise of the claims and Causes of Action included among the Liquidating Trust Assets, including without limitation Avoidance Actions and non-bankruptcy causes of action against third parties; (iv) calculation and implementation of all Distributions to be made under this Plan to holders of Allowed Claims; (v) marketing, selling, leasing, or otherwise disposing of all of the Liquidating Trust Assets; (vi) filing all required tax returns and paying taxes and

all other obligations of the Liquidating Trust; (vii) keeping or causing to be kept books and records regarding all material matters related to the Liquidating Trust; and (viii) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, or orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of this Plan.

       **7.03**    **The Powers of the Liquidating Trustee**. The powers of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the power to (i) invest funds; (ii) make Distributions; (iii) pay taxes and other obligations owed by the Liquidating Trust or incurred by the Liquidating Trustee; (iv) engage and compensate from the Liquidating Trust Assets, consultants, agents, employees and professional persons to assist the Liquidating Trustee with respect to the Liquidating Trustee's responsibilities; (v) retain and compensate from the Liquidating Trust Assets, the services of experienced auctioneers, brokers, and/or marketing agents to assist and/or advise in the sale or other disposition of the Liquidating Trust Assets; (vi) liquidate and dispose of the Liquidating Trust Assets; (vii) compromise and settle Claims and Causes of Action; (viii) act on behalf of the Debtors and the Estates in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere; (ix) commence and/or pursue any and all actions involving Liquidating Trust Assets that could arise or be asserted at any time, unless otherwise waived or relinquished in this Plan; and (x) act and implement this Plan, the Liquidating Trust Agreement, and orders of the Bankruptcy Court, provided however, that the Liquidating Trustee shall obtain the consent of the Creditors' Oversight Committee on all material decisions regarding the Liquidating Trust Assets as set forth in more detail in the Liquidating Trust Agreement and this Plan, including obtaining unanimous consent of the Creditors' Oversight Committee with respect to any Drilling Operations. The Liquidating Trustee shall exercise such powers in accordance with the provisions of this Plan.

       **7.04**    **Establishment of Reserves and Accounts**. The Liquidating Trustee shall establish reasonable reserves (including adequate reserves for Disputed Claims that may become Allowed Claims after the Effective Date) and accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which cash and property may be deposited and checks drawn or withdrawals made to pay or Distribute such amounts as permitted or required for reasonable fees, expenses and liabilities of the Liquidating Trust pursuant to this Plan and the Liquidating Trust Agreement. Such funds shall not be subject to any claim by any Person except as provided under this Plan.

       **7.05**    **Retention of Professionals**. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trustee from the Liquidating Trust Assets upon the submission of statements or invoices and approval of the fees and expenses by the Liquidating Trustee. Professionals of, among others, the Debtors and the Committee, shall be eligible for retention by the Liquidating Trustee, and former employees of the Debtors shall be eligible for retention by the Liquidating Trustee.

       **7.06**    **Compensation of the Liquidating Trustee**. The Liquidating Trustee's compensation shall be determined by mutual agreement of the Liquidating Trustee and the Committee and disclosed prior to the Confirmation Hearing for approval by the Bankruptcy Court. The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made from the Liquidating Trust Assets.

       **7.07**    **Liquidating Trustee Expenses**. All costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan or in any manner connected, incidental or

related thereto, in effecting Distributions (including the reimbursement of reasonable expenses) shall be paid from the Liquidating Trust Assets. Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval.

       7.08       **Liability; Indemnification**. The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Liquidating Trustee's willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole, absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for actions or omissions that constitute willful misconduct, negligence or fraud.

