

U.S. BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 26, 2013**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HERITAGE CONSOLIDATED, LLC, et al., | Case No.: 10-36484-hdh |
| Debtors. | Jointly Administered |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### WITH RESPECT TO CONFIRMATION OF THE THIRD AMENDED
### PLAN OF REORGANIZATION FOR THE DEBTORS

On August 19, 2013, the Court conducted a hearing (the "Confirmation Hearing") to consider confirmation of the *Second Amended Joint Plan of Reorganization for the Debtors, as Modified* [Docket No. 833] (the "Plan") proposed by Heritage Consolidated, LLC and Heritage Standard Corp. (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee").[1]  Having considered the Plan, all timely-filed objections to confirmation of the Plan, the evidence presented, and arguments of counsel, and having taken judicial notice of

---

[1] The Plan shall include all modifications thereof as approved by the Court in the Confirmation Order and/or on the record at the Confirmation Hearing.  Unless separately defined herein or in the Confirmation Order, all capitalized terms herein shall have the meanings ascribed to such terms in the Plan.

the pleadings and evidence presented in this case, the Court hereby enters its findings of fact and conclusions of law with respect to, and in support of, its separate order confirming the Plan (the "Confirmation Order"), as follows:[2]

## FINDINGS OF FACT

### BACKGROUND

**A.     The Bankruptcy Filing and Financing of the Case**

1.     On September 14, 2010, (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), thereby initiating the above-captioned cases with the Court (collectively, the "Bankruptcy Case"). Since the Petition Date, and pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors have been operating and managing their businesses and property of the Estate as debtors in possession.

2.     On September 24, 2010, the U.S. Trustee's Office appointed the Committee. As of the date hereof, no trustee, examiner or other statutory creditors' committees have been appointed in the Bankruptcy Case.

3.     Following the Committee's appointment, the Debtors, the Committee, CIT and certain holders of M&M Liens agreed upon the terms for the Debtors' use of cash collateral in the case and on December 16, 2010, the Court entered its *Final Order Authorizing Limited Use of Cash Collateral, Obtaining Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders* [Docket No. 351] (as amended, extended, and otherwise modified from time to time, the "Cash Collateral Order"). Since that time, the Debtors have

---

[2] To the extent that any finding of fact herein or in the Confirmation Order is or may be construed as a conclusion of law, it shall also constitute a conclusion of law.

continued to operate under the terms of the Cash Collateral Order and authorized stipulations thereunder between the Debtors and Committee filed with the Court on a monthly basis.

4.    On February 11, 2011, CIT, the Committee, Wisenbaker, and the Debtors agreed on the terms of the Global Resolution Proposal, which settled significant disputes and claims in the Bankruptcy Case, and facilitated the sale of the Non-Section 6 Assets to Permian Atlantis under a Back-Up Purchase and Sale Agreement (the "Back-Up PSA").  The Global Resolution Proposal and the sale of the Non-Section 6 Assets to Permian Atlantis under the Back-Up PSA were approved by the Bankruptcy Court by its Order entered February 28, 2011 (the "Sale Order") [Docket No. 506] and the agreements and distribution rights thereunder have been incorporated into Article VIII of the Plan as contemplated by the parties and the Court's Sale Order.  The settlements, which are summarized in Article VI(D) of the Disclosure Statement, generated significant cash proceeds for the Estates and resulted in the satisfaction and/or reduction of significant secured and administrative claims against the Estates.  Notably, the secured claims asserted by the Debtors' primary lender, CIT, have been either satisfied or subordinated under the Plan thereby freeing up cash and remaining assets for other lienholders and general unsecured creditors.   Additionally, The Debtors subsequently recovered proceeds from claims and causes of action asserted against third parties in relation to the drilling of the Pat Howell Well.

5.    The Liquidation Analysis, and supporting testimony, presented at the Confirmation Hearing accurately sets forth the available cash and other assets necessary to fund the Plan and the administration of the Trust.

**B.    The Chapter 11 Plan Process**

6.    On December 17, 2012, the Plan Proponents filed their proposed *Second Amended Disclosure Statement for First Amended Joint Plan of Reorganization for the Debtors*

[Docket No. 771] (the "Disclosure Statement"), along with the *First Amended Joint Plan of Reorganization for the Debtors* [Docket No. 771-1].

7.      The Disclosure Statement was approved under Section 1125 of the Bankruptcy Code pursuant to the Court's *Order (A) Approving Disclosure Statement; (B) Scheduling a Hearing to Consider Confirmation of the Plan of Reorganization; (C) Establishing Voting and Objection Deadlines; and (D) Approving Balloting, Solicitation, Voting and Notice Procedures* [Docket No. 769] (the "Initial Disclosure Statement Order").