       7.09       **Termination**. The duties, responsibilities and powers of the Liquidating Trustee shall terminate in accordance with Section 6.06 of this Plan.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS

       8.01       **Proceeds of Federal Insurance Policies**. The proceeds of the Federal Insurance Policies shall not be subject to the waterfall in Section 8.03 below. All proceeds from the Federal Insurance Policies shall be utilized to perform the required remediation activities under the Remediation Plan as described in Section 6.02 hereinabove and to pay any reasonable attorney fees, expenses and other costs incurred by the Debtors and the Committee related to the Environmental Claims or the Remediation Plan. Moreover, all Environmental Claims of both the City of Midland and the Texas Railroad Commission shall be deemed satisfied by the approval and implementation of the Environmental Claim Global Settlement as described in Section 6.02 hereof.

       8.02       **Waterfall**. The Liquidating Trustee shall use the Liquidating Trust Assets to pay all Allowed Administrative Claims and Cure Claims related to Assumed Contracts, to pay the costs and expenses of the Liquidating Trust, and to the extent that the Liquidating Trustee determines that there is excess Cash available in the Liquidating Trust for Distribution to holders of Claims and Equity Interests, then Distributions of Cash from the Liquidating Trust shall be made to holders of Allowed Claims as follows:

        ⊚   First, to holders of Allowed Ad Valorem Tax Claims (or, with respect to Ad Valorem Tax Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed Ad Valorem Tax Claims are paid or reserved in full. The Allowed Ad Valorem Tax Claims are estimated to be approximately $90,000;

        ⊚   Second, to holders of Allowed Priority Claims (or, with respect to Priority Claims that are Disputed Claims, to an appropriate reserve account as determined by the

Liquidating Trustee or established under this Plan) until all such Allowed Priority Claims are paid or reserved in full. The Allowed Priority Claims are estimated to be $1,025,000.00, comprised almost exclusively of the P&A Administrative Claim and the Debtors' share of the costs of the TH 6 Remediation.

- Third, to holders of Allowed M&M Secured Claims (or, with respect to M&M Secured Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed M&M Secured Claims are paid or reserved in full. The asserted M&M Secured Claims are estimated to be between $12M and $15M; however, the Allowed amount of such Claims shall be capped at the value of the Estates' property securing such Claims;

- Fourth, to holders of Allowed Other Secured Claims (or, with respect to Other Secured Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed Other Secured Claims are paid or reserved in full. The Allowed Other Secured Claims are estimated to be $0;

- Fifth, to holders of Allowed General Unsecured Claims (or, with respect to General Unsecured Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed General Unsecured Claims are paid or reserved in full. The General Unsecured Claims are estimated to be between $5M and $6M, exclusive of the deficiency claims asserted by the holders of the Class 3 Claims;

- Sixth, to holder of the CIT Deficiency Claim until such CIT Deficiency Claim is paid in full. The CIT Deficiency Claim is $7M;

- Seventh, to holders of Allowed Subordinated Claims (or, with respect to Subordinated Claims that are Disputed Claims, to an appropriate reserve account as determined by the Liquidating Trustee) until all such Allowed Subordinated Claims are paid or reserved in full. The Allowed Subordinated Claims are approximately $5M.

- Eighth, any remaining amounts in the Liquidating Trust shall be distributed (a) 50% pro rata to holders of General Unsecured Claims, (b) 30% to CIT Capital, (c) 10% pro rata to holders of Equity Interests in Consolidated, and (d) 10% pro rata to holders of Equity Interests in Standard.

**8.03**     **Cash Distributions**. At any time that the Liquidating Trustee determines, after consultation and approval of the Creditors' Oversight Committee, that sufficient Cash exists in the Liquidating Trust to make a Distribution to holders of Allowed Claims pursuant to the provisions of this Plan, including Section 8.02 of this Plan, the Liquidating Trustee shall make such Cash Distribution Pro Rata to holders of Allowed Claims on a Class-by-Class basis.

**8.04**     **Distributions by Agent or Servicer**. The Liquidating Trustee shall make all Distributions required under this Plan, except with respect to a Claim whose Distribution is governed by an agreement and is administered by an agent or servicer, which Distributions shall be deposited with the appropriate agent or servicer, who shall deliver such Distributions to the holders of Claims in accordance with the provisions of this Plan.