8.      On July 2, 2013, the Plan Proponents filed their *Joint Motion for Entry of Order: (A) Approving Supplemental Disclosure; (B) Scheduling a Hearing to Consider Confirmation of the Plan of Reorganization; and (C) Establishing Voting and Objection Deadline.* The Supplemental Disclosure was submitted primarily to advise the Court and creditors of the Environmental Global Claim Settlement and the impact on the Estates. The Plan Proponents incorporated those terms into the *Second Amended Joint Plan of Reorganization for the Debtors*, which was attached to the Supplemental Disclosure. On July 13, 2013, the Court approved the Supplement Disclosure and entered its order granting the joint motion [Docket No. 831] (together with the Initial Disclosure Statement Order, hereinafter referred to as the "Disclosure Statement Orders").

9.      Pursuant to the Disclosure Statement Orders, the Court: (a) approved the Disclosure Statement and Supplemental Disclosure; (b) approved the forms of each Ballot and the Confirmation Hearing Notice; (c) established specific balloting and tabulation procedures to be applied in determining votes on the Plan (collectively, the "Balloting Procedures"); (d) approved the appointment of Munsch Hardt (the "Balloting Agent") as the party responsible for receiving executed Ballots, determining and tabulating votes on the Plan, and determining whether each particular impaired class of Claims has accepted or rejected the Plan, subject to

final determination by the Court; (e) fixed a deadline of August 12, 2013, at 5:00 p.m. (Central), for the return of Ballots to the Balloting Agent (the "Voting Deadline"); (f) fixed a deadline of August 12, 2010, at 5:00 p.m. (Central), for the filing and service of objections to confirmation (the "Objection Deadline"); and (g) approved noticing and service requirements and procedures (collectively, the "Solicitation Requirements") in relation to the form and manner of providing notice of the Confirmation Hearing and Objection Deadline and service of the Supplemental Disclosure, Plan, Ballots and Supplemental Disclosure Statement Order (collectively, the "Solicitation Materials").

10.     The Plan Proponents timely complied with all of the Solicitation Requirements. Accordingly, proper and sufficient notice of the Confirmation Hearing and Objection Deadline was provided to Creditors, Equity Interest holders, and all other parties in interest entitled to notice, and the Plan Proponents properly and fairly distributed the Solicitation Materials to all holders of Claims who were entitled to vote on the Plan.  Additionally, and beyond the requirements ordered by the Court, the Debtors also provided notice of the hearing to non-voting parties of the Confirmation Hearing with an invitation to contact either counsel for the Debtors or the Committee for a copy of the Solicitation Materials and any questions concerning their voting rights.

11.     Following the vote to approve the Plan by creditors and prior to the Confirmation Hearing, the Plan Proponents filed a revised and updated Plan, which included technical and nonmaterial modifications and clarifications to plan language as requested by the Committee and certain creditors.  All of the revisions to the Plan were disclosed to, and reviewed by, the Court at or prior to Confirmation and determined to be technical and nonmaterial modifications pursuant to Bankruptcy 3019, which required no additional disclosure to creditors under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor

do they require that the holders of Claims or Equity Interests be afforded the opportunity to change previously cast acceptances or rejections of the Plan, thereby satisfying section 1127 of the Bankruptcy Code.

C.     **Settlements Under the Plan**

12.     In addition to the CIT settlements previously approved by the Court, the Plan incorporates, and is supported by, two other significant settlements among the Debtors, Committee and certain key creditors and insiders in the case.    The primary terms of these settlements are set forth in Article VI of the Plan and the Plan Proponents have sought approval of such settlements under Bankruptcy Rule 9019 as part of Confirmation.

13.     First, the Estates have agreed to the release of any Claims and Causes of Action against Mr. Wisenbaker and the Wisenbaker Related Entities in exchange for the subordination of over $5 million in general unsecured claims.  This settlement, which was negotiated primarily between the Committee and Mr. Wisenbaker, enhances the opportunity for increased payments to other general unsecured creditors.  The settlement was the result of lengthy negotiations  and included the exchange of information and documents relative to alleged claims by and against Mr. Wisenbaker and the Wisenbaker Related Parties.  Additionally, and in further support of the settlement, Mr. Wisenbaker assisted the Estate throughout the bankruptcy case with no compensation.  Notably, Mr. Wisenbaker's testimony and assistance in the Apollo litigation was instrumental to its success.  The primary terms of the settlement which are being presented to the Court for approval are summarized in Section 6.01 of the Plan.

14.     The second significant settlement is defined under the Plan as the Environmental Global Claims Settlement.   This settlement involves the resolution of claims and disputes between and among the Debtors, Federal Insurance Company, the City of Midland and the Texas Railroad Commission. Subsequent to the trial in the Bankruptcy Case involving the

determination of the Debtors' liability to the City of Midland for alleged contamination of one of the City's aquifers, disputes arose as to the requirements of remediation by the Debtors and the scope and extent of available insurance for certain portions of the remediation costs. The negotiations were lengthy and difficult, but conducted in good faith and ultimately resulted in an arms-length settlement among the parties. The terms of the settlement are set forth in Section 6.02 of the Plan, and include the proposed Agreed Judgment attached as Exhibit E to the Plan and presented to the Court at Confirmation. The settlement was also summarized for creditors and parties in the Supplemental Disclosure approved by the Court. The settlement significantly benefits the Estates by limiting and capping the exposure from the Environmental Claims, which could have all but eliminated recoveries for certain creditors in the case. The settlement also establishes a fund, which the Trust will administer in support of the remediation of the City's aquifer and the completion of all plugging and abandonment obligations with the State of Texas. This settlement, coupled with the resolution of the insurance disputes, also avoided the inevitable fees and costs that would have been incurred in protracted litigation among the parties.

**D.     The Liquidating Trust**

15.     The Plan contemplates and provides for the formation of the Liquidating Trust for the purpose of taking ownership, management and control of all assets and liabilities of the Estates for the benefit of the creditors. Mr. Jason Searcy was proposed as the Liquidating Trustee and designated as such in the Liquidating Trust Agreement attached to the Plan. The Committee also approved and designated Traton Engineering Associates ("Traton") as the New Operator subject to approval of the Traton contract by the Trustee and Creditors' Oversight Committee; provided, however that the Liquidating Trustee is to have authority and discretion to utilize the existing operator, Standard, as the operator on a limited basis and for such purposes as the Liquidating Trustee deems appropriate.

**E.  Objections and Agreements in Resolution Thereof**

16.  All objections to the Plan have either been (i) resolved and withdrawn as provided in the Confirmation Order and reflected on the record by the parties thereto, (ii) sustained in part resulting in modifications to the Plan as reflected in the Liquidating Trust Agreement and this Order for the reasons as stated by the Court on the record; or (ii) overruled as a result of modifications to the Plan or as provided in the Confirmation Order and/or for the reasons as stated by the Court on the record.

## CONSIDERATION OF CONFIRMATION REQUIREMENTS

**A.  Section 1129(a)(1) Requirements**

17.  In determining whether the Plan complies with applicable provisions of the Bankruptcy Code, the Court considered, among other things, whether the Plan complies with Sections 1122 and 1123 of the Bankruptcy Code, as follows:

*Classification of Claims and Equity Interests (11 U.S.C. §§ 1122, 1123(a)(1))*

18.  The Plan classifies Claims and Equity Interests in the Bankruptcy Case as follows:

> Unclassified
> Administrative Claims
> Priority Tax Claims
>
> Classified Claims and Equity Interests
> Class 1:  Ad Valorem Tax Claims
> Class 2:  Priority Claims
> Class 3:  M&M Secured Claims
> Class 4:  Other Secured Claims
> Class 5:  General Unsecured Claims
> Class 6:  Environmental Claims
> Class 7:  CIT Deficiency Claim
> Class 8:  Subordinated Claims
> Class 9:  Equity Interests

As reflected by the above, the Plan designates Classes for all Claims, with the exception of Claims of a kind specified in Section 507(a)(2) of the Bankruptcy Code (Administrative Claims under the Plan) and Section 507(a)(8) of the Bankruptcy Code (Priority Tax Claims under the Plan), and designates a Class for Equity Interests.

19.     With respect to such classification, each Claim or Equity Interest within a particular Class under the Plan is substantially similar to all of the other Claims or Equity Interests within such Class, and there are significant differences between the legal nature and/or priority of the Claims or Equity Interests in each particular Class and the Claims or Equity Interests in each other Class.

*Specification of Impairment (11 U.S.C. § 1123(a)(2))*

20.     Article III of the Plan clearly identifies whether each particular Class is impaired under the Plan.  As specified in Article III, Section 3.02 of the Plan, Classes 1 and 2 have been identified as unimpaired under the Plan.

*Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))*

21.     Article IV of the Plan specifies the treatment provided for each of the Classes of Claims and Equity Interests under the Plan, including each Class of Claims and each Class of Equity Interests that is impaired under the Plan.

*Same Treatment Within Classes (11 U.S.C. § 1123(a)(4))*

22.     Under the Plan, all Claims and Equity Interests within each particular Class, will receive the same treatment unless, in the case of Classes of Claims, the holder of a particular Claim agrees to less favorable treatment of its Claim.

*Adequate Means for the Plan's Implementation (11 U.S.C. § 1123(a)(5))*

23.      The Plan sets out all necessary provisions for its implementation. *See, e.g.*, Article VI (article of the Plan devoted to implementation). Collectively, and without limitation, the following provisions of the Plan adequately provide for implementation of the Plan:

- Section 6.01 sets forth the terms of settlement among the Estates, Committee and Wisenbaker and the Wisenbaker Related Parties and requests approval of that settlement in accordance with Bankruptcy Rule 9019.

- Section 6.02 and the Agreed Judgment sets forth the terms of the Environmental Claim Global Settlement among the Debtors, Federal Insurance Company, the RRC and the City of Midland and requests approval of that settlement in accordance with Bankruptcy Rule 9019.

- Sections 6.03 – 6.018 and Article VII provide for the creation, funding, administration, rights and obligations of the Liquidating Trust and Liquidating Trustee.

- The Plan sets out the specifics of how distributions under the Plan will be made, including, without limitation, interim distribution procedures, withholding provisions, reserve requirements, and undeliverable/unclaimed and disputed distribution procedures, all of which are reasonable and appropriate.

- The Plan establishes procedures for the disposition of Disputed Claims, including, without limitation, the establishment of a deadline for objections to Claims, the establishment of a reserve for Disputed Claims, post-confirmation claim filing and amendment requirements, and authorization for the settlement of Disputed Claims, all of which procedures are reasonable and appropriate.

- The Plan provide for the enforcement of protections afforded by Section 1141 of the Bankruptcy Code.

- The Plan provides for the preservation and transfer of Causes of Action to the Liquidating Trust, with the Liquidating Trustee to have standing, independently and as the representative of the Estate, to enforce, prosecute and settle such Causes of Action with certain approvals required by the Oversight Committee under the Liquidating Trust Agreement.

All of the above-referenced provisions of the Plan, and the other related implementation provisions under the Plan and Liquidating Trust Agreement, are appropriate and not inconsistent with applicable provisions of the Bankruptcy Code and are approved.

**B.**     **Section 1129(a)(2) Requirements**

24.     In compliance with applicable provisions of the Bankruptcy Code, the Plan Proponents did not solicit any votes on the Plan until after approval and transmittal of the Disclosure Statement and Supplemental Disclosure, and no votes were solicited except pursuant to information set forth within those documents.  As explained above, the Plan Proponents also complied with all applicable notice requirements in relation to the Plan and confirmation.

**C.**     **Section 1129(a)(3) Requirements**

25.     As supported by the testimony at confirmation, the Plan was formulated by the Debtors and Committee with the legitimate and honest objectives of addressing all Claims and Equity Interests in the Bankruptcy Case, and providing for the fair and equitable treatment of such Claims and Equity Interests consistent with the priorities established under the Bankruptcy Code.  There was no intention on the part of the Plan Proponents to achieve a result forbidden by law.

**D.**     **Section 1129(a)(4) Requirements**

26.     Pursuant to the retention orders entered in the Bankruptcy Case, payments to court-approved professionals are subject to final approval of the Court.  In this regard, Article II of the Plan establishes a procedure for the submission of applications for the allowance of Administrative Claims in the case, including Professional Fee Claims.

27.     With respect to administration of the Liquidating Trust, Article VII of the Plan, together with the Trust Agreement in the form attached as Exhibit "D" to the Plan, sets out provisions for the compensation and reimbursement of the Liquidating Trustee and any professionals that the Liquidating Trustee may retain.  In the case of the Liquidating Trustee, the Plan and Liquidating Trust Agreement provide for the Liquidating Trustee to be paid an hourly rate as set forth therein and reimbursed for all reasonable out-of-pocket expenses incurred in the

performance of his duties and obligations in administering the Liquidating Trust.  The Plan and Liquidating Trust Agreement also authorize the Liquidating Trustee to employ such professionals and agents as the Liquidating Trustee deems necessary to assist him in the administration of the Liquidating Trust, and to compensate such professionals and reimburse such professionals for out-of-pocket expenses incurred by them on reasonable terms agreed to by the Liquidating Trustee without the necessity of court approval.

**E.      Section 1129(a)(5) Requirements**

28.      The Plan Proponents have disclosed the identity of the Liquidating Trustee in the Liquidating Trust Agreement and at the Confirmation Hearing.  Jason Searcy was selected by the Committee to serve as the initially-appointed Liquidating Trustee.  The appointment of Mr. Searcy is consistent with the interests of Creditors and with public policy.

29.      On the Effective Date of the Plan, the Liquidating Trust will exist with all authority to own, hold, operate and dispose of trust assets free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of the Plan, the Confirmation Order, the Trust and all other orders and documents incorporated therein and instruments executed and delivered in connection therewith.  The selection of Traton as the New Operator is reasonable and appropriate and is necessary to the implementation of the Plan.

**F.      Section 1129(a)(6) Requirements**

30.      The Debtors do not charge any rates that are subject to the approval of any governmental regulatory commission.

**G.      Section 1129(a)(7) Requirements**

31.      There are six impaired Classes under the Plan – Class 3 (M&M Liens), Class 4 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 6 (Environmental Claims), Class 7 (CIT Deficiency Claims), Class 8 (Subordinated Claims) and Class 9 (Equity Interests).

32. There are currently no creditors in Class 4; accordingly, no votes were cast and there are no distributions relative to Class 4.

33. With respect to Classes 3 and 5, the holders of Claims within such Classes have either voted to accept the Plan or will receive or retain under the Plan on account of their Claims property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date. The record in these proceedings and the testimony at confirmation provide sufficient evidence that a liquidation of the Debtors' business in a non-operating Chapter 7 would likely result in a lower recovery to Class 3 and Class 5 Creditors (particularly when considering the additional layer of administrative expenses that would be incurred in the event of conversion and the impact of the loss of the settlements outlined in Article VI of the Plan).

34. With respect to Classes 6, 7, 8 and 9, every Creditor within such Class has voted to accept the Plan.

**H. Section 1129(a)(8) Requirements**

35. Under the Plan, Class 1 (Ad Valorem Tax Claims) and Class 2 (Priority Claims) shall be paid in full and are unimpaired. Thus, as previously set forth in the Disclosure Statement Order and as a matter of law, Classes 1 and 2 are deemed to have accepted the Plan under the Bankruptcy Code.

36. In the case of Class 3 (M&M Lien Claims), based upon votes timely cast on the Plan by holders of Claims within Class 3, Class 3 has accepted the Plan by the following percentages: 76% in number and 91.8% in amount.

37.     In the case of Class 5A (General Unsecured Claims), based upon votes timely cast on the Plan by holders of Claims within Class 5A, Class 5A has accepted the Plan by the following percentages: 76.4% in number and 86.5% in amount.

38.     In the case of Class 5B (General Unsecured Claims), based upon votes timely cast on the Plan by holders of Claims within Class 5B, Class 5B has accepted the Plan by the following percentages: 79.1% in number and 93.6% in amount.

39.     In the case of Class 6 (Environmental Claims), based upon votes timely cast on the Plan by holders of Claims within Class 6, Class 6 has accepted the Plan by the following percentages: 100% in number and 100% in amount.

40.     In the case of Class 7 (CIT Deficiency Claim), based upon votes timely cast on the Plan by holders of Claims within Class 7, Class 7 has accepted the Plan by the following percentages: 100% in number and 100% in amount.

41.     In the case of Class 8 (Subordinated Claims), based upon votes timely cast on the Plan by holders of Claims within Class 8, Class 8 has accepted the Plan by the following percentages: 100% in number and 100% in amount.

42.     In the case of Class 9 (Equity Interests), based upon votes timely cast on the Plan by holders of Claims within Class 9, Class 9 has accepted the Plan by the following percentages: 100% in number and 100% in amount.

I.     **Section 1129(a)(9) Requirements**

43.     The Plan provides for the immediate payment in full of all allowed priority claims in the Bankruptcy Case.  Specifically, Article IV of the Plan provides for the payment in full, in Cash, of all Allowed Ad Valorem Tax Claims and Priority Claims as soon as practicable after the Effective Date or the date when such Ad Valorem Tax Claim or Priority Claim becomes an Allowed Ad Valorem Tax Claim or Allowed Priority Claim.  Except for Administrative Claims,

Ad Valorem Tax Claims, and other Priority Claims, there are no other Claims of a kind specified in Section 507(a)(1)-(8) of the Bankruptcy Code in the Bankruptcy Case.

**J. Section 1129(a)(10) Requirements**

44. Classes 3, 5, 6 and 7, all impaired under the Plan, have overwhelmingly accepted the Plan.

**K. Section 1129(a)(11) Requirements**

45. The Plan provides for sufficient funding to satisfy all of the distribution requirements under the Plan and to satisfy all of the foreseeable fee and expense obligations of the Liquidating Trust. The Liquidating Trust will continue operations post-confirmation supported by the cash and other assets transferred to the Liquidating Trust. Hence, confirmation of the Plan is not likely to be followed by the need for any further non-contemplated liquidation or for further reorganization.

**L. Section 1129(a)(12) Requirements**

46. The Debtors are current in the payment of all fees payable under 28 U.S.C. § 1930 and the Plan provides for the payment of all such fees which are hereafter assessed from the Liquidating Trust as they become due.

**M. Section 1129(a)(13) Requirements**

47. There are no retiree benefit plans to be maintained following the Effective Date. Subsequent to the Effective Date, any employee obligations accruing thereafter are subject to the approval and agreement of the Liquidating Trustee.

**N. Section 1129(a)(14) and (a)(15) Requirements**

48. None of the provisions within Section 1129(a)(14) and (a)(15) are applicable to the Debtors.

**O.    Section 1129(a)(16) Requirements**

49.    Transfers of property under the Plan will be made in accordance with all applicable provisions of non-bankruptcy law that govern the transfer of property.

**P.    Section 1129(d) Requirements**

50.    No governmental unit has requested the Court to make a determination in accordance with Section 1129(d) of the Bankruptcy Code.  Nevertheless, as supported by testimony, the Plan was not formulated by the Plan Proponents for the purpose of avoiding any taxes or avoiding the requirements of any securities laws.

**PLAN'S CONDITIONS PRECEDENT TO CONFIRMATION**

51.    Section 6.09 of the Plan sets out the conditions precedent to confirmation of the Plan.  In relation to such conditions: (a) each of the Plan Proponents shall have approved the form and substance of the Confirmation Order; and (b) the Confirmation Order is not required to be a final order as a condition to the occurrence of the Effective Date.

**CONCLUSIONS OF LAW**

**JURISDICTION AND VENUE**

52.    The Court has jurisdiction over the Bankruptcy Case and the confirmation proceeding and settlement approvals contained therein pursuant to 28 U.S.C. §§ 157 and 1334.  The confirmation proceeding and settlement approvals contained therein constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Bankruptcy Case and confirmation proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**APPROVAL OF THE SETTLEMENTS**

53.    The settlement set forth in Section 6.01 of the Plan between and among Mr. Wisenbaker, the Wisenbaker Related Entities and the Estates was negotiated and entered into in good faith and at arms-length.  The terms and conditions are in the best interest of the Estates

and provide value through the reduction and/or subordination of significant claims, avoidance of further fees and costs and significant cooperation and assistance to the reorganization process. Based on the foregoing, and the likelihood that further litigation would not result in a recovery or material benefit to the Estates, the settlement satisfies the business judgment standard and is approved as set forth in the Plan.

54.     The Environmental Global Claims Settlement, which includes the terms in Section 6.02 of the Plan and the Agreed Judgment attached as Exhibit E to the Plan, was negotiated and entered into by all parties thereto in good faith and at arms-length.   The settlement is beneficial to the estates by eliminating potentially significant liabilities and risks of recovery which would reduce or even eliminate distributions to other unsecured creditors while simultaneously assisting the City of Midland and RRC in fulfilling their respective obligations. The avoidance of further disputes with the City of Midland and RRC and insurance coverage litigation with Federal Insurance also avoids the significant fees and costs that would be incurred by the Trust to the detriment of the Creditors.   Accordingly, the settlement is in the best interest of the estate and satisfies the business judgment standard and is approved.

55.     The definition under the Plan for M&M Secured Claims and for M&M Liens shall be construed broadly and include, without limitation, the Standard Operator Lien.

## SATISFACTION OF CONFIRMATION REQUIREMENTS

### A.     All of the Requirements of Section 1129(a) of the Bankruptcy Code are Satisfied

56.     The Plan complies with all applicable provisions of the Bankruptcy Code and, therefore, the requirements of Section 1129(a)(1) of the Bankruptcy Code have been met.   In this regard, the Plan satisfies all applicable requirements of Section 1123(a) of the Bankruptcy Code by:

(a)    Designating, in compliance with Section 1122 of the Bankruptcy Code, Classes of Claims (other than Claims of a kind specified in Section 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code) and a Class of Equity Interests.

(b)    Specifying any Class of Claims or Equity Interests that is not impaired under the Plan.

(c)    Specifying the treatment of each Class of Claims and each Class of Equity Interests that is impaired under the Plan.

(d)    Providing the same treatment for each Claim or Equity Interest of a particular Class (unless, in the case of Classes of Claims, the holder of a particular Claim agrees to a less favorable treatment of such particular Claim).

(e)    Providing adequate means for the Plan's implementation.

(f)    Providing for the establishment and administration of the Liquidating Trust and the rights of Creditors as beneficiaries therein in accordance with the Liquidating Trust Agreement, thereby satisfying the requirement of Section 1123(a)(6) of the Bankruptcy Code.

(g)    Including only provisions that are consistent with the interests of Creditors and Equity Interest holders and with public policy with respect to the manner of selection of the Liquidating Trustee under the Plan and any successor to such Trustee.

All other provisions of the Plan that are not mandated by Section 1123(a) of the Bankruptcy Code are appropriate and not inconsistent with applicable provisions of the Bankruptcy Code, and therefore permissible under Section 1123(b) of the Bankruptcy Code, including, without limitation:

(a)    The Plan's provisions for the preservation, administration and disposition of Causes of Action, which are permissible under Section 1123(b)(3) and (b)(6) of the Bankruptcy Code.

(b)    The Plan's provisions for the disposition of executory contracts and unexpired leases and for the administration and treatment of rejection damage Claims, which are permissible under Sections 1123(b)(2) and (b)(6) of the Bankruptcy Code.

(c)    The Plan's distribution provisions, Claims resolution procedures, enforcement provisions, exculpatory provisions, "miscellaneous" provisions, and jurisdictional provisions, which are all permissible under Section 1123(b)(6) of the Bankruptcy Code.

(e)    The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code in proposing and pursuing approval of the Plan, thereby satisfying the requirements of Section 1129(a)(2) of the Bankruptcy Code. In this regard, the Plan Proponents complied with Section 1125 of the Bankruptcy Code in soliciting votes on the Plan and complied with all applicable notice

requirements in relation to the confirmation process, including, without limitation, Fed. R. Bankr. P. 2002, 3016-3019, 6004, 6006, 9007, 9014 and 9019.

57.    The Plan Proponents proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying the requirements of Section 1129(a)(3) of the Bankruptcy Code.

58.    Any payment made or to be made by the Liquidating Trust for services or for costs and expenses in or in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been approved by the Court as reasonable. In this regard, the Plan's provisions for the compensation and reimbursement of expenses of the Liquidating Trustee and professionals employed by the Liquidating Trustee are reasonable and approved. There have been no such payments made, nor are any such payments to be made, by the Committee or any person acquiring property under the Plan other than the Liquidating Trust, and there are no securities to be issued under the Plan. Based upon the foregoing, the requirements of Section 1129(a)(4) of the Bankruptcy Code have been met.

59.    The Plan Proponents have disclosed the identity and affiliations of the Liquidating Trustee and New Operator at or prior to Confirmation. Therefore, the requirements of Section 1129(a)(5)(A) of the Bankruptcy Code have been met or are otherwise inapplicable.

60.    The Plan does not provide for, and there are no existing agreements for, the employment or retention of any insiders by the Liquidating Trustee after the Effective Date. Therefore, the requirements of Section 1129(a)(5)(B) of the Bankruptcy Code have been met or are otherwise inapplicable.

61.    The requirements of Section 1129(a)(6) of the Bankruptcy Code are inapplicable because the Debtors do not charge any rates that are subject to the approval of any governmental regulatory commission.

62.     Each holder of a Claim or Equity Interest in an impaired Class of Claims or Equity Interests (as applicable) has either accepted the Plan or will receive or retain under the Plan on account such Claim or Equity Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.   No Class of Secured Claims has made the election under Section 1111(b)(2) of the Bankruptcy Code.   The 1111(b) election filed on behalf of Baker Hughes Oilfield Operations, Inc. and BJ Services Company, U.S.A. was withdrawn prior to the Confirmation Hearing. Based upon the foregoing, the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met.

63.     Classes 1 and 2 of the Plan have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.   Classes 3, 5, 6, 7 and 8 of the Plan have accepted the Plan pursuant to Section 1126(c) of the Bankruptcy Code.   Class 9 of the Plan has accepted the Plan pursuant to Section 1126(d) of the Bankruptcy Code.

64.     The Plan provides that with respect to each Claim of a kind specified in Section 507(a)(2) of the Bankruptcy Code (an Administrative Claim under the Plan), the holder of such Claim will receive Cash equal to the Allowed amount of such Claim as soon as practical after the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim unless the holder has agreed to a different treatment of the Claim.   There are no Claims in the Bankruptcy Case of a kind specified in Section 507(a)(3) of the Bankruptcy Code.   Based upon the foregoing, the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code have been met.

65.     The Plan provides that with respect to each Claim of a kind specified in Section 507 of the Bankruptcy Code (Priority Claims under the Plan), the holder of such Claim will receive Cash equal to the Allowed amount of such Claim on or as soon as practicable after the Effective Date (or the date of Allowance, if later), unless the holder has agreed to a different

treatment of the Claim. There are no Claims in the Bankruptcy Case of a kind specified in Section 507(a)(1), 507(a)(3), 507(a)(4), 507(a)(6) or 507(a)(7) of the Bankruptcy Code. Based upon the foregoing, the requirements of Section 1129(a)(9)(B) of the Bankruptcy Code have been met.

66. The Plan provides that with respect to each Claim of a kind specified in Section 507(a)(8) of the Bankruptcy Code and any Secured Claim which would otherwise meet the description of an unsecured claim of a governmental unit under Section 507(a)(8) but for the secured status of that Claim (in each case, a Priority Tax Claim under the Plan), the holder of such Claim will receive Cash equal to the Allowed amount of such Claim as soon as practical after the Effective Date of the Plan (or the date of Allowance, if later), unless the holder has agreed to a different treatment of the Claim. The manner in which such Claims will be satisfied under the Plan is not less favorable than the most favored non-priority unsecured claim provided for by the Plan. Based upon the foregoing, the requirements of Section 1129(a)(9)(C) and (D) of the Bankruptcy Code have been met.

67. All Classes of Claims that are impaired under the Plan, Classes 3, 5, 6, and 7, have accepted the Plan, determined without including any acceptance of the Plan by an insider. Accordingly, the requirements of Section 1129(a)(10) of the Bankruptcy Code have been met.

68. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the post-confirmation Debtors or the Liquidating Trust under the Plan. Accordingly, the requirements of Section 1129(a)(11) of the Bankruptcy Code have been met.

69. The Debtors are current in the payment of all fees payable under 28 U.S.C. § 1930 and the Plan provides for the payment of all such fees which are hereafter assessed from the

Liquidating Trust as they become due.  Accordingly, the requirements of Section 1129(a)(12) of the Bankruptcy Code have been met.

70.     Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Debtors.

71.     None of the provisions of Sections 1129(a)(14) or 1129(a)(15) of the Bankruptcy Code are applicable to the Debtors.

72.     All transfers of property of the Plan will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust, thereby satisfying the requirements of Section 1129(a)(16) of the Bankruptcy Code.

73.     The modifications to the Plan at or prior to Confirmation but after voting on the Plan are deemed technical and nonmaterial modifications to the Plan and, in accordance with Bankruptcy Rule 3019, do require any further disclosure or solicitation as they do not materially and negatively impact the treatment of, or distributions to, any creditors thereunder.

**B.     Sections 1129(c)-(e) Are Inapplicable**

74.     There are no other proposed Chapter 11 plans in the Bankruptcy Case.  Therefore, Section 1129(c) of the Bankruptcy Code is inapplicable.

75.     No party in interest that is a governmental unit has made a request for the Court to not confirm the Plan under Section 1129(d) of the Bankruptcy Code.  Therefore, Section 1129(d) of the Bankruptcy Code is inapplicable.

76.     The Bankruptcy Case is not a "small business case" as defined within the Bankruptcy Code.  Therefore, Section 1129(e) of the Bankruptcy Code is inapplicable.

**C.     Confirmation of the Plan**

77.     Confirmation of the Plan is in the best interests of the Estate, Creditors and Equity Interest Holders, and the Plan Proponents have satisfied all of the requirements for confirmation

of the Plan under Section 1129 of the Bankruptcy Code. Accordingly, the Plan will be confirmed and approved in all respects by the Confirmation Order.

### ### END OF FINDINGS AND CONCLUSIONS ###

**Agreed as to Form and Substance By:**

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 978-4365

By:    *Joe E. Marshall*
          Joe E. Marshall
           Texas Bar No. 13031100

**ATTORNEYS FOR THE DEBTORS**


**CHAMBERLAIN HRDLIKA**
1200 Smith Street, 14th Floor
Houston, Texas 77002
Telephone: (713) 658-2505
Facsimile: (713) 658-2553

By:     *Brian A. Kilmer*
          Brian A. Kilmer
          Texas Bar No. 24012963

**COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS**